NIXON PEABODY LLP
ATTORNEYS AT LAW

Suite 900
401 9th Street, N.W.
Washington, D.C. 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8712
E-Mail: hkelly@nixonpeabody.com

February 14, 2007

**VIA HAND DELIVERY**

David Harrington, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW
Room 12136
Washington, DC 20530

**Re: Anaheim Gardens/Algonquin Heights**

Dear Mr. Harrington:

As indicated in my letter to you of February 6, 2007, this letter responds in detail to your letter to me dated February 5, 2007. As I mentioned in that earlier letter, I was disappointed by the timing, content and tone of your February 5 letter, which attacked both the scope and substance of our prior discovery responses. Again, for the record, I entirely reject any such attacks on our discovery responses, which fully satisfied the requirements of the Rules of the Court of Federal Claims ("RCFC"). Your letter does not fairly reflect the content of our responses, nor does it take account of our other communications on discovery matters in which you and I have engaged. I believe when those communications are considered, many of the objections you raise evaporate. To the extent you have remaining questions, however, I will address them in this letter and, as appropriate, hope to work with you further to resolve them. The letter first discusses your February 5 letter in the context of our discovery communications and activities to date, and then responds to the specific questions that letter raised.

10311554.1

**1. The February 5 Letter Is Premature Due To The Plaintiffs' Outstanding Proposal To Exchange Databases and the Pending Responses of the Government.**

Your February 5 letter is premature for several reasons. First, many of the matters you raise in your letter can be resolved by reviewing the documents we have produced to you, as discussed in more detail below. At the outset, we did not, as your February 5 letter seems to suggest (at 3), attempt to burden you by "dumping" an undifferentiated mass of documents upon you. To the contrary – at very large expense to the plaintiffs -- we carefully culled thousand of pages of nonresponsive materials from the raw files that our clients provided to us and delivered to you only those materials that fairly responded to your requests. While our production was exhaustive and comprehensive, it was not padded, but rather represented a very scrupulous attempt to produce materials that you requested. As an alternative, we could have shifted that entire burden of production onto you and simply given you access to the raw files (with the exception of privileged materials), and let you select the documents you wanted, at which point you could produce your own index to those documents. While I did not expect you to congratulate us on the scope of our production, I am dismayed that you would cite our good faith response as somehow intended to burden or oppress you.

As you point out, you requested in your November 27, 2006 letter that the plaintiffs prepare an index that would allow you to search through the documents we have been producing to you since last September on a property by property basis. When this issue first arose early in December 2006, we discussed preparing some form of index that would allow you to search by Bates-stamp number the documents that relate to each property among the 90,000+ pages of documents that we produced in response to your document requests.

At the same time, I offered, as a courtesy, to provide to the government a copy of our document database, if the government would agree to provide its database to us. That would provide a far more sophisticated search capability to you, because we have "tagged" a variety of the most critical documents, such as the notices of intent and plans of action (to the extent available) for each plaintiff; to the extent you want to tag other documents, of course, you could do so easily. It would also allow you to extract documents on a property by property basis, and make a number of more useful searches of the documentary database. In response, you indicated that the proposed exchange was attractive, but that you needed to consult with your colleagues at the Department of Justice ("DOJ") and your client at the Department of Housing and Urban Development ("HUD"), to see if they were comfortable with such an exchange, and also determine if there were any technical obstacles to the exchange. I made this proposal to you in my email dated December 6, 2006 – more than two months ago. Please see a copy of the email (pg. 1, ¶3), attached.

In that same email, I said I would provide an index of "identifying information" to you "[i]f a reciprocal database sharing isn't practicable." It was entirely appropriate to request that

determination before preparing the index: producing a property-by-property index in hard copy is a time-consuming and expensive process that requires one of our paralegals to search the database on a property by property basis. Frankly, it would be a waste of our time to give you a voluminous hard copy index of our production only to learn later that you decided to accept our proposal for a database exchange, which, as noted above, will provide much more robust search abilities to you than a hard copy index would allow. For that reason, you and I never set a date to turn over the index to you, because I was waiting for your response to the database exchange. Nevertheless, the written discovery responses you received in January 2007 were made while our offer was pending. You have been aware since December 6, 2006, therefore, of our intent to provide additional identifying information to you, either by way of an index or a database exchange.

More than six weeks after sending my email to you, however, I have not received a response to my proposal. In fact, shortly after my eye surgery last month, when I called you to give my consent to the additional 70 days you requested for your discovery responses, I repeated both the offer of the document index and the database exchange. You indicated that you had spoken with others at HUD and DOJ about the proposed exchange, but did not have a final response. As you January 26, 2007 noted, we agreed to speak further about this when I returned from recuperating from my surgery, but that letter made no mention of my outstanding offer to exchange databases. Your February 5 letter arrived shortly I returned to the office – and again, without any indication of your response to the database exchange proposal in made more than two months ago. I am particularly distressed, therefore, that you would contend that, in connection with several interrogatory responses in which we directed you to look to our document production, we have failed to provide you with identifying information pursuant to RCFC 33(d). For more than two months, we have been waiting to provide that information to you. You cannot contend that we have failed to meet our obligation under RCFC 33(d) where, for more than two months, we have waited for you to respond to our straight-forward request to exchange databases. Simply put, there is no basis for your objections to the content of our interrogatory responses in light of your failure to respond to our proposal to provide that specific information.

Although you have not responded to our offer to exchange databases, that offer remains outstanding and, I believe, would be extremely useful to both sides. Nevertheless, although you have not informed me about whether or not the proposed database exchange is amenable to you, I have, as a show of good faith, directed our paralegal to compile the index in hard copy. A copy of that index is enclosed with this letter.[1]

---

[1] In your letters of November 27, 2006, you ask us to explain "the significance of the bates [sic] number prefixes" on the documents we produced. You have renewed that request in subsequent correspondence. The prefix was the letters "IRH." We could use any combination of letters, numbers and symbols we wanted to identify our documents and in more than two decades of litigation, I have never had opposing counsel contend that our choice for prefix was in any sense a proper subject for discovery. Without conceding that the information is

Your letter is premature in a second respect. As you know, at your request, the plaintiffs initiated a "rolling" document production in August 2006. Our production continued until mid-December 2006, by which time we had produced over 90,000 pages of responsive documents to you. As Exhibit A to our interrogatory responses indicates, several of the plaintiffs were unable to locate a complete set of documents that were responsive to your document requests and interrogatories. As the cover letter mentions, we anticipate that many of these documents will be found in the materials that are responsive to our document production requests and we promised then – and we renew that promise now – to amend or supplement our responses as appropriate when and if those materials are produced by the government. To the extent that your February 5 letter seek additional responses with respect such matters, we cannot amend or supplement our responses further until that production is complete – and at the moment, it will not be complete until at least April 6, 2007, as a result of the discovery extension to which we agreed. Obviously, we cannot provide information we do not have but, to the extent we obtain additional information from your documents that provide grounds to amend or supplement the responses we have already provided, we will do so (again, exchanging databases may allow us to accelerate that process).

Finally, when I consented to the additional time you requested last month, I asked that you provide the same sort of rolling production of your documents that we provided to you, so that we could begin reviewing your documents and would not be deluged with documents whenever you complete your responses. Although you have not contacted me to respond to that offer, I did receive two boxes of documents late in the afternoon of February 9, which apparently constitutes a *de facto* agreement to engage in such a rolling production. Nevertheless, I should point out that, at your insistence, within 45 days of service of your discovery requests, we had produced more than 4000 pages of documents to you. In contrast, our discovery requests were served upon you on October 27, 2006, and it took more than 104 days after we served those requests before we received the first responsive documentation from you. Given the fact that it took almost twice as long for the government to produce its first documents to us as it took for us to produce our first documents to you – and that it apparently remains unable after more than two months to determine whether it will exchange databases with us – the government is frankly in no position to complain about any aspect of the plaintiffs' discovery responses to date.[2]

**2. <u>Specific Responses to the February 5 Letter</u>**

Your February 5 letter raised questions about a number of our specific discovery responses. Many of the preceding points apply to these criticisms. In other places, it appears

---

irrelevant and not discoverable, as a courtesy to you, I will inform you that the prefix we used was selected solely to assist with billing the copying and production charges for these materials, and to assure that these documents would have a prefix distinct from prefixes used in other litigation in this office.

[2] To the extent that the documents we received last week was intended to indicate your agreement to engage in a rolling production of documents, I would appreciate a note confirming that agreement in writing and setting forth the terms or approximate dates pursuant to which you intend to make additional production.

you have restated or clarified some of your discovery requests, as we will point out. While you claim that you "served carefully crafted interrogatories" upon us, the interrogatories were often far less clear and precise than they appear to you. We did not raise quibbling objections; fairly construed, many of your interrogatories swept up huge amounts of information, much of which is irrelevant, nonexistent and/or excessively burdensome to produce. Finally, in some cases, you have restricted the scope and nature of the information you requested. I will address these matters below:

A. Interrogatory 1

In the February 5 letter, you state (at 1) that "Interrogatory 1 seeks information about the identity of the owners of the projects at issue in this litigation." The "owners of the "projects at issue" are the plaintiffs in these lawsuit – largely general partnerships, with some limited liability companies and general partnerships. To the extent that you want the names of all of the plaintiffs' partners, we continue to believe that producing a list of partners from the creation of these entities to the current date is burdensome and oppressive and not calculated to lead to the discovery of admissible evidence. As noted in our response, production of that information would jeopardize the plaintiffs' confidential business information, a point that your February 5 letter does not discuss.

Your letter indicates that this information is needed for possible deposition purposes and suggests some ideas to streamline the scope of this request. Thus, you state that it would be sufficient if we identified the "owners" for the period from 1987 to the present. Again, the "owners" are the plaintiffs themselves, and you already have that information. If you are seeking the identity of the decision-makers who directed the actions of the owners with respect to ripeness issues for possible deposition purposes, then let me suggest that we provide you with the names of the general partners or managing members of the owners (the caption already lists the names of those persons who are general partners). Just as you note that the time prior to 1987 is not relevant, the time after 1996, when the prepayment prohibitions were lifted, is equally irrelevant, so we propose to provide those names from 1987 to 1996. We continue to believe that the identity of the plaintiffs' limited partners – who can be very numerous – is not relevant, because, by the very nature of their status as limited partners, they were not in a position to direct its affairs with respect to prepayment issues. I believe this focused list of decision-makers will provide the identity of the persons you need for deposition purposes.

B. Interrogatory 2 and 3

You characterize Interrogatories 2 and 3 as requesting "information about all actions taken pursuant to the Preservation Statutes." Again, with due respect, we doubt you fairly meant to ask us to report on "all actions taken pursuant" to those laws. Without straining the language of your request, these actions could include a bewildering variety of conduct, including, among others, a conversation between a general partner and his secretary concerning the mailing of a

plan of action, attendance at an industry seminar discussing the operation of ELIHPA or LIHPRHA, initial calls to appraisers to obtain quotes for appraisals, and a host of other "actions" all of which were "taken pursuant" to the Preservation Statutes. Although you contend these interrogatories were "carefully crafted," this language is on its face extremely imprecise and over-inclusive. We do not think you intended that we would identify all such trivial interactions and if you did, we would have well-founded reasons to object that such a broad scope of inquiry was not calculated to lead to the discovery of admissible evidence, pursuant to RCFC 26(b)(1).

Consequently, we construed your interrogatories as seeking information about the actual interactions between the owners and HUD that the owners undertook to comply with the procedural provisions of these statutes. We think this was what you intended, and is consistent both with the present focus of the litigation – that is, to demonstrate whether the plaintiffs' claims were ripe – as well as examples cited in the remainder of Interrogatories 2 and 3, which focused on such interactions with HUD ("whether you submitted a notice of intent to HUD, the date upon which any notice of intent was submitted," etc.). Given the specific examples you cited, it was appropriate – and frankly, we think extremely helpful – to condense the plaintiffs' formal interactions with HUD into the chart that appears on Exhibit A. As you no doubt have noticed, the topics covered in Exhibit A tie back directly to the specific matters requested in Interrogatories 2 and 3. In a handful of pages, we have listed the known filings you requested (including notices of intent and plans of actions) with the agency, along with HUD's action dates. We have also noted those places where documentary records are lacking. The alternative to preparing Exhibit A would have been to prepare short narratives for each property. That approach would have provided no more detailed information to you than is contained in Exhibit A, and would have made it more difficult for both you and us to identify those places were documentary information is lacking.

The primary thrust of your objection to our responses to these interrogatories is that we did not include information about the actual content of the documents and the outcomes. Your contention is legally and factually incorrect. First, with respect to the outcome of these interactions under the Preservation Statutes, we disagree that we did not provide information with respect to the outcome of these processes; this data is expressly contained in Exhibit A.

With respect to your claim that we did not provide information about the content of the plaintiffs' plans of action, you misstate the nature of our obligations. First, as a legal matter, we are not required to supply you with a narrative account of all of the interactions between HUD and the individual owners. On the contrary, our obligation under RCFC 33(d) is complete if we provide you with access to the same documents that we would use to obtain that information and the means to locate relevant information among those documents, on the same basis we have[3].

[3] This is not a case, as in Capacchione v. Charlotte Mecklenburg Schools, 182 F.R.D. 486, 490 (W.D. N.C. 1998), where the responding party was in a "far better position to locate the documents containing the requested information" than the propounding party. As you and I have discussed, there are dozens of plaintiffs in this case, most of whom have their own document filing and retrieval systems. Aside from the fact that our staff

As noted above, more than two months ago we offered to share our database with you. If you had accepted our invitation, you would have been able to search the database immediately and would have found the documents – to the extent they are available to us – that we cite in Exhibit A and that contain the information you seek. That offer is still open, and as noted above, we believe an exchange of databases will allow both sides to obtain information that they need expeditiously.

Second, as a factual matter, we have pointed out the documents that contain the requested information in Exhibit A and have provided, as an interim expedient, the enclosed index, even though we have not received your response to our request to exchange databases. As a result, there can be no doubt that the information you seek is now equally available to you and we have met our discovery obligations by pointing out to you where you will find that information.

Although we have met our obligation to respond to these interrogatories, it is premature in any case to seek additional supplementation of our responses to these interrogatories now, for several reasons. First, as noted, we have not received your response to our request to exchange databases, and we believe that, if you accept our proposal, the information you seek will be readily available to you directly. Second, there are several gaps in the record for many of the owners and even if we agreed to provide a day-by-day narrative of these interactions – which, to repeat for the record, is not required by the RCFC – we may not be able to provide the information you request at this point. Third, as noted above, we already committed to supplement our responses after receipt of your documents, which we expect will allow us to fill in most of the "gaps" noted in Exhibit A. Accordingly, we suggest that we defer any discussion about further supplementation until these contingencies have been resolved.[4]

C. Interrogatory 4

Your February 5 letter contends that the plaintiffs "provided no substantive response to this interrogatory." We disagree. As a decision you relied upon, O'Connor v. Boeing North Am., Inc., makes clear,

> the use of interrogatories by a discovering party may be quite limiting since such devices are "designed to identify discreet information or sources of information

---

paged through the universe of plaintiffs' documents in order to produce the documents you have received, both sides have exactly the same familiarity with the plaintiffs' documents. Indeed, one of the reasons that we assembled the database was so that we could have a standardized method of locating documents. That is why we felt it would be helpful to offer that same database to you: to assure that you did in fact have exactly the same access to the plaintiffs' documents that we have.

[4] Your February 5 letter (at 2) also asks about the status of the Glenarden L.P. owner and its properties. Glenarden owns both Glenarden Woods Apartments and Glenreed Apartments. Both projects are the subject of Glenarden L.P.'s complaint in this case. On Exhibit A, we intended to provide information concerning both properties. The references on pages 2 and 6 should have indicated the apartment name/owner as, respectively, "Glenreed/Glenarden L.P." and "Glenarden/Glenarden L.P." We regret the typographic error.

> [and] not to elicit opinions on complex issues where the detailed cross-examination allowed by deposition is imperative."

185 F.R.D. 272, 227 (C.D. Cal. 1999), quoting Independence Tube Corp. v Copperweld Corp., 543 F.Supp. 706, 720 (N.D. Ill. 1982).

With respect to oral communications concerning the history of prepayment, we believe that the nature of oral communications between HUD and the owners is, in fact, better obtained through deposition testimony. The O'Connor court noted that "the depositions of knowledgeable corporate witnesses under Rule 30(b)(6), or the individually noticed deposition of defendants' employees, will ultimately be more productive" than the use of interrogatories. *Id.* Indeed, your letter does not really appear to dispute that position, but asserts that our response does not provide you with "information about who engaged in discussions with HUD about prepayment [which] makes it impossible to notice depositions." February 5 letter at 3. With all respect, that is not what you asked for: Your interrogatory asked for "all communications" between the owners and HUD, not the identity of all persons who communicated with HUD, which your February 5 letter acknowledges is the real subject of this inquiry.

In any event, as noted above (pg. 5), we have agreed to provide you with a list of all the general partners during the relevant time period which will provide the information you need to notice depositions. In light of your clarification of this Interrogatory, we will contact the owners to determine if there were persons other than the owners' general partners who had verbal communications with HUD concerning prepayment, and provided that information to you.

With respect to written communications, we have provided to you all responsive and nonprivileged documents concerning contacts between HUD and the owners. To my knowledge, this is the first time opposing counsel has accused me of producing too many documents, which must be the point of your statements (at 3) that we provided "mass undifferentiated documents" to you and that our production constitutes a "wholesale dumping of documents," a comparison that you apparently intended by quoting O'Connor, 185 F.R.D. 185 at 277.

On the contrary, our production was methodical, comprehensive, and meticulous. As noted above, we deleted thousands of pages of nonresponsive documents, rather than inundate you with paper, and we did not demand, as we could have, that you search our file room for responsive materials. We believe the materials we delivered to you comply with the letter and spirit of our obligations under the RCFC.

Moreover, we have offered to provide a complete database that will allow you to search the materials we did provide as fully as you would like. Even though you have not responded to that request, we have provided the enclosed index to you which will allow you to search our document production on the same basis that we would (except to the extent that we have those materials in our database). The index provides Bates-stamp references to individual documents,

which is a far greater level of detail than is contained in the cover letter that accompanied your recent production, and should be more than sufficient to satisfy RCFC 33(d) and to meet any request contained in your February 5 letter.

D. Interrogatories 5 and 6

These interrogatories requested us to state "the date upon which [the plaintiffs'] contend that HUD reached a final decision regarding the application" of the Prepayment Statutes to their properties. We objected that, despite your contentions that your interrogatories were "carefully crafted," these interrogatories were in fact "vague and ambiguous." We simply could not determine what you meant by "final application." These statutes were complex and involved a number of regulatory matters, and we believe we were correct to point out these ambiguities. For example, as written, the request would seem to ask us when HUD determined that the Preservation Statutes "applied" to the subject properties, which we could construe legitimately as a request to determine, for example, when HUD decided that the Preservation Statute's prepayment prohibitions "applied" to the subject properties. Whatever that term means, it is something different from "the date upon which [the plaintiffs] contend that HUD rendered the "final decision that ripened their as-applied takings claim," which is the clarification offered in your February 5 letter at 3 (emphasis original). The fact that you offered that clarification is more than sufficient to demonstrate that our objection to your interrogatories was well-taken.

With respect to your request that we provide a further response to the restated request contained in your February 5 letter, we believe that our response is adequate for purposes of RCFC 33(d), in light of the index we have provided to you and the database that we have offered. The combination of the documents that we have provided, the responses made to date (including the information contained in Exhibit A) and the attached index is more than sufficient for you to locate information responsive to the newly restated interrogatory. Consideration of any further supplementation is also premature for the same reasons cited in connection with Interrogatories 3 and 4 above. Even in light of the narrower scope of the interrogatory contained in your February 5 letter, which focuses on the date of the final decision that ripened [the plaintiffs'] as-applied takings claim," we will supplement our responses as appropriate when more information becomes available to us, but we are entitled to receive the government's full production before responding to any such request.[5]

E. Interrogatory 7

You contend that we are obliged to provide you with a statement of all of the facts supporting our claims that, as you restate this interrogatory, "applying was under the

[5] For the record, we believe that the passage you quote (February 5 letter at 3) from Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) is not relevant to the discovery issues you raised there, nor does it establish the correct standard for deciding the ripeness issues in this case, which are more fully discussed in Anaheim Gardens v. United States, 444 F.3d1309 (Fed. Cir. 2006) and the cases cited there.

Preservation Statues was [sic] futile." February 5 letter at 4. You threatened to take us to court if we do not provide a more detailed response to this interrogatory. In addition to those grounds stated in our original objection to this interrogatory, we believe the arguments and threats that you make in your February 5 letter are mistaken.

First, like all of our interrogatory responses, our response to this interrogatory is subject to the provisions of RCFC 33(d). As we noted in our General Objection No. 4, we object to this interrogatory because it "seeks documents or information within Defendant's knowledge and possession or to which Defendant has equal access." Interrogatory Responses at 2. We have provided the same documents to you that we would use to answer this question, and enclose herewith the index that will allow you to locate project-specific documents, as you requested. We believe that satisfies our obligation under RCFC 33(d). Under that rule, we are not required to assemble an exhaustive narrative of the prepayment experience of each plaintiff, nor are we required to draft the equivalent of our Proposed Findings of Uncontroverted Facts under RCFC 56(h)(1) in response to this interrogatory. This is especially true where, as here, much of the information you request is already in your hands. As the Federal Circuit has explained, in such cases, for the government "[t]o use discovery as an alternative to its own preparation of a defense or to harass comes close to governmental abuse of the judicial process." Hendler v. United States, 952 F.2d 1364, 1380 (Fed. Cir. 1991). We do not believe that a court would require us to go further than RCFC 33(d) requires, especially where the government possess much of the information needed to respond to this interrogatory.

Moreover, this interrogatory is a contention interrogatory, and the courts recognize that such interrogatories are premature at the initial phases of discovery. This point is clearly made in a case you relied upon in the February 5 letter, Capacchione, 182 F.R.D. at 489, which explained that "[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted – ***typically, at the end of the discovery period.*** Emphasis added. This is precisely the situation we face here: In fact, these interrogatories were dated July 11, 2006 – before the Court even entered its July 12, 2006 order officially acknowledging the remand of these cases. Moreover, many of the relevant documents are in the government's possession, the government has not fully responded to the plaintiffs' discovery requests, and the government has not decided whether it will agree to the proposed exchange of databases.

Under these circumstances, it is clearly premature to request the plaintiffs to produce at this point a narrative of "all facts" that support their claims that "applying to prepay pursuant to the Preservation Statutes was futile." Thus, we believe our response was complete for purposes of RCFC 33(d), especially in light of our enclosed index, the database exchange we have proposed, and the present early stage of discovery. Nevertheless, we are prepared to discuss with you further supplementation of this interrogatory, as well as your response to the cognate

interrogatory we have proposed, at the conclusion of the discovery period, consistent with the suggestion in Capacchione.

II. Plaintiffs' Admissions

You apparently object to our some of our admission responses – although you do not name them specifically, I believe you are referring to our response to Requests for Admissions Nos. 1 and 3 – because you believe that some of our responses are inconsistent with our responses to certain unidentified interrogatories you propounded elsewhere. In support of that objection, you include preliminary comments that "[t]he Preservation Statutes establish an administrative process for obtaining permission to prepay" and that under those statutes, "the owner's submission of a plan of action to prepay is an essential step in this process." February 5 letter at 4. Needless to say, we do not necessarily agree with those preliminary comments; accordingly, we are not required to answer your requests for admissions as though we accepted this previously unstated predicate. We believe that we fairly interpreted your requests and answered them to the best of our information.

Moreover, with respect to the alleged inconsistency between our responses to those unidentified interrogatories and our responses to Requests for Admissions Nos. 1 and 3, the Requests for Admission did not cross-reference any of your interrogatories, and therefore we were required to provide stand-alone responses to the Requests for Admissions. To the extent your interrogatories sought different information than your requests for admissions, it is entirely likely that they will elicit different answers. Again, we believe that we construed your requests for admissions fairly and answered them accurately. To the extent you believe that there is any inconsistency between our interrogatory and admission responses, you may wish to propound more specific requests for admissions, rather than to ask us to revise the responses we have already made.

**III. Plaintiffs' Production of Documents.**

I believe that the requests contained in this portion of your February 5 letter have been answered above (*see* pp. 2 - 4). As noted, the index you requested is enclosed.

**Conclusion**

As noted, I believe that our responses to your discovery requests are complete and sufficient in light of the requirements of RCFC. We have agreed to provide some additional information to you and will provide such responses to you at a mutually agreeable date. If, however, this additional information and the responses contained in this letter do not fully extinguish your questions, I would like to meet with you to discuss any remaining issues. Obviously, to the extent that you insist on further responses from us, we would expect similar responses from the government – again, our obligations here are reciprocal. I believe that we will

be able to eventually resolve your questions in a way that both parties will find sufficient and manageable. Please call me with your responses and any questions you may have. I look forward to hearing from you soon.

Very truly yours,

Harry J. Kelly

cc: Alycia A. Ziarno, Esq.