**EXHIBIT 1**

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **ALGONQUIN HEIGHTS, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | No. 97-582C<br>Judge Robert H. Hodges, Jr. |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

Harry J. Kelly
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Counsel for the Plaintiffs

Dated: March 23, 2007

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................................ ii

APPENDIX CONTENTS LIST ...................................................................................iii

FACTUAL AND PROCEDURAL BACKGROUND................................................................. 1

ARGUMENT ........................................................................................................ 4

I Contrary to the Motion's Contentions, the Plaintiffs Have Provided Substantial Discovery To the Government. .......................................................................................... 4

II The Plaintiffs Have Met Their Obligations To Respond to Interrogatory Nos. 5 and 6. .... 5

A. The Plaintiffs Provided Good Faith Responses to These Inartful Interrogatories. ........ 5

B. Having Acknowledged The Defects In Its Original Interrogatories, The Government Should Be Required To Submit New Interrogatories. .................................................. 7

III It Is Premature To Ask the Plaintiffs To Respond to Interrogatory 7. ............................... 8

A. Plaintiffs' Objections to This Interrogatory Were Well-Founded. ............................... 8

B. The Abrupt Filing Of the Motion Preempted The Plaintiffs From Presenting A Reasonable Solution Here. .......................................................................... 11

CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

Capacchhione v. Charlotte Mecklenburg Schools, 182 F.R.D. 486 (W.D. N.C. 1998)....................10

Hendler v. United States, 952 F.2d 1364 (Fed. Cir. 1991)....................9

Independence Tube Corp. v. Copperweld Corp., 543 F. Supp. 706 (N.D. Ill. 1982)..........9

Kendrick v. Sullivan, 125 F.R.D. 1 (D.D.C. 1989)....................8, 10

O'Connor v. Boeing North Am, Inc., 185 F.R.D. 272 (C.D. Cal. 1999)....................9

Palazzolo v. Rhode Island, 533 U.S. 606 (2001)....................7

## COURT RULES

RCFC 33(c)....................9

# APPENDIX CONTENTS LIST


| | |
|---|---|
| Exhibit A | January 26, 2007 Letter to Harry Kelly from David Harrington |
| Exhibit B | Plaintiffs' Responses To Defendant's First Set Of Interrogatories |
| Exhibit C | February 5, 2007 Letter to Harry Kelly from David Harrington |
| Exhibit D | February 14, 2007 Letter to David Harrington from Harry Kelly |
| Exhibit E | February 22, 2007 Letter to Harry Kelly from David Harrington |
| Exhibit F | December 6, 2006 E-mail Message to David Harrington from Harry Kelly |
| Exhibit G | January 12, 2006 Letter to David Harrington from Harry Kelly |

**EXHIBIT 1**

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **ALGONQUIN HEIGHTS, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | No. 97-582C<br>Judge Robert H. Hodges, Jr. |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

The Plaintiffs oppose the Motion To Compel Answers To Interrogatories (the "Motion") recently filed by the Government and ask the Court to deny the Motion in its entirety. Contrary to the impression that the Motion attempts to create, the Plaintiffs have fully satisfied their discovery obligations, providing written responses to the Government's interrogatories and requests for admissions, as well as more than 90,000 pages of documents pursuant to the Government's requests and a lengthy index to those documents. The most serious flaw with the Motion, however, is that the Plaintiffs have already offered what the Motion now seeks – supplemental responses – when discovery is more complete. The Court should deny the Motion, therefore, and allow the Plaintiffs to supplement their present responses, as the Plaintiffs previously committed to do, when discovery in this case is more complete.

**FACTUAL AND PROCEDURAL BACKGROUND**

The procedural history presented in the Motion is incomplete and inaccurate. The following constitutes a summary of the most pertinent factual and procedural background for the pending dispute:

First, as both parties have recognized, discovery in this case poses a number of challenges due to the dozens of plaintiffs involved, the many locations across the country where documents and witnesses are located, and the multiple filing and retrieval systems used by the parties in this case. In fact, in documenting its request for a second extension of its deadline to respond to the Plaintiffs' discovery requests, the Government's counsel accurately stated the discovery difficulties both sides have experienced:

> As you [are] aware, your discovery requests require compiling documents and obtaining information from various . . . offices. Much of the information is years old, has been archived, and is not readily available. Further, many . . . employees who worked on the plaintiffs' projects have retired or are no longer [available].

Letter to Harry Kelly from David Harrington dated January 26, 2007 (the "January 26 Letter") at 1 (Exh. A). The present dispute emerges from this context.

In recognition of these difficulties, both sides cooperated to resolve discovery issues and to provide sufficient time to respond to each others requests. For example, in response to its document production requests issued in July 2006 , the Government agreed to a "rolling" production, whereby the Plaintiffs made their initial production 45 days after the Government served its requests. Plaintiffs made additional productions as documents were received from the Plaintiffs' files through December 2006.[1] Similarly, after the Plaintiffs served their discovery requests in October 2007, the Government received two extensions of its discovery deadline, which is now set for April 9, 2007. *See* January 26 Letter at 1. The parties also agreed to ask the

---

1 The discovery chronology offered by the Government is misleading. The Motion states that "[u]pon remand, the Court established a five-month period for discovery on ripeness issues" pursuant to the Court's August 14, 2006 Order (the "Discovery Order") and "the United State promptly served written discovery seeking" (Motion at 3). This suggests that the Government served the interrogatories "promptly" ***after*** the Court entered the Discovery Order. In fact, the Government's interrogatories were dated July 11, 2006 and served on July 12, 2006 – the same day as the Court entered the July 12 Order and more than a month ***before*** the Discovery Order was entered.

Court to extend the discovery schedule to May 31, 2007, in light of the extent and complexity of discovery, and have tentatively agreed to request a further extension if later needed. *Id*.

Several weeks after the Plaintiffs served their written discovery responses on January 12, 2007, however, the Government sent a letter to Plaintiffs' counsel, raising questions about the Plaintiffs' Responses To Defendant's First Set Of Interrogatories (the "Responses") (Exh. B). Letter to Harry Kelly from David Harrington dated February 5, 2007 (the "February 5 Letter") (Exh. C). In a letter to the Government's counsel, Plaintiffs' counsel disputed those issues but also proposed a variety of solutions. Letter to David Harrington from Harry Kelly dated February 14, 2007 (the "February 14 Letter") (Exh. D). Following a conversation between counsel, virtually all of these disputes were harmoniously resolved, as documented in a letter to Harry Kelly from David Harrington dated February 22, 2007 at 1-2 ("February 22 Letter") (Exh. E).

The Government's account of the discussion that preceded the present dispute fails to provide a complete picture of those discussions. For example, the parties agreed that, after the Government had completed its document production, the Plaintiffs would update their responses to Interrogatories 2 and 3 to include additional documents and transactions that could not be located in the Plaintiffs' own files.[2] *See* February 22 Letter at 2. This reasonable compromise was based on the fact that the Plaintiffs' records were in some cases incomplete and that additional documents from the Government's own records would be needed to present a full answer to the Government's questions. *See* Responses at 5, 6.

---

2 This responsive information was contained in Exhibit A to the Plaintiffs' Responses to the Defendant's First Set of Interrogatories (the "Responses"). Exhibit A is a chart that sets forth in a few pages a comprehensive history of the Plaintiff's prepayment processing experiences under ELIHPA and LIHPRHA. Exhibit A makes it possible to chart the prepayment experience of each property and to rapidly compare that experience to the experience of other properties.

The only matters that were not resolved in these discussions concerned the Plaintiffs' responses to Interrogatories 5, 6 and 7, which are the subject of the pending Motion. Contrary to the Government's contentions (Motion at 5, 8), the Plaintiffs did respond to these interrogatories as best as possible and offered reasonable proposals to resolve the Government's concerns. The Government rebuffed these offers, however, choosing instead to preemptively file the Motion. As explained below, the Motion should not be granted because fundamental and well-founded objections to the three interrogatories remain. The Plaintiffs have offered principled suggestions below, designed to both protect the interests of the Plaintiffs and assure that the Government receives the information it needs.

## ARGUMENT

### I Contrary to the Motion's Contentions, the Plaintiffs Have Provided Substantial Discovery To the Government.

Repeatedly, the Motion makes statements suggesting that the Plaintiffs have been noncooperative, or have outright refused to provide information sought by the Government's discovery requests. *See* Motion at 5, 8. Nothing could be further from the truth. In fact, the Plaintiffs provided the Government with more than 90,000 pages of documents pursuant to its document requests. Moreover, as early as December 6, 2006, they also offered to provide their electronic database to the Government to allow it to more efficiently search records. Email message to David Harrington from Harry Kelly dated December 6, 2006 at ¶ 3 ("December 6 Message") (Exh. F). Indeed, even while it complained that the Plaintiffs had failed to provide an index to its document production, the Government ignored that offer for more than two months before finally refusing the Plaintiffs' proposal in February 2007. *Compare* December 6 Message at ¶ 3 *to* February 22 Letter at 1. Moreover, because the Plaintiffs acknowledged that gaps in their records meant that some of their answers necessarily were incomplete, the Plaintiffs

promised when they served their original Responses that they would supplement their Responses from materials provided through the Government's document production. *See* Responses at 5, 6 and Letter to David Harrington from Harry Kelly dated January 12, 2007 at 1-2 ("January 12 Letter") (Exh. G). The Government later acceded to that proposal concerning Interrogatories 2 and 3. *See* February 22 Letter at 2.

Remarkably, when the Plaintiffs offered to provide similar supplements for Interrogatories 5, 6, and 7 during the pre-Motion negotiations – that is, to provide more detailed responses to these interrogatories when more facts were available to the Plaintiffs – the Government rebuffed the Plaintiffs' offer. Given that the Government accepted the Plaintiffs offer to update Exhibit A after the Government completes its document production, it is hard to see what more the Government hopes to accomplish through the Motion, or why it seeks to compel something the Plaintiffs have already agreed to do.

## II The Plaintiffs Have Met Their Obligations To Respond to Interrogatory Nos. 5 and 6.

### A. The Plaintiffs Provided Good Faith Responses to These Inartful Interrogatories.

Although the Government contends its interrogatories were "carefully crafted" (February 5 Letter at 1), Interrogatories 5 and 6 were, in fact, unanswerable as originally propounded. For example, as first propounded, Interrogatory 5 asked the Plaintiffs to supply "all facts" about unspecified events:

> For each Subject Property, state the date upon which you contend that HUD reached a final decision regarding the application of ELIHPA to the Subject Property and state all facts upon which you base your contention.

Government Interrogatory No. 5.[3] As the Plaintiffs' Responses explained (at 5, 6), this interrogatory cannot be answered as originally propounded because it inquires about HUD's "final decision regarding the application of ELIHPA," an expression that is so vague as to be meaningless. The interrogatory defines neither the term "final decision," nor does it explain which specific "application of ELIHPA," among the many possible actions HUD could take under the Preservation Statutes, it intended to refer.[4] Similarly, it does not ask for information about specific facts, such as "when did HUD act upon a request to prepay" or "when did HUD determine a property was eligible or ineligible to prepay its mortgage pursuant to ELIHPA." Thus, contrary to the Government's contentions, Interrogatories 5 and 6 were not "carefully crafted" (February 5 Letter at 1) but were so ambiguous as to allow multiple possible interpretations.

Indeed, in its attempt to portray the Plaintiffs as dilatory and nonresponsive, the Government quotes snippets (Motion at 5) from their responses to Interrogatories 5 and 6, but misleadingly omits the full text of those responses. That text demonstrates that the Government's contention that the Plaintiffs refused to respond to these interrogatories is baseless:

> To the extent Plaintiffs possess information about the date of final approval of the plans of action for the subject properties, that information in included in the charts attached as Exhibit A. Additionally, this information is information that should reside in the Government's possession. According, to the extent that information is provided to Plaintiffs in the Government's document production, Plaintiffs will supplement the response to this interrogatory.

---

3 The text of Interrogatory No. 6 is substantially identical to the text of Interrogatory No. 5, but asks about HUD's decision-making concerning LIHPRHA.

4 Thus, the Plaintiffs pointed out that "[t]here were multiple points of decision in the course of the [ELIHPA] process and because of modifications, and supplements made throughout the process by both the Plaintiffs and the Government, [the Plaintiffs could not] respond as to what the "final decision" date was in the process." Responses at 5, 6.

Responses at 5, 6. Exhibit A, in turn, includes tabs labeled "Date of Approval or Rejection of Plan of Action" and "Date on Which Funding Was Provided", which reflected the Plaintiffs best guess that the phrase "final decision on the application of [the Preservation Statutes] to the Subject Properties" sought the date on which HUD took final agency action. Responses, Exhibit A. Thus, despite the patent defects in these interrogatories, the Plaintiffs made a full and good faith attempt to interpret these ambiguous questions in order to supply information that the Plaintiffs thought the Government meant to ask for – the date for the final agency action on the Plaintiffs' applications filed under the Preservation Statute. Given the imprecise nature of these interrogatories, the Government cannot ask for more.

### B. Having Acknowledged The Defects In Its Original Interrogatories, The Government Should Be Required To Submit New Interrogatories.

Apparently the Government agreed that Interrogatories 5 and 6 were defective, because in its February 5 Letter, the Government essentially propounded an entirely new interrogatory. After citing a snippet of text from Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001), the Government said it had originally meant to ask the Plaintiffs to identify the date upon which they contend that HUD rendered the 'final decision' that ripened their as-applied taking claim." February 5 Letter at 3 (emphasis original). Whatever the Government originally sought in posing the original interrogatories, its restated question posed in the February 5 Letter is an entirely new interrogatory. Nevertheless, contrary to the Government's contentions (Motion at 5, 8), the Plaintiffs did not refuse to respond to this newly restated interrogatory, but offered to provide a supplemental answer when the Government's document production was complete. February 14 Letter at 9. Surprisingly, although this was essentially the same proposal the Government accepted with respect to Interrogatories 2 and 3 (*see* pp. 4-5, above), it rebuffed that offer and chose instead to file the Motion. February 22 Letter at 3-4.

Certainly, at this point, there is no basis to grant the Motion with respect to Interrogatories 5 and 6, which the February 5 Letter essentially withdrew. Under these circumstances, the Motion is pointless and proposes the wrong answer to the wrong question. If the Government has decided it wants to seek different information from what it originally requested, it should simply draft new interrogatories and serve them upon the Plaintiffs, pursuant to RCFC 33. The Court should not permit the Government to use the Motion to retroactively fix the fatal defects in these interrogatories.

## III It Is Premature To Ask the Plaintiffs To Respond to Interrogatory 7.

### A. Plaintiffs' Objections to This Interrogatory Were Well-Founded.

Many of the same objections raised to Interrogatories 5 and 6 apply to Interrogatory 7 as well. As originally propounded, Interrogatory 7 asked:

> For each Subject Property, if you contend that applying to prepay pursuant to the Preservation Statutes was futile, state all facts upon which you base your contention.

In the February 5 Letter, the Government was obliged to restate this interrogatory also, explaining that it asked the Plaintiffs to "state all facts upon which you base any claim that applying to prepay was under the Preservation Statutes was [sic] futile." February 5 Letter at 4 (emphasis original). However stated, the interrogatory undoubtedly asks for legal conclusions and opinions that go to the ultimate issue at this point in the case – futility. Plaintiffs objections were well-founded because "[d]iscovery as to legal arguments is impermissible." Kendrick v. Sullivan, 125 F.R.D. 1, 4 (D.D.C. 1989).

Moreover, interrogatories are a particularly inappropriate approach to exploring the detailed bases for the Plaintiffs' contentions concerning futility, especially where document

discovery is incomplete and the Government appears poised to embark on a calendar of depositions:

> The use of interrogatories by a discovering party may be quite limiting since such devices are "designed to identify discreet information or sources of information [and] not to elicit opinions on complex issues where the detailed cross examination allowed by deposition is imperative."

O'Connor v. Boeing North Am, Inc., 185 F.R.D. 272, 227 (C.D. Cal. 1999), ***quoting*** Independence Tube Corp. v. Copperweld Corp., 543 F.Supp. 706, 720 (N.D. Ill. 1982). Interrogatory 7 does not seek "discreet information," but rather asks the Plaintiffs to supply "all facts" that support their contentions on futility. Essentially, Interrogatory 7 asks the Plaintiffs to prepare the fact section of the Government's summary judgment brief. As the Federal Circuit has explained, for the government "[t]o use discovery as an alternative to its own preparation of a defense or to harass comes close to governmental abuse of the judicial process." Hendler v. United States, 952 F.2d 1364, 1380 (Fed. Cir. 1991). Where, as here, the Government has made plain its intent to depose possibly dozens of individual owners, using an interrogatory to "elicit opinions on complex issues" becomes at best superfluous.

Most important, asking the Plaintiffs to present "all facts" concerning their futility contentions is at least as premature as asking them to present "all facts" supporting their ripeness contentions in Interrogatories 5 and 6. According to RCFC 33(c), the Court may order that a contention interrogatory "need not be answered until after designated discovery has been completed or until a pretrial conference or other later time." Thus, the court in Capacchhione v. Charlotte Mecklenburg Schools – a case cited by the Government in its February 5 Letter (at 3) – explained the problem with seeking to compel responses to contention interrogatory at an early point in discovery:

> Due to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted – ***typically, at the end of the discovery period.***

182 F.R.D. 486, 490 (W.D. N.C. 1998) (emphasis added). As the court in Kendrick, explained, this rule

> further recognizes that the propriety of a "contention interrogatory" may depend upon the point in the proceedings at which it is served. If premature, i.e., ***if served before prior discovery has established a reasonable factual predicate***, such interrogatories may do more harm than good.

125 F.R.D. at 2 (emphasis added). Certainly, it cannot be contended that there has been "substantial discovery" by the Plaintiffs in this matter – the Government admits it has not even completed its document production, which may be finished later in April 2007 at the earliest. January 26 Letter at 1. The need to complete the Government's production in this case is manifest: the Government's records should contain a vast number of submissions, data compilations, and correspondence that would go directly to the question of futility. For example, internal HUD correspondence, to which the Plaintiffs had no previous access, may shed light on HUD's views about the ability of owners of assisted housing – in general cases or with respect to the Plaintiffs specifically – to prepay their mortgages. It simply makes no sense to ask them to prove "all facts" supporting their case until the record is complete.

Indeed, it is important to bear in mind that it is the Government, not the Plaintiffs, that created the prepayment problem here – it drafted the laws, implemented the regulations, and established the process which determined whether or not owners could prepay. If the Government truly wants the Plaintiffs to present "all facts" that support their contentions that it was futile to attempt to prepay their mortgages, the Plaintiffs should at least have the opportunity to review the full documentary record – including the record of HUD's processing of the documents they filed. To seek to compel the Plaintiffs to make binding admissions concerning

"all facts" that support their futility claims when the Government has not even finished producing the documents that the Government knows the Plaintiffs need to state those facts is utterly premature, if not actually abusive.[5]

**B. The Abrupt Filing Of the Motion Preempted The Plaintiffs From Presenting A Reasonable Solution Here.**

Contrary to the Motion's contention (at 5, 8), the Plaintiffs did not refuse to make a response to this Interrogatory but stated they would do so at the close of discovery, when, pursuant to the guidance of Capacchione and Kendrick, "all facts" relevant to their futility contentions had been adduced. February 14 Letter at 11. In his conversation with the Government counsel that preceded the filing of this Motion, Plaintiffs' counsel sought to explore other alternatives that would satisfy the Government's legitimate needs without requiring the Plaintiffs to respond on the basis of an incomplete factual record. The Government's counsel refused to accept anything less than an immediate response to this Interrogatory upon the Government's own terms (February 22 Letter at 3), however, and several days later filed this Motion.

At the time the Motion was filed, Plaintiffs' counsel was drafting a letter to the Government proposing an interim solution to provide concrete information to the Government without prejudicing the Plaintiffs. Specifically, Plaintiffs were going to offer to provide a written statement for each Plaintiff stating the reasons why, at the time they filed the original complaint here, they felt it was futile for them to attempt to prepay, to be supplemented with a complete statement of "all facts" that support their futility contentions at the close of discovery. While the Plaintiffs cannot fairly be requested to state "all facts" that support their futility contentions

5 Of course, to fully present "all facts," deposition testimony and possibly expert reports may be necessary. To the extent that they make any factual response to the subject interrogatories, Plaintiffs reserve the right to supplement such response with additional facts adduced in the course of later discovery.

before there has been "substantial discovery," the Plaintiffs are more than able to state now the reasons why they believed they could not prepay pursuant to the Preservation Statutes. By obtaining a detailed statement with respect to each owner's reasons why it was futile to seek to prepay, the Government would be fully briefed on each Plaintiffs' position for purposes of preparing for depositions.

Although the preemptive filing of the Motion made further negotiations moot, the interim solution conceived by the Plaintiffs offers a workable alternative that protects the Plaintiffs' interests and provides the Government with the information it reasonably requires. In fact, the Government has noticed no depositions yet, and has acknowledged the parties' agreement that they "will consider submitting a joint request to modify the current schedule if additional time for discovery proves necessary." January 26 Letter at 1. Thus, aside from its own pique, the Government has demonstrated no discernable prejudice that it has suffered, nor any reason why the Plaintiffs should be compelled to immediately produce responses that the Government knows will be incomplete. Rather than compel further responses to Interrogatory 7, the Court should adopt the Plaintiffs interim solution as an effective alternative that is both expedient and fair to both sides.

## CONCLUSION

The Motion (at 5) is correct about one thing: the Plaintiffs will make a particularized showing that their claims are ripe and that it was futile to seek HUD approval to prepay their mortgages. In making that promise, however, they did not waive their right to seek the discovery from the Government they need to make that very showing. As the Government itself has acknowledged, discovery in this case involves "information [that] is years old, has been archived, and is not readily available." January 26 Letter at 1. The constraints that apply to the

Government's document production also apply to the Plaintiffs' ability to respond to the Government's interrogatories. Given these constraints, the Motion should be denied and instead, the Court should adopt the reasonable steps proposed herein by the Plaintiffs.

Dated: March 23, 2007

Respectfully submitted,

/s/ Harry J. Kelly

Harry J. Kelly
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Counsel for the Plaintiffs

CERTIFICATE OF F ILING

I hereby certify that on the 23rd day of March, 2007, a copy of the foregoing Opposition to Defendant's Motion To Compel Answers To Interrogatories was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Additionally, a copy of this filing has been transmitted by facsimile to the Government's counsel, David Harrington, Esq.

/s/ Harry J. Kelly