NIXON PEABODY LLP
ATTORNEYS AT LAW

Suite 900
401 9th Street, N.W.
Washington, D.C. 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8712
E-Mail: hkelly@nixonpeabody.com

June 22, 2007

**VIA ELECTRONIC MAIL/U.S. MAIL**

David Harrington, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW
Room 12136
Washington, DC 20530

**Re: Anaheim Gardens/Algonquin Heights Litigation**
**--Status of Takings Claim Concerning Administrative Delay**

Dear David:

During our telephone conversation earlier this week when we discussed the schedule for depositions in these cases, you indicated that the length of the depositions could be significantly shortened if the Plaintiffs confirmed that they are no longer asserting claims that delays in HUD processing of plans of actions under ELIHPA and/or LIHPRHA constituted a compensable taking. In the letter you sent me yesterday, you stated the question in somewhat more detail:

> [Your understanding] based upon the complaints, the plaintiffs' representations to the Court, and prior rulings by the Court, is that the plaintiffs no longer contend that Government administrative delay affected a taking. The plaintiffs' regulatory taking claims are based upon the effect of the Preservation Statutes as applied to their respective low-income housing projects.

Letter to Harry J. Kelly from David A. Harrington dated June 21, 2007 at 2. It is my understanding that the focus of your concern is the status of the Plaintiffs' original claims concerning whether processing delays in the administration of the programs developed through ELIHPA and LIHPRHA (the "Preservation Statutes") constituted a separate taking, and that, by including the second sentence in the quote above, you are seeking to provide context and contrast, rather than to obtain a specific statement concerning the actual nature of the Plaintiffs'

remaining claims, which would be the proper subject of written discovery requests. In any event, the status of the administrative delay claim was the specific subject we discussed on Wednesday and to which I promised a response, and this response is limited to that topic.

**1. Anaheim Gardens.** In the original Anaheim Gardens complaint, the Plaintiffs asserted a number of claims relating to the failure of the government to promptly pay compensation that they claimed was owed to them pursuant to the Preservation Statutes. Specifically, Count IV asserted that HUD's administrative delays in processing applications filed under the Preservation Statutes themselves constituted a taking. *Id.* at 39. There was a separate count for taking arising from the prepayment prohibitions contained in the Preservation Statutes (Count III) in that original complaint. Strictly speaking, only Count IV constituted a claim for a taking resulting from HUD's delays in administering the Preservation Statutes programs.

On March 27, 1995, the Court issued an order dismissing several of the counts of the Plaintiffs' original complaint. Anaheim Gardens v. United States, 33 Fed. Cl. 24 (1995) (the "March Order"). Without extensively recapitulating the analysis of the March Order, it essentially concluded that the Plaintiffs' administrative takings claim asserted in Count IV – referred to in the March Opinion as their "temporary taking" claim – was dismissed along with several of the Plaintiffs' other claims. 33 Fed. Cl. at 31 – 41. The Court preserved the regulatory taking claim in Count III. *Id.* at 41. Pursuant to a subsequent motion filed by the Plaintiffs, the Court permitted them to add a new count for breach of contract. 33 Fed. Cl. 773 (1995). On August 27, 1997, the Plaintiffs filed a motion seeking leave to file their Fourth Amended Complaint, pursuant to which Counts IV and several other counts were deleted, and asserting their regulatory taking claim (Count III) and breach of contract claim (Count V). The Court granted that motion on September 16, 1997.

As a result of the March Order, dismissing the administrative delay takings claim and the subsequent amendments to their complaint, the Anaheim Gardens Plaintiffs are no longer asserting the claim, referred to as the administrative takings claim or temporary takings claim, contained in their original Count IV, that the failure to promptly process the Plaintiffs' applications constituted a taking. This is consistent with the statements contained in the Plaintiffs' Answer to Petition For Panel Rehearing, filed June 1, 2006 (the "Answer"), in which the Plaintiffs explained that while their complaints continued to discuss examples of administrative delay "to explain the full nature of the taking that ensued from the Preservation Statutes," they "are no longer asserting separate claims arising from those delays." Answer at 2.

**2. Algonquin Heights.** Although the original Algonquin Heights complaint, filed in August 1997, contained, among other things, counts for a regulatory taking (Count I) and for breach of contract (Counts II and III), it did not include a count for the "administrative takings" or "temporary takings" that was found in Count IV of the original Anaheim Gardens complaint. Consequently, the Algonquin Heights plaintiffs have not asserted, and are not now asserting, a takings claim with respect to administrative delay. Again, the Answer filed last year stated that "the Algonquin Appellants never made a separate claim that they suffered a taking as a result of HUD's administrative delay." Answer at 8.

I believe that this letter responds to the questions you raised during our conference call on Wednesday. Please call me if you have any questions.

Very truly yours,

Harry J. Kelly

cc: Alycia A. Ziarno, Esq.