# EXHIBIT F

NIXON PEABODY LLP
ATTORNEYS AT LAW

Suite 900
401 9th Street, N.W.
Washington, D.C. 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8712
E-Mail: hkelly@nixonpeabody.com

June 21, 2007

**VIA ELECTRONIC MAIL/U.S. MAIL**

David Harrington, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW
Room 12136
Washington, DC 20530

**Re: Anaheim Gardens/Algonquin Heights Litigation**
**--Discovery Matters**

Dear David:

I am responding to the letter you sent me today, after our first phone call, and to the second telephone conversation we had a short while ago. While I do not like to exchange in extensive exchanges of letters between counsel, I feel compelled to keep the record straight.

First, the tone of your letter suggests that the Government is magnanimously agreeing to modify its deposition schedule to accommodate the Plaintiffs. That is not the case. For the record, in our Joint Motion filed on May 4, 2007, we stated that "the parties expect to complete document production and written discovery ***by the end of June 2007, and anticipate taking depositions in the weeks thereafter***." Joint Motion at 2 (emphasis added). Notwithstanding that representation to the Court, you told me earlier this month that you wanted to start depositions on June 18 – two weeks earlier than we had agreed. Consistent with the statement we made to the Court, I would have been justified in insisting that depositions not begin in this case until July 1. Nevertheless – as an accommodation to you and the Government – we agreed to begin depositions during the week of June 25.

Moreover, our objections to your plans for next week arose because you never attempted to consult with us concerning who would be deposed. Indeed, rather than call me to discuss a reasonable schedule for these depositions, you unilaterally served five deposition notices on June

15, 2007 for depositions beginning on June 25, 2007 While you may want to take more than 50 depositions this summer, you do not have a right to depose whomever you want, wherever you want, and whenever you want. It is not a question of "accommodating" the plaintiffs – it is a matter of developing a realistic schedule that meets the needs of the Government and the individual Plaintiffs mutually. Unilaterally serving deposition notices without any attempt to coordinate is preemptive and frankly discourteous. Your letter states that scheduling depositions will require my "cooperation and diligence." It will require exactly the same from you.

As a more productive alternative, you, Ms. Ziarno and I had an extensive discussion yesterday in which we attempted to work out a reasonable deposition schedule between now and the end of August. As was appropriate, both sides disclosed their prior commitments and conflicts and discussed how to accommodate their mutual needs. For example, you told us that you need to schedule depositions in Washington, D.C. during the last two weeks of July, because of your bid protest on-call status. Additionally, in connection with next week's depositions, you stated in our first conversation today that you insisted on proceeding with the Dolly Ann and Emory Grove deposition, rather than the Indian Head and Glenview Gardens depositions – both of which you had originally scheduled for next week – because one of the HUD counsel is now unavailable. Likewise, we pointed out that the deposition schedule must provide us adequate time to prepare our witnesses, and that it was burdensome to schedule week-long deposition blocks for deponents whose business responsibilities require them to spend at least part of the week in the office. Again, these are the sorts of accommodation that both sides will have to make to complete depositions this summer. (Your threat today to return to the practice of serving unilateral deposition notices is extremely ill-considered; as you suggested, if you do so, we may have to move to quash them and we both know that the Court will direct us to come up with a workable schedule. This is exactly what we attempted to do yesterday and should continue to do.)

We have prepared an alternative schedule that we believe meets your scheduling and evidentiary needs while accommodating the reasonable needs of counsel and the deponents, including the need to prepare the deponents for their depositions. I am attempting to reach the plaintiffs to confirm dates with them and should be able to send our proposal to you tomorrow. (Please be advised that Mr. Hsi is traveling outside the country until July 4. Although I will try to reach him while he travels, I cannot commit to confirming his availability until he returns.) Also, as I mentioned in our conversation yesterday, your deposition demands completely fill the calendar between now and the end of discovery, leaving no room for us to conduct depositions. Although our deposition requirements likely will be less extensive than the Government's, we will need to find time in the schedule to meet our legitimate discovery needs.

Your letter also discussed your request that we provide you with a written statement concerning whether "the Government administrative delay effected a taking." While I said I would respond in writing, I also said that I needed to consult Mr. Levy, who is primary counsel for several of the Plaintiffs, and who is on vacation until next week. I appreciate your need for a prompt response but you cannot expect an instantaneous one. I will send you a letter tomorrow, but it necessarily will be contingent until I can reach Mr. Levy.

Your second call today discussed two issues. First, you were upset that we did not hand-deliver our discovery responses yesterday. As I explained during our telephone conversation yesterday, several of the plaintiffs had not returned their signature pages. Several of these arrived after our telephone conversation yesterday, and the last did not arrive until almost 5 p.m. From past experience, I know that it is impossible to complete a hand-delivery after 5 p.m. to your office, and so I used the most expedient alternative – I sent them by Federal Express. Although I perhaps should have called you, I had apprised you of the problem with the signature pages during our call earlier yesterday. If the delivery of the documents was as urgent as you claimed this afternoon, I would have expected that you would have mentioned them in our first conversation today. It is your office that shuts down for delivery at 5 p.m. and we should not be blamed for attempting to accommodate that peculiarity as best we can.

You also objected today that we did not respond with respect to the Carriage House and Cambridge Square plaintiffs in this most recent discovery response. In May, we discussed the fact that document production for those plaintiffs would be delayed. Indeed, my May 23, 2007 letter expressly said that both sides reserved the right to supplement their responses concerning those plaintiffs after receipt of the other side's documents. Manifestly, we were well within our rights not to respond concerning these properties until after we received and reviewed these documents. As I said today, we received four boxes of documents from you just last Friday, June 15, dealing with these properties. Friday afternoon, after receiving those documents, I sent an email to you with this statement:

> My thanks for the Carriage House/Cambridge Square/Glendale Court documents that we received today. We appreciate the documents. As we discussed previously, ***we will need to review and digest them before we can provide responses to your discovery requests for these properties.*** Pursuant to Para. 1(e) of my May 22 letter to you, we will supplement our responses after June 15 with respect to these properties (we did not discuss the possibility of receiving additional documents in the Glendale matter, but I am sure you will agree that the same rule should apply).

Email from Harry Kelly to David Harrington (6/15/07) (emphasis added). I regret that you were angry or disappointed by our responses, but I do not know how I could have been clearer – your documents arrived just days before our responses were due and, pursuant to my May 23 letter, I said we would respond after we reviewed and digested them. Your statement today that these documents do not relate to and are not needed for us to respond to your discovery requests is nonsensical. I do not know what your documents contain – as I said, they are being processed by our imaging company and will not be back even in raw form for several days, after which we will have to tag them. Given the fact that you have now delivered seven or eight boxes of documents related to the Cambridge Square and Carriage House plaintiffs, you simply cannot demand that we respond to your interrogatories and admission requests without a fair chance to see what your documents contain. We will make a decision about whether these documents

contain information that is relevant and respond accordingly. If you were in our position, you would do the same.

Both of us have experienced problems producing documents in this case. On at least one occasion, the Government produced multiple boxes of documents long after the deadline. I did not protest, both because I am aware of the burden we both face in attempting to locate responsive materials and because it is better to receive the documents than complain about the delay. Again, we have generally worked together cooperatively, rather than point out each other's every omission or gaffe. Nevertheless, that delay affected our ability to respond to your earlier requests and, similarly, receiving four boxes of documents on June 15 affected our ability to respond to your most recent requests. The delay you bitterly complained about with respect to the discovery responses you received today lasted mere hours; the delay on that prior occasion lasted for weeks. Again, I am not complaining about that earlier problem, but by the same token, I do not expect to have the Riot Act read to me when, after politely giving you notice on two separate occasions, I properly withheld my response until I have a full opportunity to review these materials.

We have a lot of work to do in this case. If we both insist on doing things our way, neither of us will get anywhere. The Plaintiffs have fairly met their obligations to you. While we both may have issues to discuss with each other, let's not permit these sideshows to divert us from what we need to do to get this case ready for summary judgment. Please call me if you have any questions.

Very truly yours,

Harry J. Kelly

cc: Alycia A. Ziarno, Esq.

10629229.1