- - - - - - - - - - - - - - - x

30(b)6 DEPOSITION OF ALGONQUIN HEIGHTS
BY AND THROUGH ITS DESIGNEE
DEAN DONNELSON
Washington, D.C.
Wednesday, August 1, 2007
11:42 a.m.

Job No.: 4024
Pages 1 -
Reported by: TRISTAN-JOSEPH, RPR



Deposition of ALGONQUIN HEIGHTS, by and through its designee, DEAN DONNELSON, held at the offices of:

DOJ Civil Division - Civil Division
1100 L Street, N.W.
Eleventh Floor, Room 11010
Washington, D.C. 20005
(202)616-0465

Were there discussions with respect to Cambridge Square Fort Wayne as to which statute they should proceed under?

A. Yes.

Q. What was the nature of those discussions?

A. Primarily, my recollection is that the discussion revolved around the benefits of the two statutes. And the main benefit that we saw in Title II was the shorter term of restrictions. So

23

we chose to stay with Title II because of that.

Q. Were there any other reasons with respect to Cambridge Square of Fort Wayne that you chose to proceed under Title II?

A. None that I recall.

Q. Were there any discussions with respect to applying to HUD to prepay the mortgage on Cambridge Square of Fort Wayne?

A. There were no discussions in my tenure.

Q. And so there were no discussions internally?

A. Correct.

Q. Were there any discussions with HUD?

A. Not that I'm aware of. I -- like I said, I started in '92, so those -- if those discussions took place, they probably took place

prior to my joining the company.

Q. Would Mr. Glick have been involved in discussions with HUD about prepaying?

A. He would not have.

MS. ZIARNO: Objection.



BY MR. HARRINGTON:

Q. Besides yourself, who would have been involved in any discussions with HUD about prepaying?

A. The only person that would have likely discussed it, if it was discussed, was Max Thurston.

Q. Are you aware of any discussions that Mr. Thurston had with HUD about prepaying?

A. I am not.

Q. Did you have any discussions with Mr. Thurston about the possibility of prepaying the HUD-insured mortgage on Cambridge Square of Fort Wayne under the Preservation Statutes?

A. I did not.

MS. ZIARNO: Objection.

Asked and answered.

BY MR. HARRINGTON:

Q. Did HUD ever inform Cambridge Square of

Fort Wayne that it would not be able to prepay
under the Preservation Statutes?

A. I believe actually in this case there is



a letter from HUD somewhere that came in prior to my, again, starting with the company that indicated that they would not be eligible for prepayment due to the market conditions of Fort Wayne.

(Deposition Exhibit No. 3 was marked for Identification.)

BY MR. HARRINGTON:

Q. We've marked, as Exhibit 3, a letter with a handwritten date of 9/19/90, numberered GOV AH 40193.

Have you seen this letter before, Mr. Donnelson son?

A. I have seen it, yes.

Q. Is this the letter you were just referring to?

A. It is.

Q. When was this letter received by Cambridge Square of Fort Wayne?

A. Sometime in September of 1990.

Q. It's sent by Michael J. Scanlan.

Who is Mr. Scanlon?

A. He was the acting chief at this time.

He's been part of the Indianapolis HUD office for as long as I can remember.

Q. And this letter was addressed to Mr. Glick ?

A. Correct.

Q. Did mr. Glick ever mention this letter to you?

A. He did not.

Q. When did you become aware of this letter?

A. Actually, I saw it when I was reviewing the files yesterday.

Q. Had you seen it before you were reviewing the files yesterday?

A. I had not. Or if I have, I don't recall seeing it.

Q. Did anyone at Gene B. Glick mention this letter to you?

A. Not that I recall.

Q. Where does this letter say that prepayment of the mortgage on Fort Wayne would not be allowed?

27

A. It doesn't say specifically that.
Q. What language are you referring to that gives you that impression?
A. Well, they say there's a need for more non-elderly subsidized housing in Fort Wayne.
Q. And why do you feel that indicates that Cambridge Square of Fort Wayne would not have been allowed to prepay?
A. I don't -- did I say that?
Q. Let me -- let me ask you the question. My apologies.
A. Okay.
Q. Do you believe that that language indicates that Cambridge Square, Fort Wayne, would not have been allowed to prepay?
A. I really don't know. I never was involved in any discussions on that issue. This is the only letter I recall seeing where it actually talks about the need for affordable housing.
Q. Is there any other correspondence that you are aware of that concerns the ability of Cambridge Square of Fort Wayne to prepay under the

28

Preservation Statutes?
A. I'm not aware of any.

Q. Are you aware of any projects that applied to prepay that were denied the ability to prepay by HUD?
A. I'm not aware of any.
Q. Do you know whether a need for a more nonelderly subsidized housing units in the Fort Wayne aread would have prevented Cambridge Square of Fort Wayne from prepaying?
A. I do not know.
Q. Do you know what considerations HUD looked at in determining whether a project would or not be allowed to prepay under the Preservation Statutes?
A. I had no idea what HUD considered.
MR. HARRINGTON: Let's go ahead and go off the record.
(Discussion held off the record.)
BY MR. HARRINGTON:
Q. Mr. Donnelson, did Cambridge Square of Fort Wayne proceed under Title II?

29

A. My recollection is they did.
Q. Could you describe what Cambridge Square of Fort Wayne did under the Title II process?
A. Well, there were a multitude of forms you had to file, but I think the main thing was you

A. I think we did.

Q. Do you know when that would have occurred?

A. No. And I could wrong about that too, but I do think there was a final approval at some point after this but.

Q. If it occurred would it have occurred after October 7, 1996?

MS. SMITH: Objection.

THE WITNESS: It would have had to, yeah.

(Pause.)

BY MR. HARRINGTON:

Q. Was there any discussion with limited partners about the possibility of prepaying and converting under the Preservation Statutes?

A. I believe all of that -- all that other

66

correspondence came from Boston Financial in that regard.

Q. So there was no communications between limited partners and G. B. Glick?

A. Not prior to '98.

Q. And after 1998 would any discussion of prepayment have been pursuant to the HOPE Act?

A. Correct.

MR. HARRINGTON: Let's go ahead and go