**EXHIBIT B**

NIXON PEABODY LLP
ATTORNEYS AT LAW

401 9th Street N.W.
Suite 900
Washington, DC 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8712
E-Mail: hkelly@nixonpeabody.com

October 16, 2007

**VIA E-MAIL**

Mr. David Harrington
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, Room 12136
Washington, DC 20530

Re: Rule 30(b)(6) Notices in Algonquin Heights v. United States and Anaheim Gardens v. United States

Dear David:

I am in receipt of your letter dated October 12, 2007 (attached hereto as Exhibit A). I have many concerns about that letter, but the following only addresses that portion of the letter that states objections to the Rule 30(b)(6) notices we served in the above matters in August 2007. I am dismayed by the fact that you essentially object to every single subject matter we included in the deposition notices. It is my hope that we can resolve these matters short of Court intervention, but given your stated positions, I am not confident that we will succeed without it. Given that you requested a status conference with the Court which is now scheduled for Wednesday, October 17, 2007 at 2:00 p.m., I am submitting a copy of this letter to the Court in advance of that conference so that it will have sufficient information to fully understand the context of the newest discovery disputes.

I will begin by stating that contrary to your assertion, the Rule 30(b)(6) notices we served in August 2007 do comply with the Rules of the United States Court of Federal Claims ("RCFC"). As you note, those rules, specifically RCFC 26, only require that the 30(b)(6) notices state with "reasonable particularity" the subject matters for the deposition. Our notices do exactly that. Each subject matter is directly relevant to a claim raised by Plaintiffs and/or a defense raised by the Government. However, in stark contrast, your unilateral attempt to

**EXHIBIT B**



constrain the scope of our depositions by refusing to produce witnesses on subject matters to which you have objections is expressly **not** permitted under the rules.

Rather, the proper course of action for you to take should you wish to object to the subject matters detailed in the Rule 30(b)(6) notices is to immediately seek a protective order from the Court. Should you delay in doing this, and thereby delay discovery to the point where we cannot ***reasonably*** prepare for and complete our depositions in the agreed to time frame, please be aware that we will seek an extension of time to enlarge the deposition period. In addition, we will seek whatever sanctions may be appropriate and/or whatever costs the Plaintiffs are unnecessarily forced to incur as a result of what we view as your dilatory behavior.

Your general objection that "[m]any of the topics in plaintiffs' deposition notices are vague and overbroad" is devoid of merit, and frankly does not warrant a response. However, I will comment that I am not sure whether you understand that such an objection does not provide a basis for refusing to produce witnesses. Moreover, your sweeping statement that it will be "an impossible task" to designate an appropriate person or persons is an overstatement, if not an outright misrepresentation. You received the deposition notices in August 2007, and you have had several months to decide who to produce. Indeed, you repeatedly represented to us that you were going to produce 4-6 persons in response to the notices, and that is why we agreed to give you until October 12th to provide us with specific names. Instead you have identified only two potential witnesses and it appears that your primary witness on the substantive prepayment topics is an employee of one of HUD's state offices, rather than an official from HUD Headquarters with pertinent experience. Moreover, you now claim after several months of stalling that it is "impossible" to produce other witnesses - this is a blatant abuse of the discovery process and unduly prejudices the Plaintiffs.

A number of your objections are based on your reading of the recent decision of the Federal Circuit in Cienega Gardens, ___ F.3d. ___ (2007), which contained language (including footnote 9) that clarifies the pertinent law on ripeness. Accordingly, you contend that in light of this decision, certain areas of inquiry – such as the so-called "sale option" under the Preservation Statutes – have been eliminated and that the Plaintiffs should not be allowed to obtain deposition testimony on those matters. While we agree that the new Cienega Gardens decision strengthens the Plaintiffs' ripeness claims, your letter does not constitute an unequivocal admission that the Government agrees that the Plaintiffs had no option to prepay their mortgages – i.e., an admission that prepayment was futile and that Plaintiffs' claims are ripe for adjudication. Should the Government be willing to provide an appropriate stipulation, some of the anticipated inquiries may be curtailed. Short of such a stipulation, however, we obviously need to inquire about how the statutory alternatives to prepayment operated. Even with a stipulation, it will be necessary to explore at least some aspects of HUD processing under the non-prepayment alternatives in order to determine the extent to which the processing of the Plaintiffs' applications shed light on their inability to prepay their mortgages.

Finally, your general objection that compliance with the notices poses an undue burden on the Government, because the notices allegedly seek to examine witnesses on privileged

**EXHIBIT B**



matters is frivolous, inconsistent with the rules, and a clear example of your obstructive and dilatory discovery practice. As you should well know, but maybe you do not, objections as to privilege are to be made during the deposition as they arise. At that time, you may instruct your witness not to answer a pending question that you believe intrudes on the privilege subject, of course, to a later resolution by the Court. However, you may not use this objection at this stage as a reason for not producing a person or persons to testify on any subject matter listed in the Plaintiffs' notices.

With regard to your more specific objections, our responses are as follows.

**Plaintiffs' First Deposition Notice**[1]

1. The United States Department of Housing and Urban Development's ("HUD") policies and practices concerning prepayment under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA").

You object that this request is vague and overly broad. It is not. It very specifically asks for HUD's policies and practices concerning a particular aspect of the Preservation Statutes – i.e., prepayment. Thus, your objection that the Government will not produce a witness to address policies and practices that do not "directly concern" prepayment is both confusing, and seemingly without merit. As noted above, we intend, in asking about the policies and practices regarding prepayment, to ask questions that relate to other options under the Preservation Statutes – i.e., the incentive and sale options to the extent that those options related to and interacted with the prepayment option. Irrespective of the holding in Cienega Gardens, those matters are immediately pertinent to the Plaintiffs' ripeness claims. If you intend to instruct your witnesses not to answer such questions, we suggest that you seek an appropriate protective order from the Court in advance. Otherwise, your baseless objections on this ground will simply delay the orderly taking of the deposition, and extend the overall time it takes to complete the depositions.

2. The nature and extent of HUD's discretion under ELIHPA and LIHPRHA, and specific examples of the exercise of that discretion.

Your objection that this request is vague, overly broad and unintelligible is nonsensical, and in any event, such an objection cannot support your refusal to provide a witness. First, as you well know, the issue of the extent of a government agency's discretion is central to the pending ripeness question. Therefore, Plaintiffs' are clearly entitled under RCFC 26 to inquire

---

[1] You did not attach the deposition notices to your letter and it is difficult to discern what you consider to be the "first," "second," and "third" deposition notices. We have attached the notices to this letter for the Court's benefit, and we have placed them in the order we believe you intended to address them as Exhibits B, C, and D. Additionally, in your letter you do not use the exact language of the request. We have done so here to avoid any confusion, rather than adopting your characterization of what the requests purportedly state.

**EXHIBIT B**

into this subject matter. Moreover, your objection ignores the Government's prior position that HUD had discretion under ELIHPA and LIHPRHA. Indeed, given the Government's earlier assertions about discretion, we do not understand what is so "unintelligible" about this request.[2] If, however, HUD now concedes that it had no discretion under ELIHPA or LIHPRHA, and it is willing to so stipulate, then there may be no need to further explore this subject matter. If not, then HUD must testify not only as to what was encompassed within its alleged discretion, but it should be capable of offering examples of when that discretion was exercised. Short of a protective order from the Court barring inquiry into this subject matter, we fully expect that you will produce a witness capable of answering questions about it.

3. The identity of any properties that were permitted to prepay under ELIHPA and LIHPRHA, and all facts and circumstances related to those properties and the prepayment.

You object that this request is overly broad, and unduly burdensome. You state that in order to respond, the Government would be required to review information concerning thousands of HUD and state insured projects that are not at issue in this litigation. First, this subject arises out of the Government's assertion that several properties in the United States were permitted to prepay under the ELIHPA and LIHPRHA which Plaintiffs dispute. For example, in response to Plaintiffs' Interrogatory No. 11, the Government provided the declaration of Joseph Mallory (attached as Exhibit E) – a document produced many years ago in another lawsuit. According to Mr. Mallory, who was proffered as a witness on behalf of the Government in that case, eight HUD projects sought to prepay under ELIHPA and LIHPRHA, and of those eight, three properties were permitted to prepay. It is preposterous for the Government to attempt to use this assertion as a defense to Plaintiffs' claim that no property was able to satisfy the prepayment criteria, and then upon further questioning by Plaintiffs, disclaim any ability to support the assertion with facts. HUD must either concede that no property was ever permitted to prepay under either ELIHPA and LIHPRHA, or it must provide Plaintiffs with the specific information that they are entitled to receive about who/what properties attempted to prepay and who/what properties were permitted to prepay.

Moreover, the Mallory declaration makes it clear that your assertion that the Government would be unduly burdened by having to respond to this subject matter because it would require a search through information about thousands of HUD and state insured properties is either a gross overstatement, or a baseless fabrication. Plainly, thousands of properties need not be searched to respond to questions about this subject – we just need information about the eight that HUD has already identified. HUD should be able to testify about all eight of the properties that allegedly attempted to prepay, and specifically, about the three allegedly granted permission to do so. If HUD asserts that it cannot testify because documents are no longer available, then

---

2 For example, we refer the Government to its response to Interrogatory No. 5 in the Defendant's Response to Plaintiffs' First Set of Interrogatories (attached as Exhibit F). In addition, the Government also stated in response to Plaintiffs' Request for Admission No. 3 and Request for Admission No. 10 that HUD had the ability to exercise discretion in making a prepayment determination (also attached as Exhibit F).

**EXHIBIT B**

the Government is likely guilty of spoliation of evidence, and Plaintiffs will seek an appropriate sanction. In sum, as with the other challenged subject matter areas, in the absence of a protective order prohibiting inquiry into this subject matter, we intend to ask questions about it, and expect you to tender a witness fully prepared and capable of answering them.

4. The specific criteria and/or methodology used by HUD to determine whether a property was permitted to prepay under ELIHPA and LIHPRHA.

You object to this request on the ground that is overbroad and unduly burdensome, because it is not limited to projects owned by Plaintiffs. You also again assert that in order to address this subject matter, HUD would be required to review information concerning thousands of HUD and state insured properties not at issue in this litigation. It appears from your objection that you have misunderstood the request.

Here, Plaintiffs are simply seeking general information about how HUD would have gone about assessing whether a property was permitted to prepay under ELIHPA and LIHPRHA. This does not require a search of information related to thousands of properties. There were various statutory directives, legislative guidelines, and internal and external HUD guidance related to this subject. As a result, someone at HUD should be well equipped, with proper preparation, to state on the record what the specific criteria and/or methodology that HUD would have used to determine if a property was permitted to prepay under ELIHPA or LIHPRHA. Hence, we expect that with this clarification you will tender an appropriate witness on this subject matter. If you do plan to, please obtain an appropriate protective order from the Court so that the deposition is not unduly delayed.

5. The specific steps and authorizations required to process an application to prepay, seek incentives, or sell a property to a qualified purchaser under ELIHPA and LIHPRHA.

Again, your stated objection is inappropriate and unfounded. Plaintiffs are entitled to inquire about the steps taken to process an application for incentives or for a sale to the extent that those options give context to, and inter-relate to, the steps and authorizations required to process an application to prepay. Moreover, your reliance on the most recent Cienega Gardens decision is misplaced in that the Government's defenses to date in this case may vary from propositions stated in a recent decision in a different case. As noted above, should the Government wish to change its previously stated positions, and stipulate to certain facts in writing, we may be able to tailor this subject matter more narrowly. Again, in the absence of an appropriate protective order from the Court, please understand that we expect you to tender a witness on this subject matter notwithstanding your misplaced objections on scope and relevance.

6. The drafting and development of the forms used to process applications under ELIHPA and LIHPRHA, including specifically all of the versions of the forms known as a Notice of Intent used between 1987 and 1996.

**EXHIBIT B**



Contrary to your assertion, this subject matter is not irrelevant, and it is calculated to lead to the discovery of admissible evidence. Additionally, your assertion that the text of the forms did not change or was not altered throughout their use in the preservation processing is flat out wrong based on the documents produced in this matter. In any event, please recall that during the depositions of the Plaintiffs in this matter, you took great pains to walk the Plaintiffs through the various elements of the ELIHPA and LIHPRHA Notice of Intent ("NOI") forms. Indeed, you made much of the fact that one version of the form included a "box" or "option" related to prepayment. Through your questioning, you suggested that it was of significance that the form included "three options," and not just the "two options" the Plaintiffs repeatedly told you actually existed in reality. Based on those questions, and our own examination of the various forms, we have questions for the Government about the form design. Indeed, given the Government's implication and innuendo that there was significance as to what was included or not included in the various iterations of the forms, we are entitled to explore this subject matter further. Again, absent an appropriate protective order, we expect you to produce a person or persons capable of answering questions about the NOI forms and why certain elements were included or not included, and when the forms were developed and put into operational use.

**<u>Plaintiffs' Second Deposition Notice</u>**

1. The United States Department of Housing and Urban Development's ("HUD"), processing of prepayment and other requests under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and/or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA") for the Plaintiffs and subject properties listed in Exhibit A.

It is ludicrous of the Government to argue that the processing of the subject properties' requests for prepayment ***"and other requests"*** under the ELIHPA and LIHPRHA is irrelevant to the ripeness determination. It is in fact, what the present inquiry is all about, and, as noted above, nothing in the recent <u>Cienega Gardens</u> decision changes that fact. Unless the Government intends to stipulate to ripeness for each of the subject properties, the Plaintiffs are most certainly entitled to ask about the processing of prepayment ***and other requests*** under ELIHPA and LIHPRHA. Plaintiffs not only fully expect that the Government will produce a person or persons capable of testifying about this subject matter, but they will seek sanctions against the Government if it refuses to do so in the absence of an appropriate protective order.

3. The specific criteria and/or methodology used by HUD to determine whether each of the Plaintiffs and subject properties listed in Exhibit A would have been eligible to prepay or to receive incentives under ELIHPA and/or LIHPRHA.

Under ELIHPA and LIHPRHA, HUD was required, upon receipt of a Notice of Intent, to assess whether a property was eligible to prepay and/or receive incentives. In April 1992, this requirement was codified into "a test" made public in Federal Register commonly known as the "Windfall Profits Test" ("WPT"). Since the WPT should have been used by HUD to assess

**EXHIBIT B**



whether each of the subject properties was in fact eligible to prepay its mortgage and/or receive incentives under ELIHPA and LIHPRHA, it is clear that the subject matter is directly relevant to the question of futility. Nothing in the recent Cienega Gardens decision suggests that Plaintiffs are not entitled to explore this subject matter. Moreover, the Government has produced some documents to Plaintiffs addressing a subject property's eligibility for incentives (albeit, less than expected), and Plaintiffs are entitled to ask questions about those documents. Accordingly, Plaintiffs will pursue questions about this subject matter, and they expect that absent an appropriate protective order, the Government will produce a person or persons capable of, and fully prepared to testify about, this subject matter as well as any related documents produced by the Government.

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications HUD prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the Plaintiffs and their subject properties listed in Exhibit A.

Again, you make an unfounded objection that Plaintiffs are not entitled to ask any questions about the receipt of incentives in light of the recent Cienega Gardens decision. Not only is this assertion wrong, unfortunately for the Government, as a mater of law it does not unilaterally get to decide how the Plaintiffs case should be presented. Here, the issue of the receipt of incentives versus the ability to prepay a mortgage is central both directly and indirectly to ripeness. Moreover, the Government has staked out certain positions on these issues, that unless, it is willing to stipulate to in writing, remain the record in this case. Accordingly, under RCFC 26 Plaintiffs are entitled to inquire into this subject matter particularly with respect to their individual properties. Once again, absent an appropriate protective order precluding such questions, Plaintiffs intend to inquire about this subject matter and expect a fully prepared Government witness to be tendered to respond to their questions.

5. The document retention policies of HUD, including those of any relevant field offices, and the actual steps taken to produce documents for the Plaintiffs and subject properties listed in Exhibit A.

You argue that because a written document retention policy is publicly accessible, Plaintiffs are not entitled to inquire into the subject matter of document retention policies. That is absurd. Plaintiffs are absolutely entitled to ask about the actual application of a written document retention policy. Further, we are entitled to explore why certain documents have not been produced. For example, although you argue that "any" EMAS correspondence would have been kept in local field office project files, we have received surprisingly few such documents with no explanations as to why we lack them for most properties. In addition, although final drafts of documents may have been sent to field offices that does not account for copies, duplicates, drafts, and/or internal and external correspondence all of which are called for by our document requests. Even if you do not see the value, you may not refuse to produce a witness to testify unless you have an appropriate protective order in place. Accordingly, please be aware that we intend to take the deposition of someone with knowledge about the document retention

**EXHIBIT B**



policy and practices of HUD, as well as EMAS (the request directed specifically to EMAS as opposed to HUD and its field offices generally is included in the so-called "third" deposition notice discussed below).

In addition, you assert that because counsel for the Government supervised the collection of documents for production in these matters, we are precluded from asking about document retention. In making that assertion, you again, miss the point. Counsel's supervision of the document collection does not insulate the agency charged with maintaining records from answering questions about steps taken to preserve, collect, and produce relevant documents both prior to and after the time when the Government was on notice of the litigation. If you recall, although we supervised the production of documents for the plaintiffs, you asked the plaintiffs questions about their role in producing those to us, the location of documents, and the extent of the search for documents. If you believe that you were permitted to ask such questions, you cannot truly believe that the same does not hold for us. Your repetitive practice of attempting to block us from doing the very same things that you have done in discovery is troubling and frustrating to say the least.

Moreover, the topics of an agency's retention practices and the execution of a retention policy are separate and distinct from the topic of collection and production of documents in a litigation. In other words, your role (or that of other attorneys) in the actual collection and production does not preclude Plaintiffs from asking questions about the practices and execution of a general retention policy. We find it particularly alarming that you are taking such a hard stance on the scope of what we can and cannot ask about retention in light of your revelation in your letter that all of the documents for Person Court have been destroyed by HUD.[3]

Finally, to the extent that you believe that questions about this subject matter will intrude on the attorney-client privilege, you may object to those questions at the deposition. However, you may not use that objection to justify preemptively denying us access to a proper witness. That is simply not how this issue is handled. Accordingly, in the absence of protective order, we expect you to have a witness available and fully prepared to testify about this subject matter.

**<u>Plaintiffs' Third Deposition Notice</u>**

1. The Economic & Market Analysis Section's role in processing prepayment and other requests under ELIHPA and LIHPRHA.

You object to this request and state that no witness will be proffered to address EMAS' analysis of "other requests" under the Preservation Statutes. Again, to the extent that the

---

[3] Moreover, while your letter suggests that you are going to prepare some type of summary regarding the document production, and you apparently believe that such a written summary from you or other attorneys suffices to address this subject matter, please be on notice that it does not, and we will not accept your proposed summary as doing so.

EXHIBIT B



Plaintiffs requested relief other than prepayment, we are entitled to explore how HUD processed their requests, irrespective of the recent holding in Cienega Gardens.

2. The nature and extent of EMAS' role in processing prepayment and other requests under ELIHPA and/or LIHPRHA.

You object that this subject matter is overly broad and seeks information that is not relevant to ripeness under the most recent Cienega Gardens decision. Specifically, you appear to object to the inclusion of "other requests." For the reasons cited above, you are incorrect in your assessment, and without a right to make such an objection at this stage. Moreover, as explained above in response to similar objections to a similar request, to the extent that the "other requests" relate to and inter-relate to prepayment, Plaintiffs are fully within their rights to ask about this subject matter.

3. The specific criteria and/or methodology used by EMAS to determine whether a property was permitted to prepay or receive incentives under ELIHPA and/or LIHPRHA.

You object to this request on the basis that is overbroad and unduly burdensome, because it is not limited to projects owned by Plaintiffs. Therefore, you assert, to address this subject matter HUD would be required to review information concerning thousands of HUD and state insured properties not at issue in this litigation. It appears from your objection that you have again misunderstood the request as you did in the similar request made in a separate notice directed to HUD more generally which is addressed above.

Again, in order to answer questions related to this subject, HUD need not search through property specific information for thousands of properties. The request is much simpler. Here, Plaintiffs are simply seeking general information about how HUD, and specifically EMAS, went about assessing whether a property was permitted to prepay under ELIHPA and LIHPRHA. Clearly, there were various statutory directives, legislative guidelines, and HUD internal and external guidance. As a result, someone at HUD should be well equipped, with proper preparation, to state on the record what the specific criteria and/or methodology that EMAS would have used to determine if a property was permitted to prepay under ELIHPA or LIHPRHA. Moreover, someone should be able to address the criteria and methodologies used in correspondence produced by the Government that reflect EMAS' assessment of a properties' ability to prepay or receive incentives. Hence, we expect that with this clarification that you will tender an appropriate witness on this subject matter. If you do not wish to do so, please obtain a protective order from the Court.

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications EMAS prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the Plaintiffs and their subject properties (see list attached as Exhibit A).

**EXHIBIT B**



You make the same objection to this request as you did to the similar request in the HUD deposition notice. As you might expect, our response to your objections is also the same, so please refer to it. In sum, we expect a witness prepared and fully capable of answering questions related to this subject matter absent an order from the Court prohibiting us from asking question about this subject matter. As you know, we insisted – over your frequent objections – on having adequate time to prepare our 30(b)(6) witnesses, so that they would be able to offer pertinent testimony on behalf of the Plaintiffs. We expect you to be as diligent as we were in preparing your witnesses, so that they can give the same level of detailed testimony on behalf of the Government.

5. The document retention policies of EMAS, and the specific steps taken, if any, to produce documents in the above referenced matter in response to the Plaintiff's Request for Production of Documents.

Again, please refer to our response above which addresses the same objections you made in connection with our similar request to HUD generally.

**Conclusion**

In sum, it is difficult to understand why you believe that you are entitled to withhold witnesses based on objections of relevancy, breadth, undue burden, vagueness, and/or phantom claims of privilege. Please be clear that under the rules, none of your objections provides a valid basis for you to refuse to produce a witness or witnesses. Rather, you can make your objections during the depositions. Further, as you know, you may only instruct your witnesses not to answer on the basis of an asserted privilege, and to the extent you attempt to do so on the other grounds stated in your letter, you do so at your own peril. Alternatively, you are entitled to seek a protective order from the Court in advance of the depositions which will permit you to refuse to produce a witness provided that the Court agrees with your grounds.

However, you cannot attempt to limit our ability to obtain complete discovery in a timely manner as you appear to try do in your letter. I will remind you that you previously represented on more than one occasion that you would be producing 4-6 individuals to testify in response to our notices that were served in August 2007. On that stated basis we agreed to give you until October 12th to identify those individuals. However, instead of identifying the witnesses as promised, you blind-sided us and provided us with only two names and presented a lengthy list of unfounded and improper objections in your October 12th letter. Your approach is again reflective of the lack of civility with which you are conducting yourself in this discovery process. Moreover, it is disappointing to think that the Government is consciously acting to waste the Plaintiffs' time and resources on frivolous discovery motion practice, rather than litigating the substantive claims.

Again, I urge you to reevaluate your position and recognize that your stated objections do not relieve you of your obligation to produce suitable 30(b)(6) witnesses to testify fully about each of the subject matters included in Plaintiffs' deposition notices. To the extent you are

**EXHIBIT B**



willing to supply us with an unequivocal stipulation with respect to ripeness issues, we are prepared to discuss it. We would prefer if you cannot come to a reasoned conclusion, that you seek a protective order from the Court. If you instead opt to produce ill-prepared witnesses, thus, requiring Court intervention during the depositions, you will have succeeded only in needlessly extending the time and costs of completing discovery in this matter. If that occurs, Plaintiffs will seek appropriate sanctions and costs to compensate the Plaintiffs' for the unnecessary lost time, resources, and money caused by your dilatory actions.

Sincerely,

Harry J. Kelly

EXHIBIT B

# EXHIBIT A

**EXHIBIT B**

U.S. Department of Justice

Civil Division

JED:BMS:DHarrington
DJ No. 154-93-655 & 154-97-582

Telephone: (202) 616-0465
Facsimile: (202) 307-0972

Washington, D.C. 20530

October 12, 2007

*Via Electronic Mail and U.S. Mail*

Harry J. Kelly, Esq.
Nixon Peabody LLP
401 Ninth St., N.W.
Suite 900
Washington, D.C. 20004

Re: *Anaheim Gardens, et al. v. United States*, No. 93-655C (Fed. Cl.);
*Algonquin Heights, et al. v. United States*, No. 97-582C (Fed. Cl.).

Dear Mr. Kelly:

I am writing about several issues relating to ripeness discovery in the above-referenced actions.

Document Production

As you are aware, the Court directed the parties to complete document production by October 12, 2007. Order of Judge Hodges at 1 (Sept. 21, 2007). With respect to plaintiffs' production of documents, I have received four boxes of documents relating to the Church Street Apartment project. However, no documents relating to the Briar Crest I, Briar Crest II and Briar Hills projects have been received. Please contact me to discuss when the additional document production owed by plaintiffs should be anticipated.

On October 10, 2007, I received an e-mail acknowledging your receipt of 20 boxes of documents relating to the additional Thetford properties.[1] On October 11, 2007, we sent you an

---

[1] The additional Thetford properties are: Beaumont Avenue Apartments, Coleridge Road Apartments, Icemorelee Street Apartments, Hardee Street Apartments, Holloway Court Apartments, Holiday Town Apartments #1, Henry Street Apartments, Millbank Court Apartments, Johnson Court Apartments, Oakwood Avenue Apartments #1, Person Court Apartments, Raleigh North Apartments, Tucker Street Apartments, Young Avenue Apartments, Calico Court Apartments d/b/a Crab Point Apts., Chowan Court Apartments, Columbus Court Apartments, Franklin Court Apartments, Holiday Town Apartments #2, Long Drive Apartments, Oakwood Avenue Apartments #2, Peachtree Court Apartments, Stewart's Creek Apartments.

**EXHIBIT B**



additional 4 boxes of documents relating to the Briar Crest I, Briar Crest II, Briar Hills and Church Street projects.

As you note in your e-mail, our cover letter does not mention Person Court Apartments. Person Court is not mentioned because HUD has no longer has any files concerning that project. Person Court prepaid in 1998 and plaintiffs failed to identify Person Court as being a part of this litigation until 2007. As a result, HUD files concerning Person Court have been destroyed in accordance with HUD record retention polities. To the extent that documents concerning Person Court were included in the files on other Thetford-owned projects, they have been provided as part of our document production.

Your e-mail also inquires whether we included documents about both phases of the Oakwood Avenue Apartments and Holiday Town Apartments projects. All documents relating to phase one of Oakwood Avenue Apartments #1 (FHA No. 053-44018) and Holiday Town Apartments #1 (FHA No. 053-35045) have been produced. We are looking into whether all files relating to the second phase of these projects (FHA Nos. 053-44081 & 053-44164) have been provided. To the extent that any material concerning these projects has not yet been provided, we will expedite its retrieval and will produce any additional documents as soon as feasible.

Interrogatories

The United States will be serving interrogatories to ascertain the date upon which plaintiffs contend that their as-applied regulatory taking claims concerning ELIHPA and LIHPRHA ripened. These interrogatories go to the crux of ripeness discovery, will be simple, concise, and should be easily answered. Plaintiffs have previously contended that the United States has served over 25 interrogatories. We disagree and intend to request that Judge Hodges schedule a status conference during the next week to address this issue. Please contact me to discuss the dates upon which you are available.

Depositions

On August 20, 2007, plaintiffs served six separate Rule 30(b)(6) deposition notices (three in Anaheim Gardens and three in Algonquin Heights) stating that plaintiffs would take the deposition of "the United States." These notices contained 16 paragraphs describing numerous "subject matters" about which testimony was sought. As set forth generally below and specifically in the attachment to this letter, we object to these notices because they do not conform to the requirements of Rule 30(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").

Pursuant to RCFC 30(b)(6), a party's deposition notice must "describe with reasonable particularity the matters on which examination is requested." "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" and is improper. Steil v. Humana Kansas

**EXHIBIT B**



City, Inc., 197 F.R.D. 442, 444 (D. Kan. 2000); Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000).

Many of the topics in plaintiffs' deposition notices are vague and overbroad. For instance, your deposition notices seek testimony generally on the "policies and practices concerning prepayment under the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA")." Indeed, given the number of projects subject to the Preservation Statutes, the number of projects listed as "subject properties," the number of HUD employees across the country involved in preservation processing, and the number of discussions that they may have had relating to topics in plaintiffs' deposition notices, it would be an impossible task for the Government to designate any person or persons to testify regarding matters not memorialized in HUD's files. In addition, Rule 30(b)(6) requires the designated individual to testify as to "matters known or reasonably available to the organization." Due to the passage of time since the events in question, the number of persons involved in preservation processing, and the fact that many of these persons are no longer are employed by HUD, testimony about discussions or other matters not memorialized in HUD's files is not "known or reasonably available" to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition.[2]

We also object to plaintiffs' notice because compliance would result in undue burden and expense for HUD insofar as the notice seeks examination relating to both privileged and irrelevant information. To the extent that the topics call for privileged information, specifically information subject to the attorney work product, deliberative process, and attorney-client privileges, RCFC 26(b)(1) explicitly limits discovery to matters "not privileged." We do not waive any applicable privileges, and we will not permit designated representatives to be examined on any topics that call for the disclosure of privileged information. Additionally, much of the information sought by plaintiffs' deposition notice is not relevant to ripeness issues in these cases. Any discovery propounded by a party is required to be "relevant to the subject matter involved in the action." RCFC 26(b)(1); United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993) (precluding discovery not relevant to issues presented by complaint or affirmative defense). The Federal Circuit in Cienega Gardens v. United States, ___ F.3d ___, 2007 WL

---

[2] If plaintiffs seek specific information about actions of specific HUD employees, individual depositions should be noticed. The court has given plaintiffs a two-week period to conduct ripeness depositions. Order of Judge Hodges at 1 (Sept. 21, 2007) ("The plaintiffs will take depositions on ripeness between November 5, 2007 and November 16, 2007"). Plaintiffs have had months to decide whether to take depositions of any specific HUD employees. I am hopeful that there will be no repetition of plaintiffs' failure to timely notice depositions earlier this year. Nonetheless, I feel compelled to insist that any individual depositions notices be served promptly. Please understand that it is highly unlikely that depositions notices received after 5:00 p.m. on Friday, October 19, 2007, can be accommodated. Additionally, under no circumstances will the United States agree to defend late-noticed depositions during the Thanksgiving holidays or the period that the Court has set aside for the United States to conduct its own deposition discovery.

**EXHIBIT B**



2778687 at *22 n.9 (Fed. Cir. Sept. 25, 2007) ("Cienega Gardens X"), recently clarified that "ripeness doctrine does not require the owners to apply for voluntary incentives" to ripen their claims. Consequently, many of plaintiffs' requests are irrelevant in that they seek information about the sale and use agreement options under ELIHPA and LIHPRHA and, therefore, are outside the scope of a Rule 30(b)(6) deposition on ripeness.

We further object to your deposition notices because they call for the Rule 30(b)(6) depositions to "continue from day to day until completed." Rule 30(d)(2) limits a deposition to "one day of seven hours" unless "otherwise authorized by the court or stipulated by the parties." We recognize that many projects are involved in this litigation and are willing to discuss a reasonable extension of the time allotted for these depositions. However, we do not consent to an open ended deposition for our designated representatives.

Subject to our general and specific objections, we currently anticipate providing Edward Szymanoski to testify on subject matters concerning HUD's Economic & Market Analysis Section, and Maurice Barry to testify on subject matters concerning prepayment under the Preservation Statutes. If the anticipated Rule 30(b)(6) witnesses change, we will let you know.

Very truly yours,

David A. Harrington
Trial Attorney
Commercial Litigation Branch

**EXHIBIT B**

## SPECIFIC OBJECTIONS TO PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICES

In conjunction with our general objections, we identify the following specific objections to plaintiffs' Rule 30(b)(6) deposition notices:

Plaintiffs' First Deposition Notice

1. The United States of Housing and Urban Development's ("HUD") policies and practices concerning prepayment under the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA") (collectively, the "Preservation Statutes").

This subject is vague and overly broad. Policies and practices concerning prepayment under the Preservation Statutes are governed by statutes and regulations, as well as by publications identified in a four-page, single-spaced list attached to the United States' response to plaintiffs' interrogatories. Discovery in this matter is limited to the issue of ripeness and, accordingly, no witness will be proffered to address policies and practices that do not directly concern requests to prepay pursuant to the Preservation Statutes. Cienega Gardens v. United States, ___ F.3d ___, 2007 WL 2778687 at *22 n.9 (Fed. Cir. Sept. 25, 2007) ("Cienega Gardens X") ("ripeness doctrine does not require the owners to apply for voluntary incentives" to ripen their claims).

2. The nature and extent of HUD's discretion under ELIHPA and LIHPRHA, and specific examples of the exercise of that discretion.

This subject is vague, overly broad and unintelligible. No witness will be proffered to address this subject matter.

3. The identity of any properties that were permitted to prepay under ELIPHA and LIHPRHA, and all facts and circumstances related to those properties.

This subject is overly broad and unduly burdensome as it would require a review of information concerning thousands of HUD-insured and state-insured projects that are not at issue in this litigation. Because HUD possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay, this information is not "known or reasonably available" to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition. Moreover, records concerning projects that were permitted to prepay during the 1990's would have been destroyed pursuant to HUD's record retention policy and, therefore, an attempt to identify and review such records would be futile.

**EXHIBIT B**

4. The specific criteria and/or methodology used by HUD to determine whether a property was permitted to prepay under ELIHPA and LIHPRHA.

This objection is overbroad and unduly burdensome because it is not limited to projects owned by plaintiffs and, therefore, would require the review of information concerning thousands of HUD-insured and state-insured projects that are not at issue in this litigation. Furthermore, because HUD possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay, this information is not "known or reasonably available" to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition.

5. The specific steps and authorizations required to process an application to prepay, seek incentives, or sell a property to a qualified purchaser under ELIPHA and LIHPRHA.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address steps and authorizations required to seek incentives or sell a property under the Preservation Statutes.

6. The drafting and development of the forms used to process applications under ELIHPA and LIHPRHA, including specifically all of the versions of the forms known as a Notice of Intent used between 1987 and 1996.

This subject is irrelevant and not calculated to lead to the discovery of admissible evidence. The text of forms used in preservation processing do not alter and, therefore, have no bearing upon statutory and regulatory provisions governing prepayment. Further, because the development of particular forms used in preservation processing occurred as much as 20 years ago, and because the HUD employees who worked on this endeavor cannot presently be ascertained, this information is not known or reasonably available to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition. No witness will be proffered on this subject matter.

**EXHIBIT B**



1. HUD's processing of prepayment and other requests under ELIHPA and/or LIHPRHA for the subject properties.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address "other requests" made under the Preservation Statutes.

3. The specific criteria and/or methodology used by HUD to determine whether each of the plaintiffs would have been eligible to prepay or to receive incentives under ELIHPA and/or LIHPRHA.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address the criteria or methodology applied to requests for incentives under the Preservation Statutes

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications HUD prepared, received or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the plaintiffs

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address the possibility of "the receipt of incentives" by plaintiffs under the Preservation Statutes

5. The document retention policies of HUD, including those of any relevant field offices, and the actual steps taken to produce documents for the plaintiffs.

This description contains two discrete parts: (1) HUD's document retention policies; and (2) the steps taken by counsel in this action to produce documents to the plaintiffs.

With respect to document retention policies, although the National Archives and Records Administration promulgates general guidelines for record retention by Federal agencies, Handbook 2225.6, HUD Records Disposition Schedules, constitutes the primary document establishing HUD's record retention policies both for headquarters and for field offices. This document is available on the web at http://www.hudclips.org/cgi/index.cgion through a search for document number 2225.6.

**EXHIBIT B**

Within Handbook 2225.6, Appendices 1 and 10 set forth HUD's retention policies for records relating to mortgages under Sections 221(d)(3) and 236, Appendix 7 concerns records pertaining to properties that are sold, and Appendix 12 describes the retention policies with respect to files from the Office of Multifamily Housing Assistance Restructuring. The retention policies governing documents held by HUD's Office of Policy Development and Research ("PDR"), to which the Economic and Market Analysis Section ("EMAS") reports, are set forth in Appendix 9. We understand that PDR did not maintain files on individual projects and that any EMAS correspondence would have been kept in local field office project files. We are in the process of confirming that EMAS did not keep files pertaining to specific projects in the field, separate and apart from the field office project files.

There have been few changes in the past few decades to the records disposition schedules identified above. Appendices 1, 7 and 9 have not been amended since 1988. Appendix 10 was updated in August 1996.

In sum, HUD's record retention policies are set forth in a publicly-available, written document. It is therefore unclear what purpose would be served by a deposition on this topic. If you seek deposition testimony about HUD's record retention policies notwithstanding the availability of the HUD's written policy, please explain why such testimony is necessary.

You also request that the United States provide a deponent to describe the actual steps taken to produce documents in this litigation. The production of documents on ripeness in the Anaheim Gardens and Algonquin Heights actions has been supervised and/or performed by counsel at the Department of Justice. We have produced over 100,000 pages of material in these actions. Documents have been obtained, copied and produced from HUD's Washington Docket and the HUD field offices responsible for managing the respective properties. A more comprehensive description of the efforts taken to obtain responsive documents will be provided by October 19, 2007.

Testimony about the efforts taken to compile and produce documents in this litigation would implicate attorney-client communications and protected work product. Indeed, the "person or persons most knowledgeable" about this topic are Department of Justice personnel and agency counsel. While we are willing to provide a written description of the efforts taken to compile documents, attorney testimony on this topic is neither appropriate nor warranted. Accordingly, no witness will be proffered to address this subject.

**EXHIBIT B**



1. The Economic & Market Analysis Section's role in processing prepayment and other requests under ELIHPA and LIHPRHA.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address EMAS's analysis of "other requests" under the Preservation Statutes

2. The nature and extent of EMAS's role in processing prepayment and other requests under ELIHPA and/or LIHPRHA.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address EMAS's analysis of "other requests" under the Preservation Statutes

3. The specific criteria and/or methodology used by EMAS to determine whether a property was permitted to prepay or receive incentives under ELIHPA and/or LIHPRHA.

This objection is overbroad and unduly burdensome because it is not limited to projects owned by plaintiffs and, therefore, would requires the review of information concerning thousands of HUD-insured and state-insured projects that are not at issue in this litigation. Furthermore, because HUD possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay, this information is not "known or reasonably available" to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition.

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications EMAS prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the plaintiffs.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address EMAS's analysis of "the receipt of incentives" by plaintiffs under the Preservation Statutes

5. The document retention policies of EMAS, and the specific steps taken, if any, to produce documents in the above referenced matter in response to plaintiffs' request for production of documents

**EXHIBIT B**

This subject matter is essentially indistinguishable from the 5th subject in plaintiffs' second deposition notice and, accordingly, the same objections are asserted.

EXHIBIT B

EXHIBIT B

**EXHIBIT B**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 93-655C |
| | ) | (Judge Robert H. Hodges, Jr.) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**RULE 30(b)(6) NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, the Plaintiffs Anaheim Gardens, et al., will take the deposition of the Defendant, the United States, upon oral examination before an officer authorized by law to administer oaths, commencing at 401 9th Street N.W., Washington, D.C. 20004 on August 30, 2007, at 9:30 a.m., and continuing from day to day until completed.

Pursuant to Rule 30(b)(6), you shall designate the most knowledgeable person or persons to testify upon its behalf as to the following subject matters:

1. The United States Department of Housing and Urban Development's ("HUD") policies and practices concerning prepayment under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA").

2. The nature and extent of HUD's discretion under ELIHPA and LIHPRHA, and specific examples of the exercise of that discretion.

3. The identity of any properties that were permitted to prepay under ELIHPA and LIHPRHA, and all facts and circumstances related to those properties and the prepayment.

**EXHIBIT B**



4. The specific criteria and/or methodology used by HUD to determine whether a property was permitted to prepay under ELIHPA and LIHPRHA.

5. The specific steps and authorizations required to process an application to prepay, seek incentives, or sell a property to a qualified purchaser under ELIHPA and LIHPRHA.

6. The drafting and development of the forms used to process applications under ELIHPA and LIHPRHA, including specifically all of the versions of the forms known as a Notice of Intent used between 1987 and 1996.

Dated: August 20, 2007

Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 2004
(202) 585-8000

Counsel for Plaintiffs

**EXHIBIT B**



## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 20th day of August 2007, I caused to be delivered by electronic mail the foregoing Rule 30(b)(6) Notice of Deposition to:

David A. Harrington
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice, Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530

Harry J. Kelly

**EXHIBIT B**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ALGONQUIN HEIGHTS, et al.,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | ) | No. 97-582C<br>(Judge Robert H. Hodges, Jr.) |

**RULE 30(b)(6) NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, the Plaintiffs Algonquin Heights, et al., will take the deposition of the Defendant, the United States, upon oral examination before an officer authorized by law to administer oaths, commencing at 401 9th Street, N.W., Washington, D.C. 20004 at 9:30 a.m., on August 30, 2007, and continuing from day to day until completed.

Pursuant to Rule 30(b)(6), you shall designate the most knowledgeable person or persons to testify upon its behalf as to the following subject matters:

1. The United States Department of Housing and Urban Development's ("HUD") policies and practices concerning prepayment under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA").

2. The nature and extent of HUD's discretion under ELIHPA and LIHPRHA, and specific examples of the exercise of that discretion.

3. The identity of any properties that were permitted to prepay under ELIHPA and LIHPRHA, and all facts and circumstances related to those properties and the prepayment.

**EXHIBIT B**



4. The specific criteria and/or methodology used by HUD to determine whether a property was permitted to prepay under ELIHPA and LIHPRHA.

5. The specific steps and authorizations required to process an application to prepay, seek incentives, or sell a property to a qualified purchaser under ELIHPA and LIHPRHA.

6. The drafting and development of the forms used to process applications under ELIHPA and LIHPRHA, including specifically all of the versions of the forms known as a Notice of Intent used between 1987 and 1996.

Dated: August 20, 2007

Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 2004
(202) 585-8000

Counsel for Plaintiffs

EXHIBIT B



## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 20th day of August 2007, I caused to be delivered by electronic mail the foregoing Rule 30(b)(6) Notice of Deposition to:

David A. Harrington
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice, Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530

Harry J. Kelly

EXHIBIT B

# EXHIBIT C

**EXHIBIT B**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| Plaintiffs, | ) | No. 93-655C |
| v. | ) | (Judge Robert H. Hodges, Jr.) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**RULE 30(b)(6) NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, the Plaintiffs Anaheim Gardens, et al., will take the deposition of the Defendant, the United States, upon oral examination before an officer authorized by law to administer oaths, commencing at 401 9th Street, N.W., Washington, D.C. 20004 at 1:30 p.m., on August 31, 2007, and continuing from day to day until completed.

Pursuant to Rule 30(b)(6), you shall designate the most knowledgeable person or persons to testify upon its behalf as to the following subject matters:

1. The United States Department of Housing and Urban Development's ("HUD"), processing of prepayment and other requests under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and/or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA") for the Plaintiffs and subject properties listed in Exhibit A.

2. Whether each of the Plaintiffs and subject properties listed Exhibit A would have been eligible to prepay their government insured mortgages under ELIHPA and/or LIHPRHA, and the basis in each case upon which they would have, or would not have been eligible to do so.

**EXHIBIT B**



3. The specific criteria and/or methodology used by HUD to determine whether each of the Plaintiffs and subject properties listed in Exhibit A would have been eligible to prepay or to receive incentives under ELIHPA and/or LIHPRHA.

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications HUD prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the Plaintiffs and their subject properties listed in Exhibit A.

5. The document retention policies of HUD, including those of any relevant field offices, and the actual steps taken to produce documents for the Plaintiffs and subject properties listed in Exhibit A.

Dated: August 20, 2007

Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 2004
(202) 585-8000

Counsel for Plaintiffs

**EXHIBIT B**



**EXHIBIT A**

Anaheim Gardens
B-L Associates (1550 Beacon Street)
Joseph R. Biafora and Stefi Biafora (Millwood Apartments & Parthenia Manor Apartments)
C-W Associates, L.P. (100 Centre Plaza)
Cedar Gardens Associates
Glenview Gardens L.P.
Peter Hwei-Yang Hsi and Priscilla Lai-Fong Hsi (Waipahu Towers)
Indian Head Manor L.P. I
Norman M. Kronick and Louis Dulien (Halawa View Apartments)
Metro West Ltd., L.P.
Millwood Associates, L.P.
Napa Park Apartments, L.P.
Ontario Townhouses, L.P.
The Palomar Apartments, L.P.
Rock Creek Terrace, L.P.
Sierra Vista One, L.P.
Silverlake Village, L.P.
Thetford Properties III (Market North Apartments #2, River Falls Apartments, Washington Street Apartments, d/b/a Deanswood)
Thetford Properties IV (Glendale Court Apartments, Jefferson Court Apartments, Market North Apartments #1, Southgate Apartments)
620 Su Casa Por Cortez
825 San Tomas Apartments, L.P.
5234 Foothill Apartments

**EXHIBIT B**



**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 20th day of August 2007, I caused to be delivered by electronic mail the foregoing Rule 30(b)(6) Notice of Deposition to:

David A. Harrington
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice, Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530

Harry J. Kelly

**EXHIBIT B**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ALGONQUIN HEIGHTS, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No. 97-582C
(Judge Robert H. Hodges, Jr.)

**RULE 30(b)(6) NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, the Plaintiffs Algonquin Heights, et al., will take the deposition of the Defendant, the United States, upon oral examination before an officer authorized by law to administer oaths, commencing at 401 9th Street, N.W., Washington, D.C. 20004 at 1:30 p.m., on August 30, 2007, and continuing from day to day until completed.

Pursuant to Rule 30(b)(6), you shall designate the most knowledgeable person or persons to testify upon its behalf as to the following subject matters:

1. The United States Department of Housing and Urban Development's ("HUD"), processing of prepayment and other requests under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and/or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA") for the Plaintiffs and subject properties listed in Exhibit A.

2. Whether each of the Plaintiffs and subject properties listed Exhibit A would have been eligible to prepay their government insured mortgages under ELIHPA and/or LIHPRHA, and the basis in each case upon which they would have, or would not have been eligible to do so.

**EXHIBIT B**



3. The specific criteria and/or methodology used by HUD to determine whether each of the Plaintiffs and subject properties listed in Exhibit A would have been eligible to prepay or to receive incentives under ELIHPA and/or LIHPRHA.

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications HUD prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the Plaintiffs and their subject properties listed in Exhibit A.

5. The document retention policies of HUD, including those of any relevant field offices, and the actual steps taken to produce documents for the Plaintiffs and subject properties listed in Exhibit A.

Dated: August 20, 2007

Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 2004
(202) 585-8000

Counsel for Plaintiffs

**EXHIBIT B**



**EXHIBIT A**

Algonquin Heights Associates, L.P.
Brandy Hill Company
Brookside Manor Associates, L.P.
Buckman Gardens L.P.
Cambridge Square North Associates, L.P.
Cambridge Square of Fort Wayne Associates I, L.P.
Cambridge Square of Grand Rapids Associates I, L.P.
Cambridge Square of Grand Rapids Associates II, L.P.
Carriage House North Associates, L.P.
Carriage House of Elkhart Associates, L.P.
Carriage House of Mishawaka Associates I, L.P.
Carriage House of Mishawaka Associates II, L.P.
Carriage House of Muskegon Associates, L.P.
Carriage House South Associates, L.P.
Carriage House West I Associates, L.P.
Carriage House West II Associates, L.P.
Carriage House West III Associates, L.P.
Carriage House West IV Associates, L.P.
Chauncy House Company
Cromwell Court Company
Country Towne Apartments Partnership
Dolly Ann Apartments, L.P.
Emory Grove, L.P. (Willow Creek Apartments)
First Landmark Associates, L.P.
Forest Glen Limited Dividend Housing Association
Fort Heath Associates
Garrison Forest Associates
Glenarden L.P.
Jodani Associates, L.P.
Kimberly Associates L.P.
King's Grant Company
Leader House Associates
Leader Housing Co., Inc.
New Amsterdam Associates
New Amsterdam Houses, Inc.
Pine Crest Company
Riverside Village Company
Suburbia Associates, L.P.
Suehar Associates, L.P.
Tower West Associates, L.P.
Tower West, Inc.
Town & Country Apartments and Townhouses

**EXHIBIT B**



**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 20th day of August 2007, I caused to be delivered by electronic mail the foregoing Rule 30(b)(6) Notice of Deposition to:

David A. Harrington
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice, Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530

Harry J. Kelly

EXHIBIT B

# EXHIBIT D

**EXHIBIT B**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| Plaintiffs, | ) | No. 93-655C |
| v. | ) | (Judge Robert H. Hodges, Jr.) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**RULE 30(b)(6) NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, the Plaintiffs Anaheim Gardens, et al., will take the deposition of the Defendant, the United States, upon oral examination before an officer authorized by law to administer oaths, commencing at 401 9th Street, N.W., Washington, D.C. 20004 at 9:30 a.m., on August 31, 2007, and continuing from day to day until completed.

Pursuant to Rule 30(b)(6), you shall designate the most knowledgeable person or persons to testify upon its behalf as to the following subject matters:

1. The United States Department of Housing and Urban Development's ("HUD"), Economic & Market Analysis Section's ("EMAS") (division, or unit, or group or however else defined) role in processing prepayment and other requests under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and/or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA").

2. The nature and extent of EMAS' role in processing prepayment and other requests under ELIHPA and/or LIHPRHA.

3. The specific criteria and/or methodology used by EMAS to determine whether a property was permitted to prepay or receive incentives under ELIHPA and/or LIHPRHA.

**EXHIBIT B**



4. Any analysis, memoranda, reports, internal reports, or other written or oral communications EMAS prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the Plaintiffs and their subject properties (see list attached as Exhibit A).

5. The document retention policies of EMAS, and the specific steps taken, if any, to produce documents in the above referenced matter in response to the Plaintiff's Request for Production of Documents.

Dated: August 20, 2007

Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 2004
(202) 585-8000

Counsel for Plaintiffs

**EXHIBIT B**



**EXHIBIT A**

Anaheim Gardens
B-L Associates (1550 Beacon Street)
Joseph R. Biafora and Stefi Biafora (Millwood Apartments & Parthenia Manor Apartments)
C-W Associates, L.P. (100 Centre Plaza)
Cedar Gardens Associates
Glenview Gardens L.P.
Peter Hwei-Yang Hsi and Priscilla Lai-Fong Hsi (Waipahu Towers)
Indian Head Manor L.P. I
Norman M. Kronick and Louis Dulien (Halawa View Apartments)
Metro West Ltd., L.P.
Millwood Associates, L.P.
Napa Park Apartments, L.P.
Ontario Townhouses, L.P.
The Palomar Apartments, L.P.
Rock Creek Terrace, L.P.
Sierra Vista One, L.P.
Silverlake Village, L.P.
Thetford Properties III (Market North Apartments #2, River Falls Apartments, Washington Street Apartments, d/b/a Deanswood)
Thetford Properties IV (Glendale Court Apartments, Jefferson Court Apartments, Market North Apartments #1, Southgate Apartments)
620 Su Casa Por Cortez
825 San Tomas Apartments, L.P.
5234 Foothill Apartments

**EXHIBIT B**



**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 20th day of August 2007, I caused to be delivered by electronic mail the foregoing Rule 30(b)(6) Notice of Deposition to:

David A. Harrington
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice, Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530

Harry J. Kelly

**EXHIBIT B**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ALGONQUIN HEIGHTS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 97-582C (Judge Robert H. Hodges, Jr.) |

**RULE 30(b)(6) NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, the Plaintiffs Algonquin Heights, et al., will take the deposition of the Defendant, the United States, upon oral examination before an officer authorized by law to administer oaths, commencing at 401 9th Street, N.W., Washington, D.C. 20004 at 9:30 a.m., on August 31, 2007, and continuing from day to day until completed.

Pursuant to Rule 30(b)(6), you shall designate the most knowledgeable person or persons to testify upon its behalf as to the following subject matters:

1. The United States Department of Housing and Urban Development's ("HUD"), Economic & Market Analysis Section's ("EMAS") (division, or unit, or group or however else defined) role in processing prepayment and other requests under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and/or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA").

2. The nature and extent of EMAS' role in processing prepayment and other requests under ELIHPA and/or LIHPRHA.

3. The specific criteria and/or methodology used by EMAS to determine whether a property was permitted to prepay or receive incentives under ELIHPA and/or LIHPRHA.

**EXHIBIT B**



4. Any analysis, memoranda, reports, internal reports, or other written or oral communications EMAS prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the Plaintiffs and their subject properties (see list attached as Exhibit A).

5. The document retention policies of EMAS, and the specific steps taken, if any, to produce documents in the above referenced matter in response to the Plaintiff's Request for Production of Documents.

Dated: August 20, 2007

Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 2004
(202) 585-8000

Counsel for Plaintiffs

**EXHIBIT B**



**EXHIBIT A**

Algonquin Heights Associates, L.P.
Brandy Hill Company
Brookside Manor Associates, L.P.
Buckman Gardens L.P.
Cambridge Square North Associates, L.P.
Cambridge Square of Fort Wayne Associates I, L.P.
Cambridge Square of Grand Rapids Associates I, L.P.
Cambridge Square of Grand Rapids Associates II, L.P.
Carriage House North Associates, L.P.
Carriage House of Elkhart Associates, L.P.
Carriage House of Mishawaka Associates I, L.P.
Carriage House of Mishawaka Associates II, L.P.
Carriage House of Muskegon Associates, L.P.
Carriage House South Associates, L.P.
Carriage House West I Associates, L.P.
Carriage House West II Associates, L.P.
Carriage House West III Associates, L.P.
Carriage House West IV Associates, L.P.
Chauncy House Company
Cromwell Court Company
Country Towne Apartments Partnership
Dolly Ann Apartments, L.P.
Emory Grove, L.P. (Willow Creek Apartments)
First Landmark Associates, L.P.
Forest Glen Limited Dividend Housing Association
Fort Heath Associates
Garrison Forest Associates
Glenarden L.P.
Jodani Associates, L.P.
Kimberly Associates L.P.
King's Grant Company
Leader House Associates
Leader Housing Co., Inc.
New Amsterdam Associates
New Amsterdam Houses, Inc.
Pine Crest Company
Riverside Village Company
Suburbia Associates, L.P.
Suehar Associates, L.P.
Tower West Associates, L.P.
Tower West, Inc.
Town & Country Apartments and Townhouses

**EXHIBIT B**



**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 20th day of August 2007, I caused to be delivered by electronic mail the foregoing Rule 30(b)(6) Notice of Deposition to:

David A. Harrington
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice, Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530

Harry J. Kelly

**EXHIBIT B**

# EXHIBIT E

**EXHIBIT B**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 93-655C |
| v. | ) | Judge Robert H. Hodges, Jr. |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, provides the following response to plaintiffs' second set of interrogatories. The defendant's response is based upon its current knowledge, information, and belief after making a reasonable inquiry. In responding to plaintiffs' interrogatories, we reserve the right to raise objections at trial or in any subsequent proceeding, including but not limited to objections as to admissibility, authenticity, accuracy, relevance and foundation.

**OBJECTIONS**

Defendant asserts and incorporates by reference the following objections to plaintiffs' interrogatories as though they were set forth in full in each response to each interrogatory:

1. Defendant objects to each interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work product immunity, the deliberative process privilege, or any other privilege or immunity, including the Privacy Act of 1974, 5 U.S.C. § 552a.

2. Defendant objects to each interrogatory to the extent that it seeks information prepared or developed in anticipation of litigation or for trial when plaintiffs have not shown that

**EXHIBIT B**

they have substantial need of such materials in the preparation of their case in that plaintiffs are unable, without undue hardship, to obtain the substantial equivalent of such information by other means.

3. Defendant objects to each interrogatory to the extent that it seeks information irrelevant to the issues being litigated in this case and not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendant objects to those interrogatories that in whole or in part seek expert opinions.

5. Defendant objects to each interrogatory that seeks the disclosure of information previously provided by plaintiff to the defendant or to any Government agency.

6. Defendant objects to plaintiffs' interrogatories as beyond the scope of RCFC 33 to the extent that they purport to direct defendant to divulge information beyond what is known by current officers or employees of the Department of Housing and Urban Development ("HUD") or obtainable from documents in the custody or control of HUD.

7. Defendant objects that plaintiffs' interrogatories are vague, overly broad and unduly burdensome in that they fail to specify any particular time or time period.

8. Defendant's objections, stated above, are hereby incorporated by reference to each interrogatory, and shall not be repeated as objections to each definition, instruction and request to which they are applicable. In addition, defendant asserts certain specific objections set forth below. By stating specific objections, defendant does not waive any of the objections incorporated herein.

**EXHIBIT B**

**INTERROGATORIES**

**Interrogatory No. 11:**

For request for admission No. 11 if you respond with anything other than an unqualified admission, describe in detail the basis for your answer, including the name of the property or properties and the reasons supporting the approval.

**Response:**

Defendant objects that this interrogatory is overly broad and unduly burdensome as it seeks information about thousands of HUD-insured and state-insured projects that are not at issue in this litigation. Defendant possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay. Subject to and without waiving these objections, defendant responds that on May 3, 1997, in connection with other litigation, the United States filed a declaration that addresses, among other things, prepayment under the Preservation Statutes. This declaration was executed by Joseph Malloy, the then-Deputy Director of the Existing Products/Preservation Division, Office of Multi-Family Housing Development, United States Department of Housing and Urban Development. In his declaration, Mr. Malloy explains that eight projects sought to prepay under ELIHPA and LIHPRHA and that of these eight projects, three were permitted to prepay by HUD. Malloy Decl. ¶ 6. A true and correct copy of the Malloy Declaration is attached as Exhibit A.

**EXHIBIT B**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0277
Fax: (202) 307-0972

Attorneys for Defendant

June 15
~~May~~ ___, 2007

EXHIBIT B

# EXHIBIT A

**EXHIBIT B**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GREENBRIER (LAKE COUNTY TRUST COMPANY NO. 1391), AN INDIANA GENERAL PARTNERSHIP, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | No. 96-326C<br>No. 96-364C<br>No. 96-435C<br>No. 96-697C<br>(Judge Merow) |

DECLARATION OF JOSEPH MALLOY

I, Joseph Malloy, Deputy Director of the Existing Products/Preservation Division, Office of Multifamily Housing Development, United States Department of Housing and Urban Development ("HUD"), do hereby declare under penalty of perjury that I am responsible for administration of the housing "preservation" programs described below, and that the following statements are based upon my personal knowledge and information provided to me by my staff:

1. The housing projects listed on Attachment A had or currently have mortgages insured by the Federal government under Section 221(d)(3) or Section 236 of the National Housing Act, 12 U.S.C. § 1715l(d)(3) (1994). These programs required a series of separate contractual agreements, including contracts of mortgage insurance between the Federal Housing Administration ("FHA") and the private lenders, mortgage notes given by the project owners ("owner-participants") to their private lenders to finance construction of the projects, as well as "regulatory agreements" between the project owner and the FHA, which governed various

EXHIBIT B

aspects of the project's operation and control as long as the Government was obligated to insure or hold their respective mortgages. These controls included low-income affordability restrictions. Consistent with regulatory policy at the time under the Section 221(d)(3) and Section 236 programs, many of the mortgage notes provided that the mortgagor (i.e., owner-participant) could prepay its debt after 20 years from FHA final endorsement of the mortgage without prior Government approval, and thus terminate the government's mortgage insurance contract and regulatory controls.

2. Beginning in the late 1980s, Congress enacted legislation designed to "preserve" the stock of low-income housing developed and maintained under the Section 221(d)(3) and Section 236 programs. As described below, the nature of these preservation efforts differ markedly between two periods: 1988 through 1996, and 1996 to the present.

I. Preservation of Low-Income Housing (1988-1996)

3. In February 1988, Congress enacted the Emergency Low-Income Housing Preservation Act of 1987, Pub. L. No. 100-242, Title II, § 201, 101 Stat. 1815, 1877 (February 5, 1987) (codified at 12 U.S.C. § 1715l note) (known as "ELIHPA" or "Title II"). ELIHPA provided that owners of "eligible low income housing" could prepay a FHA-insured mortgage under the Section 221(d)(3) and Section 236 programs only in accordance with a "Plan of Action" approved by HUD. As an inducement not to seek prepayment, ELIHPA also authorized HUD to provided financial

**EXHIBIT B**

"incentives" for owner-participants that agreed to extend the low-income affordability restrictions applicable to their projects voluntarily. An owner-participant seeking to initiate prepayment or receive incentives was required to file with HUD a "Notice of Intent" and, after receiving certain information from HUD, a Plan of Action. In order for HUD to approve a Plan of Action that involved prepayment and termination of the low-income affordability restrictions, HUD was required to make a written finding that (1) implementation of the Plan of Action would not materially increase economic hardship for current tenants and (2) the supply of vacant, comparable housing would be sufficient to serve the community.

4. In November 1990, Congress enacted the Low Income Housing and Resident Homeownership Act of 1990, Pub. L. No. 101-625, Title VI, § 601, 104 Stat. 4249 (November 28, 1990) (codified at 12 U.S.C. §§ 4101 et seq.) (known as "LIHPRHA" or "Title VI"). LIHPRHA continued the restrictions upon the prepayment of mortgages and adopted essentially the same general concepts of "Notice of Intent" and "Plan of Action" as prescribed in ELIHPA. The findings required under LIHPRHA for HUD to approve a Plan of Action that proposed to terminate or extend the low-income affordability restrictions are similar to the findings previously required under ELIHPA. For owner-participants that request and receive approval to prepay, LIHPRHA Section 223(b)-(d) requires the owner-participant to provide certain tenant displacement assistance upon prepayment if the project is

EXHIBIT B

determined to be in a "low-vacancy area" or if prepayment will affect "special needs" tenants.

5. ELIHPA and LIHPRHA allowed prepayment of FHA-insured mortgages in certain circumstances. Whether comparable affordable housing is available in any areas in which the projects are located and whether any of the projects can possibly satisfy the conditions for prepayment set forth in ELIHPA or LIHPRHA, are factual issues for HUD to determine pursuant to the particularized administrative process under ELIHPA and LIHPRHA. HUD has exclusive or primary jurisdiction to make such findings.

6. The incentives and assistance available under ELIHPA or LIHPRHA have induced most property owners to remain in the Section 221(d)(3) and 236 programs voluntarily. The Section 221(d)(3) and Section 236 mortgage insurance programs involve a total of 3,668 properties as of March 1, 1997. Only eight of these properties have sought to prepay their mortgages and to withdraw from the programs under ELIHPA or LIHPRHA. Of this limited number, three have been permitted to prepay and withdraw.

7. None of the owner-participants listed on Attachment A sought to prepay their FHA-insured mortgage and terminate the low-income affordability restrictions applicable to their projects under ELIHPA or LIHPRHA.

8. As of this date, the owners of the housing projects identified on Attachment A whose status is listed as "COMPLETE" have, in lieu of prepayment, completed the administrative process under ELIHPA or LIHPRHA to either (1) extend the low-income

**EXHIBIT B**

affordability restrictions applicable to their projects or (2) transfer their projects to qualified purchasers.

9. As of this date, the owners of the housing projects identified on Attachment A whose status is listed as "IN PROCESS" have, in lieu of prepayment, initiated the administrative process under ELIHPA or LIHPRHA to either (1) extend the low-income affordability restrictions applicable to their projects or (2) transfer their projects to qualified purchasers. These projects have yet to submit or, if submitted, have yet to receive approval of, their respective Plans of Action. Thus, HUD's action with respect to these projects under the administrative process provided by ELIHPA or LIHPRHA is not final.

10. As of this date, the owners of the housing projects identified on Attachment A whose status is listed as "APPROVED" have, in lieu of prepayment, initiated the administrative process under ELIHPA or LIHPRHA to either (1) extend the low-income affordability restrictions applicable to their projects or (2) transfer their projects to qualified purchasers. These projects have had their respective Plans of Action approved by HUD, but are awaiting congressional appropriations to fund the incentives provided by their respective Plans of Action. Thus, HUD's action with respect to these projects under the administrative process provided by ELIHPA or LIHPRHA is not final.

11. As of this date, the owners of the housing projects identified on Attachment A whose status is listed as "NONE" have yet to initiate, or have withdrawn their efforts to initiate, the

EXHIBIT B

administrative process under ELIHPA or LIHPRHA. Thus, HUD's action with respect to these projects under the administrative process provided by ELIHPA or LIHPRHA is not final.

II. Preservation of Low-Income Housing (1996 to Present)

12. In March 1996, Congress enacted the Housing Opportunity Program Extension Act of 1996, Pub. L. No. 104-120, § 2, 110 Stat. 834 (March 28, 1996) (known as the "Extension Act"). The Extension Act authorizes owner-participants to prepay their mortgages and thus to remove their projects from the Section 221(d)(3) and Section 236 programs without resort to the administrative process under ELIHPA or LIHPRHA, provided that the projects do not raise rents for 60 days following prepayment. Owner-participants that prepay under the Extension Act must continue to abide by other existing contractual obligations, if any, independent of the mortgage note.

13. Since March 28, 1996, the housing projects identified on Attachment A have been qualified under the Extension Act to prepay their mortgages without resort to the administrative process under ELIHPA or LIHPRHA, provided that the projects do not raise rents for 60 days following prepayment.

14. As of this date, the owners of the housing projects identified on Attachment A whose status is listed as "PREPAID" have elected to prepay their mortgages under the Extension Act.

15. In September 1996, Congress authorized "Section 8" tenant assistance in lieu of the owner-provided tenant displacement assistance under LIHPRHA Section 223 (codified at 12

EXHIBIT B

U.S.C. § 4113). See Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1997, Pub. L. No. 104-204, Title II, 110 Stat 2874 (September 26, 1996). Consequently, HUD is not presently requiring program participants that prepay their mortgages to provide assistance to displaced tenants under Section 223(b)-(d).

Executed on May 7, 1997

JOSEPH MALLOY, Deputy Director
Existing Products/Preservation Division
Office of Multifamily Housing Development
Department of Housing and Urban Development
451 7th Street, N.W.
Washington, D.C. 20410

**EXHIBIT B**

ATTACHMENT A

| NO. | PLAINTIFF | PROJECT NAME | FHA NO. | CITY | ST | STATUS |
|---|---|---|---|---|---|---|
| **GREENBRIER, ET AL. V. UNITED STATES, CASE NO. 96-324C, INITIAL COMPLAINT, FILED JUNE 6, 1996** | | | | | | |
| G01 | GREENBRIER (LAKE CO. TRUST CO. NO. 1391) | GREENBRIER APARTMENTS | 073-55063 | GARY | IN | PREPAID |
| G02 | WOODLAKE VILLAGE (LAKE CO. TRUST. NO. 158 | WOODLAKE VILLAGE I | 073-44076 | GARY | IN | PREPAID |
| **CARRIER ARMS, ET AL. V. UNITED STATES, CASE NO. 96-364C, FILED JUNE 24, 1996** | | | | | | |
| CA01 | CARRIER ARMS APTS. | CARRIER ARMS | 112-55017 | GRAND PRAIRIE | TX | IN PROCESS |
| CA02 | COLONIAL TERRACE APTS | OAKWOOD TERRACE | 084-55010 | SOUTH NEWTON | MO | NONE |
| CA03 | FIRST BROOKWOOD LTD. | BROOKWOOD APTS | 118-44102 | OWASSO | OK | NONE |
| CA04 | FIRST BUENA VIDA LTD. | BUENA VIDA APARTMENTS | 116-44044 | LAS CRUCES | NM | NONE |
| CA05 | FIRST FAIRMONT TERRACE, LTD. | FAIRMONT TERRACE | 118-55021 | TULSA | OK | NONE |
| CA06 | FIRST FAIRMONT II, LTD. | FAIRMONT II APTS | 118-44111 | TULSA | OK | NONE |
| CA07 | FIRST PARKWOOD LTD. | PARKWOOD APTS | 118-44096 | BIXBY | OK | NONE |
| CA08 | FIRST PLAZA DORADO LTD. | PLAZA DORADO | 116-44034 | ALBUQUERQUE | NM | NONE |
| CA09 | FIRST PLAZA HILLS EAST LTD. | PLAZA HILL APTS | 118-44005 | TULSA | OK | NONE |
| CA10 | FIRST VILLAGE WEST LTD. | VILLAGE WEST | 118-44040 | SALLISAW | OK | NONE |
| CA11 | HIGH HOUSE VILLAGE APTS. | HIGH HOUSE APTS. | 086-44049 | DICKSON | TN | NONE |
| CA12 | HILLCREST APTS. LTD. | HILLCREST APTS. | 112-44083 | MESQUITE | TX | IN PROCESS |
| CA13 | JACKSON MANOR APTS | JACKSON MANOR | 112-44011 | MESQUITE | TX | IN PROCESS |
| CA14 | SKYLINE FOX HOLLOW JOINT VENTURE | FOX HOLLOW | 112-55062 | GRAND PRAIRIE | TX | IN PROCESS |
| CA15 | SOUTH PARK APTS. | SOUTH PARK GDNS | 112-35026 | CORSICANA | TX | IN PROCESS |
| CA16 | SOUTHSIDE VILLAGE APTS. | SOUTHSIDE VILLAGE | 113-44076 | BROWNWOOD | TX | NONE |
| CA17 | THE VILLAGES LTD. | THE VILLAGES | 112-35035 | WACO | TX | IN PROCESS |
| CA18 | UNIVERSITY GARDENS APTS. | UNIVERSITY GARDENS | 112-44200 | WAXAHACHIE | TX | IN PROCESS |
| **NOTICE OF ADDITIONAL PLAINTIFF, CARRIER ARMS, ET AL. V. UNITED STATES, CASE NO. 96-364C, DATED JULY 11, 1996** | | | | | | |
| NAP01 | JESSE A. COFFEY | SINGING OAKS APTS. | 112-44058 | DENTON | TX | IN PROCESS |
| **HOBBS, ET AL. V. UNITED STATES, CASE NO. 96-435C, FILED JULY 19, 1996** | | | | | | |
| H01a | C.A. HOBBS & LAURYCE G. HOBBS | TRUMAN ARMS APTS | 063-35027 | PENSACOLA | FL | IN PROCESS |
| H01b | " | TRUMAN ARMS APTS PHS 2 | 063-35066 | PENSACOLA | FL | NONE |
| H02 | CHARLES L. ADRIAN | ROSA PARKS | 043-44061 | COLUMBUS | OH | IN PROCESS |
| H03 | HUGH V. SMITH ENTERPRISES, INC. | DANYA PARK APTS | 062-44018 | PRATTVILLE | AL | NONE |
| H04 | SOUTHBROOK GARDEN APTS. LTD. | SOUTHBROOK GARDENS | 065-44008 | JACKSON | MS | IN PROCESS |
| H05 | SUGAR GROVE SQUARE, LTD. | SUGAR GROVE SQUARE | 043-44078 | WESTERVILLE | OH | APPROVED |



8

**EXHIBIT B**

ATTACHMENT A

| NO. | PLAINTIFF | PROJECT NAME | FHA NO. | CITY | ST | STATUS |
|---|---|---|---|---|---|---|
| **GREENBRIER, ET AL. V. UNITED STATES, CASE NO. 96-324C, AMENDED COMPLAINT, FILED AUGUST 21, 1996** | | | | | | |
| G03 | BROADWAY APTS | BROADWAY APARTMENTS I | 129-44020 | EL CAJON, | CA | COMPLETE |
| G04 | CALIFORNIA PROPERTIES-LEISURE LIFE | LEISURE LIFE APTS. | 129-55001 | SAN DIEGO, | CA | COMPLETE |
| G05 | CALIFORNIA PROPERTIES-VILLAGES | VILLAGES APTS. | 129-55005 | SAN DIEGO, | CA | COMPLETE |
| G06 | CENTURY NORTH APTS. | CENTURY NORTH | 092-44071 | OAKDALE | MN | COMPLETE |
| G07 | KEY LARGO PARTNERS, LTD. | KEY LARGO | 129-44003 | EL CAJON, | CA | COMPLETE |
| G08 | MARYLAND PARK LTD. | MARYLAND PARK | 092-55022 | ST. PAUL, | MN | COMPLETE |
| G09a | THORA BROUT POLLACK | OLD TOWNE I | 051-44040 | HAMPTON, | VA | IN PROCESS |
| G09b | " | OLD TOWNE II | 051-44059 | HAMPTON | VA | IN PROCESS |
| **NOTICE OF ADDITIONAL PLAINTIFFS, DATED SEPTEMBER 19, 1996** | | | | | | |
| NAP029 | APPLE BLOSSOM ASSOCS. | APPLE BLOSSOM ACRES | 014-44043 | LOCKPORT | NY | NONE |
| NAP030 | CALIFORNIA-PROPERTIES-AGUILAR | MT. AGUILAR APARTMENTS | 129-55011 | SAN DIEGO, | CA | COMPLETE |
| NAP031 | CALIFORNIA-PROPERTIES-GARDENS | PENASQUITOS GARDENS | 129-55014 | SAN DIEGO | CA | PREPAID |
| NAP032 | EL CAPITAN APTS. LTD. | EL CAPITAN APTS. | 112-44015 | DALLAS | TX | IN PROCESS |
| NAP033 | EULESS SQUARE LTD | EULESS SQUARE | 113-44029 | EULESS | TX | |
| NAP034 | GARLAND GARDENS, LTD. | GARLAND GARDENS | 112-44119 | GARLAND | TX | IN PROCESS |
| NAP035 | LEIGH ANN APTS, LTD. | LEIGH ANN APTS | 112-44041 | DALLAS | TX | IN PROCESS |
| NAP036 | ROLLING MEADOWS, LTD. | ROLLING MEADOWS | 112-44001 | DALLAS | TX | IN PROCESS |
| NAP037 | WALNUT MANOR LTD | WALNUT MANOR | 115-44169 | SAN ANTONIO | TX | NONE |
| **NOTICE OF ADDITIONAL PLAINTIFF, DATED SEPTEMBER 30, 1996** | | | | | | |
| NAP038 | HIGHLAND HILLS DRIVE APTS. | HIGHLAND HILLS DRIVE | 112-35251 | DALLAS | TX | IN PROCESS |
| **NOTICE OF ADDITIONAL PLAINTIFFS, DATED OCTOBER 31, 1996** | | | | | | |
| NAP044 | ALCAZAR APTS. | ALCAZAR APARTMENTS | 084-44157 | KANSAS CITY | MO | NONE |
| NAP045 | AQUA TERRACE APTS.– | AQUA TERRACE APTS | 122-44547 | BAKERSFIELD, | CA | NONE |
| NAP046 | BAINBRIDGE APTS. | BAINBRIDGE APTS. | 084-44156 | KANSAS CITY | MO | NONE |
| NAP047 | BEL AIRE DEV CO | RIVERBEND APTS | 045-55001 | CLARKSBURG | WV | PREPAID |
| NAP048 | BOYLE APTS. | BOYLE APARTMENTS | 122-44376 | LOS ANGELES, | CA | NONE |
| NAP049 | CASA GRANDE APTS. | WILLOW APTS | 121-44119 | CERES | CA | NONE |
| NAP050 | CASA GRIFFIN APTS. | CASA GRIFFIN APARTMENTS | 122-44506 | LOS ANGELES, | CA | NONE |
| NAP051 | COLUMBIA APTS. | COLUMBIA APARTMENTS | 122-44592 | LOS ANGELES, | CA | NONE |

9

**EXHIBIT B**

ATTACHMENT A

| NO. | PLAINTIFF | PROJECT NAME | FHA NO. | CITY | ST | STATUS |
|---|---|---|---|---|---|---|
| NAP052 | 5000 S. HAMPTON, L.P. | HAMPTON TERRACE APTS. | 112-55045 | DALLAS | TX | IN PROCESS |
| NAP053 | GEORGIAN COURT APTS. | GEORGIAN COURT | 084-44153 | KANSAS CITY | MO | NONE |
| NAP054 | HENDERSON, INC. | PLEASANT HILL VILLAGE | 091-44039 | RAPID CITY, | SD | IN PROCESS |
| NAP055 | JEWEL TERRACE APTS. | JEWEL TERRACE | 122-44532 | LOS ANGELES, | CA | NONE |
| NAP056 | LINDA VISTA APTS. | LINDA VISTA APARTMENTS | 084-44147 | KANSAS CITY | MO | NONE |
| NAP057 | MARYGOLD APTS. | MARYGOLD GARDENS | 122-44278 | FONTANA, | CA | NONE |
| NAP058 | PENNBROOKE APTS. | PENNBROOKE APARTMENTS | 084-44155 | KANSAS CITY | MO | NONE |
| NAP059 | PRINCESS APTS. | PRINCESS APARTMENTS | 122-44709 | LOS ANGELES, | CA | NONE |
| NAP060 | PREMIER APTS. | PREMIER APARTMENTS | 122-44523 | LOS ANGELES, | CA | NONE |
| NAP061 | QUEEN APTS. | QUEEN APARTMENTS | 122-44640 | LOS ANGELES, | CA | NONE |
| NAP062 | HARRY THOMPSON | PARK TERRACE | 126-44009 | PORTLAND | OR | PREPAID |
| NAP063 | VACAVILLE PARK APTS. | VACAVILLE PARK | 121-55066 | VACAVILLE | CA | PREPAID |
| NAP064 | WILSON DEVELOPMENT CO. | WILSON TOWNHOUSES I | 034-44068 | SINKING SPRING | PA | APPROVED |
| NAP065 | WOODLANE APTS. | WOODLANE APARTMENTS | 122-44551 | BAKERSFIELD, | CA | NONE |

**AMERICAN RIVER, ET AL. V. UNITED STATES, CASE NO. 96-697C, FILED OCTOBER 31, 1996**

| NO. | PLAINTIFF | PROJECT NAME | FHA NO. | CITY | ST | STATUS |
|---|---|---|---|---|---|---|
| AR01 | AMERICAN RIVER LTD. | AMERICAN RIVER GARDENS | 136-44235 | SACRAMENTO, | CA | PREPAID |
| AR02 | ASPEN MANOR LTD. | ASPEN MANOR | 122-44283 | EL MONTE, | CA | PREPAID |
| AR03 | BEAR MOUNTAIN VILLAGE LTD. | BEAR MOUNTAIN VILLAGE | 122-44337 | ARVIN, | CA | PREPAID |
| AR04 | CAMELOT NORTH CO. | CAMELOT NORTH | 136-44114 | SACRAMENTO, | CA | APPROVED |
| AR05 | CAMELOT SOUTH CO. | CAMELOT SOUTH | 136-44113 | SACRAMENTO, | CA | APPROVED |
| AR06 | CANYON APTS. CO. | CANYON APARTMENTS | 129-44094 | OCEANSIDE | CA | PREPAID |
| AR07 | CASCADE TERRACE LTD. | CASCADE TERRACE | 122-44295 | WESTMINSTER, | CA | PREPAID |
| AR08 | COTTONWOOD MANOR CO. | COTTONWOOD MANOR | 122-44282 | EL MONTE, | CA | PREPAID |
| AR09 | ELLENDALE ARMS APTS. | ELLENDALE ARMS | 122-44248 | LOS ANGELES, | CA | COMPLETE |
| AR10 | ESCONDIDO PARK APTS. | ESCONDIDO PARK | 129-44060 | ESCONDIDO, | CA | PREPAID |
| AR11 | FOOTHILL GARDENS LTD. | FOOTHILL GARDENS | 125-44031 | CARSON CITY | NV | PREPAID |
| AR12 | HOLLISTER PLAZA LTD. | HOLLISTER PLAZA | 121-44268 | HOLLISTER | CA | APPROVED |
| AR13 | IMPERIAL VILLA APTS. | IMPERIAL VILLA APTS | 129-44054 | SAN DIEGO | CA | NONE |
| AR14 | LA VERNE TERRACE LTD. | LA VERNE TERRACE | 122-44296 | LA VERNE, | CA | PREPAID |
| AR15 | LAUREL CANYON TERRACE | LAUREL CANYON TERRACE | 122-44097 | ARLETA, | CA | COMPLETE |
| AR16 | MEYLER PARK APARTMENTS | MEYLER PARK APARTMENTS | 122-44537 | SAN PEDRO, | CA | PREPAID |
| AR17 | MILLER AVE APTS | MILLER AVENUE APARTMENTS | 122-44178 | FONTANA, | CA | APPROVED |
| AR20 | PALMDALIA LTD | PALMDALIA APARTMENTS | 122-44232 | PALMDALE, | CA | PREPAID |
| AR21 | QUEEN ANN INVESTMENT CO. | QUEEN ANN APTS. | 136-44291 | YUBA CITY, | CA | IN PROCESS |
| AR22 | ROSE GARDENS HOUSING LTD. | ROSE GARDEN TOWNHOUSES | 125-44001 | N. LAS VEGAS | NV | PREPAID |
| AR23 | SANTA CLARA TERRACE CO. | SANTA CLARA TERRACE | 136-44130 | ROSEVILLE, | CA | PREPAID |

10

**EXHIBIT B**

ATTACHMENT A

| NO. | PLAINTIFF | PROJECT NAME | FHA NO. | CITY | ST | STATUS |
|---|---|---|---|---|---|---|
| AR24 | TEMPE APTS. | TEMPE APARTMENTS | 123-44096 | TEMPE, | AZ | COMPLETE |
| AR25 | TEMPE GARDEN I | COLLEGE GARDENS | 136-44160 | SACRAMENTO, | CA | PREPAID |
| AR26 | TRASK LTD. | TRASK APARTMENTS | 122-44317 | WESTMINSTER, | CA | PREPAID |
| AR27 | VERNAL HOUSING LTD. | VERNAL APARTMENTS | 136-44158 | MANTECA, | CA | PREPAID |
| AR28 | VILLA CAPRI LTD. | VILLA CAPRI | 122-44107 | BAKERSFIELD, | CA | PREPAID |
| AR29 | WEST ARMS | WESTMINISTER ARMS APTS. | 122-44507 | GARDEN GROVE | CA | PREPAID |
| **NOTICE OF ADDITIONAL PLAINTIFFS, DATED NOVEMBER 8, 1996** | | | | | | |
| NAP066 | BATTLES FARM CO. | BATTLES FARM VILLAGE | 023-44075 | BROCKTON | MA | COMPLETE |
| NAP067 | BAY VILLAGE CO. | BAY VILLAGE | 023-44005 | FALL RIVER | MA | IN PROCESS |
| NAP068 | BRANDYWINE VILLAGE CO. | BRANDYWYNE VILLAGE | 023-55020 | EAST BOSTON | MA | COMPLETE |
| NAP069 | BURBANK APTS. CO. | BURBANK APARTMENTS | 023-55172 | BOSTON | MA | COMPLETE |
| NAP070 | CUMMINGS TOWERS CO. | CUMMINS TOWERS | 023-44072 | BOSTON | MA | COMPLETE |
| NAP071 | HERITAGE APTS. ASSOCS. | HERITAGE APARTMENTS | 091-35015 | SIOUX FALLS, | SD | APPROVED |
| NAP072 | HIGH POINT VILLAGE CO. | HIGH POINT VILLAGE | 023-55008 | ROSLINDALE | MA | COMPLETE |
| NAP073 | HIGHLAND HILLS APTS. LTD. | HIGHLAND HILLS APTS. | 112-44086 | DALLAS | TX | IN PROCESS |
| NAP074 | KENT FARM CO. | KENT FARM VILLAGE | 016-55007 | EAST PROVIDENCE | RI | COMPLETE |
| NAP075 | MOUNTAIN VILLAGE CO. | MOUNTAIN VILLAGE | 023-55026 | WORCESTER | MA | COMPLETE |
| NAP076 | OAK HOLLOW APTS. LTD. | OAK HOLLOW | 112-44049 | DALLAS | TX | IN PROCESS |
| NAP077 | PRAIRIE CREEK MANOR ASSOCS. | PRAIRIE CREEK MANOR | 112-44020 | DALLAS | TX | IN PROCESS |
| NAP078 | R.C. SCOTT APTS. | R. C. SCOT APARTMENTS | 103-35024 | SCOTTSBLUFF | NE | PREPAID |
| NAP079 | ROLLING HILLS ASSOCS. | ROLLING HILLS T.H. | 091-35090 | SIOUX FALLS, | SD | APPROVED |
| NAP080 | ROSELAND APTS INC | ROSELAND APTS I | 053-55015 | CHARLOTTE | NC | APPROVED |
| NAP081 | ROSELAND APTS INC | ROSELAND APARTMENTS I AND | 053-55043 | CHARLOTTE, | NC | APPROVED |
| NAP082 | TAMMY BROOK CO. | TAMMY BROOK APARTMENTS | 023-55038 | WEYMOUTH | MA | COMPLETE |
| NAP083 | THE CAMELOT COMPANY | CAMELOT COURT | 023-55019 | BRIGHTON | MA | COMPLETE |
| NAP084 | VALLEY VIEW APTS. INC. | VALLEY VIEW | 091-35011 | SIOUX FALLS, | SD | APPROVED |
| NAP085 | WOODLAND CITY, LTD | WOODLAND CITY | 112-44066 | DALLAS | TX | IN PROCESS |
| **NOTICE OF ADDITIONAL PLAINTIFFS, DATED DECEMBER 10, 1996** | | | | | | |
| NAP115 | BAKER STREET ASSOCS | DOVER GARDENS II | 031-55039 | DOVER | NJ | PREPAID |
| NAP116 | CARSON APTS | CARSON APARTMENTS | 122-44371 | CARSON, | CA | PREPAID |
| NAP117 | CENTRAL APTS | CENTRAL APARTMENTS 2 | 122-44316 | SOUTH ELMONTE, | CA | PREPAID |
| NAP118 | CENTRALIA APTS | CENTRALIA APARTMENTS | 122-44334 | LAKEWOOD, | CA | PREPAID |
| NAP119 | DELANO GARDENS APTS | DELANO GARDENS | 122-35110 | DELANO, | CA | IN PROCESS |
| NAP120 | L A PRO 30 APTS | LA PRO 30 APTS | 122-44542 | LOS ANGELES, | CA | NONE |



11

**EXHIBIT B**

| NO. | PLAINTIFF | PROJECT NAME | FHA NO. | CITY | ST | STATUS |
|---|---|---|---|---|---|---|
| NAP121 | LEESBURG VILLAGE ASSOCS. | LEESBURG VILLAGE | 000-44115 | LEESBURG | VA | NONE |
| NAP122 | LEMOLI APARTMENTS | LEMOLI APARTMENTS | 122-44315 | HAWTHORNE, | CA | PREPAID |
| NAP123 | MOUNTAIN VIEW APTS | MOUNTAIN VIEW APTS | 121-35298 | REEDLEY | CA | IN PROCESS |
| NAP124 | SHAMROCK ASSOCS | SHAMROCK APTS | 054-35028 | HONEA PATH | SC | IN PROCESS |
| NAP125 | SUBURBAN PARK LTD | SUBURBAN PARK VILLAGE APTS | 000-44153 | GAITHERSBURG | MD | IN PROCESS |
| NAP126 | TWO WORLDS DEV. CO., PHASE II | TWO WORLDS II | 122-44730 | LOS ANGELES, | CA | NONE |
| **NOTICE OF ADDITIONAL PLAINTIFFS, DATED DECEMBER 20, 1996** | | | | | | |
| NAP127 | BETHLEHEM TOWNHOUSES | LIBERTY HILL | 034-44128 | BETHLEHEM | PA | APPROVED |
| NAP128 | CAPITOL VIEW PLAZA, PHASE II ASSOCS. | CAPITOL VIEW PLAZA II | 000-44123 | WASHINGTON | DC | NONE |
| **NOTICE OF ADDITIONAL PLAINTIFFS, DATED FEBRUARY 11, 1997** | | | | | | |
| NAP129 | KING TOWERS ASSOCS. | KING TOWERS | 000-55077 | WASHINGTON | DC | COMPLETE |
| NAP130 | DAYTONA GARDEN APT (SOUTH) INC | DAYTONA GARDEN (SOUTH) | 067-35060 | DAYTONA BEACH | FL | APPROVED |
| NAP131 | DAYTONA GARDEN APT (CENTRAL) INC | DAYTONA GARDEN CENTRAL) | 067-35009 | DAYTONA BEACH | FL | APPROVED |
| NAP132 | DAYTONA GARDEN APT (NORTH) INC | DAYTONA GARDEN (NORTH) | 067-35020 | ORMOND BEACH | FL | APPROVED |
| NAP133 | FAIRLANE MEADOW LTD | FAIRLANE MEADOWS | 062-44041 | EUFAULA | AL | NONE |

**EXHIBIT B**

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 15th day of June 2007, I caused to be delivered by U.S. mail (first class, postage prepaid), Defendant's Response to Plaintiffs' Second Set of Interrogatories to:

Harry J. Kelly
Nixon Peabody, LLP
410 Ninth Street, N.W., Suite 900
Washington, D.C. 20004

Ena M. Goddard

EXHIBIT B

# EXHIBIT F

**EXHIBIT B**

**Interrogatory No. 5:**

For each Subject Property, if Defendant contends that prepayment of the Government insured mortgage pursuant to the Preservation Statutes was not futile with respect to that property, state all facts upon which Defendant bases its contention.

**Response:**

Defendant objects that this interrogatory is vague, ambiguous, and overly broad. Further, to the extent the interrogatory seeks discovery concerning defendant's legal conclusions, such information is not within the proper scope of an interrogatory. Subject to and without waiving its objections, defendant responds as follows:

The futility exception to the exhaustion of administrative remedies serves only to "'protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" Howard W. Heck & Associates v. United States, 134 F.3d 1468, 1472 (Fed. Cir. 1998) (emphasis in original) (quoting Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir. 1990)). Before invoking "futility," a property owner must give the Government the opportunity, using its own reasonable procedures, to decide and explain the reach of the challenged regulation. The subject properties did not submit an application to prepay that was rejected by HUD and, consequently, the futility exception is inapplicable and unavailable.

Further, the Preservation Statutes allowed project owners to submit plans of action to request HUD's permission to prepay their Government-insured mortgage. See ELIHPA § 225(a); 12 U.S.C. § 4108. HUD's review of a plan of action for prepayment pursuant to the Preservation Statutes was multifaceted and discretionary. HUD's evaluation of such a plan of action would

**EXHIBIT B**

depend upon, among other things, the details of the plan proposed by the owner, when prepayment was proposed, the nature of the housing market in the vicinity of the project, and the anticipated effect of the plan upon project's tenants. The subject properties chose not to submit a plan of action requesting permission to prepay. As a result, HUD had no occasion to analyze or evaluate a plan of action to prepay the subject properties' Government-insured mortgages under the Preservation Statutes.

Further, even if HUD had concluded that a project did not qualify to prepay pursuant to section 225(a) of ELIHPA or 12 U.S.C. § 4108, the project could still have been eligible to prepay pursuant to 12 U.S.C. § 4114. With respect to those subject properties who did not exhaust the preservation process, i.e., did not obtain a funded use agreement or consummate a sale pursuant to the Preservation Statues, prepayment pursuant to 12 U.S.C. § 4114 was a possibility.

**EXHIBIT B**

**Request For Admission 3:**

Admit that it was futile for the Subject Properties to apply to prepay the Government insured mortgage on the properties because the conditions and criteria established in the Preservation Statutes would not allow you to approve prepayment.

**Response:**

Denied. The futility exception to the exhaustion of administrative remedies serves only to "'protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" Howard W. Heck & Associates v. United States, 134 F.3d 1468, 1472 (Fed. Cir. 1998) (emphasis in original) (quoting Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir. 1990)). Before invoking "futility," a property owner must give the Government the opportunity, using its own reasonable procedures, to decide and explain the reach of the challenged regulation. The subject properties did not submit an application to prepay that was rejected by HUD and, consequently, the futility exception is unavailable.

Further, HUD's review of a plan of action for prepayment pursuant to the Preservation Statutes was multifaceted and discretionary. The evaluation of such a plan of action would depend upon, among other things, the details of the plan proposed by the owner, when prepayment was proposed, the nature of the housing market in the vicinity of the project, and the anticipated effect of the plan upon project's tenants. Because the subject properties chose not to submit a plan of action requesting permission to prepay, HUD had no occasion to analyze or evaluate a plan of action to prepay the subject properties' Government-insured mortgages under the Preservation Statutes.

**EXHIBIT B**

**Request For Admission 10:**

Admit that with respect to each of the Subject Properties, HUD would not have been authorized to approve a plan of action seeking prepayment of such Subject Property's Government insured mortgage.

**Response:**

Denied. HUD's review of a plan of action for prepayment pursuant to the Preservation Statutes was multifaceted and discretionary. The evaluation of such a plan of action would depend upon, among other things, the details of the plan proposed by the owner, when prepayment was proposed, the nature of the housing market in the vicinity of the project, and the anticipated effect of the plan upon project's tenants. Further, HUD did not conduct such an evaluation unless and until a plan of action requesting prepayment was submitted by a project owner. Because the subject properties chose not to submit plans of action seeking permission to prepay, HUD had no occasion to analyze or evaluate whether the subject properties would or would not be allowed to prepay their Government-insured mortgage pursuant to section 225(a) of ELIHPA or 12 U.S.C. § 4108.