Nos. 93-655C & 97-582
(Judge Margaret M. Sweeney)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

ANAHEIM GARDENS, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS AND PRODUCE DOCUMENTS

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

DAVID A. HARRINGTON
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0465

Dated: December 28, 2007

Attorneys for Defendant

**TABLE OF CONTENTS**


INTRODUCTION . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . 3

I. Procedural History . . . . . . . . . . 3

II. Current Status . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . 9

I. This Motion Should Be Denied Because Plaintiffs Made No Good Faith Attempt To Resolve This Dispute Before Resorting To Court Action . . . . . . . . . . 9

II. Plaintiffs' Motion To Compel Fails On The Merits . . . . . . . . . . 10

A. Plaintiffs' Motion To Compel The Production Of Documents Should Be Denied . . . . . . . . . . 10

1. The United States Has Produced Documents Relating To Prepayment By The Parc Chateau West Project . . . . . . . . . . 10

2. Plaintiffs' Motion To Compel The Production Of Documents About Unidentified Projects In Madison, Wisconsin, And St. Louis, Missouri, Should Be Denied . . . . . . . . . . 10

B. The United States Does Not Object To Plaintiffs' Request That A Rule 30(b)(6) Witness Be Made Available To Answer Questions About Recently-Produced Chateau Parc West Documents . . . . . . . . . . 13

1. The United States Will Make Mr. Barry – Or Another Witness – Available To Testify About The Recently-Produced Parc Chateau West Documents . . . . . . . . . . 14

2. Plaintiffs Objection About The Specificity Of Rule 30(b)(6) Testimony On Preservation Processing Is Without Merit . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

Anaheim Gardens v. United States,
33 Fed. Cl. 24 (1995) . . . . . . . . . . passim

Anaheim Gardens v. United States,
444 F.3d 1309 (Fed. Cir. 2006) . . . . . . . . . . 8

Cannon v. Cherry Hill Toyota, Inc.,
190 F.R.D. 147 (D.N.J. 1999) . . . . . . . . . . 2, 9

Cienega Gardens v. United States,
194 F.3d 1231 (Fed. Cir. 1998) . . . . . . . . . . 6, 7

Cienega Gardens v. United States,
46 Fed. Cl. 506 (2000),
rev'd in part, 265 F.3d 1237 (Fed. Cir. 2001) . . . . . . . . . . 7

Cienega Gardens v. United States,
503 F.3d 1266 (Fed. Cir. 2007) . . . . . . . . . . 5

Greenbrier v. United States,
193 F.3d 1348 (Fed. Cir. 1999) . . . . . . . . . . 6, 7, 11

Howard W. Heck & Associates v. United States,
134 F.3d 1468 (Fed. Cir. 1998) . . . . . . . . . . 11

Navigant Mktg. Solutions, Inc. v. Larry Tucker, Inc.,
339 F.3d 180 (3d Cir. 2003) . . . . . . . . . . 2, 9

Reed v. Bennett,
193 F.R.D. 689 (D. Kan. 2000) . . . . . . . . . . 13

Robinson v. Potter,
453 F.3d 990 (8th Cir. 2006) . . . . . . . . . . 9

Shuffle Master, Inc. v Progressive Games, Inc.,
170 F.R.D. 166 (D. Nev. 1996) . . . . . . . . . . 2, 9

Southern Pac. Transp. Co. v. City of Los Angeles,
922 F.2d 498 (9th Cir. 1990) . . . . . . . . . . 11

Steil v. Humana Kansas City, Inc.,
197 F.R.D. 442 (D. Kan. 2000) . . . . . . . . . . 13

Thetford Properties IV, LP v. United States,
907 F.2d 445 (4th Cir. 1990) . . . . . . . . . . 11, 12

United States v. Riverside Bayview Homes,
474 U.S. 121 (1985) . . . . . . . . . . 11

**Statutes**:

12 U.S.C. § 4101 . . . . . . . . . . 4

12 U.S.C. § 4108 . . . . . . . . . . 4

12 U.S.C. § 4109 . . . . . . . . . . 4

12 U.S.C. § 4110 . . . . . . . . . . 4

12 U.S.C. § 4114 . . . . . . . . . . 4, 5

12 U.S.C. § 4119 . . . . . . . . . . 17

ELIHPA § 221(a) . . . . . . . . . . 4

ELIHPA § 225(a) . . . . . . . . . . 4

ELIHPA § 233(1) . . . . . . . . . . 17

Emergency Low Income Housing Preservation Act of 1987,
Pub. L. No. 100-242, 101 Stat. 1877 (1987) . . . . . . . . . . 4

Low Income Housing Preservation and Residential Homeownership Act of 1990,
Pub. L. No. 101-625, 104 Stat. 4249 (1990) . . . . . . . . . . 4

Housing Opportunity Program Extension Act of 1996,
Pub. L. No. 104-120, 110 Stat. 834 (1996) . . . . . . . . . . 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 93-655C |
| v. | ) | (Judge Margaret M. Sweeney) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| ALGONQUIN HEIGHTS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 97-582C |
| v. | ) | (Judge Margaret M. Sweeney) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS AND PRODUCE DOCUMENTS**

**INTRODUCTION**

On December 5, 2007, near the end of the business day, plaintiffs' attorney, Harry Kelly, sent an e-mail raising several issues about the plaintiffs' Rule 30(b)(6) deposition of Maurice Barry. The e-mail, which demanded a response within 24 hours, stated flatly: "For the record, under Rule 30 of the RCFC, we have an obligation to confer with you in good faith prior to moving to compel answers. This is our attempt to do so." E-mail from Harry Kelly to David A. Harrington at 1 (Dec. 5, 2007) (attached as Exhibit A). A second e-mail, which supposedly attached a letter about "document matters," was sent after the close of business. The omitted letter was not received until the afternoon of December 6, 2007, raised numerous additional issues, and likewise demanded an almost immediate response. E-mail from Harry Kelly to

David Harrington (Dec. 6, 2007) (with attachment) (providing less than 24 hours to respond) (attached as Exhibit B). On December 7, 2007, without awaiting a response or making any effort to speak to an attorney for the United States, plaintiffs filed this motion.[1]

Plaintiffs perfunctory e-mails fail to satisfy the well-established requirement that a party make a meaningful, good faith effort to resolve discovery issues before involving the Court. E.g., Navigant Mktg. Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180, 186-87 (3d Cir. 2003) (counsel did not engage in a "good faith" attempt to confer with opposing party when counsel faxed a letter outlining alleged deficiencies in answers and threatened to file a motion to compel if deficiencies were not rectified within three days); Cannon v. Cherry Hill Toyota, Inc., 190 F.R.D. 147, 153 (D.N.J. 1999) (counsel's fax to opposing counsel in which he demanded a certified response to interrogatories and requests for admission by close of business on the following day was a "token effort" that does not satisfy the obligation to make a good faith effort to confer before resorting to court action); Shuffle Master, Inc. v Progressive Games, Inc., 170 F.R.D. 166, 170-73 (D. Nev. 1996) (series of facsimiles set by counsel demanding compliance with discovery request did not meet the requirement that the parties confer or attempt to confer in good faith). Plaintiffs here are more interested in casting aspersions than in obtaining discovery. Indeed, plaintiffs' motion seeks to "compel" the production of documents about the Parc Chateau West project that the United States had already agreed to provide.[2] Had plaintiffs

---

[1] At the time, undersigned counsel was preparing a merits brief in a bid protest that this Court had ordered filed on December 6, 2007. On December 7, 2007, counsel turned to plaintiffs' correspondence. While working on a response to the issues raised in plaintiffs e-mails and letter, electronic notice of the filing of this motion was received.

[2] The Parc Chateau West project is not a plaintiff in any takings litigation against HUD.
(continued...)

made a meaningful attempt to confer, they would have learned not only that these documents had been compiled and were being copied, but also that the United States was willing to make Mr. Barry available to respond to questions about these documents.[3]

Plaintiffs failure to make a meaningful attempt to first resolve these issues with the United States, by itself, warrants the denial this motion to compel. Furthermore, as explained below, plaintiffs' motion to compel is either moot or without merit.

## BACKGROUND

### I. Procedural History

The claimants in these actions are owners of moderate- or low-income housing projects developed during the late 1960s and early 1970s pursuant to section 221(d)(3) or section 236 of the National Housing Act. The projects were funded by 40-year mortgage notes between the project owner and a private lender. Mortgage insurance was provided by the Government in exchange for use restrictions contained in a "regulatory agreement" executed by the project owner. The regulatory agreement required the project owner to, among other things, rent to low- or moderate-income tenants at rates established by the Department of Housing and Urban Development ("HUD"). The regulatory agreement terminated upon payment of the insured debt.

---

[2](...continued)
HUD authorized this project to prepay its Government-insured mortgage pursuant to section 225(a) of the Emergency Low-Income Housing Preservation Act ("ELIHPA"), which it did in mid-1995.

[3] Plaintiffs also would have learned that names of projects that apparently prepaid in Madison, Wisconsin and St. Louis, Missouri have not been ascertained. Plaintiffs had already been informed that the United States "possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay." Def.'s Supp. Response to Pls.' 2d Set of Interrogatories at 1 (served Nov. 2, 2007) (attached as Exhibit C).

Loan documents typically prohibited prepayment of the insured debt during the project's first 20 years of operation.

During the late 1980s and early 1990s, in response to a perceived threat to the supply of public housing, Congress enacted the Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, 101 Stat. 1877 (1987) ("ELIHPA"), and the Low Income Housing Preservation and Residential Homeownership Act of 1990, Pub. L. No. 101-625, 104 Stat. 4249 (1990) ("LIHPRHA") (collectively, the "Preservation Statutes"). The Preservation Statutes regulated the ability of project owners to prepay their mortgages after 20 years and, consequently, to terminate the low-income use restrictions imposed on their properties. See ELIHPA § 221(a); 12 U.S.C. § 4101.

The legislation did not flatly prohibit prepayment. Rather, the Preservation Statutes allowed owners to prepay and exit the program under two procedures. First, prepayment could be allowed immediately if the owner demonstrated to HUD that the termination of use restrictions on a particular project would not have a material affect upon current tenants or the relevant low-income housing market. ELIHPA § 225(a) (requiring that the owner submit a "plan of action"); 12 U.S.C. § 4108 (same). Second, prepayment could be allowed under 12 U.S.C. § 4114. Specifically, irrespective of section 4108, the project owner was permitted to (1) exit the low-income housing program by selling to a "qualified purchaser" at the project's fair market value as a unrestricted property, or (2) agree to remain in the low-income housing program subject to a modified regulatory agreement that provided substantial financial incentives paid by HUD. 12 U.S.C. §§ 4109-10. In the event that a sale could not be consummated, or incentives

were not funded within statutory timeframes, the owner was allowed to prepay the mortgage. 12 U.S.C. § 4114.[4]

Following enactment of the Preservation Statutes, in 1993, the Anaheim Gardens action was filed in the United States Court of Federal Claims upon behalf of more than 30 claimants. The claimants' first amended complaint sought compensation under the Fifth Amendment for (1) an alleged "regulatory taking" of the owners' right to prepay their HUD-insured mortgages, terminate use restrictions, and realize appreciation of the property, and (2) an alleged "temporary taking" for administrative delays in promulgating implementing regulations, assessing plans of action, and providing financial information to project owners. Anaheim Gardens v. United States, 33 Fed. Cl. 24, 29-30 (1995).

The United States filed a motion to dismiss the first amended complaint for failure to state a claim. See Def.'s Motion to Dismiss (filed Mar. 29, 1994) (docket no. 17). In March 1995, the Court dismissed "all counts" except for the claimants' regulatory taking claim. Anaheim Gardens, 33 Fed. Cl. at 38. The Court noted that the claimants were asserting two distinct taking claims. Id. at 30. With respect to the claimants' "temporary taking" claim, the Court held that administrative delays in implementing LIHPRHA did not effect a taking within the meaning of the Fifth Amendment. Id. at 36-38. Additionally, the Court explained that the claimants' had dropped all allegations about administrative delays in processing applications and providing the financial information required by LIHPRHA:

[4] On March 28, 1996, Congress enacted the Housing Opportunity Program Extension Act of 1996, Pub. L. No. 104-120, 110 Stat. 834 (1996) ("HOPE"), which allowed owners to prepay without first securing HUD approval. E.g., Cienega Gardens v. United States, 503 F.3d 1266, 1274 (Fed. Cir. 2007).

> In their first amended complaint, at paragraphs 30-34, plaintiffs complain of several alleged delays by HUD in processing their applications for incentives, apparently in violation of the deadlines established by LIHPRHA. At oral argument, however, plaintiffs' counsel dropped these contentions, saying, "[t]he processing is going pretty well. HUD has its act in order by and large, and they are meeting the six-month schedule or coming close. And that is not what we are here to complain about."

Id. at 30 n.10. The Court denied the Government's motion to dismiss the claimants' "regulatory taking" claim, which "is based not on HUD's delays, but rather the legislation itself." Id. at 38. It is only this latter count that remains at issue in these actions.

Following this Court's ruling, the Anaheim Gardens claimants filed a second amended complaint. Pls.' Second Am. Compl. (filed Aug. 18, 1995) (docket no. 58). The second amended complaint added two plaintiffs, dropped the counts dismissed by the March 1995 ruling, and added a count for breach of contract. Id.[5] Shortly thereafter, the Algonquin Heights action, which reiterates the factual allegations and legal claims in Anaheim Gardens, was filed upon behalf of an additional 26 claimants. See Pls.' Compl. (filed Aug. 25, 1997) (docket no. 1).[6]

Subsequently, at the request of the parties, the Court stayed these actions to await decisions in Cienega Gardens v. United States, 194 F.3d 1231 (Fed. Cir. 1998) ("Cienega I"), and Greenbrier v. United States, 193 F.3d 1348 (Fed. Cir. 1999). After the Federal Circuit

---

[5] The operative complaint in Anaheim Gardens is Plaintiffs' Fourth Amended Complaint, which asserts the same counts as the Second Amended Complaint and seeks compensation for an alleged regulatory taking with respect to 51 different moderate- or low-income housing projects. Pls.' Fourth Am. Compl. (filed Sept. 16, 1997) (docket no. 113); see also Order of Judge Hodges at 1-2 (Aug. 24, 2007) (ruling that plaintiffs could assert claims with respect to 23 projects not identified in the complaint).

[6] The operative complaint in Algonquin Heights is Plaintiffs' Second Amended Complaint, which seeks compensation for an alleged regulatory taking with respect to an additional 47 projects. Pls.' Second Am. Compl. (filed Sept. 24, 2007) (docket no. 54).

issued the Cienega I and Greenbrier decisions, the Court of Federal Claims issued a decision in Cienega Gardens that dismissed the plaintiffs' contract claims for lack of privity pursuant to Cienega I and dismissed the plaintiffs' remaining taking claim on ripeness grounds pursuant to Greenbrier. See 46 Fed. Cl. 506 (2000), rev'd in part, 265 F.3d 1237 (Fed. Cir. 2001). The Court thereafter issued orders in these cases directing the claimants to state whether they were distinguishable from the Cienega Gardens decision – i.e., the new decision applying the Federal Circuit's decisions in Cienega I (contract) and Greenbrier (taking) – and if so, how to proceed. Order of Judge Hodges at 1 (May 18, 2000) (docket no. 119 in Anaheim; docket no. 12 in Algonquin).

On July 21, 2000, the claimants responded to the Court's orders, submitting identical filings in both Anaheim Gardens and Algonquin Heights. Pls.' Response to Order (filed July 21, 2000) (docket no. 125 in Anaheim; docket no. 18 in Algonquin). The claimants' responses did not address, and thus abandoned, their breach of contract claims.[7] With respect to their taking claims, the claimants conceded that they had not obtained a final decision from HUD regarding the application of the Preservation Statutes to their respective properties, but maintained that their failure to obtain a final agency decision should be excused by the doctrine of futility. Id. (stating also that they were unable to identify facts distinguishing their cases from the holding in Greenbrier). Relying upon this filing, the Court dismissed the Anaheim Gardens and Algonquin Heights actions without further explanation. Judge Hodges at 1 (Aug. 16, 2000) (docket no. 127 in Anaheim; docket no. 20 in Algonquin).

---

[7] Additionally, plaintiffs subsequent appeal did not allege any error with respect to the Court's dismissal of their breach of contract claims and the resulting Federal Circuit mandate remanded for further proceedings only with respect to plaintiffs' regulatory takings claim.

The Anaheim Gardens and Algonquin Heights claimants appealed. On March 24, 2006, noting that no discovery in these actions had occurred, the Federal Circuit concluded that it was reviewing a motion to dismiss. Anaheim Gardens v. United States, 444 F.3d 1309, 1315 (Fed. Cir. 2006). As a result, the court held that the trial court's dismissal was inappropriate "if, as pled, there is any relief that could be granted under any set of facts that could be proven consistent with appellants' allegations." Id. Upon independently reviewing the plaintiffs' complaints, the court reversed and remanded these actions "for the development of facts on whether appellants taking claims are ripe." Id. at 1316.

In accordance with the Federal Circuit mandate, this Court directed the parties to conduct discovery on ripeness. Order of Judge Hodges at 1 (Aug. 14, 2006) (docket no. 138 in Anaheim; docket no. 29 in Algonquin). Ripeness discovery is scheduled to close January 10, 2008. Order of Judge Sweeney at 1 (Nov. 29, 2007) (docket no. 176 in Anaheim; docket no. 64 in Algonquin).

## II. Current Status

These actions currently concern 98 moderate- and low-income housing projects developed pursuant to the section 221(d)(3) and section 236 programs from the mid-1960's to the mid-1970's. Ripeness discovery is now nearly complete. During the course of discovery, the United States and plaintiffs together have produced nearly one million pages of material. Document production by the United States alone has substantially exceeded 250,000 pages.

During November 2007, plaintiffs took a Rule 30(b)(6) deposition of HUD over four days. Three different witnesses were designated to testify upon behalf of HUD. Plaintiffs also took depositions of six different HUD employees, including two employees from HUD's Indianapolis field office and two other employees from HUD headquarters in Washington, D.C.

Plaintiffs chose to voluntary cancel the deposition of an additional HUD employee who handled preservation processing in the Midwest and turned down the United States' offer to continue for an additional day the Rule 30(b)(6) deposition on HUD's document retention policy.

In their motion to compel, plaintiffs seek an order compelling the United States to produce documents relating to prepayment by the Parc Chateau West product and additional documents about prepayment by unidentified projects in St. Louis, Missouri, and Madison, Wisconsin. In addition, plaintiffs seek to reopen their Rule 30(b)(6) deposition to obtain additional testimony about projects that were allowed to prepay under the Preservation Statutes and purported processing delays under ELIHPA. As explained below, plaintiffs' motion should be denied.

## ARGUMENT

### I. This Motion Should Be Denied Because Plaintiffs Made No Good Faith Attempt To Resolve This Dispute Before Resorting To Court Action

RCFC 37(a) requires that a party engage in a good faith attempt to resolve discovery disputes before bringing the issue before the Court. Plaintiffs did not comply with this prerequisite. See, e.g., Navigant, 339 F.3d at 186-87; Cannon, 190 F.R.D. at 153; Shuffle Master, 170 F.R.D. at 170-73. Accordingly, plaintiffs' motion should be denied. See Robinson v. Potter, 453 F.3d 990, 995 (8th Cir. 2006) (affirming denial of a motion to compel because the movant "did not appear to have made an effort to resolve the issue informally prior to asking the court's assistance"); Navigant, 339 F.3d at 186 (explaining the difference between "an attempt to confer" and a "good faith attempt to confer").

## II. Plaintiffs' Motion To Compel Fails On The Merits

### A. Plaintiffs' Motion To Compel The Production Of Documents Should Be Denied

#### 1. The United States Has Produced Documents Relating To Prepayment By The Parc Chateau West Project

Plaintiffs ask the Court to order the production of documents relating to the Parc Chateau West project. Pls.' Mot. at 13. The United States identified Parc Chateau West as one of several projects that prepaid pursuant to the Preservation Statutes in a supplemental interrogatory answer served November 2, 2007. Ex. C. The United States informed plaintiffs on November 14, 2007, and again on December 7, 2007, that responsive documents relating to prepayment by the Parc Chateau West project would be produced. Pls.' Mot., Ex. G (Barry Dep. at 222); Letter from David A. Harrington to Harry Kelly at 1 (Dec. 7, 2007) (attached as Exhibit D). The Parc Chateau West documents were provided to plaintiffs on December 20, 2007. See Letter from David A. Harrington to Harry Kelly at 1 (Dec. 20, 2007) (attached as Exhibit E). Accordingly, plaintiffs' motion is moot and should be denied.

#### 2. Plaintiffs' Motion To Compel The Production Of Documents About Unidentified Projects In Madison, Wisconsin, And St. Louis, Missouri, Should Be Denied

Plaintiffs ask the Court to compel the production of documents relating to prepayment by unidentified projects in Madison, Wisconsin, and St. Louis, Missouri. See Pls.' Mot. at 13. Plaintiffs apparently seek these documents to provide a basis for predicting what decision HUD would have reached if plaintiffs had submitted their own plans of action to prepay. Plaintiffs' request reflects a fundamental misunderstanding of the ripeness inquiry and is unduly burdensome. It should, therefore, be denied.

It is well-established that requiring an owner to seek approval for a given use of its property "does not itself 'take' the property in any sense." United States v. Riverside Bayview Homes, 474 U.S. 121, 128 (1985). After all, the very existence of a process to seek approval "implies that permission may be granted, leaving the [owner] free to use the property as desired." Id. "Only when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the [property] in question can it be said that a taking has occurred." Id. at 127; see also Greenbrier v. United States, 193 F.3d 1348, 1357-58 (Fed. Cir. 1998). Consequently, property owners must exhaust the administrative process in order to ripen an as-applied, regulatory taking claim. Greenbrier v. United States, 193 F.3d at 1357-58; Howard W. Heck & Associates v. United States, 134 F.3d 1468, 1472 (Fed. Cir. 1998).

Plaintiffs here seek to invoke the futility exception to exhaustion. However, "[a]bsent a clear showing that an administrative agency has taken a hard and fast position that makes an adverse ruling a certainty, a litigant's prognostication that he is likely to fail before an agency is not a sufficient reason to excuse the lack of exhaustion." Thetford Properties IV, LP v. United States, 907 F.2d 445, 450 (4th Cir. 1990); see also Anaheim Gardens, 33 Fed. Cl. at 31 (stating that "the court in Thetford Properties identified . . . administrative procedures which must be exhausted if the plaintiffs . . . wished to prepay"). The futility exception to the exhaustion of administrative remedies merely serves to "'protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" Heck, 134 F.3d at 1472 (emphasis in original) (quoting Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir. 1990)).

Here, statutes, regulations, HUD guidance, previously-produced documents and deposition testimony confirm that HUD had discretion to approve requests to prepay from owners that submitted plans of action. See, e.g., Letter from HUD to Southgate Apartments (Oct. 5, 1989) ("HUD will approve any and all Plans of Action where an Owner meets the criteria and, where all standards and criteria cannot be met, to negotiate in good faith efforts to accommodate our mutual needs and considerations.") (attached as Exhibit F). The requested documents concerning projects in St. Louis and Madison have no significance other than to confirm deposition testimony from multiple witnesses that prepayment could and did occur under the Preservation Statutes – something these plaintiffs have been aware of since at least 1990.[8] Thetford IV, 907 F.2d at 450 (plaintiffs' "own evidence shows that HUD has approved at least three plans of action and one prepayment").

Nevertheless, diligent efforts have been made to identify the specific projects that prepaid pursuant to the Preservation Statutes. The United States has no database or other unified source from which the names of particular projects that received approval of plans of action to prepay can be ascertained. See Ex. C (Def.'s Supp. Answer to Pl.'s First Set of Interrogatories (served Nov. 2, 2007)) (reiterating the answer given in May 2007). In addition, the processing of plans of action under the Preservation Statutes occurred 12 to 20 years ago. As a result, few current HUD employees were involved in preservation processing and still fewer recall specific details about projects they handled. Inquiries have been made to attempt to identify specific projects that received HUD approval to prepay and, in this way, the Parc Chateau West project was

---

[8] On October 25, 1988, Thetford IV filed suit against HUD challenging aspects of the Preservation Statutes. Thetford III LP and Thetford IV LP are related entities that own 30 of the 98 projects at issue in Anaheim Gardens and Algonquin Heights.

identified. However, the United States has not ascertained the names of those other projects that received HUD approval to prepay pursuant to the Preservation Statutes.[9]

### B. The United States Does Not Object To Plaintiffs' Request That A Rule 30(b)(6) Witness Be Made Available To Answer Questions About Recently-Produced Chateau Parc West Documents

Under RCFC 30(b)(6), a party may notice the deposition of a "government agency" to provide testimony regarding specific subject matters. The subject matter of the deposition must be described with particularity so that witnesses can be identified and prepared. See, e.g., Steil v. Humana Kansas City, Inc., 197 F.R.D. 442, 444 (D. Kan. 2000) ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" and is improper.); Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) (same). In addition, the deposition's scope is limited to "matters known or reasonably available to the organization." RCFC 30(b)(6).

In these actions, plaintiffs served three Rule 30(b)(6) deposition notices seeking testimony from "the United States" concerning 17 broad, ill-defined subject areas. See Pls.' Mot. at 2. Plaintiffs assert generally that the United States did not properly prepare a witness regarding (1) "the identity of any properties that were permitted to prepay under ELIHPA or LIHPRHA, and all facts and circumstances related to those properties and the prepayment," and (2) HUD's "processing of prepayment and other requests under ELIHPA and/or LIHPRHA for the [98] subject properties listed in Exhibits A and B." See Pls.' Mot. at 4. Plaintiffs would have the Court disregard difficulties created by the ill-defined subjects in plaintiffs' deposition

[9] It is unclear that responsive documents would be available even if the names of prepaying projects could be ascertained. The projects are not at issue in this litigation and, accordingly, HUD policy provides that most documents should be discarded after six years. Projects that prepaid pursuant to the Preservation Statutes left the HUD inventory before March 1996, i.e., at least 12 years ago.

notices and, moreover, the challenges of preparing any witness to testify about events that occurred between 12 and 20 years ago. Indeed, the detailed testimony given by Mr. Barry compares favorably to plaintiffs' own Rule 30(b)(6) witnesses, who testified about far fewer projects.

**1. The United States Will Make Mr. Barry – Or Another Witness – Available To Testify About The Recently-Produced Parc Chateau West Documents**

On December 20, 2007, the United States produced a small volume of material (approximately 20 pages) relating to prepayment by the Parc Chateau West project. These documents were not available at the time plaintiffs conducted the Rule 30(b)(6) deposition of Mr. Barry on November 14, 2007. Consequently, the United States will make a witness available to testify about recently-produced Parc Chateau West documents.

The identity of other projects that prepaid pursuant to the Preservation Statutes is not reasonably available. Plaintiffs served an interrogatory seeking this very information. The United States responded as follows:

> Defendant objects that this interrogatory is overly broad and unduly burdensome as it seeks information about thousands of HUD-insured and state-insured projects that are not at issue in this litigation. Defendant possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay. Subject to and without waiving these objections, defendant responds that on May 3, 1997, in connection with other litigation, the United States filed a declaration that addresses, among other things, prepayment under the Preservation Statutes. This declaration was executed by Joseph Malloy, the then-Deputy Director of the Existing Products/Preservation Division, Office of Multi-Family Housing Development, United States Department of Housing and Urban Development. In his declaration, Mr. Malloy explains that eight projects sought to prepay under ELIHPA and LIHPRHA and that

> of these eight projects, three were permitted to prepay by HUD. Malloy Decl. ¶ 6. One of the three projects permitted to prepay was the Parc Chateau West project, which submitted a plan of action that satisfied the statutory criteria for prepayment under the Preservation Statutes. A true and correct copy of the Malloy Declaration is attached as Exhibit A.

Ex. C (Def.'s Supp. Answer to Pls.' Second Set of Interrogatories (served Nov. 2, 2007)). As discussed above, the United States has taken reasonable steps to identify the names of projects that were permitted to prepay pursuant to the Preservation Statutes. Through these actions, the Parc Chateau West project was identified. The United States has not identified the names of those additional projects that were permitted to prepay. Consequently, Mr. Barry could not and did not testify about such additional projects.

In sum, the United States will provide a witness to answer questions about recently-produced documents concerning the Parc Chateau West project. However, information about other prepaying projects is not reasonably available. Accordingly, because the scope of a Rule 30(b)(6) deposition is limited to "matters known or reasonably available to the organization," the Court should deny plaintiffs' motion to compel testimony about other projects that prepaid pursuant to the Preservation Statutes.

### 2. Plaintiffs' Objection About The Specificity Of Rule 30(b)(6) Testimony On Preservation Processing Is Without Merit

Plaintiffs also argue that the United States' Rule 30(b)(6) witness – Mr. Barry – was not properly prepared to testify about the "processing of ELIPHA and LIHPRHA applications." Pls.' Mot. at 7, 11. However, Mr. Barry gave literally hours of testimony on this very subject. Pointing to instances when Mr. Barry "suggested" there could be additional sources for the information being sought, plaintiffs argue that Mr. Barry was not prepared to testify about delays

associated with processing under ELIHPA. Pls.' Mot. at 7. Notably absent from plaintiffs' motion is a description of specific information that was not obtained from the Rule 30(b)(6) deposition, which properties the information concerned, how the specific information pertains to ripeness, and why more detailed information sought 12 years after preservation processing ended should be considered "reasonably available" to HUD. Indeed, plaintiffs are hardly in a position to complain as the testimony of their own Rule 30(b)(6) witnesses provided substantially less detail than did Mr. Barry. See, e.g., Testimony of Dean Donnelson at 75-79 (testifying that as plaintiffs' Rule 30(b)(6) witness he did not know if Carriage House West I ever analyzed the possibility of prepayment, discussed prepayment with HUD, or would have been allowed to prepay by HUD) (attached as Exhibit G).

Discovery in this action is being conducted upon the issue of ripeness. Order of Judge Hodges at 1 (Aug. 14, 2006). Plaintiffs' complaint contains no claim that administrative delay under ELIHPA – the supposed shortcoming in Mr. Barry's testimony – constituted a taking. See Fourth Am. Compl. in Anaheim (filed Sept. 16, 1997); Second Am. Compl. in Algonquin (filed Sept. 24, 2007). The only administrative delay claim asserted by the plaintiffs concerned LIHPRHA, and that claim was dismissed by Judge Robinson on March 27, 1995 and omitted from plaintiffs subsequent amended complaints. Anaheim Gardens, 33 Fed. Cl. at 36-38 (rejecting plaintiffs claim "that HUD's delay in implementing the LIHPRHA regulations amounted to a taking"); Fourth Am. Compl. at 32-34 (deleting count counts one, two and four "pursuant to March 27, 1995 order"). Purported processing delays under ELIHPA are simply not at issue in this action.

In any event, Mr. Barry did answer plaintiffs' questions. With respect to projects handled by HUD's North Carolina field office, plaintiffs inquired why HUD directed the owner to file a second initial notice of intent for the Coleridge Road project. Mr. Barry explained that the project was not eligible to submit the original notice of intent on December 26, 1990. Barry Dep. at 316-20 (attached as Exhibit H). Plaintiffs asked why the December 1990 notice of intent was not circulated to the Economic and Marketing Analysis Staff ("EMAS") until June 1992. Mr. Barry explained that preservation processing began when the owner submitted a notice of election to proceed in June 1992, which was the first form that HUD received from the owner after the project became eligible to begin preservation processing.[10] Ex. H (Barry Dep. at 318-19, 322-23). Only when counsel turned to the Southgate project and declined to provide Mr. Barry documents that he requested – as well as other significant documents relating to the project – was Mr. Barry unable to provide an answer. Ex. H (Barry Dep. at 329) (stating counsel could not provide the project's initial notice of intent form); see also Ex. H (Barry Dep. at 331) (objecting that counsel had not provided Mr. Barry certain documents about Southgate). This does not reflect a lack of witness preparation, but rather, poor deposition preparation and practices by plaintiffs' attorney.

With respect to "Indiana based properties," see Pls.' Mot. at 7 (citing testimony concerning only the Carriage House of Mishawaka project), plaintiffs asked why HUD asked the owner to submit an initial notice of intent form in 1995. See Pls.' Mot., Ex. G (Barry Dep.

---

[10] Under ELIHPA, an owner was eligible to being preservation processing one year before the project's 20 year anniversary date. ELIHPA § 233(1). Under LIHPHRA, an owner was eligible to begin preservation processing two years before the project's 20 year anniversary date. 12 U.S.C. § 4119(1).

at 416). The reason that HUD requested the owner to complete an initial notice of intent in 1995 is neither relevant, nor calculated to lead to the discovery of admissible evidence on ripeness. Further, Franca Hetue – the individual Mr. Barry suggested might be able to answer this question – did not remember why the owner was asked to complete an initial notice of intent form in 1995. Hetue Dep. at 174-76 (attached as Exhibit I). Plaintiffs have failed to establish, therefore, that this is a matter known or reasonably available to HUD such that Mr. Barry should have been prepared to answer this particular question.[11]

## CONCLUSION

For these reasons, the United States respectfully requests that the Court to deny plaintiff's motion to compel.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin

BRIAN M. SIMKIN
Assistant Director

[11] Even if the Court were to grant plaintiffs' motion, because plaintiffs failed to consult in good faith with the United States before filing this motion, and because the United States' properly provided a witness to testify regarding matters known or reasonably available to the United States, the Government should not be required to pay any costs incurred by plaintiffs in connection with this motion. See RCFC 37(a)(4)(A).

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0277
Fax: (202) 307-0972

December 28, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on the 28th day of December 2007, a copy of "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS AND PRODUCE DOCUMENTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David A. Harrington