DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-8000

OFFICE OF THE ASSISTANT SECRETARY FOR HOUSING FEDERAL HOUSING COMMISSIONER

October 5, 1988

Subject: 053-55010-LDC
Southgate Apartments
Raleigh, NC

Dear Owner:

Re: Owners Plan of Action -- Information For Preparation And Submission

Pursuant to your Notice of Intent to Prepay, this will provide further guidance and information that HUD requires to evaluate your proposed Plan of Action.

Preparation and Submission. An original and 3 copies of your Plan of Action is required to be submitted to your local HUD Field Office as follows:

U.S. Department of Housing and Urban Development

Attention: Loan Management Branch Chief

415 North Edgeworth Street

Greensboro, NC 27401

You may also submit the Plan of Action simultaneously to the appropriate State or local government. If you do, please be advised that it is incumbent upon such State or local government to consult with representatives of the tenants of the housing in its review of the Plan of Action.

Contents. Your Plan of Action must include certain descriptions, data, and information to meet statutory and regulatory mandates and to help facilitate HUD's review and approval of an acceptable Plan.

Based on the contents of your Plan, HUD will make a finding(s) that certain conditions are met, agreements made, and situations are considered, evaluated and sufficient in meeting the standards and criteria for prepayment.

The standards and criteria HUD will use to evaluate particular findings for the approval of a prepayment involving termination of all low-income affordability restrictions are enclosed.

In addition, included is a list of various Federal incentives that HUD is authorized to negotiate for those projects where 1) the Owner's Plan of Action involving termination of the low-income affordability restrictions would not be approvable, or 2) the Owner wishes to reconsider prepayment, involving termination, for incentives to maintain the low income nature of the project. Such incentives will be offered only if a) the property has a higher and better use, as determined and shown in the Plan of Action, and b) low-income affordability restrictions are locked-in for the remaining term of the mortgage.

HUD will approve any and all Plans of Action where an Owner meets the criteria and, where all standards and criteria cannot be met, to negotiate in good faith efforts to accommodate our mutual needs and considerations.

I look forward to working with you in a positive and creative partnership to meet the challenges addressing today's housing issues.

Sincerely,

Thomas T. Demery
Assistant Secretary

Enclosures

PLAN OF ACTION

Standards and Criteria

A. Contents: The Plan of Action must include:

1) Descriptions of proposed changes in the status or terms of the mortgage or the regulatory agreement which may include a request for incentives to extend the low income use of the housing;

2) Description of any assistance that could be provided by State or local government agencies, as determined by prior consultation between the owner and the agencies;

3) Description of any proposed changes in the low-income affordability restrictions;

4) Description of any proposed change in ownership related to the Plan of Action or prepayment;

5) An assessment of the effect of the proposed changes on existing tenants, i.e, rent increases, relocation, etc.

If an Owner plans to prepay, the Owner must protect the existing very low, low, and moderate income tenants [in-place] by either:

a) relocating all such tenants to comparable and affordable replacement housing with similar rent structures within the nousing market area; or

b) protecting the low-income affordability of all such tenants by maintaining their current rent structures, as determined by the program economic criteria, for as long as such tenant(s) qualifies under such economic criteria.

The Plan of Action must, therefore, describe the type of protection the Owner plans to provide the tenants, how he/she plans to go about it, where the replacement housing would be, contracts, agreements, etc.

6) A statement of the effect of the proposed changes on the supply of housing affordable to low and very low-income families in the community within which the housing is located and in the housing market area that the housing could reasonably be expected to serve, i.e., pecentage of assisted housing the project represents to the total assisted housing in the market area and/or percentage of housing stock of similar rental structure this housing represents in the market area.

7) An independent market analysis or appraisal, providing unsubsidized market information sufficient in scope to allow HUD to determine market rents and value and market needs in the area for both market and below market tenants and equity of property. Such appraisal shall include, as a minimum, the following:

a) Project identification and information [Complete attached Form HUD-92013, page 1.];

b) A map showing the location of the project and accompanying demographic data, including:

- o racial composition of the census tract in which project is located;
- o income composition of the census tract in which project is located;
- o employment and employment opportunities in the neighborhood, community and market area,
- o neighborhood condition and characteristics, including type (residential, commercial, industrial, etc.);

c) Description of the current condition in the overall market for <u>unassisted rental housing</u> in the community and the market area, including:

- o types of other rental housing available;
- o description and number of units and current vacancy rates;
- o size and description of waiting lists; and
- o description of comparable rents;

d) Description of the current condition of <u>assisted rental housing</u> in the community and the market area, including:

- o description and number of units and current vacancy rates (Section 8, Public Housing, etc.);
- o size and description of waiting list; and
- o description of comparable rents.

e) Description and data of project tenancy, including:

- o race/ethnicity and gender of household head composition of the project, as of the date of the prepayment request;
- o designation of the project (elderly or nonelderly);
- o income composition of project tenants as of the date of the prepayment request, broken down as follows:

  Very low (50% or below of median)
  Low (50/80% of median)
  Moderate (80/95% of median)
  Market (95% or above median)

- o place/location of employment of project tenants;
- o occupancy rate of the project as of January 1, 1987, broken down as follows:

  Very low (50% or below of median)
  Low (50/80% of median)
  Moderate (80/95% of median)
  Market (95% or above median)

- o Rent roll, unit-by-unit (Complete Format attached)

f) Description and physical condition of the Property;

g) Description and financial condition of the Property:

- o Existing First Mortgage Information

  -Mortgage Balance
  -Interest Rate
  -Monthly Mortgage Payments to Principal and Interest
  -Monthly Payment to MIP
  -Maturity date of the Mortgage

- o Existing second mortgages, subsidy, Flexible Subsidy, Grants, or financial loans/contracts or other financial liens/encumbrances-

  -Outstanding Balance(s)
  -Interest Rate(s)
  -Monthly Payments to Principal and Interest
  -Maturity or Expiration date of loan/grant/contract term

h) the estimated fair market value, based on the project being maintained as residential rental housing, as of the date of the prepayment request.

i) the estimated fair market value, based on the property's highest and best use.

Important --

The independent market analysis or appraisal, incorporating the information requested under 7) above, is to be conducted and provided by an independent, qualified professional, recognized by the real estate appraisal industry. It is to be included in the Owner's Plan of Action, but packaged separately and discretely from the other requested contents, and signed, certified and dated by the Appraiser.

The Owner should also make the Appraiser aware that, in the case of litigation involving the information contained in the market analysis or appraisal, the Appraiser may be called upon as an expert witness on behalf of the Department in any such litigation or court action emanating from any of the information supplied in the market analysis/appraisal.

The cost of the appraisal will be approved by HUD as a project expense if the ultimate result of the Plan of Action extends the low-income character of the project for the remaining term of the mortgage.

8) Copies of Project Operating Statements (Forms HUD-92410) for last three (3) years;

9) Description of any outstanding findings of noncompliance with Title VIII of the Civil Rights Act of 1968; Title VI of the Civil Rights Act of 1964; Executive Order 11063; or with respect to the project Regulatory Agreement.

10) Any other information which would enable the Owner to show and demonstrate that the legislatively mandated criteria can be met.

B. Approval of a Plan of Action that involves termination of low-income affordability restrictions.

Based on the content of the Plan of Action, HUD must make findings that certain conditions and situations are considered and evaluated. A Plan of Action involving termination of low-income affordability restrictions must meet the following

tests before prepayment can be approved:

that-

(a) Implementation of the Plan of Action will not materially increase economic hardship for current very low-income, low-income and moderate income tenants or involuntarily displace current very low-income, low-income and moderate income tenants (except for good cause) where comparable and affordable housing is not readily available. The owner will agree to execute and allow the recordation of use agreements to safeguard current tenants against such adverse effects. The Plan of Action generally will not be considered materially to increase economic hardship for current tenants if:

(1) In the case of a project that is to be converted to cooperative or condominium ownership, very low-income, low-income and moderate income tenants who are unable or unwilling to purchase cooperative shares or condominium units:

- are provided relocation assistance sufficient to secure adequate, comparable replacement housing at rentals not exceeding the levels set forth in paragraph(a)(2) of this section, or

- are allowed to remain as tenants, paying rents not exceeding such levels; and

(2) In the case of a project which will continue as rental housing, the Commissioner determines that comparable and affordable replacement housing is available in the community and that tenants will be provided reasonable relocation assistance.

If the Commissioner determines that comparable and affordable replacement housing is not available, a material increase in economic hardship will not occur when rent contributions for current tenants do not exceed the following percentages:

- 30 percent of 50 percent of median area income, adjusted by family size, for tenants who are very low income tenants at the time of the increase,

- 30 percent of 80 percent of median area income, adjusted by family size, by tenants who are low income tenants at the time of the increase, and

- 30 percent of 95 percent of median area income, adjusted by family size, for tenants who are moderate income tenants at the time of the increase.

The Commissioner may require that increases in rents for some or all of the such current tenants (except for increases made necessary by increased operating costs) allowed under this paragraph be phased in gradually; and

(b)(1) The supply of vacant, comparable housing is sufficient to ensure that the prepayment will not materially affect:

(i) The availability of decent, safe and sanitary housing affordable to low-income and very low-income families in the area that the housing could reasonably be expected to serve;

(ii) The ability of lower income and very low-income families to find decent, safe and sanitary housing near employment opportunities; or

(iii) The housing opportunities of minorities in the community within which the housing is located; or

(2) The Plan of Action has been approved by the appropriate State agency and any appropriate local government agency for the jurisdiction in which the housing is located as being in accordance with a State strategy approved by the Commissioner.

It is incumbent upon the Owner to prepare the Plan of Action in such manner as to show and demonstrate that these findings are met.

C. Plan of Action involving prepayment with Restrictions.

Plans of Action not meeting the standards and findings under B., involving termination of low-income affordability restrictions, may be considered for prepayment with restrictions. Each such Plan will be evaluated on its own merits and on a case-by-case basis, through negotiations between the Owner and HUD.

An example of such a situation might be where, through restrictive, binding agreements, such housing would be maintained as housing for the very low-income, low-income, and moderate income tenants for a designated time into the future, notwithstanding a prepayment of the current, existing mortgage. In this case, all low-income affordability restrictions would not be terminated, tenants (current and future) would be protected, and such a prepayment would not materially affect the supply of decent, safe and sanitary housing available to such tenants.

Plans of Actions involving prepayment with restrictions shall clearly and definitively describe and demonstrate the manner and wherewithall to accommodate the legislative mandates, i.e., conventional financing, State or local agency financial intervention, the Low-income Tax Credit Program, etc.

Use Restrictions would be set forth in a document that would (1) be recorded in the appropriate land records, (2) have priority over all mortgage liens, and (3) be enforceable by HUD [and existing and, if applicable, potential tenants].

D. Incentives to Extend Low-Income Use.

Where Plans of Action providing for prepayment of the mortgage cannot be approved, or where an Owner might be induced to extend the low-income use of the project, (within certain market areas) HUD may agree to provide one or more Federal incentives, IF such incentive(s) are determined to be warranted in order to achieve the purposes of the legislation.

<u>Note</u>: such incentives will be offered only if a) the property has a higher and better use, as determined and shown in the Plan of Action, and b) low-income affordability restrictions are locked-in for the remaining term of the mortgage.

<u>Incentives to Extend Low-Income Use</u>, the specific incentives available, and individual procedures and step-by-step instructions for processing, are covered and detailed in Exhibit 6, published under separate cover. The incentives and the probable order in which HUD will consider such incentives are briefly set forth here, as follows:

1) Increased access to residual receipts funds;

For those projects in good physical condition, HUD will consider releasing all or a portion of the project's residual receipts funds.

Access to the Reserve for Replacement funds will not be entertained as a possible inducement given that the General Accounting Office, the Office of Inspector General and HUD audits and reviews all have consistently found that the Reserve for Replacement funds do not have excessive balances to cover project needs.

2) Revisions to the method of calculating equity;

HUD may consider revising the method of calculating equity based on the new appraised value as residential rental housing, minus the total outstanding financial debt and encumbrances, to arrive at a new equity base on which the six percent rate of return on equity is applied.

3) Provision of insurance for an equity loan;

HUD may approve and insure an Equity Loan under Section 241(f). The Owner would be required to seek out a mortgagee to submit an application for processing, and such processing and loan approval would be carried out in a pro forma manner.

4) Provision of Flexible Subsidy assistance;

To provide financial assistance under the Flexible Subsidy Program in order to cure financial difficulties and/or to fund deferred maintenance needs or the provision of capital improvements for the project.

Though the legislative and regulation provisions covering prepayment include capital improvement loans as a possible incentive, the Department does not plan to implement the Capital Improvements Loan Program at this time. However, the need for capital improvements can be met through the Flexible Subsidy Program as stated above.

5) An increase in the allowable distributions, or other measures to increase the rate of return;

Increasing the allowable distribution by increasing the current six percent rate to some higher agreed upon amount.

6) An increase in the rents permitted under an existing Section 8 Contract.

Section 8, in and of itself, is not a real inducement not to prepay, but a funding mechanism to make it possible for the Owner to collect rents from those tenants whose 30 percent of income would not meet the approved rent. Therefore, on a case-by-case basis, subject to Appropriations Act funding, the Department would consider providing some form of Section 8 assistance for those particular tenants.

E. Submission of the Plan of Action.

The Plan of Action should be submitted to HUD only upon completion of all required information. It should meet the requirements in such a manner as to show and demonstrate, as thoroughly and accurately as possible, how the legislative and regulatory mandates are met. Any and all portions of the Plan involving participation or involvement by third parties shall be endorsed, certified or otherwise verified or signed, as appropriate. Specifically, the market analysis or appraisal must be signed and dated by a recognized Appraiser.

Finally, the completed package must be dated and signed by the Project Owner of Record (General Partner) and submitted in triplicate to the HUD Office in the jurisdiction of the subject housing project.

Attachments