IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - x

ALGONQUIN HEIGHTS, ET AL., :

Plaintiffs, :

v. : No. 97-582 C

THE UNITED STATES, : (Judge Robert H. Hodges, Jr.)

Defendant. :

- - - - - - - - - - - - - - - x

30(b)6 DEPOSITION OF

CARRIAGE HOUSE WEST ASSOCIATES I, LP

BY AND THROUGH ITS DESIGNEE

DEAN DONNELSON

Washington, D.C.

Wednesday, August 15, 2007

9:45 a.m.

Reported by: TRISTAN-JOSEPH, RPR



a5495961-661e-42dc-811a-a660b4479b18

Q. At your time at Eugene B. Glick, did you analyze prepayment by Carriage House West I under the Preservation Statutes?

MS. ZIARNO: Objection.

THE WITNESS: I did not. I don't know what "analyze" means.

BY MS. ELEY:

Q. Did you research the possibility -- did you take any steps to research the possibility of prepayment under the Preservation Statutes on behalf of Carriage House West I Associates?

A. Did I personally look at whether a prepayment mortgage would be permitted?

Q. Did you know whether such research was ever conducted?

A. I do not know whether the research was conducted. If it was done, that would have been done prior to my arrival.

Q. And you, yourself, did not conduct any research?

A. I did not.

Q. Are you aware of -- what conclusions

were reached by Carriage House West I Associates as to the possibility of prepaying the mortgage on Carriage House West I Apartments?

A. I think I already answered that: I don't know.

Q. Okay. Are you aware of any internal discussions at Carriage West I Associates where prepayment as an option was evaluated?

MS. ZIARNO: Objection.
Asked and answered.
You can answer again.

THE WITNESS: I don't know.

BY MS. ELEY:

Q. And are you aware of any such evaluations or considerations having taken place before you began your relationship with Carriage House West I Associates?

MS. ZIARNO: Objection.
Asked and answered.
You may answer.

THE WITNESS: I don't know.

BY MS. ELEY:



a5495961-661e-42dc-811a-a660b4479b18

Q. Did you ever discuss prepaying the mortgage on Carriage House West I with anyone at HUD?

A. I don't recall.

Q. Let me put that a different way.

Did anyone on behalf of Carriage House West I Associates discuss prepaying the mortgage on Carriage House West I Apartments with anyone at HUD?

MS. ZIARNO: Objection.

When?

BY MS. ELEY:

Q. In any time frame.

A. How would I know?

Q. Okay. And did you ever have any general discussions with anyone at HUD at any time about the possibility of prepayment under the Preservation Statutes?

A. I did not.

Q. Do you know of anyone who had such discussions with HUD who was conducted in any way at Carriage House West I Associates?

MS. ZIARNO: Objection.

BY MS. ELEY:

Q. You may answer.

A. I don't have any personal knowledge, no.

Q. Okay. Did you ever conclude that it would be futile to prepay the HUD-insured mortgage on Carriage House West I Apartments?

MS. ZIARNO: Objection.

THE WITNESS: The conclusion that prepayment was not going to be allowed had been reached prior to the time I got there. So from the time I arrived, the focus was on going after those benefits which were left, which were incentives.

BY MS. ELEY:

Q. Do you know whether Carriage House West I could have prepaid its mortgage under Title II if it had applied to do so?

MS. ZIARNO: Objection.

THE WITNESS: Not my standard.

How would I know?

BY MS. ELEY:

Q. Okay. Do you know whether Carriage



a5495961-661e-42dc-811a-a660b4479b18

House West I could have prepared its mortgage under Title VI if it applied to do so?

A. The same answer.

MS. ZIARNO: Objection.

THE WITNESS: The same answer.

BY MS. ELEY:

Q. You do not know; is that correct?

A. That's correct.

Q. Okay.

MS. ELEY: I'd like to take a quick break and go off the record, but we may be done.

(Whereupon, at 11:05 a.m., a recess was taken, and the proceedings resumed at 11:18 a.m., this same day.)

MS. ELEY: No further questions.

(Whereupon, at 11:18 a.m., the deposition was concluded.)

(Signature not waived.)



a5495961-661e-42dc-811a-a660b4479b18