**U.S. Department of Justice**

Civil Division

JED:BMS:DHarrington
DJ No. 154-93-655 & 154-97-582

Telephone: (202) 616-0465
Facsimile: (202) 307-0972

*Washington, D.C. 20530*

October 12, 2007

*Via Electronic Mail and U.S. Mail*

Harry J. Kelly, Esq.
Nixon Peabody LLP
401 Ninth St., N.W.
Suite 900
Washington, D.C. 20004

Re: *Anaheim Gardens, et al. v. United States*, No. 93-655C (Fed. Cl.);
*Algonquin Heights, et al. v. United States*, No. 97-582C (Fed. Cl.).

Dear Mr. Kelly:

I am writing about several issues relating to ripeness discovery in the above-referenced actions.

Document Production

As you are aware, the Court directed the parties to complete document production by October 12, 2007. Order of Judge Hodges at 1 (Sept. 21, 2007). With respect to plaintiffs' production of documents, I have received four boxes of documents relating to the Church Street Apartment project. However, no documents relating to the Briar Crest I, Briar Crest II and Briar Hills projects have been received. Please contact me to discuss when the additional document production owed by plaintiffs should be anticipated.

On October 10, 2007, I received an e-mail acknowledging your receipt of 20 boxes of documents relating to the additional Thetford properties.[1] On October 11, 2007, we sent you an

---

[1] The additional Thetford properties are: Beaumont Avenue Apartments, Coleridge Road Apartments, Icemorelee Street Apartments, Hardee Street Apartments, Holloway Court Apartments, Holiday Town Apartments #1, Henry Street Apartments, Millbank Court Apartments, Johnson Court Apartments, Oakwood Avenue Apartments #1, Person Court Apartments, Raleigh North Apartments, Tucker Street Apartments, Young Avenue Apartments, Calico Court Apartments d/b/a Crab Point Apts., Chowan Court Apartments, Columbus Court Apartments, Franklin Court Apartments, Holiday Town Apartments #2, Long Drive Apartments, Oakwood Avenue Apartments #2, Peachtree Court Apartments, Stewart's Creek Apartments.

additional 4 boxes of documents relating to the Briar Crest I, Briar Crest II, Briar Hills and Church Street projects.

As you note in your e-mail, our cover letter does not mention Person Court Apartments. Person Court is not mentioned because HUD has no longer has any files concerning that project. Person Court prepaid in 1998 and plaintiffs failed to identify Person Court as being a part of this litigation until 2007. As a result, HUD files concerning Person Court have been destroyed in accordance with HUD record retention polities. To the extent that documents concerning Person Court were included in the files on other Thetford-owned projects, they have been provided as part of our document production.

Your e-mail also inquires whether we included documents about both phases of the Oakwood Avenue Apartments and Holiday Town Apartments projects. All documents relating to phase one of Oakwood Avenue Apartments #1 (FHA No. 053-44018) and Holiday Town Apartments #1 (FHA No. 053-35045) have been produced. We are looking into whether all files relating to the second phase of these projects (FHA Nos. 053-44081 & 053-44164) have been provided. To the extent that any material concerning these projects has not yet been provided, we will expedite its retrieval and will produce any additional documents as soon as feasible.

Interrogatories

The United States will be serving interrogatories to ascertain the date upon which plaintiffs contend that their as-applied regulatory taking claims concerning ELIHPA and LIHPRHA ripened. These interrogatories go to the crux of ripeness discovery, will be simple, concise, and should be easily answered. Plaintiffs have previously contended that the United States has served over 25 interrogatories. We disagree and intend to request that Judge Hodges schedule a status conference during the next week to address this issue. Please contact me to discuss the dates upon which you are available.

Depositions

On August 20, 2007, plaintiffs served six separate Rule 30(b)(6) deposition notices (three in Anaheim Gardens and three in Algonquin Heights) stating that plaintiffs would take the deposition of "the United States." These notices contained 16 paragraphs describing numerous "subject matters" about which testimony was sought. As set forth generally below and specifically in the attachment to this letter, we object to these notices because they do not conform to the requirements of Rule 30(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").

Pursuant to RCFC 30(b)(6), a party's deposition notice must "describe with reasonable particularity the matters on which examination is requested." "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" and is improper. Steil v. Humana Kansas

City, Inc., 197 F.R.D. 442, 444 (D. Kan. 2000); Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000).

Many of the topics in plaintiffs' deposition notices are vague and overbroad. For instance, your deposition notices seek testimony generally on the "policies and practices concerning prepayment under the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA")." Indeed, given the number of projects subject to the Preservation Statutes, the number of projects listed as "subject properties," the number of HUD employees across the country involved in preservation processing, and the number of discussions that they may have had relating to topics in plaintiffs' deposition notices, it would be an impossible task for the Government to designate any person or persons to testify regarding matters not memorialized in HUD's files. In addition, Rule 30(b)(6) requires the designated individual to testify as to "matters known or reasonably available to the organization." Due to the passage of time since the events in question, the number of persons involved in preservation processing, and the fact that many of these persons are no longer are employed by HUD, testimony about discussions or other matters not memorialized in HUD's files is not "known or reasonably available" to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition.[2]

We also object to plaintiffs' notice because compliance would result in undue burden and expense for HUD insofar as the notice seeks examination relating to both privileged and irrelevant information. To the extent that the topics call for privileged information, specifically information subject to the attorney work product, deliberative process, and attorney-client privileges, RCFC 26(b)(1) explicitly limits discovery to matters "not privileged." We do not waive any applicable privileges, and we will not permit designated representatives to be examined on any topics that call for the disclosure of privileged information. Additionally, much of the information sought by plaintiffs' deposition notice is not relevant to ripeness issues in these cases. Any discovery propounded by a party is required to be "relevant to the subject matter involved in the action." RCFC 26(b)(1); United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993) (precluding discovery not relevant to issues presented by complaint or affirmative defense). The Federal Circuit in Cienega Gardens v. United States, ___ F.3d ___, 2007 WL

---

[2] If plaintiffs seek specific information about actions of specific HUD employees, individual depositions should be noticed. The court has given plaintiffs a two-week period to conduct ripeness depositions. Order of Judge Hodges at 1 (Sept. 21, 2007) ("The plaintiffs will take depositions on ripeness between November 5, 2007 and November 16, 2007"). Plaintiffs have had months to decide whether to take depositions of any specific HUD employees. I am hopeful that there will be no repetition of plaintiffs' failure to timely notice depositions earlier this year. Nonetheless, I feel compelled to insist that any individual depositions notices be served promptly. Please understand that it is highly unlikely that depositions notices received after 5:00 p.m. on Friday, October 19, 2007, can be accommodated. Additionally, under no circumstances will the United States agree to defend late-noticed depositions during the Thanksgiving holidays or the period that the Court has set aside for the United States to conduct its own deposition discovery.

2778687 at *22 n.9 (Fed. Cir. Sept. 25, 2007) ("Cienega Gardens X"), recently clarified that "ripeness doctrine does not require the owners to apply for voluntary incentives" to ripen their claims. Consequently, many of plaintiffs' requests are irrelevant in that they seek information about the sale and use agreement options under ELIHPA and LIHPRHA and, therefore, are outside the scope of a Rule 30(b)(6) deposition on ripeness.

We further object to your deposition notices because they call for the Rule 30(b)(6) depositions to "continue from day to day until completed." Rule 30(d)(2) limits a deposition to "one day of seven hours" unless "otherwise authorized by the court or stipulated by the parties." We recognize that many projects are involved in this litigation and are willing to discuss a reasonable extension of the time allotted for these depositions. However, we do not consent to an open ended deposition for our designated representatives.

Subject to our general and specific objections, we currently anticipate providing Edward Szymanoski to testify on subject matters concerning HUD's Economic & Market Analysis Section, and Maurice Barry to testify on subject matters concerning prepayment under the Preservation Statutes. If the anticipated Rule 30(b)(6) witnesses change, we will let you know.

Very truly yours,

David A. Harrington
Trial Attorney
Commercial Litigation Branch

**SPECIFIC OBJECTIONS TO**
**PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICES**

In conjunction with our general objections, we identify the following specific objections to plaintiffs' Rule 30(b)(6) deposition notices:

Plaintiffs' First Deposition Notice

1. The United States of Housing and Urban Development's ("HUD") policies and practices concerning prepayment under the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA") (collectively, the "Preservation Statutes").

This subject is vague and overly broad. Policies and practices concerning prepayment under the Preservation Statutes are governed by statutes and regulations, as well as by publications identified in a four-page, single-spaced list attached to the United States' response to plaintiffs' interrogatories. Discovery in this matter is limited to the issue of ripeness and, accordingly, no witness will be proffered to address policies and practices that do not directly concern requests to prepay pursuant to the Preservation Statutes. Cienega Gardens v. United States, ___ F.3d ___, 2007 WL 2778687 at *22 n.9 (Fed. Cir. Sept. 25, 2007) ("Cienega Gardens X") ("ripeness doctrine does not require the owners to apply for voluntary incentives" to ripen their claims).

2. The nature and extent of HUD's discretion under ELIHPA and LIHPRHA, and specific examples of the exercise of that discretion.

This subject is vague, overly broad and unintelligible. No witness will be proffered to address this subject matter.

3. The identity of any properties that were permitted to prepay under ELIPHA and LIHPRHA, and all facts and circumstances related to those properties.

This subject is overly broad and unduly burdensome as it would require a review of information concerning thousands of HUD-insured and state-insured projects that are not at issue in this litigation. Because HUD possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay, this information is not "known or reasonably available" to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition. Moreover, records concerning projects that were permitted to prepay during the 1990's would have been destroyed pursuant to HUD's record retention policy and, therefore, an attempt to identify and review such records would be futile.

4. The specific criteria and/or methodology used by HUD to determine whether a property was permitted to prepay under ELIHPA and LIHPRHA.

This objection is overbroad and unduly burdensome because it is not limited to projects owned by plaintiffs and, therefore, would require the review of information concerning thousands of HUD-insured and state-insured projects that are not at issue in this litigation. Furthermore, because HUD possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay, this information is not "known or reasonably available" to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition.

5. The specific steps and authorizations required to process an application to prepay, seek incentives, or sell a property to a qualified purchaser under ELIPHA and LIHPRHA.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address steps and authorizations required to seek incentives or sell a property under the Preservation Statutes.

6. The drafting and development of the forms used to process applications under ELIHPA and LIHPRHA, including specifically all of the versions of the forms known as a Notice of Intent used between 1987 and 1996.

This subject is irrelevant and not calculated to lead to the discovery of admissible evidence. The text of forms used in preservation processing do not alter and, therefore, have no bearing upon statutory and regulatory provisions governing prepayment. Further, because the development of particular forms used in preservation processing occurred as much as 20 years ago, and because the HUD employees who worked on this endeavor cannot presently be ascertained, this information is not known or reasonably available to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition. No witness will be proffered on this subject matter.

Plaintiffs' Second Deposition Notice

1. HUD's processing of prepayment and other requests under ELIHPA and/or LIHPRHA for the subject properties.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address "other requests" made under the Preservation Statutes.

3. The specific criteria and/or methodology used by HUD to determine whether each of the plaintiffs would have been eligible to prepay or to receive incentives under ELIHPA and/or LIHPRHA.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address the criteria or methodology applied to requests for incentives under the Preservation Statutes

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications HUD prepared, received or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the plaintiffs

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address the possibility of "the receipt of incentives" by plaintiffs under the Preservation Statutes

5. The document retention policies of HUD, including those of any relevant field offices, and the actual steps taken to produce documents for the plaintiffs.

This description contains two discrete parts: (1) HUD's document retention policies; and (2) the steps taken by counsel in this action to produce documents to the plaintiffs.

With respect to document retention policies, although the National Archives and Records Administration promulgates general guidelines for record retention by Federal agencies, Handbook 2225.6, HUD Records Disposition Schedules, constitutes the primary document establishing HUD's record retention policies both for headquarters and for field offices. This document is available on the web at http://www.hudclips.org/cgi/index.cgion through a search for document number 2225.6.

Within Handbook 2225.6, Appendices 1 and 10 set forth HUD's retention policies for records relating to mortgages under Sections 221(d)(3) and 236, Appendix 7 concerns records pertaining to properties that are sold, and Appendix 12 describes the retention policies with respect to files from the Office of Multifamily Housing Assistance Restructuring. The retention policies governing documents held by HUD's Office of Policy Development and Research ("PDR"), to which the Economic and Market Analysis Section ("EMAS") reports, are set forth in Appendix 9. We understand that PDR did not maintain files on individual projects and that any EMAS correspondence would have been kept in local field office project files. We are in the process of confirming that EMAS did not keep files pertaining to specific projects in the field, separate and apart from the field office project files.

There have been few changes in the past few decades to the records disposition schedules identified above. Appendices 1, 7 and 9 have not been amended since 1988. Appendix 10 was updated in August 1996.

In sum, HUD's record retention policies are set forth in a publicly-available, written document. It is therefore unclear what purpose would be served by a deposition on this topic. If you seek deposition testimony about HUD's record retention policies notwithstanding the availability of the HUD's written policy, please explain why such testimony is necessary.

You also request that the United States provide a deponent to describe the actual steps taken to produce documents in this litigation. The production of documents on ripeness in the Anaheim Gardens and Algonquin Heights actions has been supervised and/or performed by counsel at the Department of Justice. We have produced over 100,000 pages of material in these actions. Documents have been obtained, copied and produced from HUD's Washington Docket and the HUD field offices responsible for managing the respective properties. A more comprehensive description of the efforts taken to obtain responsive documents will be provided by October 19, 2007.

Testimony about the efforts taken to compile and produce documents in this litigation would implicate attorney-client communications and protected work product. Indeed, the "person or persons most knowledgeable" about this topic are Department of Justice personnel and agency counsel. While we are willing to provide a written description of the efforts taken to compile documents, attorney testimony on this topic is neither appropriate nor warranted. Accordingly, no witness will be proffered to address this subject.

Plaintiffs' Third Deposition Notice

1. The Economic & Market Analysis Section's role in processing prepayment and other requests under ELIHPA and LIHPRHA.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address EMAS's analysis of "other requests" under the Preservation Statutes

2. The nature and extent of EMAS's role in processing prepayment and other requests under ELIHPA and/or LIHPRHA.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address EMAS's analysis of "other requests" under the Preservation Statutes

3. The specific criteria and/or methodology used by EMAS to determine whether a property was permitted to prepay or receive incentives under ELIHPA and/or LIHPRHA.

This objection is overbroad and unduly burdensome because it is not limited to projects owned by plaintiffs and, therefore, would requires the review of information concerning thousands of HUD-insured and state-insured projects that are not at issue in this litigation. Furthermore, because HUD possesses no database or unified source from which it can be determined which of these projects sought to prepay under the Preservation Statutes and what outcome resulted from the project owner's request to prepay, this information is not "known or reasonably available" to HUD and, therefore, is outside the scope of a RCFC 30(b)(6) deposition.

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications EMAS prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the plaintiffs.

Under Cienega Gardens X, this subject area is overbroad and seeks information irrelevant to ripeness as it is not limited to prepayment under the Preservation Statutes. No witness will be proffered to address EMAS's analysis of "the receipt of incentives" by plaintiffs under the Preservation Statutes

5. The document retention policies of EMAS, and the specific steps taken, if any, to produce documents in the above referenced matter in response to plaintiffs' request for production of documents

This subject matter is essentially indistinguishable from the 5th subject in plaintiffs' second deposition notice and, accordingly, the same objections are asserted.