**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 93-655C (Judge Margaret M. Sweeney) |
| ALGONQUIN HEIGHTS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 97-582C (Judge Margaret M. Sweeney) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION <u>TO COMPEL ANSWERS TO INTERROGATORIES 24 AND 25</u>**

Defendant moves for an order compelling Plaintiffs to provide "responsive" answers to interrogatories twenty-four and twenty-five in Defendant's Fourth Set of Interrogatories. Defendant's motion should be denied, because Plaintiffs have already provided responsive answers. Indeed, Plaintiffs provided very detailed and specific responses to the interrogatories. The fact that the Defendant may not like the answers or that it persists for some reason to assert that it does not understand the answers, does not mean that the answers are not responsive.

Defendant's twenty-fourth and twenty-fifth interrogatories purport to seek the date that each Plaintiff contends that their claim under either the Emergency Low Income Housing

Preservation Act of 1987 ("ELIHPA") or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA") ripened. Notwithstanding the fact that Defendant has asked several iterations of the very same questions numerous times in the course of this litigation, either through written discovery or depositions, Defendant was permitted to serve these interrogatories and Plaintiffs have once again attempted to answer them. However, the questions as asked are, in Plaintiffs' view, impossible to answer since the precise date upon which a claim ripened in this case is not a fixed moment in time. Even more importantly, such a date is not essential to the determination that must be made to conclude whether a claim is ripe pursuant to the administrative futility doctrine.

More specifically, it is not legally relevant when Plaintiffs' claims ripened. The only relevant question is whether the claims are ripe now because the Plaintiffs are excepted from having had to pursue the administrative processes under ELIHPA or LIHPRHA because it was futile to do so. In other words, the determination that must be made is whether Plaintiffs are relieved from having had to obtain a final administrative decision from HUD. Indeed, as Plaintiffs have pointed out before, not one of the court decisions addressing ripeness under ELIHPA and/or LIHPRHA has required or turned on an assessment of the alleged date upon which a claim ripened in order to conclude that a claim was ripe pursuant to the administrative futility doctrine. See, e.g., Anaheim Gardens v. United States, 444 F.3d 1309, 1315-1316 (Fed. Cir. 2006)

Given their understanding of the law, Plaintiffs have repeatedly asked the Defendant to explain what it is actually seeking to discover by asking these questions so that a proper response can be provided. However, Defendant has failed to articulate an intelligible reason in response to Plaintiffs' inquiries. Possibly, in seeking to determine when their claims became ripe, the

Defendant may actually be attempting to obtain information during ripeness discovery that can later be used to confine Plaintiffs in the damages phase. Alternatively, it is possible that Defendant is seeking information to use in a statute of limitations defense. When a claim initially "ripened," however, is not the same as asking when a claim arose for purposes of the statute of limitations. In either case, however, Defendant's protestations that this information is essential at this stage of the litigation are simply untrue. Plaintiffs have attempted in good faith to provide a response to questions that are at best irrelevant at this point in the litigation.

Moreover, given Plaintiffs' understanding of the law of ripeness and the administrative futility exception, the questions asked by Defendant in interrogatories twenty-four and twenty-five make no sense in that they are based upon a faulty premise -- *i.e.*, that the Court needs to know when a claim became ripe in order to determine whether it in fact ripe and ready for adjudication. As a result, the subject interrogatories are impossible to answer. Indeed, the questions asked are similar to the age old question used in every lawyer's schooling – "when did you stop beating your wife." As we all know, what makes this question impossible to answer is the faulty premise underlying the question. Accordingly, in order to provide responses to interrogatories twenty-four and twenty-five, Plaintiffs, as they are entitled to, interposed objections, and then proceeded to answer the questions as they understood them.

For example, in response to interrogatory twenty-four Plaintiffs provided a chart covering those properties that have a regulatory takings claim originating under ELIHPA. A separate chart is provided covering those properties that have a claim originating under LIHPRHA in response to interrogatory twenty-five. Plaintiffs provided two separate charts, one for each statute, because that is how the Government framed the questions – *i.e.*, twenty-four addresses ELIHPA and twenty-five addresses LIHPRHA. Amazingly, although this is how the Defendant

framed the questions, it then claims confusion about the meaning of the separate two charts in a letter dated November 16, 2007. See Ex. E to Defendant's Motion to Compel. Plaintiffs were (and remain) confounded by this complaint and can think of no other way in which to address the interrogatories as framed.[1] See Ex. F to Defendant's Motion to Compel.

Moreover, as was further explained to the Defendant in the November 21st letter, in each of the two charts, Plaintiffs provided a date that falls after each of the two statutes was enacted, and which was the earlier of either (1) the date of the twentieth anniversary of the subject property's mortgage – *i.e.*, the date that a property could have actually prepaid its mortgage had the statutes not been enacted, or (2) the date that the subject property submitted a Notice of Intent or Intent to Prepay form to HUD to start the administrative process under the applicable statute.[2] For each of the subject properties, the Government has the documents that back-up these dates, and/or it obtained the very same information from the 50+ depositions it took of Plaintiffs. Since administrative processing is at the very heart of the ripeness inquiry in this case, Plaintiffs do not understand how Defendant can object that the answers provided are non-responsive. Plaintiffs recognize that the responses are not framed exactly as Defendant asked the questions, but that is because, as explained above, Defendant used a short-hand legal conclusion as the basis for the

---

[1] Given the evolving statutory structure and convoluted rules implementing ELIHPA and LIHPRHA, a Plaintiff may have only been permitted to proceed under ELIHPA, or it may have had an option to proceed under either ELIHPA or LIHPRHA, or alternatively, it could have been entitled to proceed only under LIHPRHA. Thus, it is conceivable that a property could have started to process under ELIHPA, and then at some later date switched to processing under LIHPRHA. Accordingly, Plaintiffs felt that the best way in which to approach the questions as asked was to look to which statute the Plaintiffs' actually started processing under and then include the Plaintiff only on that chart. This seemed to be a fair interpretation since the questions appear to contemplate obtaining an initial starting point – *i.e.*, a date that a claim initially "ripened," and not what happened after the process started. If the Government seeks different or additional information, it should have articulated the questions more clearly or reviewed its own documents to figure it out.

[2] Defendant's assertion in its motion that the term "initial notice to prepay" is unclear is untenable. As the Court can see, the term used in Plaintiffs' responses and the November 21st letter to Defendant's counsel – "Notice of Intent to Prepay" or "Intent to Prepay" – are capitalized terms. This is because these are the names of two HUD forms that the Government is plainly familiar with (indeed they used them as exhibits in at least fifty depositions of Plaintiffs' properties and they came up in a dozen depositions of Government witnesses) and any attempt here to claim confusion is nothing more than disingenuous posturing.

questions, which rendered them vague and ambiguous. To give a rational response to the poorly-framed questions, Plaintiffs were required to provide an interpretation of those questions that framed them in light of the pertinent legal issues, as enunciated by governing precedents. Nonetheless, that fact that the responses do not mirror Defendant's language does not detract from the fact that substantively the Plaintiffs' responses provide the exact information requested.

The Government argues that it is unfair for Plaintiffs to have changed the questions asked in providing responses. This argument is disingenuous since that is exactly what the Defendant did with respect to virtually every interrogatory interposed by Plaintiffs. For example, in Interrogatory number 5, Plaintiffs asked Defendant to state all of the facts upon which it based its contention that the prepayment of the Government insured mortgages pursuant to the Preservation Statutes was not futile for each of the subject properties. See Defendant's Response to Plaintiffs' First Set of Interrogatories attached hereto as Exhibit A. Instead of answering this simple question, the Defendant gave an unrequested and incorrect legal analysis before recasting the question and answering the question it asked, not the one Plaintiffs asked. Id. Of course, Plaintiffs could have moved to compel if dissatisfied with the Defendant's response, but that is not the point here. The point of this example is to simply highlight that the Government is hardly in a position to complain about Plaintiffs' responses upon that basis.[3] In any event, as explained above, because of Plaintiffs' good faith attempt to provide meaningful responses to the Defendant's poorly phrased questions in interrogatories twenty-four and twenty-five, the Defendant has received substantive detailed and precise responses that go to the very

[3] Unlike the situation for the Government, there are substantial real monetary costs associated with each time that the Plaintiffs are forced to move to compel the Government to fulfill its discovery obligations. Plaintiffs have already been forced to make several motions in these matters. The Plaintiffs do not have unlimited funds, and therefore, although inadequate answers were provided to almost all of Plaintiffs interrogatory requests, an assessment was made that it was not worth pursuing compulsory answers to each and every interrogatory.

heart of the issue it professes to have an interest in obtaining information about. As a result, Defendant's motion to compel should be denied.[4]

Dated: January 22, 2008

/s/ Harry J. Kelly

Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000
(202) 585-8080

Attorneys for Plaintiffs

[4] The Government has been informed several times now that the Plaintiffs intend to dismiss the claims by Holiday Town #2. Hence, the omission of an answer for this property does not render the responses provided deficient. The lack of a response for Peachtree Court was an inadvertent oversight. The date for that property is February 5, 1988.

CERTIFICATE OF FILING

I certify that on the 22nd day of January 2008, a copy of "PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES 24 AND 25" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harry J. Kelly