# In the United States Court of Federal Claims

No. 97-582 C
(Filed: February 29, 2008)

************************************
ALGONQUIN HEIGHTS, et al., *
*
Plaintiffs, *
*
v. *
*
THE UNITED STATES, *
*
Defendant. *
************************************

## RULING ON PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS CONCERNING DOCUMENT RETENTION AND PRODUCTION MATTERS

Before the court are Plaintiffs' Motion to Compel Defendant to Answer Questions Concerning Document Retention and Production Matters ("Pls.' Mot." or "motion") and accompanying exhibits ("Pls.' Ex."), Defendant's Response to Plaintiffs' Motion to Compel Defendant to Answer Questions Concerning Document Retention and Production Matters ("Def.'s Resp." or "response") and accompanying exhibits ("Def.'s Ex."), and Plaintiffs' Reply in Further Support of Their Motion to Compel Defendant to Answer Questions Concerning Document Retention and Production Matters ("Pls.' Reply" or "reply") and accompanying exhibits ("Pls.' Reply Ex."). In their motion, plaintiffs seek, pursuant to Rule 37(a)(2)(B) of the Rules of the United States Court of Federal Claims ("RCFC"), an order compelling defendant to produce a witness or witnesses who can fully testify about document retention practices and policies of the United States Department of Housing and Urban Development ("HUD"). For the reasons set forth below, plaintiffs' motion is granted.

### Discussion

### I.

Plaintiffs certify in their motion that, pursuant to RCFC 37(a)(2)(B), they attempted in good faith to confer with defendant's counsel prior to filing their motion. Pls.' Mot. 2. Defendant requests that the court decline to entertain plaintiffs' motion because plaintiffs failed "to engage in good faith discussions before filing their motion to compel, and fail[ed] to explain why the written descriptions of steps taken to produce documents do[] not meet their needs." Def.'s Resp. 6. Plaintiffs assert that, given defendant's prior statements "that it did not intend to

comply with the Plaintiffs' Rule 30(b)(6) deposition notices," they should not be required to "have waited for yet another perfunctory refusal before filing the Motion." Pls.' Reply 2 n.1.

In a companion ruling this same date, which addressed plaintiffs' Motion to Compel Defendant to Answer Questions and to Produce Certain Documents, the court set forth the procedural and substantive requirements for a motion to compel filed pursuant to RCFC 37. As such, it need not reiterate those standards. The court concludes that plaintiffs' certification is sufficient under RCFC 37(a)(2)(B). Plaintiffs informed defendant at the conclusion of the November 5, 2007 RCFC 30(b)(6) deposition of Ms. Carmelita Bridges that they believed Ms. Bridges's testimony was insufficient. Pls.' Ex. E. They again articulated this position in a November 8, 2007 letter to defendant, explaining that Ms. Bridges

> self-limited her testimony . . . [and] was not even prepared to testify about that limited subject matter, because her only involvement with HUD's document retention policy and practices is to facilitate the transfer of files she receives to the Federal Record Retention Center pursuant to National Archive requirements and she had done nothing to prepare for the deposition.

Id. Plaintiffs requested that defendant "let us know what the Government's plans are to reconcile these . . . deficiencies" and "advise us about your plans immediately." Id. In its response dated November 13, 2007, defendant reiterated its objections but offered to make Ms. Bridges "available to testify solely about . . . the record retention policy applicable to HUD's economic and market analysis section . . . ." Pls.' Ex. F. Defendant indicates that plaintiffs rejected this offer. Def.'s Resp. 4. Regardless, plaintiffs' November 5 statements immediately following the deposition in question, coupled with their follow-up letter dated November 8, 2007, demonstrate their good faith attempt to confer with defendant prior to filing their motion. Thus, the court turns to the merits of plaintiffs' motion.

## II.

In October 2007, plaintiffs served RCFC 30(b)(6) deposition notices upon defendant. In these notices, plaintiffs enumerated several areas of inquiry, including the two subject areas at issue in the instant motion. The first notice ("the HUD Notice") sought a witness who could testify regarding:

> 5. The document retention policies of HUD, including those of any relevant field offices, and the actual steps taken to produce documents for the Plaintiffs and subject Properties listed in Exhibits A and B.

Pls.' Ex. A. Additionally, plaintiffs sought information specific to the Economic & Market Analysis Section ("EMAS") within HUD in their second notice ("the EMAS Notice"):

> 5. The document retention policies of EMAS, and the specific steps taken, if any,

to produce documents in the above referenced matter in response to the Plaintiff's [sic] Request for Production of Documents.

Pls.' Ex. B. In response to these notices, defendant designated Ms. Bridges, see Pls.' Ex. C at 8:1-2 (indicating that witness would testify regarding "[t]he document retention policies of HUD Item No. 5"), and Ms. Pamela Sharpe, see Pls.' Mot. 3 (indicating that Ms. Sharpe was proffered to testify concerning "all of the other subject matters contained in the EMAS Notice"); Pls.' Ex. D at 16:7-11 (indicating that Ms. Sharpe could testify regarding items one through four, but not five, of the EMAS Notice).

Plaintiffs claim that Ms. Bridges "lacked knowledge sufficient to address the information requested by the Plaintiffs' deposition notices." Pls.' Mot. 2. They argue that Ms. Bridges initially indicated that she "would testify broadly" about the subject areas contained in both their RCFC 30(b)(6) notices, id., but "self-limited her testimony" because she was only prepared to testify about transfer of documents from HUD to the Federal Record Retention Center at the National Archives, id. at 3; see also Pls.' Ex. C at 8:1-2 (indicating that the witness was prepared to testify as to "document retention policies of HUD Item No. 5"); id. at 22:6-9 (confirming that the "only role here today that [the witness] can testify to is as to records that are being transferred from HUD to the archives"). Plaintiffs assert that Ms. Bridges was insufficiently prepared because she "had done nothing to prepare to provide testimony" except for bringing a copy of HUD's record retention schedule with her to the deposition. Pls.' Mot. 3; see also Pls.' Ex. C at 11:4-22-12:1. As a result, plaintiffs state that Ms. Bridges "was unable to substantively address any questions concerning how HUD managed the actual files of the Plaintiffs in this case, including what would be included in those files and where they would be kept." Pls.' Mot. 5. Additionally, they maintain that Ms. Bridges was not prepared to testify regarding item number five in the EMAS notice, id. at 3; Pls.' Ex. C at 9:2-9 (indicating counsel's statement on the record that the witness would testify about document retention policies of EMAS "insofar as they're subsumed under the document policies of HUD"), and note that Ms. Sharpe could not testify about item number five listed in the EMAS Notice,[1] Pls.' Mot. 3; Pls.' Ex. D at 16:7-11.

Plaintiffs emphasize that their need for information about HUD's document retention policies and practices is "not hypothetical." Pls.' Mot. 5. Defendant raises three principal objections to plaintiffs' motion, all of which are addressed below.

**A.**

Defendant first argues that plaintiffs' motion "exceeds the scope of plaintiffs' Rule 30(b)(6) notices" and that it provided a witness who "was prepared to testify fully regarding the

[1] Ms. Sharpe explained that she could not testify regarding item number five in the EMAS notice because EMAS "didn't have any document retention policies that were - we didn't have our separate document retention policies. They were the HUD - we followed the HUD guidelines." Pls.' Ex. D at 16:15-19.

precise subject matter of the plaintiffs' Rule 30(b)(6) notices . . . ." Def.'s Resp. 1. Defendant maintains that plaintiffs' deposition notice only requested testimony concerning HUD's "document retention policies," whereas their motion seeks testimony concerning "HUD's retention 'practices,' including its 'practices at relevant field offices.'" Id. at 2. The distinction between policy and practice, defendant argues, is significant in that the former "is a document that sets forth HUD's directions to its employees regarding the retention of documents," whereas the latter "refer[s] to the actual implementation of that policy by individual employees and offices." Id. Defendant asserts that it provided a witness who testified regarding HUD's policy and that plaintiffs, who understood the distinction between the meanings of policy and practice, should have drafted their deposition notices accordingly.[2] Id. at 2-3. Plaintiffs' failure to serve an amended RCFC 30(b)(6) notice broadening the scope of their definition prior to the deposition of Ms. Bridges, defendant states, warrants denial of their motion.

Plaintiffs reject defendant's argument on the basis that defendant devised an artificial, constricted construction of their deposition notices. First, plaintiffs state that defendant was aware, as early as October 16, 2007, that they sought witness testimony about both HUD's document retention policies and practices. Pls.' Reply 2; see also Pls.' Reply Ex. C ("Plaintiffs are absolutely entitled to ask about the actual application of a written document retention policy . . . . Accordingly, please be aware that we intend to take the deposition of someone with knowledge about the document retention policy and practices of HUD, as well as EMAS . . . ." (emphasis added)). Second, plaintiffs maintain that hypertechnical constructions of plain words to avoid discovery obligations are not permitted under modern discovery rules. Pls.' Reply 3 (citing Werbungs Und Commerz Union Austalt v. Collectors Guild, Ltd., 728 F. Supp. 975, 982 (S.D.N.Y. 1989), rev'd in part on other grounds, 930 F.2d 1020 (2d Cir. 1991)).

The court finds defendant's argument unpersuasive. Although the deposition notices may not have included the term "practice," the court finds that plaintiffs' failure to include this word is not fatal. A "policy" is defined as a "plan or course of action" or "[a] course of action, guiding principle, or procedure," American Heritage College Dictionary 1077 (4th ed. 2004), and a "practice" includes "[a] habitual or customary action or act," id. at 1093. See also Pls.' Reply 3 (providing similar definitions). Thus, the distinction between these two terms is slight. Although plaintiffs could have included the term "practice" into their notices, as defendant suggests they were required to do in order to state with reasonable particularity that they sought testimony concerning HUD's document preservation practice, the court does not believe that "practice" is so far removed from "policy" such that use of the latter forecloses the former. Additionally, defendant was aware that plaintiffs sought testimony about how HUD's document

---

[2] In support of its position, defendant cites plaintiffs' second RCFC 30(b)(6) deposition notice dated October 19, 2007, which sought testimony about HUD's "policies and practices" concerning prepayment under the Preservation Statutes. Def.'s Resp. 3 n.1; Def.'s Ex. C. Thus, defendant maintains, "plaintiffs recognize the distinction between policies and practices and know how to draft a deposition notice that seeks testimony about both policy and practice when that is what they intend." Def.'s Resp. 3 n.1.

retention policy was implemented on October 16, 2007, at least two weeks prior to the Bridges and Sharpe RCFC 30(b)(6) depositions.

More importantly, adoption of defendant's literal reading of plaintiffs' notices would write into RCFC 30(b)(6) a much more stringent standard than what the rule requires. See RCFC 30(b)(6) (stating that a party's notice must describe "with reasonable particularity the matters on which examination is requested" (emphasis added)). "Reasonable" constitutes "[b]eing within the bounds of common sense." American Heritage College Dictionary, supra, at 1160. Common sense dictates that it would be both counterproductive and wasteful for plaintiffs to inquire solely into HUD's document retention policy without also intending to place that inquiry within a relevant litigation context, i.e., how HUD effectuated, or did not effectuate, that policy in this case. See Pls.' Mot. 5 ("The fact that HUD had a policy, however, does not explain how HUD followed - or did not follow - that policy in practice."). Moreover, adopting defendant's interpretation of plaintiffs' phraseology and imposing a heightened standard beyond that provided by RCFC 30(b)(6) would not comport with RCFC 1, which provides that the rules of the court "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

**B.**

Defendant next argues that it furnished an appropriate witness and that, "if plaintiffs wanted specific information about actions of specific HUD employees," then they should have noticed individual depositions. Def.'s Resp. 4; see also Def.'s Ex. A (stating that plaintiffs should notice individual depositions "[i]f plaintiffs seek specific information about actions of specific HUD employees"). Defendant notes that plaintiffs already questioned individual HUD witnesses about document filing and retention practices during the period of time allowed for ripeness depositions. Def.'s Resp. 4. As such, defendant states, plaintiffs "took advantage of this opportunity" and have failed to explain why this subject should be reopened. Id.

Plaintiffs respond that they were able to obtain "partial information about document production associated with this case" from a few HUD employees, Pls.' Reply 4, but that these witnesses are "no substitute for testimony from a Rule 30(b)(6) witness, prepared to testify concerning the steps HUD actually took to preserve and produce documents here," id. at 5; see also Pls.' Mot. 5-6 (indicating that fact witness testimony underscores their need to obtain information from "a knowledgeable HUD witness about how relevant records were maintained, what if any steps were taken to secure relevant documents in connection with this litigation, and why relevant records apparently do not exist"). Moreover, they contend that defendant's offer "to produce a written summary of its collection with regard to documents in these litigation in lieu of testimony" was insufficient and rejected on that basis. Pls.' Mot. 4. As such, plaintiffs adopt the position that "the Government's response to subject matters Nos. 5 [sic] in both the HUD Notice and EMAS Notice is incomplete." Id.

Again, defendant's argument is unpersuasive. Plaintiffs do not bear the burden of justifying their deposition and discovery requests. In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 69 (2d Cir. 2003) (citing Rule 30(a)(1) of the Federal Rules of Civil Procedure[3]). In fact, plaintiffs "may simply name the corporation, or other organization, as the deponent." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2103 (2d ed. 1994); see also Marker v. Union Fid. Life Ins. Co., 125 F.R.D. 121, 126 (N.D.N.C. 1989) ("A party need only designate, with reasonable particularity, the topics for examination."). Once a deposition notice has been served, it becomes "the duty of the corporation to name one or more persons who consent to testify on its behalf . . . as to matters known or reasonably available to the corporation." Wright, Miller & Marcus, supra, at § 2103. "If the rule is to promote effective discovery regarding corporations[, then] the spokesperson must be informed." Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co., 137 F.R.D. 267, 278 (D. Neb. 1989). Defendant, therefore, "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought . . . and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." Mitsui & Co. (U.S.A.), Inc. v. P.R. Water Res. Auth., 93 F.R.D. 62, 67 (D.P.R. 1981); see also Alexander v. FBI, 186 F.R.D. 137, 141 (D.D.C. 1998) ("[T]he deponent has the duty of being knowledgeable on the subject matter identified as the area of inquiry. Clearly, a deponent that does not know about the subject matter inquired about is useless as a deponent at all." (citations omitted)). Thus, where a party in good faith believed its designee would satisfy the deposition notice but it becomes evident during the course of the deposition that the designee is deficient, a substitute must be provided. Marker, 125 F.R.D. at 126.

Notwithstanding defendant's offer to "make Ms. Bridges available for an additional day to answer more questions about HUD's written policy," the deposition excerpt appended to plaintiffs' motion indicates that Ms. Bridges could only testify about the physical transfer of records from HUD to the National Archives. Pls.' Ex. C at 22:6-9. Therefore, to the extent that Ms. Bridges and Ms. Sharpe were unable to testify to the matters stated in the deposition notice, defendant was obligated to offer a substitute witness or witnesses. It is not plaintiffs' burden to notice individual depositions for a substantial number of HUD officials from regional offices on the chance that one or several might ultimately possess and provide relevant information. See Pls.' Reply 4 (noting plaintiffs' "skill - or luck" in identifying "a handful" of such employees). Here, while plaintiffs did question individual HUD officials, they also served RCFC 30(b)(6) notices upon defendant to obviate the process of trying to identify possible witnesses scattered across numerous HUD regional offices. Defendant is much better equipped, and is required by virtue of the RCFC 30(b)(6) notices, to designate at least one individual who can testify as to what matters within the scope of the deposition notices are "known or reasonably available to the organization." RCFC 30(b)(6). Any designee should be adequately prepared to discuss relevant information ascertained from HUD regional office officials because that information is "known

---

[3] Where rules of this court are identical to the Federal Rules of Civil Procedure, "the court uses interpretation of the latter by other federal courts as persuasive authority." Pac. Gas & Elec. Co. v. United States, 69 Fed. Cl. 784, 789 n.3 (2006).

or reasonably available to the organization." Indeed, the "duty to testify 'as to matters known or reasonably available' implicitly requires designated persons to review all matters known or reasonably available to them in preparation for a Rule 30(b)(6) deposition." EEOC v. Boeing Co., No. 05-03034-PHX-FJM, 2007 WL 1146446, at *1 (D. Ariz. Apr. 18, 2007).

**C.**

Defendant's third argument in support of its position is that it already furnished to plaintiffs a written description of its efforts to produce documents and that any testimony would reveal protected attorney-client communications and violate work product protections. Def.'s Resp. 4. Defendant emphasizes that "the 'person or persons most knowledgeable' about this topic are Department of Justice personnel and agency counsel," id. at 4-5, and any attorney testimony is both inappropriate and unwarranted, id. at 5.

Plaintiffs argue that defendant is "leaping to the conclusion that responsive information necessarily would require deposition of the Government's attorneys, a proposition that[,] at this point[,] appears premature." Pls.' Reply 6. Plaintiffs note that several HUD employees at regional offices have provided limited information "about steps that were taken by them or their offices to preserve documents and to respond to the Plaintiffs' requests." Id. Additionally, plaintiffs emphasize that defendant can determine "which person/s have the most responsive information," and that no reason exists to suggest that attorney testimony is required at this time. Id. Furthermore, plaintiffs argue that defendant's privilege claim is "vastly overstated" because all discovery is overseen by attorneys, but privilege and work product protections cannot shield actual discovery conduct from scrutiny. Id. at 6-7. Finally, plaintiffs stress that defendant waived any applicable attorney-client privilege based upon its production of a one-page document detailing its document production efforts. Id. at 7; see also Def.'s Ex. D (containing a written description of efforts taken to obtain responsive documents).

Defendant cites several cases supporting its contention that depositions of counsel are disfavored or inappropriate unless plaintiffs demonstrate a compelling need for information. Def.'s Resp. 5. Yet, in this case, plaintiffs have not sought attorney testimony. But see id. (characterizing plaintiffs' motion to compel as one seeking attorney testimony about document production efforts). To the contrary, plaintiffs argue that the cases defendant cites are inapposite because it has not yet become clear that the required testimony "can only be obtained from counsel." Pls.' Reply 7 n.6.

It is entirely possible that Department of Justice personnel and agency counsel may be the "most knowledgeable" individuals about the actual steps taken to produce documents in this litigation. Def.'s Resp. 4. Nonetheless, RCFC 30(b)(6) only requires that the government "make available persons who will be able to 'give complete, knowledgeable and binding answers' on its behalf." Dairyland Power Coop. v. United States, 79 Fed. Cl. 709, 714 (2007) (quoting Reilly v. Natwest Mkts. Group, Inc., 181 F.3d 253, 268 (2d Cir. 1999)). Thus, defendant is not obligated to produce an individual "with the greatest knowledge about a subject; instead, it need only

produce a person with knowledge whose testimony will be binding" on it. Rodriguez v. Pataki, 293 F. Supp. 2d 305, 311 (S.D.N.Y.), aff'd, 293 F. Supp. 2d 315 (S.D.N.Y. 2003). Consequently, nothing precludes defendant from designating a nonattorney witness who can offer testimony concerning the requested topics.

Although the court disagrees with defendant's position that live testimony would run afoul of the work product doctrine and the attorney-client privilege, it briefly addresses defendant's concerns.

**1.**

The work product doctrine "preserve[s] a zone of privacy in which a lawyer can prepare and develop legal strategy 'with an eye toward litigation,' free from unnecessary intrusion by adversaries." Pac. Gas & Elec. Co., 69 Fed. Cl. at 789 (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)). It provides for qualified protection of documents and tangible things prepared by or for a party or the party's representative "in anticipation of litigation or trial" as well as "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." RCFC 26(b)(3); see also Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 131-34 (2007) (discussing the scope of the work product doctrine). The work product doctrine, like all privileges, must be strictly construed, and "[t]he burden is on the party who seeks work product protection to show that the materials at issue were prepared . . . in anticipation of litigation or for trial." Mims v. Dallas County, 230 F.R.D. 479, 484 (N.D. Tex. 2005).

The work product doctrine does not shield defendant's designee "from answering questions regarding factual information learned while working with counsel or others or from reviewing documents," particularly to the extent where plaintiffs are not seeking information about actual communications with counsel or "other disclosure of such counsel's mental impressions, conclusions, opinions or legal theories." Dunkin Donuts Franchised Rests., LLC v. Agawam Donuts, Inc., No. 07-11444-RWZ, 2008 WL 427290, at *1-2 (D. Mass. Feb. 13, 2008). Consequently, plaintiffs may inquire into document preservation and production matters with HUD designees without intruding into areas potentially protected by the work product doctrine.

**2.**

Lastly, plaintiffs claim that defendant waived the attorney-client privilege based upon its production of a document explaining the steps it has taken to respond to plaintiffs' discovery requests. See Pls.' Reply 7; Def.'s Ex. D. The following requirements are necessary for asserting the attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the

> communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484-85 (2000); see also Evergreen Trading, LLC, 80 Fed. Cl. at 127-28 (citing authority holding that the attorney-client privilege attaches to communications made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) within the context of an attorney-client relationship). The attorney-client privilege protects communications between the attorney and his client for the purpose of obtaining legal advice. United States v. Zolin, 491 U.S. 554, 562 (1989). This protection extends only to communications and not to underlying factual information. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). Information "does not become privileged simply because it came from counsel, and when documents or conversations are created pursuant to business matters, they must be disclosed." Energy Capital Corp., 45 Fed. Cl. at 485. "The burden of establishing the attorney-client privilege rests upon the party claiming privilege." Id. at 484.

In AAB Joint Venture v. United States, this court, discussing assertions of attorney-client privilege within the context of answering interrogatories, stated that "a conclusory statement does not satisfy Defendant's burden." 75 Fed. Cl. 448, 456 (2007). Where defendant sought to invoke the privilege, the court required that it "set forth objective facts to establish that the requirements [for asserting attorney-client privilege] are met." Id. Where AAB Joint Venture requested "dates of reviews, identity of documents and names of individuals, the attorney-client privilege surely does not apply." Id.

The court is not satisfied that defendant has demonstrated applicability of or has waived the attorney-client privilege at this juncture. Plaintiffs do not seek attorney-client communications, but rather testimony about HUD's document retention policy and implementation of that policy in the instant case. Although defendant furnished to plaintiffs a one-page document enumerating its production efforts, plaintiffs may inquire into how HUD responded to document requests in this litigation without implicating the substance of communications of counsel.

Of course, to the extent that it objects to particular questions, defendant shall assert claims of privilege on the record as they arise. RCFC 30(c)-(d)(1). Lastly, although plaintiffs did not expressly request sanctions, RCFC 37(a)(4)(A) provides that "the court shall . . . require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion," unless (1) the motion was filed without the moving party first engaging in a good faith effort to obtain discovery without court intervention; (2) the opposing party's

nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust. RCFC 37(a)(4)(A). The court is not persuaded that defendant's conduct justifies the imposition of sanctions at this time.

**Conclusion**

Plaintiffs' Motion to Compel Defendant to Answer Questions Concerning Document Retention and Production Matters is **GRANTED**. Defendant shall designate a witness or multiple witnesses who can testify about the subjects at issue as discussed above. The parties shall confer, determine mutually agreeable dates for further deposition testimony, and include this information in the joint status report due no later than **March 7, 2008.**

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge