# DEFENDANT'S APPENDIX

FHA FORM NO. 4187-D
(CORPORATE)
Revised October 1966

# DEED OF TRUST NOTE

$1,477,600.00 Richmond, Virginia,
May 25, 19 72.

FOR VALUE RECEIVED, the undersigned, DOLLY ANN APARTMENTS, a Virginia limited partnership promise(s) to pay to the order of SHELTER MORTGAGE CORPORATION a corporation organized and existing under the laws of Minnesota the principal sum of One Million Four Hundred Seventy-Seven Thousand Six Hundred Dollars ($1,477,600.00---------), with interest from date at the rate of ------seven----per centum (-----------7--%) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows:

See Attachment A, Paragraph 1.

Both principal and interest shall be payable at the office of Shelter Mortgage Corporation, Suite 604, ~~in~~ 1825 K Street N.W., Washington, D. C. 20006, or such other place as the holder may designate in writing.

See Attachment A, Paragraph 2.

~~Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder~~ ~~xx~~ If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations.

Notwithstanding any provision herein for a prepayment charge, such charge shall be applicable only to the amount of prepayment in any one calendar year which is in excess of fifteen per centum (15%) of the original principal sum of this Note.

If default be made in the payment of any installment under this Note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this Note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in the deed of trust securing this Note equals or exceeds the amount of such required installment of principal.

All parties to this Note, whether principal, surety, guarantor, or endorser, hereby waive presentment for payment, demand, protest, notice of protest, and notice of dishonor.

This Note and the interest are secured by first Deed of Trust of even date herewith on property located in Alleghany County, Commonwealth of Virginia.

Signed and sealed this the 25th day of May, 19 72.

Dolly Ann Apartments, a Virginia limited partnership
By Mid-City Developers, Inc., a General Partner
By [signature]

Attest: [signature] Secretary

By Basic Development & Investment Corporation, a General Partner
By [signature] Pres

ATTEST: [signature]

[signature] (SEAL)
Eugene F. Ford, General Partner

This Note is identified by the signature of the Trustee named in the deed of trust securing it.

[signature], Trustee
Robert F. Kohlhaas, Trustee
Fairfax County

[signature]
Vincent Tramonte, Trustee
Arlington County

COMMONWEALTH OF VIRGINIA

LOAN NO.

**Deed Of Trust Note**

DOLLY ANN APARTMENTS,
a Virginia limited partnership
TO
SHELTER MORTGAGE CORPORATION
FHA Project
No. 051-35118-LDP-SUP

Insured under 221(d)(3) of the National Housing Act and Regulations published thereunder

In effect on March 17, 1972

To the extent of advances approved by the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner

By [signature] (Authorized Agent)

Date May 25, 1972

A total sum of $1,477,600.00 has been approved for insurance hereunder by the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner

By [signature] (Authorized Agent)

Date January 16, 1974

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this Note.

43564-P Rev. 10/66 FHA-Wash., D. C.

Pay to the order of:

UNITED VIRGINIA MORTGAGE CORPORATION

Shelter Mortgage Corporation
By [signature]
President

ATTACHMENT A

Attached to and being a part of the Deed of Trust Note executed by Dolly Ann Apartments, to Shelter Mortgage Corporation, dated May 25, 1972.

Paragraph 1

Interest payable monthly on the 1st day of June, 1972 and on the first day each month thereafter as hereinabove set forth. Commencing on the first day of August, 1973, installments of interest and principal shall be paid in the sum of Nine Thousand One Hundred Eighty Two Dollars Twenty Seven Cents ($9,182.27), each such payment to continue thereafter monthly on the first day of each succeeding month until the entire indebtedness has been paid. In any event, the balance of the principal, if any, plus accrued interest, shall be due and payable on July 1, 2013. The installments of interest and principal shall be applied first to interest at the rate of seven per centum (7%) per annum upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of principal. In the event the maker hereof shall fail to make any monthly payment due to the holder hereof within fifteen (15) days after the due date thereof the holder hereof may, at its option, impose a late charge upon the maker hereof of Two Cents ($.02) for each One Dollar ($1.00) of interest and/or principal which is more than fifteen days in arrears.

The maker hereof assumes no personal liability for the payment of the principal of or the interest on this Note except as set out in the Deed of Trust securing this Note.

Paragraph 2

Provided, That additional prepayments (beyond such 15% of such original sum in any one calendar year) may be made on any interest payment date upon 30 days' prior written notice to the holder hereof; And Provided Further, That, in the event of prepayment of principal during any one calendar year in an amount in excess of fifteen percent (15%) of the original principal amount of the

J.H.

Note, all parties liable for payment thereof hereby agree to be jointly and severally bound to pay to the holder hereof for its own account a penalty or charge equal to three percent (3%) of the amount of such excess less 1/8 of 1 percent for each 12 month period which has elapsed since the date of this Note. Any other provisions of this Note to the contrary notwithstanding the debt evidenced by this Note may not be prepaid either in whole or in part prior to the final maturity date hereof without the prior written approval of the Federal Housing Commissioner.

J.H.

FHA FORM NO. 4118-D
(CORPORATE)
(Revised April 1963)

# MORTGAGE NOTE

$ $3,600,000.00 — Indianapolis, Indiana.

October 2, 19 69

FOR VALUE RECEIVED, the undersigned, Carriage House of Mishawaka, a partnership organized under the laws of the State of Indiana, promises to pay to Mount Vernon Sales & Mortgage Corporation a corporation organized and existing under the laws of the State of Indiana, or order, the principal sum of Three Million Six Hundred Thousand Dollars ($ 3,600,000.00 ), with interest from date at the rate of seven and one-half per centum (7½ %) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows. Interest payable monthly on the first day of November, 1969 and on the first day of each month thereafter as herein-after set forth. Commencing on the first day of July, 1971, installments of interest and principal shall be paid in the sum of Twenty-three Thousand Six Hundred Ninety Dollars and Fifty-Five Cents ($23,690.55) each, such payment to continue monthly thereafter on the first day of each succeeding month until the entire indebtedness has been paid. In any event, the bal-ance of principal, if any, remaining unpaid, plus accrued interest, shall be due and payable on June 1, 2011. The installments of interest and principal shall be applied first to interest at the rate hereinafter set forth upon the principal sum or so much thereof that shall from time to time remain unpaid and the balance thereof shall be applied on account of principal. Both principal and interest shall be payable at the office of Mount Vernon Sales and Mortgage Corporation in Indianapolis, Indiana or such other place as the holder may designate in writing.

~~Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly pay-ments on principal next due on the first day of any month prior to maturity upon at least thirty (30) days prior written notice to the holder~~. If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and sev-erally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regula-tions. See Rider 1 attached hereto and made a part of this Note.

Notwithstanding any provision herein for a prepayment charge or premium, prepayments of principal which do not exceed an aggregate of fifteen per centum (15%) of the original principal sum of this note in any one calendar year, may be made without any prepayment charge or premium.

If default be made in the payment of any installment under this note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reason-able attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this note equals or exceeds the amount of such required installment of principal.

The makers, endorsers, sureties, guarantors, and all other parties now or hereafter personally liable hereon waive the benefit of valuation and appraisement laws and waive presentment, demand for pay-ment, protest and notice of dishonor, and the endorsers, sureties, and guarantors, consent that the own-er or holder hereof shall have the right, without notice, to deal in any way at any time with any party hereto or to grant to any such party any extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever, or may release any of the security for this note, without in any way affecting the personal liability of any party hereunder.

This note is secured by a mortgage of even date herewith on real estate located in the City of Mishawaka, County of St. Joseph, State of Indiana, and may be further secured by a chattel mortgage to be hereafter executed on personal property located in the City of Mishawaka, County of St. Joseph, State of Indiana.

The Maker assumes no personal liability for the payment hereof except as set out in the mortgage of even date given to secure this indebtedness.

IRH 0099002

~~IN WITNESS WHEREOF, ... has caused its corporate seal to be ... affixed and attested by its Secretary ... the day and year first above written.~~

~~(CORPORATE SEAL)~~ By CARRIAGE HOUSE OF MISHAWAKA ~~President~~

~~ATTEST:~~ By /s/ James T. Bisesi
General Partner ~~Secretary~~

I HEREBY CERTIFY that this is the note described in, and secured by mortgage of even date herewith and in the same principal amount as herein stated, on real estate in the County of State of Indiana. Dated this 2nd day of October, 19 69

My Commission Expires: /s/ Beverly G. Tuck
August 23, 1972 Beverly G. Tuck, *Notary Public.*

The form of this instrument was prepared by the Office of the General Counsel of the Federal Housing Administration, and the material in the blank space in the form was inserted by or under the direction of Sidney Mishkin

$60,500 is credited to the principal amount due and the principal outstanding after such credit is applied on this date is $3,539,500. This is a reduction of principal and not an optional prepayment under the terms of this note and the mortgage. Monthly payments are to be made at the times and in the amount provided in this note until the amount due is paid in full.

Dated: March 9, 1971

Mount Vernon Sales and Mortgage Corp.
By: [signature]
Assistant Vice President

Carriage House of Mishawaka
by [signature]
General Partner

STATE OF INDIANA

LOAN NO.

**Mortgage Note**

CARRIAGE HOUSE OF MISHAWAKA

TO

MOUNT VERNON SALES & MORTGAGE CORPORATION

No. 073-44008-LDP

Insured under Sec. 236 of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on Sept. 25, 1969

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER

By /s/ Merle R. Tiede (Authorized Agent)

Date Oct. 2, 1969

A total sum of $ ____ has been approved for insurance hereunder by the Commissioner

FEDERAL HOUSING COMMISSIONER

By ____ (Authorized Agent)

Date ____

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

48116-P Rev. 4/63 FHA-Wash., D.C.

IRH 0099003

FHA FORM NO. 4118-D
(CORPORATE)
(Revised April 1953)

SUPPLEMENTAL

# MORTGAGE NOTE

$100,000.00 Indianapolis, Indiana.

November 1,1978.

FOR VALUE RECEIVED, the undersigned, Carriage House North, a limited partnersh organized under the laws of the State of Indiana, promises to pay to Mount Vernon Sales & Mortgage Corporation a corporation organized and existing under the laws of the State of Indiana , or order, the principal sum of One Hundred Thousand and 00/100-------------------------------- Dollars ($100,000.00 ), with interest from date at the rate of nine and one-half per centum (9 1/2 %) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows. Interest payable monthly on the first day of Novembe 1978, and on the first day of each month thereafter as hereinafter set forth. Commencing on the first day of December, 1978, installments of interest and principal shall be paid in the sum of Eight Hundred Twenty-Nine Dollars and 37/100 ($829.37) each, such payment to continue monthly thereafter on the first day of each succeeding month until the entire indebtedness has been paid. In any event, the balance of principal, if any, remaining unpaid plus accrued interest, shall be due and payable on August 1, 2011. The installmen of interest and principal shall be applied first to interest at the rate hereinafter set forth upon the principal sum or so much thereof that shall from time to time remain unpai and the balance thereof shall be applied on account of principal. The Maker assumes no personal liability for the payment hereof except as set out in Mortgage of even date give to secure this indebtedness.

Both principal and interest shall be payable at the office of Mount Vernon Sales & Mortgage Corporation in Indianapolis, Indiana or such other place as the holder may designate in writing.

Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder. If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations. See Rider 1 attached hereto and made a part of this Note.

Notwithstanding any provision herein for a prepayment charge or premium, prepayments of principal which do not exceed an aggregate of fifteen per centum (15%) of the original principal sum of this note in any one calendar year, may be made without any prepayment charge or premium.

If default be made in the payment of any installment under this note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this note equals or exceeds the amount of such required installment of principal.

The makers, endorsers, sureties, guarantors, and all other parties now or hereafter personally liable hereon waive the benefit of valuation and appraisement laws and waive presentment, demand for payment, protest and notice of dishonor, and the endorsers, sureties, and guarantors, consent that the owner or holder hereof shall have the right, without notice, to deal in any way at any time with any party hereto or to grant to any such party any extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever, or may release any of the security for this note, without in any way affecting the personal liability of any party hereunder.

This note is secured by a mortgage of even date herewith on real estate located in the City of Indianapolis, , County of Marion , State of Indiana, and may be further secured by a chattel mortgage to be hereafter executed on personal property located in the City of Indianapolis , County of Marion , State of Indiana.

IN WITNESS WHEREOF the undersigned has caused this note be executed in its name and behalf by a general partner the day and year first above written.

CARRIAGE HOUSE NORTH,
A Limited Partnership

By [signature]
Bernard Landman, Jr., General Partner

---

I HEREBY CERTIFY that this is the note described in, and secured by mortgage of even date herewith and in the same principal amount as herein stated, on real estate in the County of State of Indiana. Dated this 1st day of November, 1978

[signature] Mary M. Miller
Mary M. Miller, *Notary Public.*

My Commission Expires: October 12, 1981 County of Residence: Marion

The form of this instrument was prepared by the Office of the General Counsel of the Federal Housing Administration, and the material in the blank space in the form was inserted by or under the direction of ROBERT H. GULLICK

STATE OF INDIANA

LOAN NO.

Mortgage Note

CARRIAGE HOUSE NORTH,
A Limited Partnership
TO
MOUNT VERNON SALES & MORTGAGE CORPORATION

073-44054 LDP
No. 073-12002 LDP

Insured under §241 of the National Housing Act and Regulations published thereunder

In effect on May 18, 1978

To the extent of advances approved by the Secretary of Housing and Urban Development acting by and through the Federal Housing Commissioner

By [signature]
*(Authorized Agent)*

Date NOVEMBER 15, 1978

A total sum of $100,000 has been approved for insurance hereunder by the Secretary of Housing and Urban Development acting by and through the Federal Housing Commissioner

By [signature]
*(Authorized Agent)*

Date NOVEMBER 15, 1978

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

RIDER 1

This Rider attached to and made a part of the Mortgage Note dated November 1, 1978 in the sum of One Hundred Thousand Dollars ($100,000.00) from Carriage House North, a limited partnership, to Mount Vernon Sales & Mortgage Corporation.

In the event any installment or part of any installment of principal and interest becomes delinquent for more than fifteen days, there shall be due an additional sum equal to two ($0.02) cents on each $1.00 so delinquent.

# AGREEMENT

**THIS AGREEMENT**, made this 21st day of February, 1997, by and between THE CITY OF NEW YORK, ACTING BY AND THROUGH ITS DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, its successors and assigns ("City"), the NEW YORK CITY HOUSING DEVELOPMENT CORPORATION ("HDC"), a corporate governmental agency constituting a public benefit corporation of the State of New York, in its capacity as the holder of the First Mortgage Loan (as defined herein) and as servicer on behalf of the Trust (as defined herein), and NEW AMSTERDAM HOUSES, INC. (the "Housing Company"), a corporation organized and existing under the laws of the State of New York, and NEW AMSTERDAM ASSOCIATES (the "Partnership"), a limited partnership formed pursuant to the Partnership Law of the State of New York, both having an address at c/o Starrett Corporation, 909 Third Avenue, New York New York 10022, and their successors and assigns (the Housing Company and the Partnership and their respective successors and assigns being referred to collectively herein as the "Owner").

WITNESSETH:

**WHEREAS**, the Housing Company is a housing company organized under Article 2 of the Private Housing Finance Law of the State of New York; and

**WHEREAS**, the Owner is the owner of the multi-family rental housing project known as New Amsterdam Apartments (the "Project"); and

**WHEREAS**, on June 12, 1978, the Housing Company executed that certain Mortgage Note, and the Owner executed that certain Mortgage (together, the "First Mortgage Loan") each in the original principal amount of $6,461,300, which First Mortgage Loan is held by HDC and is insured by the Secretary of Housing and Urban Development ("HUD"); and

**WHEREAS**, on such date the Housing Company executed that certain Subordinate Mortgage Note, and the Owner executed that certain Subordinate Mortgage, each in the original principal amount of $1,042,194.42, with Deferred Interest, as defined therein (the "Subordinate Mortgage Note" and "Subordinate Mortgage," and together, the "Subordinate Mortgage Loan"); and

**WHEREAS**, on such date the Owner and HDC, the original holder of the Subordinate Mortgage Loan, executed that certain Disbursement Agreement ("Disbursement Agreement"), which provides for the disbursement of surplus Project income; and

**WHEREAS**, the Subordinate Mortgage Loan was assigned by HDC to the City, and the City succeeded to the rights of HDC under the Disbursement Agreement; and

**WHEREAS**, the City has assigned the Subordinate Mortgage Loan to the NYC Mortgage Loan Trust, Multifamily Mortgage Pass-Through Certificates, Series 1996 (the "Trust") and has retained subordinate certificates issued by the Trust; and

**WHEREAS**, the Project is an eligible low-income housing project under the Low-Income Housing Preservation and Resident Homeownership Act of 1990, as amended ("LIHPRHA"); and

**WHEREAS**, the Owner has received, or expects to receive, approval from HUD of a plan of action (the "Plan of Action") pursuant to LIHPRHA to preserve the Project as low-income housing for its remaining useful life; and

**WHEREAS**, the Plan of Action provides that the Owner shall receive a nonamortizing, no-interest mortgage loan from HUD (the "Capital Loan") in an amount not to exceed approximately $9,253,000 to finance repairs to the Project costing approximately $2,571,000, fund an initial deposit to the Project's reserve for replacements in the amount of approximately $505,089, pay for transactional costs, consultants' fees, etc. of approximately $989,000 and provide a take-out of equity to the Owner in an amount not to exceed approximately $5, 187,911; and

**WHEREAS**, HUD has conditioned its agreement to provide a Capital Loan on the consent of HDC and the Trust, as holders of senior liens on the Project, and the Owner has advised HDC and the City that HUD has indicated that the subordination of the Subordinate Mortgage Loan to the Capital Loan may be required as well; and

**WHEREAS**, the present intention of the parties is that no payments will be due and payable under the Capital Loan until the payment in full of the First Mortgage Loan and the Subordinate Mortgage Loan or sale or transfer of the Project; and

**WHEREAS**, it is the intent of the parties that the Subordinate Mortgage Loan will not be subordinated to the Capital Loan, but that if HUD requires such subordination as a condition to providing the Capital Loan, such subordination shall be carried out in accordance with the terms of this Agreement and may result in payments being due and payable under the Capital Loan prior to payments under the Subordinate Mortgage Loan; and

**WHEREAS**, the Pooling and Servicing Agreement dated as of June 1, 1996, entered into by and among the City, State Street Bank and Trust Company, as trustee, and HDC, as servicer of the Trust (the "Servicing Agreement") provides that HDC, as servicer, may consent to the subordination of the Subordinate Mortgage Loan to the lien of another mortgage loan encumbering the Project, provided, inter alia, the City consents in writing to such new mortgage loan to the extent required by applicable law.

**NOW THEREFORE**, in consideration of the mutual promises contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1. a. The City and HDC agree to provide, at the time of the closing of the Capital Loan, their consent in writing to the Capital Loan upon review and approval by the City and HDC (to the extent such review and approval is required by either of them) of the Capital Loan documents and other LIHPRHA-related documents, including but not limited to (a) the mortgage note evidencing the Capital Loan, (b) the mortgage securing repayment of such mortgage note and (c) the Use Agreement and Amendment of Regulatory Agreement, which review and approval shall not be unreasonably delayed or denied.

b. HDC agrees to provide its consent to (a) the subordination of the Subordinate Mortgage Loan to the Capital Loan, if such subordination is required by HUD, through execution on behalf of the Trust of a subordination agreement in form and content as may be required by HUD; and (b) the amendment of the Disbursement Agreement to provide for the take-out of equity by the Owner as contemplated by the Plan of Action. The parties acknowledge that execution of a subordination agreement and amendment of the Disbursement Agreement on behalf of the Trust are subject to satisfaction of the applicable requirements for such subordination and amendment as set forth in the Servicing Agreement.

c. The City and HDC shall execute such documents as may be required to evidence such consent and shall otherwise cooperate with the Owner in the closing of the Capital Loan transaction.

2. The Owner agrees to pay the City the sum of Two Hundred and Eighty-Five Thousand Dollars ($285,000.00) as a fee (the "Amendment and Consent Fee") for the City's consent to the Capital Loan, amendment of the Disbursement Agreement and, if required, subordination of the Subordinate Mortgage Loan to the Capital Loan.

3. The Amendment and Consent Fee shall be due and payable to the City from and upon the release from escrow to the Owner of the Owner's equity take-out portion of the Capital Loan. No Amendment and Consent Fee shall be payable by the Owner to the City under this Agreement unless the Capital Loan has closed and the equity take-out portion of the Capital Loan has been released to the Owner. The Owner shall cause the escrow agreement under which the equity take-out portion of the Capital Loan is held to provide that the equity take-out portion of the Capital Loan shall not be released to the Owner unless and until the Amendment and Consent Fee is paid to the City.

4. This Agreement may not be amended, modified or terminated except by a written agreement executed by the parties hereto.

5. The enforcement of this Agreement shall be governed by, and this Agreement shall be construed and interpreted in accordance with, the laws of the State of New York.

6. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7. The parties hereto each shall execute and deliver to the requesting party such other documents and shall take such other and further actions as may be necessary or requested by either party hereto, to give effect to the terms and conditions of this Agreement.

8. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their successors and assigns.

**IN WITNESS WHEREOF**, each of the undersigned has duly executed and delivered this Agreement this _____ day of ___________, 1997.

THE CITY OF NEW YORK, ACTING BY AND THROUGH ITS DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT

By: ________________________
Name: Robin Weinstein
Title: Assistant Commissioner, Housing Supervision

Approved as to form:

________________________
Assistant Corporation Counsel

NEW YORK CITY HOUSING DEVELOPMENT CORPORATION

By: ________________________
Name: BARBARA UDELL
Title: President

NEW YORK CITY HOUSING
DEVELOPMENT CORPORATION, as Servicer
on behalf of the NYC Mortgage Loan Trust,
Multifamily Mortgage Pass-Through Certificates,
Series 1996

By: Barbara Udell
Name: BARBARA UDELL
Title: President

OWNER:

NEW AMSTERDAM HOUSES, INC.

By: [signature]
Name: Lewis A. Weinfeld
Title: President

NEW AMSTERDAM ASSOCIATES

By: New Amsterdam Houses, Inc.,
General Partner

By: [signature]
Name: Lewis A. Weinfeld
Title: President

## AGREEMENT

**THIS AGREEMENT**, made this 21st day of February, 1997, by and between THE CITY OF NEW YORK, ACTING BY AND THROUGH ITS DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, its successors and assigns ("City"), the NEW YORK CITY HOUSING DEVELOPMENT CORPORATION ("HDC"), a corporate governmental agency constituting a public benefit corporation of the State of New York, in its capacity as the holder of the First Mortgage Loan (as defined herein) and as servicer on behalf of the Trust (as defined herein), and LEADER HOUSING CO., INC. (the "Housing Company"), a corporation organized and existing under the laws of the State of New York, and LEADER HOUSE ASSOCIATES (the "Partnership"), a limited partnership formed pursuant to the Partnership Law of the State of New York, both having an address at c/o Starrett Corporation, 909 Third Avenue, New York New York 10022, and their successors and assigns (the Housing Company and the Partnership and their respective successors and assigns being referred to collectively herein as the "Owner").

WITNESSETH:

**WHEREAS,** the Housing Company is a housing company organized under Article 2 of the Private Housing Finance Law of the State of New York; and

**WHEREAS,** the Owner is the owner of the multi-family rental housing project known as Leader House Apartments (the "Project"); and

**WHEREAS,** on January 23, 1978, the Housing Company executed that certain Mortgage Note, and the Owner executed that certain Mortgage (together, the "First Mortgage Loan") each in the original principal amount of $6,269,400, which First Mortgage Loan is held by HDC and is insured by the Secretary of Housing and Urban Development ("HUD"); and

**WHEREAS,** on such date the Housing Company executed that certain Subordinate Mortgage Note, and the Owner executed that certain Subordinate Mortgage, each in the original principal amount of $2,615,388.13, with Deferred Interest, as defined therein (the "Subordinate Mortgage Note" and "Subordinate Mortgage," and together, the "Subordinate Mortgage Loan"); and

**WHEREAS,** on such date the Owner and HDC, the original holder of the Subordinate Mortgage Loan, executed that certain Disbursement Agreement ("Disbursement Agreement"), which provides for the disbursement of surplus Project income; and

**WHEREAS**, the Subordinate Mortgage Loan was assigned by HDC to the City, and the City succeeded to the rights of HDC under the Disbursement Agreement; and

**WHEREAS**, the City has assigned the Subordinate Mortgage Loan to the NYC Mortgage Loan Trust, Multifamily Mortgage Pass-Through Certificates, Series 1996 (the "Trust") and has retained subordinate certificates issued by the Trust; and

**WHEREAS**, the Project is an eligible low-income housing project under the Low-Income Housing Preservation and Resident Homeownership Act of 1990, as amended ("LIHPRHA"); and

**WHEREAS**, the Owner has received, or expects to receive, approval from HUD of a plan of action (the "Plan of Action") pursuant to LIHPRHA to preserve the Project as low-income housing for its remaining useful life; and

**WHEREAS**, the Plan of Action provides that the Owner shall receive a nonamortizing, no-interest mortgage loan from HUD (the "Capital Loan") in an amount not to exceed approximately $9,357,000 to finance repairs to the Project costing approximately $2,436,000, fund an initial deposit to the Project's reserve for replacements in the amount of approximately $866,426, pay for transactional costs, consultants' fees, etc. of approximately $996,000 and provide a take-out of equity to the Owner in an amount not to exceed approximately $5,058,574; and

**WHEREAS**, HUD has conditioned its agreement to provide a Capital Loan on the consent of HDC and the Trust, as holders of senior liens on the Project, and the Owner has advised HDC and the City that HUD has indicated that the subordination of the Subordinate Mortgage Loan to the Capital Loan may be required as well; and

**WHEREAS**, the present intention of the parties is that no payments will be due and payable under the Capital Loan until the payment in full of the First Mortgage Loan and the Subordinate Mortgage Loan or sale or transfer of the Project; and

**WHEREAS**, it is the intent of the parties that the Subordinate Mortgage Loan will not be subordinated to the Capital Loan, but that if HUD requires such subordination as a condition to providing the Capital Loan, such subordination shall be carried out in accordance with the terms of this Agreement and may result in payments being due and payable under the Capital Loan prior to payments under the Subordinate Mortgage Loan; and

**WHEREAS**, the Pooling and Servicing Agreement dated as of June 1, 1996, entered into by and among the City, State Street Bank and Trust Company, as trustee, and HDC, as servicer of the Trust (the "Servicing Agreement") provides that HDC, as servicer, may consent to the subordination of the Subordinate Mortgage Loan to the lien of another mortgage loan encumbering the Project, provided, inter alia, the City consents in writing to such new mortgage loan to the extent required by applicable law.

**NOW THEREFORE**, in consideration of the mutual promises contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1. a. The City and HDC agree to provide, at the time of the closing of the Capital Loan, their consent in writing to the Capital Loan upon review and approval by the City and HDC (to the extent such review and approval is required by either of them) of the Capital Loan documents and other LIHPRHA-related documents, including but not limited to (a) the mortgage note evidencing the Capital Loan, (b) the mortgage securing repayment of such mortgage note and (c) the Use Agreement and Amendment of Regulatory Agreement, which review and approval shall not be unreasonably delayed or denied.

b. HDC agrees to provide its consent to (a) the subordination of the Subordinate Mortgage Loan to the Capital Loan, if such subordination is required by HUD, through execution on behalf of the Trust of a subordination agreement in form and content as may be required by HUD; and (b) the amendment of the Disbursement Agreement to provide for the take-out of equity by the Owner as contemplated by the Plan of Action. The parties acknowledge that execution of a subordination agreement and amendment of the Disbursement Agreement on behalf of the Trust are subject to satisfaction of the applicable requirements for such subordination and amendment as set forth in the Servicing Agreement.

c. The City and HDC shall execute such documents as may be required to evidence such consent and shall otherwise cooperate with the Owner in the closing of the Capital Loan transaction.

2. The Owner agrees to pay the City the sum of Seven Hundred and Fifteen Thousand Dollars ($715,000.00) as a fee (the "Amendment and Consent Fee") for the City's consent to the Capital Loan, amendment of the Disbursement Agreement and, if required, subordination of the Subordinate Mortgage Loan to the Capital Loan.

3. The Amendment and Consent Fee shall be due and payable to the City from and upon the release from escrow to the Owner of the Owner's equity take-out portion of the Capital Loan. No Amendment and Consent Fee shall be payable by the Owner to the City under this Agreement unless the Capital Loan has closed and the equity take-out portion of the Capital Loan has been released to the Owner. The Owner shall cause the escrow agreement under which the equity take-out portion of the Capital Loan is held to provide that the equity take-out portion of the Capital Loan shall not be released to the Owner unless and until the Amendment and Consent Fee is paid to the City.

4. This Agreement may not be amended, modified or terminated except by a written agreement executed by the parties hereto.

5. The enforcement of this Agreement shall be governed by, and this Agreement shall be construed and interpreted in accordance with, the laws of the State of New York.

6. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7. The parties hereto each shall execute and deliver to the requesting party such other documents and shall take such other and further actions as may be necessary or requested by either party hereto, to give effect to the terms and conditions of this Agreement.

8. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their successors and assigns.

**IN WITNESS WHEREOF**, each of the undersigned has duly executed and delivered this Agreement this _____ day of ___________, 1997.

THE CITY OF NEW YORK, ACTING BY AND THROUGH ITS DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT

By: Robin Weinstein
Name: Robin Weinstein
Title: Assistant Commissioner - Housing Supervision

Approved as to form:

___________________________
Assistant Corporation Counsel

NEW YORK CITY HOUSING DEVELOPMENT CORPORATION

By: Barbara Udell
Name: BARBARA UDELL
Title: President

NEW YORK CITY HOUSING
DEVELOPMENT CORPORATION, as Servicer
on behalf of the NYC Mortgage Loan Trust,
Multifamily Mortgage Pass-Through Certificates,
Series 1996

By: Barbara Udell
Name: BARBARA UDELL
Title: President

OWNER:

LEADER HOUSING CO., INC.

By: [signature]
Name: Lewis A. Weinfeld
Title: President

LEADER HOUSE ASSOCIATES

By: Leader Housing Co., Inc.,
General Partner

By: [signature]
Name: Lewis A. Weinfeld
Title: President