**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ALGONQUIN HEIGHTS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 97-582C |
| v. | ) | (Judge Margaret M. Sweeney) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(1) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its motion for partial summary judgment.

1. Modern national housing policy began in the New Deal era with the passage of the National Housing Act of 1934. The Government initially provided low-income housing by subsidizing projects that were developed, owned, and managed by local public housing authorities. However, during the 1960's, to encourage private developers to construct, own, and manage low- and moderate-income housing, Congress enacted two programs – the section 221(d)(3) program and the section 236 program – that authorized the Federal Housing Administration, and later HUD, to provide mortgage insurance and other financial incentives. See Cienega Gardens v. United States, 331 F.3d 1319, 1234 (Fed. Cir. 2003).

2. Under the section 221(d)(3) program, developers received below-market mortgage interest rates. 12 U.S.C. § 1715l(d)(3). Under the section 236 program, developers received market-rate mortgages with an interest subsidy. 12 U.S.C. § 1715z-1.

3. When obtaining a HUD-insured mortgage to develop a project under the section 221(d)(3) and 236 programs, the owner generally executed a deed of trust note payable to a

private lending institution. The note evidenced a loan made pursuant to an agreement between the owner and the lending institution. Payment of the indebtedness was secured by a deed of trust on the subject property. The repayment term of the loan was generally forty years and the note specified the terms on which prepayment of the loan could occur. See Cienega Gardens, 331 F.3d at 1234.

4. Prepayment was also limited by Federal regulations, which prohibited prepayment of the insured debt without HUD approval for 20 years after final endorsement of the project's mortgage insurance. See, e.g., 24 C.F.R. § 221.524(a) (1970). The regulations governing prepayment were subject to amendment by HUD. See, e.g., 24 C.F.R. § 221.749 (1970).

5. To obtain Federal mortgage insurance, as well as other taxpayer-funded benefits, the developer entered into a "regulatory agreement" with HUD in which the owner accepted specific restrictions on the mortgaged property, including restrictions on tenant income, allowable rental rates, and cash distributions from project income. The regulatory agreement remained in force as long as the property was subject to the Government-insured mortgage. See Cienega Gardens, 331 F.3d at 1234-35.

6. On May 25, 1972, Dolly Ann Apartments LP executed a deed of trust note. DA1-4.

7. The loan evidenced by the deed of trust note was provided by Shelter Mortgage Corporation, and has a final maturity date of July 1, 2013. DA3.

8. The final endorsement for Federal mortgage insurance was provided by HUD on January 16, 1974. DA2.

9. Paragraph 2 of Attachment A of the deed of trust note concerns prepayment of the insured debt. DA3-4. The concluding sentence of this paragraph states: "Any other provisions of this Note to the contrary notwithstanding the debt evidenced by this Note may not be prepaid either in whole or in part prior to the final maturity date hereof without the prior written approval of the Federal Housing Commissioner." DA4.

10. Carriage House of Mishawaka executed a mortgage and mortgage note on October 2, 1969. DA5-6.

11. The loan evidenced by the mortgage note was provided by Mount Vernon Sales & Mortgage Corporation, and has a final maturity date of June 1, 2011. DA5.

12. The parties deleted the following provision allowing prepayment from the mortgage note: "Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity on at least thirty (30) days' prior written notice to the holder." DA5, 7.

13. The Carriage House of Mishawaka mortgage note purportedly included a rider. See DA5. Plaintiffs have not produced, and the United States does not possess, a rider to the Carriage House of Mishawaka mortgage note.

14. The owner of Leader House Apartments executed an agreement with the City of New York acting through the New York Department of Housing Preservation and Development and the New York Housing Development Corporation on February 21, 1997. DA10-15. This agreement states that the owner of Leader House Apartments executed a mortgage and mortgage note with the City of New York on January 23, 1978. DA10 (describing the "First Mortgage Loan").

15. Leader House has failed to produce the January 23, 1978 mortgage documents or any prior mortgage documents containing a contractual right to prepay.

16. Leader House had no contractual right to prepay the January 23, 1978 mortgage.

17. The owner of New Amsterdam Apartments executed an agreement with the City of New York acting through the New York Department of Housing Preservation and Development, and the New York Housing Development Corporation on February 21, 1997. DA16-21. This agreement states that the owner of New Amsterdam Apartments executed a mortgage and mortgage note with the City of New York on June 12, 1978. DA16 (describing the "First Mortgage Loan").

18. New Amsterdam has failed to produce the June 12, 1978 mortgage documents or any prior mortgage documents containing a contractual right to prepay.

19. New Amsterdam had no contractual right to prepay the June 12, 1978 mortgage.

20. Suehar Associates has produced, and the United States possesses, no mortgage document containing a contractual right to prepay a deed of trust on the project.

21. Suehar had no contractual right to prepay a Government-insured mortgage on the project.

22. Town & Country Apartments Section I has produced, and the United States possesses, no mortgage document containing a contractual right to prepay a deed of trust on the project.

23. Town & Country Apartments Section I had no contractual right to prepay a Government-insured mortgage on the project.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin

BRIAN M. SIMKIN
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0465
Fax: (202) 305-7644

August 8, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on the 8th day of August 2008, a copy of "DEFENDANT'S PROPOSED FINDING OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David A. Harrington