**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ALGONQUIN HEIGHTS, et al.,** | **)** | |
| | **)** | |
| **Plaintiffs,** | **)** | |
| | **)** | **No. 97-582C** |
| | **)** | **(Judge Margaret M. Sweeney)** |
| **v.** | **)** | |
| | **)** | |
| **THE UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated: September 9, 2008

Harry J. Kelly, Esq.
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080
E: hkelly@nixonpeabody.com

Attorneys for the Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... v

ARGUMENT .......... 2

I. ACCORDINGLY TO THE DOCUMENTS, HUD REGULATIONS AND POLICY STATEMENTS, EACH OF THE SUBJECT PLAINTIFFS WAS ENTITLED TO PREPAY ITS MORTGAGE .......... 2

A. Contrary to the Government's Unresearched Claims, the Mortgage Documents for Suehar, Town & Country And Leader Demonstrate Their Right to Prepay Their Mortgages .......... 2

1. Suehar produced mortgage documents that demonstrate its right to prepay .......... 2

2. Mortgage documents of Town & Country demonstrate it had a right to prepay its mortgage .......... 5

3. Leader also produced relevant mortgage documents establishing its right to prepay .......... 7

B. Dolly Ann and Mishawaka I Were Entitled to Prepay Their Mortgages, Pursuant to the Governing HUD Regulations .......... 9

1. HUD regulations and policy statements confirm that Dolly Ann was authorized to prepay its mortgage .......... 9

2. Mishawaka I was also allowed to prepay its mortgage, irrespective of the mortgage document provisions .......... 11

C. Notwithstanding the Absence of Loan Documents, New Amsterdam Possessed a Right to Prepay Its Mortgage .......... 13

CONCLUSION .......... 15

CERTIFICATE OF FILING .......... 17

APPENDIX

TABLE OF CONTENTS .......... i

Suehar Realty Inc. Mortgage Note, Suehar Associates, L.P. Deposition Exhibit 2 .......... PA 001

12 U.S.C.S. § 17151(d)(3) .......... PA 003

HUD Regulations (including §§ 221.524 and 236.30 (1970))............................................ PA 034

Declaration in Support of Plaintiffs' Reponses to Opposition to Defendant's Motion for Partial Summary Judgment.................................................... PA 038

March 1970 Amendatory Rent Supplement Contract for Suehar Realty, Inc. ..................... PA 043

Memorandum Dated July 17, 1992 from David R. Cooper, Assistant General Counsel Multifamily Mortgage Division Regarding Conversion of Rent Supplement Units to Section 8 Assistance .................................................................. PA 044

Prepayment of a HUD-Insured Mortgage by an Owner of Low Income Housing, 51 Fed. Reg. 11,992 (Apr. 8, 1992)...................................................................... PA 047

1983 Housing Assistance Payments (HAP) Contract Renewal for Suehar Realty Inc. ...................................................................................... PA 175

Deed of Trust Note for Town and Country Apartments and Townhouses........................... PA 176

Declaration of Richard Davison.............................................................................. PA 178

Regulatory Agreement for Limited Distribution Mortgagors Under Section 236 of the National Housing Act, as Amended for Town and Country Apartments and Townhouses ............................................................................................... PA 180

Initial Notice of Intent for Town and Country Apartments and Townhouses ...................... PA 188

Letter dated September 29, 1993 from James Kisicki to Richard Davison .......................... PA 190

12 U.S.C.S. § 4119............................................................................................. PA 193

Letter dated April 27, 1995 from Charles C. Famuliner to Richard Davison....................... PA 196

Partial Deposition Transcript of Stephen Salup dated August 28, 2007.............................. PA 198

1978 and 1970 Mortgage Note for Leader Housing Co., Inc. ............................................ PA 204

Initial Notice of Intent for Leader House Associates - Leader Housing Co., Inc.................. PA 213

Letter dated June 17, 1993 from David Buchwalter to Stephen Salup................................ PA 216

Amendatory Contract for Dolly Ann Apartments .............................................................. PA 221

Letter dated April 5, 1985 from C. Williams Thomas, Jr. to Eugene F. Ford ...................... PA 222

1985 Housing Assistance Payments (HAP) Contract Renewal for Dolly Ann Apartments ........ PA 224

Prepayment of a HUD-Insured Mortgage by an Owner of Low Income Housing, 56 Fed. Reg. 20, 262 (May 2, 1991) ........ PA 226

Letter Dated May 1, 1995 from David R. Cooper for John J. Daly, Associate General Counsel Office of Insured Housing ........ PA 313

Initial Notice of Intent for Dolly Ann Apartments ........ PA 316

Letter dated February 8, 1995 from James Kisicki to John L. Wall ........ PA 318

Letter dated July 12, 1996 from Charles C. Famuliner to John Wall ........ PA 321

Use Agreement and Amendment of Existing Regulatory Agreement for Dolly Ann Apartments ........ PA 324

Letter dated May 5, 1998 from R. F. Poffenberger to Gene B. Glick Management Company ........ PA 332

Letter dated June 9, 1983 from Louis M. Berra to Gene B. Glick Management Company ........ PA 335

Letter dated June 20, 1983 from Martha D. Lamkin to Gene B. Glick Management Company ........ PA 338

Letter dated June 20, 1983 from Louis M. Berra to Gene B. Glick Management Company ........ PA 340

Letter dated August 12, 1983 from Louis M. Berra to Gene B. Glick Management Company ........ PA 342

HUD Records Disposition Schedules, Carmelita Bridges Deposition Exhibit 3 ........ PA 362

Notice of Intent for Carriage House of Mishawaka Associates I ........ PA 389

Letter dated March 15, 1995 from Shirley Carr to Dean Donaldson ........ PA 392

Partial Deposition Transcript of Dean Donnelson dated August 14, 2007 ........ PA 394

Mortgage Note for Carriage House of Mishawaka II, Deposition Exhibit II 2 ........ PA 404

Initial Notice of Intent for New Amsterdam Associates - New Amsterdam Houses, Inc. ... PA 408

New Amsterdam Associates - New Amsterdam Houses, Inc Preservation Checklist ........ PA 410

Letter dated February 12, 1997 from Beryl Niewood to Stephen Salup ............................. PA 411

Joint Status Report filed August 10, 2006 ............................................................................ PA 415

Order filed August 14, 2006 ..................................................................................................... PA 417

Order filed January 2, 2007 ...................................................................................................... PA 418

## TABLE OF AUTHORITIES

**CASES**

Anaheim Gardens v. United States,
444 F.3d 1309 (Fed. Cir. 2006)........ 16

Cienega Gardens v. United States,
1996 U.S. Claims LEXIS 200 (Ct. Fed. Cl. 1996,
*vacated and remanded on other grounds*, 162 F.3d 1123 (Fed. Cir. 1998)........ 10

E.I. Dupont De Nemours & Co. v. United States,
54 Fed. Cl. 361 (Fed. Cl. 2002)
*reversed on other grounds*, 365 F.3d 1367 (Fed. Cir. 2004) ........ 12, 14

**STATUTES**

Section 221 (d)(3) of the National Housing Act........ *passim*

12 U.S.C.S. § 4119(1)(A)(i) and (iii)........ 6

12 U.S.C.S.§ 4119(1)(B)........ 6

12 U.S.C.S. § 17151(d)(3) ........ 3

24 CFR § 221.524........ 4, 9

24 CFR § 236.30 (a)(1)........ 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ALGONQUIN HEIGHTS, et al.,** | **)** | |
| | **)** | |
| **Plaintiffs,** | **)** | |
| | **)** | **No. 97-582C** |
| | **)** | **(Judge Margaret M. Sweeney)** |
| **v.** | **)** | |
| | **)** | |
| **THE UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Defendant, United States of America, has filed a motion for partial summary judgment (the "Government Motion"), contending that several Plaintiffs – Dolly Ann Apartments, L.P. ("Dolly Ann"), Leader Housing Co. Inc. and Leader Housing Associates (jointly, "Leader"), New Amsterdam Houses, Inc. and New Amsterdam Associates (jointly, "New Amsterdam"), Suehar Associates ("Suehar"), Town & Country Apartments and Townhouses ("Town & Country"), and Carriage House of Mishawaka I L.P. ("Mishawaka I") (jointly, the "Subject Plaintiffs") – can demonstrate no right to prepay their mortgages, and that the claims of these Plaintiffs therefore ought to be dismissed.[1] This motion parallels a motion filed in the companion case of Anaheim Gardens v. United States, No. 93-655C, and like that motion, it is totally without merit. As explained below, the Government Motion should be denied, because it is based on factual oversights, and because it misunderstands both the

[1] The Government identified "Carriage House of Mishawaka" as the property subject to the Government Motion. There are two separate plaintiffs in this lawsuit, "Mishawaka I" and Carriage House of Mishawaka II L.P. ("Mishawaka II"). The documents accompanying the Government Motion appear to relate to Mishawaka I. See DA 5-6. The Plaintiffs understand that the Government Motion therefore only addresses the claims asserted by Mishawaka I, and are not addressed to the claims asserted by Mishawaka II.

documentary and regulatory history of the relevant housing programs that are involved in this case. For example, the Government's oversights are so profound that it claims that three plaintiffs – Suehar, Town & Country, and Leader – have produced no documents indicating a contractual right to prepay, even though documents produced in discovery expressly confer that right. The Government Motion is ill-considered and without merit, and, as with the motion for partial summary judgment filed by the Government in the Anaheim case, must also be denied. [2]

## ARGUMENT

### I. ACCORDING TO THE DOCUMENTS, HUD REGULATIONS AND POLICY STATEMENTS, EACH OF THE SUBJECT PLAINTIFFS WAS ENTITLED TO PREPAY ITS MORTGAGE.

#### A. Contrary to the Government's Unresearched Claims, the Mortgage Documents for Suehar, Town & Country And Leader Demonstrate Their Right to Prepay Their Mortgages.

According to the Government Motion (at 6), Suehar and Town & Country have "produced, and the Government possesses, no mortgage documents establishing a contractual right to prepay a deed of trust on the project." The Government also contends that Leader failed to produce other mortgage documents demonstrating its right to prepay. Government Motion at 5. The Government should have done its homework before filing. If it had, the Government would have discovered that each of these Plaintiffs was expressly authorized to prepay their mortgages.

##### 1. Suehar produced mortgage documents that demonstrate its right to prepay.

---

2 These and the other Plaintiffs in this case will file a motion for summary judgment on ripeness issues on September 22, 2008. This response is intended only to address the grounds for summary judgment contained in the Government's motion and does not constitute a cross-motion for summary judgment on ripeness.

If the Government had even taken a cursory look at the Plaintiffs' document production, it would have located Suehar's Mortgage Note, which contains the following language expressly authorizing prepayment:

> Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder.

Plaintiffs' Appendix ("PA") at 001. Inexplicably, in preparing its motion, the Government apparently did not find the Mortgage Note, nor its language that, on its face, permitted Suehar to prepay its mortgage at any time. The omission is even more astounding ***because the Government introduced Suehar's Mortgage Note as an exhibit and discussed the note at the Suehar deposition***. See Exhibit 2 to Suehar Deposition Transcript, PA at 001. Somehow, in the months intervening since the Suehar deposition, the Government apparently forgot that it had previously identified the deed of trust that, it now contends, does not exist.

The Government cannot dispute that this language allowed Suehar to prepay its mortgage, because it is identical to the deleted language in the Mishawaka I mortgage note that the Government Motion (at 4) points out and characterizes as "allowing prepayment of the mortgage note." Of course, notwithstanding this broad language, Suehar was subject to prepayment restrictions, because Suehar's property participated in HUD's Section 221(d)(3) mortgage insurance program. In 1961, Congress incorporated into § 221(d)(3) of the National Housing Act a program to encourage the private development of low to moderate income housing. See 12 U.S.C.S. § 17151(d)(3), PA at 003. The program became known as the § 221(d)(3) program and it was administered by HUD. Under the program, HUD insured low interest 40-year mortgages. Id. Those mortgages were made available to developers to construct and maintain qualified housing. Id. Generally speaking, properties participating in the Section

221(d)(3) program were precluded from prepaying their mortgages for 20 years from the date of their mortgagee's final endorsement by HUD. See 24 CFR §221.524(a)(1), PA at 035.

In addition to participating in the Section 221(d)(3) mortgage insurance program, the Suehar property also initially participated in HUD's rent supplement program. PA at 043. Properties participating in the rent supplement program were precluded from prepaying their insured mortgage without HUD's consent during the 40-year term of the rent supplement contract. See 24 CFR §221.524(a)(2), PA at 035. Pursuant to HUD regulations and numerous policy statements, however, once a project converted from rent supplement assistance to Section 8 LMSA, it was no longer subject to the 40-year prepayment lockout applicable to rent supplement properties, and became subject only to the standard 20-year prepayment restriction contained in 24 C.F.R. § 221.524 (a)(1). See PA at 044-46, 045 (HUD letter concluding that if a project converted from rent supplement assistance to Section 8 it was no longer subject to the prepayment restriction in § 221.524). In other words, under § 221.524, each of the projects became eligible as of the effective date of their conversion to Section 8 LMSA to prepay their mortgages after the expiration of twenty years from date of final endorsement. See PA at 047-174, 056 (LIHPRHA Interim Rule).

Suehar terminated its rent supplement contract and converted to the Section 8 program in 1983. PA at 175. Under § 221.524, therefore, the Suehar property became eligible as of the effective date of its conversion to Section 8 LMSA to prepay its mortgage on the 20th anniversary of its final endorsement date. See PA at 047-174, 056 (LIHPRHA Interim Rule). Thus, Suehar indisputably possessed a right to prepay its mortgage after 20 years that was taken as a result of the enactment of ELIHPA and LIHPRHA. The Government is simply mistaken in

asserting that Suehar had no right to prepay its mortgage, and so the Government's Motion must be denied with respect to Suehar.

**2. Mortgage documents of Town & Country demonstrate it had a right to prepay its mortgage.**

As with the Suehar property, the Government simply did not do its homework prior to seeking to dismiss Town & Country's claims. If it had, it would have located the Mortgage Note for the Town and Country property – which the Government itself produced, and which expressly states that Town & Country may prepay its mortgage without HUD consent anytime after the 20th anniversary date of the mortgage's final endorsement by HUD:

> The debt evidenced by this note may not be prepaid either in whole or in part prior to the final maturity date hereof without the prior written approval of the Federal Housing Commissioner except where: . . . (2) the maker is a limited distribution mortgagor which is not receiving payments from the Commissioner under a Rent Supplement Contract pursuant to Section 101 of the Housing and Urban Development Act of 1965, and the prepayment occurs after the expiration of twenty years from the date of final endorsement . . . .

PA at 176-77. These provisions are satisfied here: The 20-year prepayment restriction applied to Town & Country, which was a limited dividend mortgagor and did not participate in the rent supplement program. PA at 178-79, 180-87. The Town and Country property participated in the Section 236 program. PA at 177, 178, 180-87. The language of the Mortgage Note is consistent with HUD's regulations, which generally permitted owners of Section 236 properties to prepay their mortgages after the 20th anniversary of final endorsement. 24 CFR § 236.30(a)(1), PA at 36.

The history of Town & Country's activities pursuant to the Preservation Statutes further underscores their right to prepay. On September 14, 1993, Town & Country filed its Notice of Intent, the document required to initiate HUD processing under LIHPRHA. PA at 188-89. On September 29, 1993, HUD sent Town & Country a letter, confirming that it had received the

NOI and that Town & Country I was an "eligible project." PA at 190-92. Under LIHPRHA, only projects which were eligible to prepay – *i.e.*, had a right to prepay, whether considered contractual or regulatory – without HUD's prior approval could be deemed "eligible low income housing." See 12 U.S.C.S.§ 4119(1)(B), PA at 193. Only projects deemed "eligible low income housing" were entitled to obtain incentives under LIHPRHA.

There was a multi-part analysis HUD conducted to determine if a project was "eligible low income housing" entitled to proceed under LIHPRHA. First, HUD had to determine that the property was housing financed by a loan or mortgage insured or held by the Secretary of HUD under Section 221(d)(3) of the National Housing Act and that it was receiving loan management assistance under Section 8 due to a conversion from rent supplement assistance, or that it was a Section 236 property. See 12 U.S.C.S. § 4119(1)(A)(i) and (iii), PA at 193. Second, HUD had to conclude that, under either its regulations or a contract in effect before February 5, 1988 (the date ELIHPA was enacted), the property was eligible, or would become eligible within 24 months, to prepay its mortgage note without prior approval of the Secretary. Id. Here, as outlined above, Town & Country was a Section 236 property and it was entitled to prepay the mortgage without HUD's consent, pursuant to the statute. Thus, HUD correctly concluded that Town & Country was "an eligible project" as evidenced by HUD's processing of the properties under LIHPRHA. Indeed, HUD ultimately approved Town & Country's LIHPRHA Plan of Action. PA at 196-97. Having determined that Town & Country's property was an "eligible project" and having approved its Plan of Action, the Government cannot seriously contend that Town & Country was unable to prepay its mortgage.

If the Government had taken the time to review the actual documents relating to Town & Country, it would not have sought to dismiss Town and Country from this lawsuit on such ill-

considered bases. In any event, Town and Country clearly had the right to prepay its mortgage after 20 years, and the Government's Motion must be denied with respect to that Plaintiff.

### 3. Leader also produced relevant mortgage documents establishing its right to prepay.

Leader House Apartments, owned by Leader, received New York City-insured financing when it was initially constructed, and also participated in the Section 236 program. PA at 199-201. As noted by the Government, the property went through a refinancing in 1978. Government Motion at 5. Again, however, the Government has not done its homework: It contends that Leader "has failed to produce the January 23, 1978 mortgage documents or any prior mortgage documents." Government Motion at 5. In fact, while Leader was unable to locate those documents, the Government itself supplied the original 1970 mortgage note (PA at 208-12) – which contained no prepayment prohibitions – and the January 23, 1978 Mortgage Note, which expressly authorizes Leader to prepay its mortgage:

> Privilege is reserved to pay the debt in whole or in part in an amount equal to one or more monthly payments on principal next due, on the first day of ***any*** month prior to maturity upon at least thirty (30) days' prior written notice to the holder.

Mortgage Note dated January 23, 1978 at 1 ("Leader Note") (emphasis added), PA at 204-07.[3] As noted above, the Government has previously indicated that this language unquestionably permits the owner to prepay its mortgage. See Government Motion at 4. Thus, pursuant to the Leader Note – which the Government itself produced – Leader could prepay its mortgage on the first day of any month prior to maturity. As noted, Leader also participated in the Section 236 program (PA at 199-201) and as a result, was subject to the prepayment rules contained in the

3 Attachment A to the Mortgage Note contains additional requirements for prepayment, such as penalty payments, but does not restrict Leader's right to prepay.

Section 236 program's regulations, which allowed the owner to prepay its mortgage without HUD consent at any time after the loan's twenty-year anniversary date. See pg. 6, above.

In addition to these sources, Leader's right to prepay is further evidenced by its preservation history. On May 3, 1993, Leader filed its Notice of Intent, indicating that it would seek incentives available under LIHPRHA. PA at 213-15. Shortly thereafter, HUD issued a letter to Leader, stating that "[w]e have determined your project . . . to be an eligible project, subject to the results of the Windfall Profits Test." PA at 216-20. As noted above (pg. 7), to determine that a project was eligible to participate in the LIHPRHA programs, HUD had to determine, among other things, that the owner possessed a right to prepay its mortgage. In other words, HUD determined in June 1993 that Leader had a right to prepay its mortgage. Having previously reached that decision in 1993, the Government cannot argue otherwise now.

The Leader Note, HUD's Section 236 prepayment regulations and the history of the preservation processing for the Leader property all allowed Leader to prepay at anytime after the 20 year anniversary. The prepayment restrictions contained in the Preservation Statutes prohibited Leader from exercising its right to prepay. Thus, contrary to the Government's Motion, Leader has demonstrated it possessed a right to prepay its mortgage, and therefore the Motion should be denied with respect to Leader.[4]

---

[4] The Government also contends that if the 1978 mortgage documents contain a right to prepay, Leader was not eligible to prepay until 1998, after the enactment of the Housing Opportunity Program Extension Act of 1996 (the "HOPE Act"). Government Motion at 9. The Government is mistaken. As noted, the 1978 mortgage documents expressly authorized Leader to prepay at any time. The 20 year prepayment limitation was tied to the state law that authorized the property's financing; because there was no HUD "final endorsement" for these properties, the 20 year time period began to run when the temporary certificates of occupancy were issued in 1972, making Leader eligible to prepay its mortgage in 1992. See PA at 213-215; 201a-201h; 201m. The 1978 mortgage documents did not affect the timing of prepayment eligibility. PA 201i -201l. Further, the fact that HUD determined the Leader project was eligible to participate in the preservation program demonstrates that HUD accepted Leader's calculation of its prepayment eligibility date. Certainly, the Government has pointed to nothing to support a later date for prepayment eligibility.

**B. Dolly Ann and Mishawaka I Were Entitled to Prepay Their Mortgages, Pursuant to the Governing HUD Regulations.**

The Government contends that the mortgage documents of two Plaintiffs, Dolly Ann and Mishawaka I, contain provisions that preclude prepayment. Again, the Government ignores the governing regulations and HUD's policy statements, all of which confirm that these properties had a right to prepay after 20 years. The Government Motion therefore must be denied with respect to these properties.

**1. HUD regulations and policy statements confirm that Dolly Ann was authorized to prepay its mortgage.**

The property owned by Dolly Ann was insured by HUD pursuant to the Section 221(d)(3) program. DA2 (indicating Section 221(d)(3) participation) The property initially participated in the rent supplement program, and later terminated that contract and entered into the Section 8 program. PA 221 and PA 222-23; 224-25.

The Government Motion contends (at 4) that language in the rider for the Dolly Ann Deed of Trust Note precludes prepayment without HUD consent, which, according to HUD, means that Dolly Ann had no right to prepay its mortgage. Again, the Government fails to understand its own prior policy statements. As explained above, once a project – such as the Dolly Ann property – converted from rent supplement assistance to Section 8, it was no longer subject to the 40-year prepayment lockout applicable to rent supplement properties, and became subject only to the standard 20-year prepayment restriction contained in 24 C.F.R. § 221.524. See pg. 5, above.

Further, and importantly, that regulatory prepayment right trumped any contrary language in the mortgage note for the project. As HUD stated, "if the applicable program regulations at 221.524 . . . allow prepayment at the expiration of 20 years after final endorsement, but the mortgage note prohibits prepayment without HUD's consent for the full term of the mortgage,

HUD . . .construes the regulation as superseding the prepayment prohibition in the mortgage note." PA at 226-312, 234-35. Indeed, the Government itself argued in Cienega Gardens, a lawsuit similar to the present action, that mortgage prepayment eligibility "**was always. . . determined by applicable regulations**," not the language in the mortgage note between a lender and the project owner. See Cienega Gardens v. United States, 1996 U.S. Claims LEXIS 200, at *7 (Fed. Cl. 1996), vacated and remanded on other grounds, 162 F.3d 1123 (Fed. Cir. 1998) (emphasis added).

HUD's policy that its regulations supplant and supersede contrary mortgage language was clearly reiterated in a May 1, 1995 letter from HUD's Office of the General Counsel. In this letter, HUD's General Counsel ruled on the eligibility of an owner of a § 221(d)(3) project to prepay the mortgage in the face of an express prepayment prohibition in the mortgage note. See PA at 313-15 (HUD letter addressing the LIHPRHA eligibility of Maunakea Tower). Consistent with its earlier position in 1991, HUD's General Counsel again concluded that a prepayment prohibition contained in the relevant mortgage note did not override the directly conflicting regulation which permitted prepayment of the mortgage without HUD's consent after the expiration of 20 years. Id. at 315. The letter again explained that HUD regulations supersede contrary language in a mortgage note. Id. And, in support of its conclusion, HUD's Office of General Counsel pointed out that both the preamble to, and the Interim Rule for LIHPRHA, reflected HUD's policy that where there is a conflict between HUD regulations and mortgage note language, the regulations govern. Id.

This result is confirmed by the preservation history of the Dolly Ann property. On January 26, 1995, Dolly Ann filed its notice of intent pursuant to LIHPRHA. PA at 316-17. HUD processed that application, determining on February 8, 1995 that the Dolly Ann property

was "an eligible project," a finding that required HUD to conclude that Dolly Ann had a right to prepay its mortgage. See pg. 7; PA at 318-20. On July 12, 1996, HUD granted approval of Dolly Ann's Plan of Action. PA at 321-23. HUD would not have processed Dolly Ann's application unless it determined that Dolly Ann was eligible to prepay its mortgage. Indeed, HUD expressly stated that the Dolly Ann property was eligible to prepay when it entered into a Use Agreement in February 1997 with Dolly Ann that specifically recited that Dolly Ann "is eligible to prepay the Mortgage Note and Mortgage. . . ." PA at 324-31, 324.

Thus, irrespective of the language of the Mortgage Note, HUD's interpretation of its regulations, and its actual admissions in connection with processing Dolly Ann's application under LIHPRHA, demonstrate that Dolly Ann had a right to prepay its mortgage, contrary to the claims in the Government's Motion. Consequently, the Government's Motion must be denied.

**2. Mishawaka I was also allowed to prepay its mortgage, irrespective of the mortgage document provisions.**

Mishawaka I participated in the Section 236 program and initially, also participated in the rent supplement program. DA6 (indicating participation in Section 236); PA at 332-34. Subsequently, Mishawaka I terminated its participation in the rent supplement program, and converted to the Section 8 program. PA at 335-37; 338-39; 340-41; 342-61. Mishawaka I located and provided to the Government an incomplete copy of its mortgage note, containing the standard Section 236 mortgage form, but not including the usual rider that contains the standard provisions allowing the property to prepay its mortgage after the 20th anniversary date of the mortgage's final endorsement. DA 5 - 6. Although required to retain copies of relevant mortgage documents in its files (HUD Handbook 2225.6 REV-1 CHG-43, Appendix 10 at 2 (Bridges Dep. Exh. 3), PA at 384), the Government apparently also was unable to locate any copy of the Mishawaka I loan documents. From this, the Government deduces that the absence

of the normal prepayment language means that Mishawaka I had no prepayment right. The Government is incorrect.

Under the governing rules of evidence, the inability of both parties to produce a relevant document does not mean the document does not exist, but instead they put a burden on the parties to obtain the relevant information by other means. E.I. Dupont De Nemours & Co. v. United States, 54 Fed. Cl. 361, 365 (Fed. Cl. 2002) (where a document central to a case has not been located by either party, Fed. R. Evid. 1004 provides for use of secondary evidence to prove the terms of the missing document), rev'd on other grounds, 365 F.3d 1367 (Fed. Cir. 2004). In this case, the necessary information is readily at hand. Like other Plaintiffs that participated in the Section 221(d)(3) or Section 236 programs, and that converted from the rent supplement program to Section 8, HUD regulations and interpretations allowed Mishawaka I to prepay its mortgage on the 20th anniversary of the final endorsement date. See pg. 6. HUD's regulations trumped whatever was contained in the Mishawaka I mortgage note (pp. 10 - 11), and those regulations clearly allowed Mishawaka I to prepay. Thus, irrespective of the parties' ability to locate relevant documents, Mishawaka I had a right to prepay its mortgage after 20 years.

Moreover, the preservation history of Mishawaka I confirmed its right to prepay. After Mishawaka I filed its second Notice of Intent under ELIHPA on February 20, 1995 (PA at 389-91), HUD issued a letter on March 15, 1995, confirming that the Mishawaka I property "to be an eligible property." PA at 392-93. Again, in order for HUD to determine that the Mishawaka I property was "an eligible property," HUD had to conclude that it had the right to prepay its mortgage. PA 233 (HUD confirms that eligibility standard of LIHPRHA "tracks the language of the corresponding definition" in ELIHPA).

The representative of both Mishawaka I and Mishawaka II was deposed on the same day by the Government, and testified with respect to the respective owners' prepayment rights and processing history. The owners' representative testified that both owners did, in fact, possess the right to prepay. PA at 400-01. Indeed, the Government produced a copy of the Mishawaka II mortgage note as deposition exhibit. PA at 404-07. There is no indication that the terms relating to Mishawaka I were intended by the parties to be any different from those relating to Mishawaka II, or that the owner of Mishawaka I would not be entitled to the same prepayment rights enjoyed by Mishawaka II and other Section 236 owners who executed the same standard rider to their mortgages. Certainly, the Government has not identified any testimony suggesting that Mishawaka I did not possess the same prepayment rights its companion and other Section 236 owners enjoyed.

In any event, HUD regulations permitted Mishawaka I, as a Section 236 owner, to prepay its mortgage on the 20th anniversary date of the final endorsement date of its mortgage. Since those regulations trumped the mortgage documents, even if it were the case that the mortgage note did not contain the standard rider expressly authorizing it to prepay its mortgage, it nevertheless was assured that right by the HUD regulations that remained in place throughout the Preservation Statutes era. Consequently, irrespective of whether the Mishawaka I mortgage note contained the standard rider authorizing prepayment, Mishawaka I possessed such a right, and the Government's Motion must be denied.

### C. Notwithstanding The Absence Of Loan Documents, New Amsterdam Possessed A Right To Prepay Its Mortgage.

Like the Leader property, New Amsterdam received mortgage insurance from New York City, and also participated in the Section 236 program. PA at 201, 408-09. As with Leader, the Government contends that the New Amsterdam failed to produce loan documents from a

refinancing of the project in June 12, 1978 or any prior mortgage documents, and contends that in the absence of such documents, it has failed to demonstrate that it possessed a right to prepay its mortgage. Government Motion at 5.

The Government is wrong, for several reasons. First, the Government also failed to produce mortgage documents that, according to its own document retention policies, should have been retained. See pg. 12, above. The inability of New Amsterdam and the Government to produce the mortgage documents does not mean that the Government's contention should be accepted, but rather that the information contained in those documents may be sought elsewhere. See, e.g., Dupont, 54 Fed. Cl. at 365. New Amsterdam has done so here: like all Section 236 projects, it is subject to HUD's Section 236 regulations. Those regulations – which remained in effect throughout the operation of the prepayment restrictions contained in ELIHPA and LIHPRHA – make clear that owners of Section 236 projects possessed a right to prepay their properties after the 20-year anniversary date of the property's mortgage. See pg. 6. Moreover, HUD has taken the position that its regulations trump the underlying mortgage documents. See pp. 10 - 11. Consequently, it is unnecessary for New Amsterdam or any other owner to produce documents formally evidencing a right to prepay, since that right preceded the contracts in this case and remained in effect, pursuant to HUD's regulations, throughout the operation of the Preservation Statutes.

In addition to the undisputed testimony of New Amsterdam's representative confirming its prepayment rights (PA at 201 – 201m), the history of New Amsterdam's preservation processing further demonstrates that it possessed a right to prepay its mortgage. Like Leader, New Amsterdam submitted a notice of intent on May 3, 1993, seeking to receive incentives available under LIHPRHA. PA at 408-09. HUD processed that application (PA at 410) and

ultimately approved New Amsterdam's Plan of Action on February 12, 1997. PA at 411-14. In order to approve a Plan of Action, HUD had to determine, among other things, that the project was eligible housing, which in turn required HUD to determine that New Amsterdam possessed the right to prepay its mortgage. See pp. 7, above. Here again, both HUD's regulations and the history of the preservation processing for the New Amsterdam property demonstrates that New Amsterdam possessed a right to prepay its mortgage. Consequently, the Government's Motion with respect to New Amsterdam must be denied. [5]

**CONCLUSION**

The Government's Motion is the product of ill-considered and, in some cases, unresearched, allegations. Contrary to the Government's contentions, relevant mortgage documents exist for Suehar, Town & Country, and Leader, all of which fully document their respective prepayment rights. HUD's regulations and policy statements also confirm that Plaintiffs Dolly Ann, Mishawaka I, and New Amsterdam possessed the right to prepay, notwithstanding the language of their respective mortgage documents or the parties' mutual inability to locate copies of those documents. Moreover, for those properties that sought incentives under the Preservation Statutes, the processing history of those properties confirms that those owners possessed a right to prepay: HUD could not legally have processed the subject owners' preservation applications without first determining that those owners possessed a right

---

5 As with Leader, the Government contends that, due to the 1978 mortgage refinancing, New Amsterdam was not eligible to prepay until 1978. Government Motion at 9. As with Leader, this contention is incorrect. New Amsterdam's Notice of Intent made clear that its prepayment eligibility date was measured from the date of the issuance of the temporary certificate of occupancy in 1971; consequently, New Amsterdam was eligible to prepay in 1991. See PA at 408-09; 201a-201h; 201m. The 1978 mortgage documents did not affect the timing of prepayment eligibility. PA at 201i-201l. Here, too, the fact that HUD determined the New Amsterdam project was eligible to participate in the preservation program further demonstrates that HUD accepted New Amsterdam's calculation of its prepayment eligibility date. Again, the Government has pointed to nothing to support a later date for prepayment eligibility.

to prepay. Indeed, in many instances, HUD's own documents expressly acknowledge that the subject owners were eligible to prepay their mortgages. Each of the Subject Plaintiffs was, therefore, eligible to prepay its mortgages, contrary to the claims made by the Government and consequently, the Government's Motion should be denied.[6]

Dated: September 9, 2008

/s/ Harry J. Kelly
Harry J. Kelly, Esq.
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080
E: hkelly@nixonpeabody.com

Attorneys for the Plaintiffs

---

6 It should also be pointed out that the Government Motion, and the parallel motion filed in the Anaheim case, essentially go to the merits of the Plaintiffs' takings claims, rather than to ripeness issues, and therefore are premature. Previously, the Federal Circuit remanded this case "for the development of facts on whether appellants' takings claims are ripe." Anaheim Gardens v. United States, 444 F.3d 1309, 1317 (Fed. Cir. 2006). The Court and the parties agreed to address the ripeness of the Plaintiffs' claims first, and to defer consideration of the merits of Plaintiffs' takings claims until after the ripeness issues are decided. PA at 415-16; 417; 418. While the Plaintiffs believe the Government Motion and the parallel motion filed in Anaheim are meritless and can be disposed of on the grounds stated in the Plaintiffs' Responses and Opposition Briefs, if the Court has any lingering doubts, consideration of the Government's motions should be deferred until the merits phase of the case, as the Court and the parties originally intended.

**CERTIFICATE OF FILING**

I certify that on the 9th day of September 2008, a copy of "PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Harry J. Kelly
Harry J. Kelly