DEED BOOK 370 PAGE 217

## EXHIBIT "A" - (LEGAL DESCRIPTION)

All of that certain piece, parcel or tract of land situate, lying and being in the Covington Magisterial District, in Alleghany County, Virginia, just a short distance east of the City of Covington, Virginia, and being more particularly described as follows:

BEGINNING at corner 1, an iron pin, being located on the westerly right-of-way line of Virginia State Route 631 and also being the northeast corner of Richard Downer property; thence leaving Virginia State Route 631 and with Downer in a southwesterly direction S. 35 degs. 25' W. 190.00 feet to corner 2, an iron pin; thence leaving Downer and with the most northerly line of Altamont Subdivision S. 32 degs. 15' W. 200.00 feet to corner 3, an iron pin; thence leaving Altamont Subdivision and with A.A. McAllister & Sons' Co., Inc., property S. 70 degs. 10' 33" W. 294.67 feet to corner 4, an iron pin; thence leaving McAllister and with Alleghany County School Board and McAllister properties N. 36 degs. 00' W. 443.44 feet to corner 5, an iron pin; thence N. 35 degs. 24' 19" E. 549.09 feet to corner 6, an iron pin; thence continuing with the McAllister property and with the westerly side of a VEPCO Power Line Easement S. 56 degs. 49' 59" E. 488.00 feet to corner 7, an iron pin and being a point on the right-of-way line of Virginia State Route 631; thence with said right-of-way line S. 43 degs. 41' W. 32.75 feet to corner 8, an iron pin; thence with said right-of-way and a curve to the left, which curve is defined by a delta of 115 degs. 52' 26", a radius of 50.00 feet, an arc of 101.12 feet, a chord of 84.75 feet, and a bearing of S. 14 degs. 15' 13" E. to corner 9, an iron pin; thence S. 72 degs. 11' 26" E. 31.32 feet to the point of BEGINNING, containing 8.091 acres, and being more particularly shown on a plat by Buford T. Lumsden & Associates, C.L.S., dated 24 April, 1972.

\# 0285

VIRGINIA: In the Clerk's Office of the Circuit Court of the County of Alleghany. This instrument, with certificate of acknowledgement annexed, is admitted to record at 3:46 o'clock P. M FRIDAY FEBRUARY 14, 1997
Taxes Paid: Pursuant to Sect. 58.1-802 $ -0-
State Tax: $ -0- Teste [signature] Clerk

MAY 5 1983

Gene B. Glick Management Company
P. O. Box 40177
Indianapolis, IN 46240

Ladies/Gentlemen:

SUBJECT: Carriage House of Mishawaka I & ~~II~~
Mishawaka, Indiana
Project No. 073-44008/~~44235~~

This is to advise you that Section 8 project commitments are available for projects which are currently covered under Rent Supplement Contracts. These Section 8 project commitments are intended to replace currently existing Rent Supplement Contracts with Section 8 Housing Assistance Payment (HAP) Contracts to ensure the Department's ability to provide sufficient tenant subsidies needed by you to implement rental increases approved by HUD.

We previously contacted you to determine your willingness to convert your Rent Supplement Contract to a Section 8 HAP Contract. At that time, you responded affirmatively. Therefore, this is our official offer to you for your acceptance of this conversion. Please acknowledge your acceptance in the space provided on the original of this letter and return to this office within five (5) days of your receipt of this letter.

For your information and determination on whether you should accept this offer or not, a brief comparison of the differences in the two types of contracts is:

COMPARISON OF FEATURES OF CONTRACTS

| FEATURES | RENT SUPPLEMENT CONTRACT | SECTION 8 HAP CONTRACT |
|---|---|---|
| Maximum Term | 40 years | Initial 5 years<br>Renewable for two 5 year terms |

Kelly Decl. Ex. T

| | | |
|---|---|---|
| LD Mortgagor Prepayment of Mortgage Restriction Under Contract 1/ | 40 years | None |
| Security Deposits | Maximum $25 | One Month's gross family contribution or $50, whichever is greater |
| Payment of Monthly Vouchers | Vouchers submitted by 15th of month for the current month to Office of Finance & Accounting (OFA) - (Paid after) | Vouchers submitted by 15th of current month for subsequent month to Regional Accounting Division (RAD) (Paid in Advance) |
| Permitted to claim for vacancies and claim for Tenant Damage and/or Unpaid Rent | No | Yes |
| Contract Provision for Project Reserve Account of Unused Annual Contract Amounts | No | Yes |
| 24 CFR 401 Applicable (Posting of Notice on Intent to file for Rental Increase) | Yes | No |
| * Tenants Recertifications | Annually for all tenants except elderly | Annually for all tenants |
| * Tenants Rent Share | 30% of Approved Rents (including utilities) or 25% of income after allowable deductions whichever is greater | 30% of income after allowance deduction for new tenants 27% for existing tenants until 9/30/83 |

1/ Prepayment restrictions under the Section of the National Housing Act for which the project mortgage was insured remains effective.

* Current Legislation requires tenant recertifications on all tenants annually, increases tenant share of rent, and changes deductions allowances for all subsidy programs. Regulations are being prepared to implement this Legislation.

Any questions in this regard should be referred to Ms. Annie Crenshaw, Housing Management Specialist at 269-6746.

Sincerely,

R. F. Poffenberger, Chief
Loan Management Branch, 5.4HML

Owner Signature

File, HML Copy - Crenshaw

5.4HML:ALEXANDER:jmb 7972A-pg. 12-22 4/28/83 6746 M408-0250-00

| | | |
|---|---|---|
| HML 5/2/83 | HML | HML |
| Alexander | Crenshaw | Jewell |

JUN 9 1983

Gene B. Glick Management Co.
P. O. Box 40177
Indianapolis, IN 46240

Dear Ladies/Gentlemen:

SUBJECT: Carriage House of Mishawaka I
Mishawaka, Indiana
Project No. 073-44008

This is to acknowledge receipt of your acceptance of our offer to convert the existing Rent Supplement Contract for the subject project to a Section 8 Loan Management Set-Aside (HAP) Contract. We are processing the required documents to implement this conversion of contracts.

The proposed Section 8 HAP Contract has been assigned Section 8 Project No. IN36-M000-189. Once the Section 8 HAP Contract has been executed, it will become effective on July 1, 1983. The Contract will cover all units under the following schedule of units and rents:

| Unit Size (1) | No. of Section 8 Contract Units (2) | Contract Rent ($) (3) | Utility Allowance (PBE) (4) | Gross Rent (3 & 4) |
|---|---|---|---|---|
| 1 BR | 25 | $181 | $16 | $197 |
| 2 BR | 14 | $210 | $19 | $229 |
| 2 BR TH | 6 | $223 | $19 | $242 |
| 3 BR TH | 3 | $238 | $21 | $259 |

Equipment, utilities, and services included in the above rents will be as specified in the Section 8 HAP Contract.

ESTABLISHING ELIGIBILITY FOR TENANTS IN RESIDENCE/LEASING IN PLACE.

a. Families already in residence at the time a contract takes effect are to be converted from Rent Supplement Assistance to Section 8 assistance. All such applicants, of course, must complete application forms and must meet all eligibility criteria specified thereon, except the admission income limits.

Kelly Decl. Ex. U

b. Tenants who have completed a regular or special recertification within 90 days of the date of this letter need not supply new income information. The verified income from the most recent certification or recertification shall be deemed sufficiently current for Section 8 application purposes, and all future recertifications shall recur on the already-established anniversary dates. Elderly tenants are not required to recertify their income until the first anniversary date of the Section 8 HAP Contract. Converting leases of families leasing-in-place to the (Section 8) new model lease is considered a modification of the tenant's existing lease. For tenants on month-to-month leases, the Owner should immediately give tenants a 60 day notice of proposed modification of new lease. Converting a tenant on a 1 year lease to the (Section 8) new model lease may only be accomplished at the expiration of the current 1 year lease term. Until that time, said lease shall be amended to reflect Section 8 requirements, but any other terms of the lease may not be required to be altered. (See Addendum to 1-year lease enclosure.)

c. Tenants other than elderly whose incomes have not been certified or recertified within the 90 days prior to the date of this letter shall be required to provide new income data and owners shall verify same. New Section 8 leases shall be on the anniversary dates of the Section 8 certification.

In order for you to prepare for converting all Rent Supplement tenants to Section 8 tenants, you should immediately take action to complete Forms HUD-50059 and HUD-50059a and amend the leases to be effective concurrent with the proposed effective date of the Section 8 HAP contract. For your convenience, we are enclosing the following forms and information:

| | |
|---|---|
| Instruction Sheet | Form 50059/59A 7-82 version |
| HUD-50059 | Certification and Recertification of Tenant Eligibility |
| HUD-50059a | Worksheet for Certification and Recertification of Tenant Eligibility |
| HUD-52670 | Housing Owner's Certification and Application for Housing Assistance Payments |
| HUD-52670a | Schedule of Housing Assistance Payments Payable |
| HUD-Handbook 4350.1, Appendix 31 | Section Special Claims Worksheet |
| - | Required Lease Provisions and Prohibited Provisions (Copy of Pages 36-39, HUD Handbook 4352.1, Chapter 4) |

Should you have any questions on the above or the enclosed instructions, please contact Annie Crenshaw, Housing Management Specialist, on (317) 269-6745.

Sincerely,

6/7/83

Louis M. Berra
Director
Housing Division, 5.4H

Enclosures

5.4HML:Alexander:cj x6746 8074A 5/27/83 M960-8880-00

| | | |
|---|---|---|
| HML | HML | HML |
| Alexander | Crenshaw | Jewell |
| 6/7/83 | 6/7/83 | 6/7/83 |

20 JUN 1983

Gene B. Glick Management Co.
P. O. Box 40177
Indianapolis, IN 46240

Dear Ladies/Gentlemen:

SUBJECT: Carriage House of Mishawaka I
Mishawaka, Indiana
Project No. IN36-M000-189

This letter is formal notification that the Secretary of Housing and Urban Development has reserved Section 8 authority for the subject project. HUD has reserved $101,528 of contract authority and corresponding budget authority for the term of the contract. It will be used to fund 48 Section 8 units and will become effective on July 1, 1983.

This office has enclosed four copies of the Section 8 Contract. You must sign and date all copies and return them to this office within 10 days. Upon receipt, the Area Manager will sign for the Secretary. No housing assistance payments will be made under this new contract until it is returned, signed by the Area Manager, and becomes effective.

If you have questions, please call Annie Crenshaw, Housing Management Specialist, at (317) 259-6745.

Sincerely,

Martha D. Lamkin
Area Manager, 5.4S

Enclosures

5.4HML:Alexander:cj x6746 8079A Page 26 5/27/83 M960-8880400

| HML | HML | HML | HML | HM | H | SD |
|---|---|---|---|---|---|---|
| Alexander | Crenshaw | Jewell | Poffenberger | Broyles | Berra | Edwards |
| 6/7/83 | | 6/7/83 | | 6/7 | 6/7 | |

Kelly Decl. Ex. V

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
HOUSING - FEDERAL HOUSING COMMISSIONER

# PROJECT ACCOUNTING DATA

TO:
U. S. DEPT OF HUD
ATTN: CHARLES LEOF, RAD
300 S. WACKER DRIVE
CHICAGO, ILLINOIS 60606

FROM:
U. S. DEPT OF HUD
ATTN: AREA MANAGER
P. O. BOX 7047
INDIANAPOLIS, INDIANA 46207

REGIONAL OFFICE CODE (RAD Only)

FIELD OFFICE CODE (RAD Only)

REQUEST FOR RESERVATION ACTION AS FOLLOWS:

RAD ONLY

1. TYPE OF ACTION (One Only)
New. . . . . (N, R)
Amendment Modernization. . . . . (A)
Amendments - Sec. 8/Public Housing
Unit Increase . . . . . (B)
Cost Increase . . . . . (E)
Decrease . . . . . (G)
Termination. . . . . (T)
Correction . . . . . (I or P)

HOUSING ONLY — Code: N

2. PROGRAM TYPE (One Only)
Section 8 - NC . . . . . (N)
Section 8 - SR. . . . . (R)
Section 8 - E/Mod. Rehab. . . . . (E)
Public Housing - Conventional . . . . . (A)
Public Housing - Turnkey . . . . . (C)
Public Housing - AWR . . . . . (F)
Public Housing - AWOR . . . . . (H)
Indian - Conventional. . . . . (I)
Indian - Turnkey . . . . . (L)
Indian - AWR . . . . . (M)
Indian - AWOR . . . . . (P)
Section 23 - NC. . . . . (S)
Section 23 - SR. . . . . (T)
Section 23 - E. . . . . (V)
Modernization . . . . . (X,Y)

Code: E

3. PROJECT NUMBER
IN36-M000-189

4. PHA/PRIVATE OWNER NAME
CARRIAGE HOUSE MISH. I

5. AREA (One Only)
Metropolitan . . . . . (M)
Non-Metropolitan . . . . . (N)

Code: M

RAD ONLY — 6.1, 6.2A, 6.2B1, 6.2B2, Code

6.1 MEMO ENTRY - MODERNIZATION
ENTER TITLE (Code O, Q, S, V, W, X, Y, Z)

6.2 MEMO ENTRY - SEC. 8/PUBLIC HOUSING
A. Farmers Home . . . . . (E)
HFDA (Sect. 8-E) . . . . . (H)
HFDA - 40 Years. . . . . (I)
HFDA - 30 Years. . . . . (J)
Moderate Rehabilitation. . . . . (M)
PHA-Owned . . . . . (P)
Section 202 . . . . . (T)
Other . . . . . (O)
B. Areawides . . . . . (A)
New Communities . . . . . (N)
Section 23 - Conversions. . . . . (C)
Loan Management. . . . . (L)
Property Disposition . . . . . (D)
N.S.A. . . . . . (R)
Not Applicable . . . . . (B)

HOUSING ONLY — 6.1: ; 6.2A: O; 6.2B1: L; 6.2B2: B

7. DATE PRIOR LETTER OF NOTIFICATION/ RESERVATION DOCUMENT SIGNED
MM | DD | YY

8. DATE LETTER OF NOTIFICATION/ RESERVATION DOCUMENT SIGNED
MM | DD | YY

9. TERM
IN YEARS: 1 5

10. TYPE OF FUNDS (One Only)
Assigned Program Funds. . . . . (P)
Assigned Amendment Funds . . . . . (A)
Recaptured Funds. . . . . (R)
Not Applicable . . . . . (N)

Code: P

11. UNIT AND FUND SECTION

| RAD ONLY RECAPTURE (R) OR CANCELLATION (I, A, B, E) | HOUSING USE ONLY (Columns B through G) TOTAL UNITS | ELDERLY UNITS | SOURCE YEAR | CONTRACT AUTHORITY | BUDGET AUTHORITY | LOAN AUTHORITY | RAD USE ONLY HASH TOTAL |
|---|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G | H |
| | 48 | - 0 - | 83 | $101,528 | $1,522,920 | | |
| | | | | | | | |

(A copy of the completed form shall accompany the required documentation as stipulated in the appropriate administrative program HUD Handbook)

MISHAWAKA

JUN 10 1983
(Date)

[signature]
Martha D. Lamkin
(Signature of Field Office Manager)

Previous Edition is Obsolete

HUD-52540 (2-80)



IND0040379

GOVERNMENT EXPENSE

20 JUN 1983

Gene B. Glick Management Company
P. O. Box 40177
Indianapolis, IN 46240

Dear Ladies/Gentlemen:

SUBJECT: Carriage House of Mishawaka I
Mishawaka, Indiana
Project No. 073-44008

You have elected to accept the Section 8 Conversion Program for the subject project.

Enclosed are four (4) copies of the Amendatory Contract for the Rent Supplement Program. This contract cancels all rental assistance payments after the 31st day of July 1983. You may bill for Section 8 Housing Assistance Payments effective July 1, 1983.

If you have any questions, please contact Annie Crenshaw, Housing Management Specialist at (317) 269-6746.

Sincerely,

Louis M. Berra
Director
Housing Division, 5.4H

Enclosures (4)

5.4HML:Crenshaw:cm x6746 6-16-83 8148A Page 12 M960-8880-00
7062A

| | | | |
|---|---|---|---|
| HML | HML | HM | H |
| Crenshaw | Jewell | Poffenberger | Broyles |
| ac | 6/17/83 | 6/17/83 | 6-17 |

JUN 17 1983

Kelly Decl. Ex. W

U.S. DEPART. .NT OF HOUSING AND URBAN DEVELO .NT

AMENDATORY CONTRACT

PROJECT NAME : Carriage House Of Mishawaka I

PROJECT NO : 073-44008

PROJECT LOCATION: Mishawaka, Indiana

WHEREAS, pursuant to Section 215 of the National Housing Act ("ACT"), a certain Rent Supplement Contract ("Contract") was entered into on the 5 th day of January, 1970, by and between the Secretary of Housing and Urban Development ("Government") and Carriage House Of Mishawaka ("Owner").

WHEREAS, in order to assure the accomplishment of the purposes of the Act, it is the desire of all parties to cancel and nullify all aspects of said Contract dated January 5, 1970, and all amendments thereto.

NOW, THEREFORE, in consideration of the promises and of the mutual covenants and contracts in said Contract and this Amendatory Contract, all parties do hereby agree that the Contract shall be and the same hereby is CANCELLED, NULLIFIED AND VOID.

No further rental assistance payments shall be made under said Contract after 31 st day of July, 1983. ("Effective Date")

This Amendatory Contract shall not be deemed to affect any proceedings taken or any act or thing done by the Owner pursuant to the Contract prior to the effective date of this Amendatory Contract, and all such proceedings properly taken, and all such acts or things properly done pursuant to and in compliance with the provisions of said Contract shall be deemed to have been properly taken, done and performed under the Contract.

IN WITNESS WHEREOF, all parties have caused this Amendatory Contract to be executed in their respective names as dated hereupon.

__________________________
(Housing Owner)

By: __________________________

Date: ________________

SECRETARY OF HOUSING & URBAN DEVELOPMENT

By: __________________________
(Area Manager)

Date: ________________

REPRODUCED AT U.S. GOVT. EXPENSE

PA 341

AUG 12 1983

Mr. Jack Kline
Gene Glick Management Co.
P. O. Box 40177
Indianapolis, IN 46240

Dear Mr. Kline:

SUBJECT: Carriage House of Mishawaka I
Section 8 No. IN36-M000-189

We have executed the Section 8 Loan Management Set-Aside Contract on the project identified above. The effective date of the contract will be July 1, 1983. A copy of the Contract is enclosed. We are also sending a copy of this letter and the fully executed contract to your management agent (if applicable).

The HAP Contract and your Regulatory Agreement outline your responsibilities in regards to this project. More detailed guidance on how to administer this Subsidy Contract is provided in Handbook 4350.3 which is a guide to Subsidy Administration in Multifamily Subsidized Projects.

If you have any questions or problems, please call Ms. Annie Crenshaw at (317) 269-6746.

Sincerely,

8/11/83

Louis M. Berra
Director
Housing Division, 5.4H

Enclosure

cc:
Gene Glick Management Co.
P. O. Box 40177
Indianapolis, IN 46240

5.4HML:Crenshaw:mj x6746 8/9/83 8329A/7117A Page 8 M960-8880-00

| | | |
|---|---|---|
| HML | HML | HML |
| Crenshaw | Jewell | Raffenberger |
| 8/11/83 | 8/11/83 | 8/11 |

Kelly Decl. Ex. X



IND0040356

U.S. D: ITM OF HOUSING AND URBAN DEVELOP!

SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
ADDITIONAL ASSISTANCE PROGRAM FOR PROJECTS WITH HUD-INSURED
AND HUD-HELD MORTGAGES,
24 C.F.R. PART 886, SUBPART A

# HOUSING ASSISTANCE PAYMENTS (HAP) CONTRACT

Term No. 1

REPRODUCED AT U.S. GOVT. EXPENSE

This Contract is between the United States of America, acting through the Department of Housing and Urban Development (called "HUD"), and Carriage House of Mishawaka I (called "Owner"). This Contract is executed pursuant to the United States Housing Act of 1937 (called the "Act"), 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, et seq. The housing project covered by this Contract is identified as follows:

Project Name: Carriage House of Mishawaka I City: Mishawaka

Street Address: Catalpa Drive E. of Grape Road

Section 8 No.: IN 36 M000 189 County: St. Joseph

FHA Project No.: 073-44008 State: Indiana

Section 1. Definitions

a. Family — one or more persons eligible for and receiving Section 8 housing assistance payments in accordance with HUD regulations and administrative procedures.

b. Contract Rent — the rent HUD authorizes the Owner to collect for the contract unit.

c. Utility Allowance — an amount determined or approved by HUD as an allowance for the cost of utilities (except telephone).

d. Gross Rent — the sum of the contract rent and any utility allowance. If there is no utility allowance, gross rent equals contract rent.

e. Gross Family Contribution — the amount HUD regulations require the family to pay monthly towards the gross rent.

f. Net Family Contribution — the Gross Family Contribution less any utility allowance. If this amount is positive, it represents the amount HUD regulations require the family to pay monthly to the Owner. If this amount is negative, the family makes no payment to the Owner. Instead, the Owner pays this amount monthly to the family.

Section 2. Content of Contract. This Contract includes the exhibits listed below and the Affirmative Fair Housing Marketing Plan approved by HUD on ______________ which is incorporated by reference.

- Exhibit A: Equal Opportunity Requirements
- Exhibit B: Schedule of Units, Rents, Equipment, Utilities and Services
- Additional Exhibits

Section 3. Scope of Contract. This Contract and its exhibits comprise the entire agreement between the parties to this Contract with respect to the matters contained in it. Neither party is bound by any representations or agreements of any kind except as contained in this Contract, in any applicable regulations, in HUD's administrative procedures, or in agreements entered into in writing (e.g., the project Regulatory Agreement).

Section 4. Housing Owner's Certification of Authority. The Owner certifies that the Owner has the legal authority to enter into this Contract and to lease the dwelling units covered by this Contract.

Section 5. Term of Contract. This Contract shall run for a period of five years, beginning July 1, 19 83, and continuing through June 30, 19 88. This Contract may be renewed for two additional five-year periods at the option of the Owner.

Section 6. Maximum Amount of Housing Assistance Payments.

a. Maximum Annual Contract Commitment. Notwithstanding any other provision of this Contract (other than paragraph b) or any other contract between HUD and the Owner, HUD shall not be obligated to make assistance payments and pay PHA fees, if any, in excess of $ 101,528 under this Contract during any contract year. In addition, HUD shall not be obligated to pay assistance for more than the total number of contract units shown in Exhibit B.

b. HAP Reserve (Formerly Project Account). In order to ensure that housing assistance payments will be increased on a timely basis to cover increases in contract rents or decreases in family incomes, HUD shall establish and maintain a HAP Reserve out of amounts by which the maximum annual contract commitment exceeds amounts paid under the Contract for any contract year. This Reserve shall be maintained in the name of the project. The amount of housing assistance paid for any contract year may exceed the maximum annual contract commitment specified in paragraph 6a to the extent unused contract authority is available in the HAP Reserve.

HUD-52537 (3-82)

Previous Edition is Obsolete

(1) The HAP Reserve may be used only for payment of housing assistance payments or other costs specifically authorized by HUD.

(2) If HUD at any time determines that the HAP Reserve has accumulated unused contract authority in excess of the amount the project will need through the current contract year, HUD may reduce the HAP Reserve by the amount that HUD determines to be excessive.

(3) Any amount remaining in the HAP Reserve at the end of the term of this Contract shall be applied as directed by HUD in accordance with applicable law.

REPRODUCED AT U.S. GOVT. EXPENSE

Section 7. Housing Assistance Payments and PHA Fees. HUD shall make payments for the purposes identified in this section. Eligibility for, and the amount of, any housing assistance payments will be determined in accordance with HUD's regulations and administrative procedures.

a. Monthly Rental Assistance. For each contract unit occupied by an eligible family in accordance with this Contract, HUD will pay the Owner the difference between the HUD-approved gross rent and the Gross Family Contribution required by HUD regulations and administrative procedures. From this amount, the Owner will pay families any amounts due them pursuant to HUD regulations and administrative procedures and Section 15c of this Contract.

b. Compensation for Vacancy Loss. If an occupied contract unit becomes vacant, HUD will pay the Owner 80 percent of the contract rent for up to the lesser of 60 calendar days following the date the unit became vacant or the actual number of days the unit remained vacant. Such payments will be made only in accordance with the following conditions and limitations.

(1) The Owner shall be entitled to vacancy payments under this paragraph b only if the Owner:

(a) immediately upon learning of the vacancy or prospective vacancy: (1) notified HUD of the vacancy and the reasons for the vacancy; and (2) took and continued to take all feasible actions to fill the vacancy including, but not limited to, contacting applicants on the waiting list and advising them of the availability of the unit;

(b) has not rejected any eligible applicant except for good cause acceptable to HUD;

(c) when the vacancy was created by the Owner's action, administered the termination of tenancy, eviction and all related notices in accordance with State and local law, the lease and HUD regulations and administrative procedures.

(2) HUD will pay vacancy payments only for those days on which the unit was in decent, safe and sanitary condition and available for occupancy.

(3) If the Owner collects other payments toward the rent due for the period HUD pays vacancy payments, the Owner shall pay to HUD, or pay as HUD directs, any amount by which the sum of the HUD vacancy payments and these other payments exceeds the contract rent. "Other payments" will include rent collected from or on behalf of the former tenant, security deposits applied toward the rent, and payments from any other source.

c. Compensation for Damages, Unpaid Rent and Other Amounts Due Under the Lease. If a family vacates a contract unit and owes rent, other amounts due under the lease, or has left damages in excess of normal wear and tear, the Owner may request reimbursement from HUD for such items so long as the Owner: (1) has collected a security deposit in an amount permitted by HUD; and (2) has completed the move-in and move-out unit inspections required by HUD. The amount of the reimbursement will be calculated in accordance with HUD regulations and administrative procedures.

d. PHA Fee. Where appropriate, HUD will make payments to the Owner to be used solely to compensate PHAs for services provided in accordance with Exhibit C. The PHA fee, if any, will be the amount specified in Exhibit C.

Section 8. HUD Not Obligated for Family's Rent. HUD does not assume any obligation for the amount of rent payable by any family or for the satisfaction of any claim by the Owner against any family other than in accordance with Section 7.

Section 9. Owner's Request for Housing Assistance Payments. The Owner must prepare and submit requests for housing assistance payments in accordance with the administrative procedures established by HUD. All requests for assistance payments must be submitted on the forms prescribed by HUD and be properly executed by the Owner or the Owner's authorized agent. The Owner agrees not to request assistance payments under this Contract for families who are assisted under the Section 8 Existing Housing Program ("Finders Keepers," 24 CFR 882, Subparts A and B), the Rent Supplement Program, the Rental Assistance Program or any other similar program. The Owner understands that submission of such duplicate bills is a default under the Contract and HUD may pursue any remedies available including those outlined in Section 26 of this Contract.

Section 10. Adjustment for Incorrect Payments. If HUD at any time determines that the Owner has received improper or excessive housing assistance payments, HUD shall have the right to deduct the amount of such overpayments from any payments otherwise due the Owner under this Contract. The Owner agrees to promptly correct monthly requisitions for assistance payments and to promptly submit revised requisitions as directed by HUD. If HUD determines that the Owner has not received the full amount of assistance to which the project is entitled, HUD shall promptly make a corresponding adjustment in the amount of housing assistance payments.

Section 11. Marketing of Contract Units. In conducting marketing activities, the Owner shall comply with the project's Affirmative Fair Housing Marketing Plan and the regulations relating to fair housing advertising. The Owner shall make a good faith effort to ensure that all contract units are promptly leased to eligible lower income families to be used only as private dwellings and as the family's sole place of residence.

Section 12. Determining Applicants' Eligibility for Assistance. The Owner agrees to promptly carry out the following actions in accordance with HUD regulations and administrative procedures:

a. require each applicant to complete an application in a form developed by the Owner and containing the information needed to effectively screen applicants and to carry out HUD's requirements.

b. verify all information on which the determination of the applicant's eligibility, gross family contribution, and housing assistance payment will be based;

c. determine eligibility for assistance;

d. notify applicants of decisions taken on their applications;

e. execute a certification of tenant eligibility before billing HUD for assistance payments on behalf of the family; and

f. process complaints received from applicants at any stage of the application procedure.

REPRODUCED AT U.S. GOVT. EXPENSE

Section 13. Selection and Admission of Applicants. The Owner agrees to:

a. establish only preferences and priorities approved by HUD;

b. select families so that the Owner achieves the economic mix required by HUD's regulations and administrative procedures;

c. offer any available contract units to eligible applicants who meet the Owner's tenant selection standards provided that sufficient contract authority is available pursuant to Section 6a of this Contract;

d. offer any available contract unit to over-income applicants only when no eligible and otherwise qualified applicant is on the project's waiting list and only after complying with HUD's administrative procedures related to admission of over-income applicants;

e. execute leases in the form prescribed or approved by HUD and do so before billing HUD for assistance payments;

f. assign bedroom size in accordance with HUD's administrative requirements;

g. inspect the unit with the family before the family moves in, document the condition of the unit on a written inspection report signed by both the Owner and the family, and certify that the unit is decent, safe and sanitary;

h. collect and maintain security deposits only in accordance with HUD regulations and administrative procedures; and

i. not collect any other amounts as a condition for admission to the project, unless HUD gives the Owner specific written authorization to do so.

Section 14. Maintenance. The Owner agrees to:

a. maintain and operate the contract units and related facilities so as to provide decent, safe and sanitary housing as defined by HUD;

b. regularly clean and maintain all common areas, equipment and grounds, and make repairs with reasonable promptness; and

c. respond promptly to HUD's Physical Inspection Reports and to implement corrective actions within a reasonable time.

Section 15. General Management. The Owner agrees to:

a. provide the utilities, services, and equipment specified in Exhibit B;

b. not charge any family an amount in excess of the Net Family Contribution unless HUD gives the Owner specific written authorization to do so;

c. pay monthly to the family the amount of the Net Family Contribution when the Net Family Contribution is negative;

d. evaluate the accuracy of any utility allowance at least annually and submit to HUD documentation of the analysis and, if needed, recommendation for changes in the amount of any utility allowance;

e. complete recertifications of each family's income and allowances in accordance with HUD regulations and administrative procedures;

f. promptly follow-up with any family which does not provide the required recertification data within the established time schedules and initiate HUD-prescribed enforcement actions;

g. adjust families' gross contributions in accordance with HUD regulations and administrative procedures;

h. request a family to move to an appropriately-sized unit when the size or composition of the family has changed and HUD procedures require the Owner to request such unit transfers;

i. change, suspend or terminate a family's housing assistance payments only in accordance with HUD regulations and administrative procedures. The Owner agrees that suspension or termination of a family's housing assistance payments shall not affect the family's rights otherwise available under the lease, including the right to remain in the contract unit;

j. terminate tenancies of families only in accordance with applicable State and local law, the lease and HUD regulations and administrative procedures; and

k. inspect a unit with the family when the family moves out and document the condition of the unit on a written inspection report signed by both the Owner and the family.

REPRODUCED AT U.S. GOVT. EXPENSE

Section 16. Discriminatory Practices Prohibited. The Owner agrees not to discriminate based upon race, color, creed, religion, sex, age, national origin or handicap. The Owner also agrees not to discriminate against families with children unless the project is specifically designed for elderly families. The Owner agrees to comply with the Equal Opportunity Requirements attached as Exhibit A to this Contract.

Section 17. Reduction in Number of Contract Units.

a. If the Owner fails, for a continuous period of six months, to have at least 80 percent of the contract units leased or available for leasing to income-eligible families, HUD may, on 30 days notice to the Owner, reduce the number of contract units to not less than the number of units under lease or available for leasing by eligible families, plus 10 percent of such number.

b. At the end of the term of this Contract, HUD may, upon notice to the Owner, reduce the number of contract units to the greater of: (1) the number of units under lease or available for leasing by eligible families at that time; or (2) the average number of units so leased or available for leasing during the prior 12-month period; plus 10 percent of such number.

c. HUD will agree to an amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraph a or b if contract and budget authority and units are available and HUD determines that the restoration is justified as a result of changes in demand and in light of the Owner's record of compliance with his/her obligations under the Contract.

Section 18. Rent Adjustments. Contract rents and utility allowances shall be adjusted by HUD in accordance with HUD regulations and administrative procedures. The new contract rents, utility allowances and gross rents will be incorporated into this Contract as a revision to Exhibit B. HUD will make housing assistance payments commensurately with the HUD-approved changes in rents and utility allowances, up to the maximum amount of assistance authorized by Section 6 of this Contract. The Owner agrees that rents charged for other comparable units in the project will not be less than the contract rents, except when authorized in writing by HUD.

Section 19. Changes in Contract Amount.

a. HUD will increase the maximum annual contract commitment as necessary to provide assistance payments for: (1) any additional contract units authorized by HUD; (2) HUD-approved rent increases; (3) decreases in family contribution for units currently authorized to receive assistance under this Contract; and (4) PHA fees.

b. HUD may reduce the maximum annual contract commitment commensurately with any reduction in the number of contract units made pursuant to this Contract.

Section 20. Recordkeeping Requirements. The Owner agrees to retain, for at least three years, all correspondence, materials, and documentation related to processing of: applications for admissions and notices of decisions made on those applications; certifications and recertifications of tenant eligibility; HUD-required move-in and move-out unit inspections; special claims and regular monthly vouchers; evictions; suspension and termination of assistance; and other actions which the Owner is required to perform in carrying out this Contract. The Owner shall maintain as confidential all information which, if disclosed, would constitute an unwarranted invasion of a family's privacy.

Section 21. Reports and Access to Premises and Records. The Owner shall supply HUD with any information and reports pertinent to the Contract as reasonably may be required from time to time by HUD. The Owner shall permit HUD or any of its duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner and his/her Management Agent that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

Section 22. Flood Insurance. If the project is in a special flood hazard area, the Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to its development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

Section 23. Clean Air Act and Federal Water Pollution Control Act. This Section does not apply if five times the dollar amount in Section 6a of this Contract, as of the first day of this term, is $100,000 or less. In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 7401, et seq., the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738, the Owner agrees to:

a. not utilize any facility in the performance of this Contract or any nonexempt subcontract which is listed on the EPA List of Violating Facilities pursuant to section 15.20 of the regulations;

b. promptly notify HUD of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

c. comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 of the Air Act and section 308 of the Water Act, and all regulations and guidelines issued thereunder; and

d. include or cause to be included the provisions of this Section in every nonexempt subcontract and take such action as HUD may direct as a means of enforcing such provisions.

Section 24. Interest of Members, Officers, or Employees of PHA, Members of Local Governing Body or Other Public Officials. No member, officer, or employee of the PHA, if any, which is a party to the Contract, no member of the governing body of the locality (city and county) in which the project is situated, no member of the governing body of the locality in which the PHA was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, during his/her tenure or for one year thereafter, shall have any interest, direct or indirect, in this Contract or in any proceeds or benefits arising from it. However, a member or officer of the PHA may be a tenant in the project.

Section 25. Interest of Member of or Delegate to Congress. No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise from it.

Section 26. Owner Default Under Contract.

a. Events of Default. HUD may consider the Owner to be in default under this Contract when the Owner has:

(1) violated or failed to comply with any provision or obligation of this Contract, including correction of any deficiency identified by HUD in its reviews of the Owner's administration of this Contract;

(2) asserted or demonstrated an intention not to perform some or all of his/her obligations under this Contract or any lease;

(3) violated or failed to comply with any applicable HUD regulation or with any term of the HUD-held or insured mortgage or regulatory agreement or any lease; or

(4) furnished any false statements or misrepresentations to HUD in connection with HUD mortgage insurance, loan processing, or administration of this Contract.

b. Corrective Actions. Upon determining that a default has occurred, HUD will notify the Owner, by certified mail, of the nature of the default, the actions the Owner must take to cure the default, and the time within which the Owner must complete the corrective actions. If the Owner does not implement the requested actions, or other corrective action acceptable to HUD, within the prescribed time or does not do so to the satisfaction of HUD, HUD may terminate this Contract in whole or in part or may initiate any of the following actions.

(1) Actions by Court Order.

(a) Take possession of the project, bring any action necessary to enforce any rights of the Owner related to operation of the project, and operate the project in accordance with the terms of this Contract until such time as HUD determines that the Owner is again in a position to operate the project in accordance with the terms of this Contract and in compliance with the requirements of any note, mortgage, or regulatory agreement.

(b) Collect all rents and other receipts of the project and use such receipts to pay the Owner's obligations under this Contract and under the note and mortgage and the necessary expenses of maintaining and operating the project.

(c) Apply to any court, State or Federal, for specific performance of this Contract, for an injunction against any violations of this Contract, for the appointment of a receiver to take over and operate the project in accordance with the terms of the Contract, or for such other relief as may be appropriate. These remedies are appropriate since the injury to HUD arising from a default under any of the terms of this Contract could be irreparable and the amount of damage would be difficult to ascertain.

(d) Initiate action to recover any overpayments.

(2) HUD Administrative Actions.

(a) Pay housing assistance payments directly to the mortgagee in the event of default under the mortgage.

(b) Reduce or suspend housing assistance payments until the default under this Contract has been cured to the satisfaction of HUD.

(c) Withhold housing assistance payments until the default under this Contract has been cured to the satisfaction of HUD.

(d) Reduce the number of contract units when the Owner has failed to make a good faith effort to lease all contract units to eligible families.

(e) Suspend, debar or otherwise restrict participation in any HUD program.

(f) Initiate action to recover any overpayments.

c. Remedies Not Exclusive and Non-Waiver of Remedies. The availability of any remedy under this Contract shall not preclude the exercise of any other remedy under this Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be considered a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

REPRODUCED AT U.S. GOVT. EXPENSE

Section 27. Impact of Other Servicing Actions on this Contract.

a. Assignment of Contract or Change of Ownership. HUD will approve a change of ownership during the term of this Contract only if the purchaser demonstrates, to HUD's satisfaction, an ability to administer this Contract and agrees to carry out all terms of this Contract.

b. Assignment of Mortgage. In the event the mortgage is assigned to HUD, HUD may terminate this Contract, temporarily reduce or suspend payment of amounts due under this Contract, or take any other action available under Section 26 of this Contract.

c. Prepayment of Mortgage. Prepayment of the mortgage shall not, by itself, affect any rights of the Owner or HUD under this Contract.

Section 28. Effect on Other Agreements. To the extent that this Contract conflicts with any agreement(s) between the Owner and HUD, the provisions of this Contract shall be controlling. The provision(s) of the other agreement(s) shall be considered to be amended by the terms of this Contract. Such amendments shall be valid as if such amendment had been made directly to such agreement(s). These amendments shall be effective only during the term of this Contract.

**WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willingly makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.**

REPRODUCED AT U.S. GOVT. EXPENSE

Section 29. Signatures.

Owner ______________________

By ______________________

______________________
*(Name)*

______________________
*(Official Title)*

Date ______________, 19____

HUD ______________________

By ______________________

______________________
*(Name)*

AREA MANAGER
*(Official Title)*

Date ______________, 19____

c. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders issued by HUD thereunder prior to execution of this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner and his/her successors and assigns and the Owner's contractors and subcontractors. Failure to fulfill these requirements shall subject the Owner, his/her contractors and subcontractors, his/her successors, and assigns to the sanctions as are specified by 24 CFR, Section 135.135.

d. The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of $50,000 cost, the following clause:

"Employment of Project Area Residents and Contractors"

"A. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the unit of local government, metropolitan area or nonmetropolitan county in which the project is located (as determined by the Secretary) and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the same metropolitan area (or nonmetropolitan county) as the project.

"B. The parties to this Contract will comply with the provisions of said section 3 and the regulations issued pursuant thereto by HUD as set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"C. The contractor will send to each labor organization or representative of workers with which he/she has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his/her commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"D. The contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontract is in violation of regulations issued by HUD, 24 CFR, Part 135. The contractor will not subcontract with any subcontractor where the contractor has notice or knowledge that the latter has been found in violation of regulations under 24 CFR, Part 135, and will not let any subcontract unless the subcontractor has first provided the contractor with a preliminary statement of ability to comply with the requirements of these regulations.

"E. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner and his/her successors and assigns and the Owner's contractor and subcontractor. Failure to fulfill these requirements shall subject the Owner and his/her successors and assigns and the Owner's contractors and subcontractors to those sanctions specified by the Contract, and to such sanctions as are specified by 24 CFR, Section 135.135."

e. The Owner agrees that he/she will be bound by the above section 3 clause with respect to his/her own employment practices when he/she participates in federally assisted work.

4. Members of Certain Classes. The Owner shall not automatically exclude anyone from participation in, or deny anyone the benefits of, the Housing Assistance Payments Program because of membership in a class, such as unmarried mothers, recipients of public assistance.

5. Equal Employment Opportunity in Construction Contracts. The project assisted under this Contract is subject to the requirements of Executive Order 11246, as amended, and the regulations issued by the Department of Labor thereunder at 41 CFR Part 60, regarding equal employment opportunity in work carried out under federally assisted construction contracts. Federally assisted construction contracts not exceeding $10,000 are exempted from the requirements of the Executive Order and regulations issued thereunder.

REPRODUCED AT U.S. GOVT. EXPENSE

REPRODUCED AT U.S. GOVT. EXPENSE

## EXHIBIT A TO HAP CONTRACT

## EQUAL OPPORTUNITY REQUIREMENTS

1. Nondiscrimination in Housing. The Owner shall not in the selection of families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, age, national origin or handicap.

a. Title VIII of the Civil Rights Acts of 1968. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, which prohibits discrimination in the sale, rental, financing and advertising of housing on the basis of race, color, religion, sex, or national origin, and any related rules and regulations, including 24 CFR Parts 100, 109, and 110 and Part 200, Subparts I and M.

b. Title VI of the Civil Rights Act of 1964 and Executive Order 11063. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq.; the HUD regulations issued thereunder, 24 CFR, Subtitle A, Part 1, the HUD requirements pursuant to said regulations; and Executive Order 11063 as amended, and the HUD regulations issued thereunder, 24 CFR, Part 107, and any other regulations and requirements issued thereunder to the end that, in accordance with that Act, Executive Order 11063 and the regulations and requirements of HUD, no person in the United States shall, on the grounds of race, color, creed, sex, or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program or be otherwise subjected to discrimination. The obligation of the Owner to comply therewith inures to the benefit of the United States of America and HUD which shall be entitled to invoke any remedies available by law to either redress any breach or to compel compliance by the Owner.

c. Section 504 of the Rehabilitation Act of 1973. The Owner shall comply with all the requirements imposed by Section 504 of the Rehabilitation Act of 1973, as amended, and any related rules and regulations. Section 504 provides that no otherwise qualified handicapped person shall, solely by reason of handicap, be excluded from participation in, be denied the benefit of, or otherwise be subjected to discrimination under any program or activity receiving Federal financial assistance.

d. Employees of Owner.

(1) In carrying out the obligations under this Contract, the Owner will not discriminate against any employee or applicant for employment because of race, color, creed, religion, sex, age, handicap or national origin. The Owner will take affirmative action to ensure that applicants are employed and that employees are treated during employment, without regard to race, color, creed, religion, sex, age, handicap or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

(2) The Owner agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by HUD setting forth the provisions of this nondiscrimination clause. The Owner will in all solicitations or advertisements for employees placed by or on behalf of the Owner state that all qualified applicants will receive consideration for employment without regard to race, color, creed, religion, sex, age, handicap or national origin. The Owner will incorporate the foregoing requirements of this paragraph in all contracts for project work, except contracts for standard commercial supplies or raw materials, and will require all contractors for such work to incorporate such requirements in all subcontracts for project work.

e. Age Discrimination Act of 1975. The Owner shall comply with any rules and regulations issued or adopted by HUD under the Age Discrmination Act of 1975, as amended, 42 U.S.C. 6101 et seq., which prohibits discrimination on the basis of age in programs and activities receiving Federal financial assistance.

2. Cooperation in Equal Opportunity Compliance Reviews. The Owner agrees to cooperate with HUD in the conducting of compliance reviews and complaint investigations pursuant to or permitted by all applicable civil rights statutes, Executive Orders, and rules and regulations.

3. Training, Employment, and Contracting Opportunities for Businesses and Lower-Income Persons. This section does not apply if five times the dollar amount in Section 6a of this Contract is $500,000 or less as of the first day of this term.

a. The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given low income residents of the unit of local government, metropolitan area or nonmetropolitan county in which the project is located (as determined by HUD) and that contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the same metropolitan area (or nonmetropolitan county) as the project.

b. Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said section 3 and the regulations issued by HUD as set forth in 24 CFR, Part 135 and all applicable rules and orders of HUD issued thereunder prior to the execution of this Contract. The requirements of the regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the same metropolitan area (or nonmetropolitan county) as the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph (d) of this section in all contracts for work in connection with the project. The Owner certifies and agrees that he/she is under no contractual or other disability which would prevent him/her from complying with these requirements.

EXHIBIT B

SCHEDULE OF UNITS, RENTS, EQUIPMENT, UTILITIES AND SERVICES

Project Name: Carriage House of Mishawaka I
Section 8 No.: IN 36 M000 189

No. of Units:
Section 8: 48
Total: 240

HAP Contract Year Ends 6/30/88

| Unit Size (1) | No. of Section 8 Contract Units (2) | Contract Rent ($) (3) | Utility Allowance (PBE) $ (4) | Gross Rent (3 + 4) |
|---|---|---|---|---|
| 1 Bdm | 25 | $ 181 | $ 16 | $ 197 |
| 2 Bdm | 14 | $ 210 | $ 19 | $ 229 |
| 2th Bdm | 6 | $ 223 | $ 19 | $ 242 |
| 3th Bdm | 3 | $ 238 | $ 21 | $ 259 |
| Bdm | | $ | $ | $ |
| Bdm | | $ | $ | $ |
| Bdm | | $ | $ | $ |
| Bdm | | $ | $ | $ |

EQUIPMENT, UTILITIES AND SERVICES INCLUDED IN RENT:

| EQUIPMENT | UTILITIES | SERVICES |
|---|---|---|
| ☒ Range | ☒ Heat | ☐ Parking |
| ☒ Refrigerator | ☐ Cooking | ☒ Laundry Facilities (Coin-operated) |
| ☒ Air Conditioner (Equipment only) | ☐ Hot Water | ☐ Other (Specify) |
| ☒ Kitchen Exhaust Fan | ☐ Air Conditioning | |
| ☒ Disposal | ☐ Lights, etc. | |
| ☐ Dishwasher | ☒ Other (Specify) GAS WATER | |
| ☐ Carpet | | |
| ☐ Drapes | | |
| ☐ Other (Specify) | | |

*The Owner hereby acknowledges receipt of this Exhibit B and agrees that the above rents will supersede all previous Exhibits B and become effective on* October 27, 1982

(OWNER'S SIGNATURE) (TITLE) DATE

REPRODUCED AT U.S. GOVT. EXPENSE

REPRODUCED AT U.S. GOVT. EXPENSE

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
ADDITIONAL ASSISTANCE PROGRAM FOR PROJECTS WITH HUD-INSURED
AND HUD-HELD MORTGAGES,
24 C.F.R. PART 886, SUBPART A

# HOUSING ASSISTANCE PAYMENTS (HAP) CONTRACT

Term No. 1

This Contract is between the United States of America, acting through the Department of Housing and Urban Development (called "HUD"), and Carriage House of Mishawaka I (called "Owner"). This Contract is executed pursuant to the United States Housing Act of 1937 (called the "Act"), 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, et seq. The housing project covered by this Contract is identified as follows:

Project Name: Carriage House of Mishawaka I City: Mishawaka

Street Address: Catalpa Drive E. of Grape Road

Section 8 No.: IN 36 M000 189 County: St. Joseph

FHA Project No.: 073-44008 State: Indiana

Section 1. Definitions

a. Family — one or more persons eligible for and receiving Section 8 housing assistance payments in accordance with HUD regulations and administrative procedures.

b. Contract Rent — the rent HUD authorizes the Owner to collect for the contract unit.

c. Utility Allowance — an amount determined or approved by HUD as an allowance for the cost of utilities (except telephone).

d. Gross Rent — the sum of the contract rent and any utility allowance. If there is no utility allowance, gross rent equals contract rent.

e. Gross Family Contribution — the amount HUD regulations require the family to pay monthly towards the gross rent.

f. Net Family Contribution — the Gross Family Contribution less any utility allowance. If this amount is positive, it represents the amount HUD regulations require the family to pay monthly to the Owner. If this amount is negative, the family makes no payment to the Owner. Instead, the Owner pays this amount monthly to the family.

Section 2. Content of Contract. This Contract includes the exhibits listed below and the Affirmative Fair Housing Marketing Plan approved by HUD on ________ which is incorporated by reference.

- Exhibit A: Equal Opportunity Requirements
- Exhibit B: Schedule of Units, Rents, Equipment, Utilities and Services
- Additional Exhibits

Section 3. Scope of Contract. This Contract and its exhibits comprise the entire agreement between the parties to this Contract with respect to the matters contained in it. Neither party is bound by any representations or agreements of any kind except as contained in this Contract, in any applicable regulations, in HUD's administrative procedures, or in agreements entered into in writing (e.g., the project Regulatory Agreement).

Section 4. Housing Owner's Certification of Authority. The Owner certifies that the Owner has the legal authority to enter into this Contract and to lease the dwelling units covered by this Contract.

Section 5. Term of Contract. This Contract shall run for a period of five years, beginning July 1, 19 83, and continuing through June 30, 19 88. This Contract may be renewed for two additional five-year periods at the option of the Owner.

Section 6. Maximum Amount of Housing Assistance Payments.

a. Maximum Annual Contract Commitment. Notwithstanding any other provision of this Contract (other than paragraph b) or any other contract between HUD and the Owner, HUD shall not be obligated to make assistance payments and pay PHA fees, if any, in excess of $ 101,528 under this Contract during any contract year. In addition, HUD shall not be obligated to pay assistance for more than the total number of contract units shown in Exhibit B.

b. HAP Reserve (Formerly Project Account). In order to ensure that housing assistance payments will be increased on a timely basis to cover increases in contract rents or decreases in family incomes, HUD shall establish and maintain a HAP Reserve out of amounts by which the maximum annual contract commitment exceeds amounts paid under the Contract for any contract year. This Reserve shall be maintained in the name of the project. The amount of housing assistance paid for any contract year may exceed the maximum annual contract commitment specified in paragraph 6a to the extent unused contract authority is available in the HAP Reserve.

(1) The HAP Reserve may be used only for payment of housing assistance payments or other costs specifically authorized by HUD.

(2) If HUD at any time determines that the HAP Reserve has accumulated unused contract authority in excess of the amount the project will need through the current contract year, HUD may reduce the HAP Reserve by the amount that HUD determines to be excessive.

(3) Any amount remaining in the HAP Reserve at the end of the term of this Contract shall be applied as directed by HUD in accordance with applicable law.

REPRODUCED AT U.S. GOVT. EXPENSE

Section 7. Housing Assistance Payments and PHA Fees. HUD shall make payments for the purposes identified in this section. Eligibility for, and the amount of, any housing assistance payments will be determined in accordance with HUD's regulations and administrative procedures.

a. Monthly Rental Assistance. For each contract unit occupied by an eligible family in accordance with this Contract, HUD will pay the Owner the difference between the HUD-approved gross rent and the Gross Family Contribution required by HUD regulations and administrative procedures. From this amount, the Owner will pay families any amounts due them pursuant to HUD regulations and administrative procedures and Section 15c of this Contract.

b. Compensation for Vacancy Loss. If an occupied contract unit becomes vacant, HUD will pay the Owner 80 percent of the contract rent for up to the lesser of 60 calendar days following the date the unit became vacant or the actual number of days the unit remained vacant. Such payments will be made only in accordance with the following conditions and limitations.

(1) The Owner shall be entitled to vacancy payments under this paragraph b only if the Owner:

(a) immediately upon learning of the vacancy or prospective vacancy: (1) notified HUD of the vacancy and the reasons for the vacancy; and (2) took and continued to take all feasible actions to fill the vacancy including, but not limited to, contacting applicants on the waiting list and advising them of the availability of the unit;

(b) has not rejected any eligible applicant except for good cause acceptable to HUD;

(c) when the vacancy was created by the Owner's action, administered the termination of tenancy, eviction and all related notices in accordance with State and local law, the lease and HUD regulations and administrative procedures.

(2) HUD will pay vacancy payments only for those days on which the unit was in decent, safe and sanitary condition and available for occupancy.

(3) If the Owner collects other payments toward the rent due for the period HUD pays vacancy payments, the Owner shall pay to HUD, or pay as HUD directs, any amount by which the sum of the HUD vacancy payments and these other payments exceeds the contract rent. "Other payments" will include rent collected from or on behalf of the former tenant, security deposits applied toward the rent, and payments from any other source.

c. Compensation for Damages, Unpaid Rent and Other Amounts Due Under the Lease. If a family vacates a contract unit and owes rent, other amounts due under the lease, or has left damages in excess of normal wear and tear, the Owner may request reimbursement from HUD for such items so long as the Owner: (1) has collected a security deposit in an amount permitted by HUD; and (2) has completed the move-in and move-out unit inspections required by HUD. The amount of the reimbursement will be calculated in accordance with HUD regulations and administrative procedures.

d. PHA Fee. Where appropriate, HUD will make payments to the Owner to be used solely to compensate PHAs for services provided in accordance with Exhibit C. The PHA fee, if any, will be the amount specified in Exhibit C.

Section 8. HUD Not Obligated for Family's Rent. HUD does not assume any obligation for the amount of rent payable by any family or for the satisfaction of any claim by the Owner against any family other than in accordance with Section 7.

Section 9. Owner's Request for Housing Assistance Payments. The Owner must prepare and submit requests for housing assistance payments in accordance with the administrative procedures established by HUD. All requests for assistance payments must be submitted on the forms prescribed by HUD and be properly executed by the Owner or the Owner's authorized agent. The Owner agrees not to request assistance payments under this Contract for families who are assisted under the Section 8 Existing Housing Program ("Finders Keepers," 24 CFR 882, Subparts A and B), the Rent Supplement Program, the Rental Assistance Program or any other similar program. The Owner understands that submission of such duplicate bills is a default under the Contract and HUD may pursue any remedies available including those outlined in Section 26 of this Contract.

Section 10. Adjustment for Incorrect Payments. If HUD at any time determines that the Owner has received improper or excessive housing assistance payments, HUD shall have the right to deduct the amount of such overpayments from any payments otherwise due the Owner under this Contract. The Owner agrees to promptly correct monthly requisitions for assistance payments and to promptly submit revised requisitions as directed by HUD. If HUD determines that the Owner has not received the full amount of assistance to which the project is entitled, HUD shall promptly make a corresponding adjustment in the amount of housing assistance payments.

Section 11. Marketing of Contract Units. In conducting marketing activities, the Owner shall comply with the project's Affirmative Fair Housing Marketing Plan and the regulations relating to fair housing advertising. The Owner shall make a good faith effort to ensure that all contract units are promptly leased to eligible lower income families to be used only as private dwellings and as the family's sole place of residence.

Section 12. Determining Applicants' Eligibility for Assistance. The Owner agrees to promptly carry out the following actions in accordance with HUD regulations and administrative procedures:

a. require each applicant to complete an application in a form developed by the Owner and containing the information needed to effectively screen applicants and to carry out HUD's requirements.

b. verify all information on which the determination of the applicant's eligibility, gross family contribution, and housing assistance payment will be based;

c. determine eligibility for assistance;

d. notify applicants of decisions taken on their applications;

e. execute a certification of tenant eligibility before billing HUD for assistance payments on behalf of the family; and

f. process complaints received from applicants at any stage of the application procedure.

Section 13. Selection and Admission of Applicants. The Owner agrees to:

a. establish only preferences and priorities approved by HUD;

b. select families so that the Owner achieves the economic mix required by HUD's regulations and administrative procedures;

c. offer any available contract units to eligible applicants who meet the Owner's tenant selection standards provided that sufficient contract authority is available pursuant to Section 6a of this Contract;

d. offer any available contract unit to over-income applicants only when no eligible and otherwise qualified applicant is on the project's waiting list and only after complying with HUD's administrative procedures related to admission of over-income applicants;

e. execute leases in the form prescribed or approved by HUD and do so before billing HUD for assistance payments;

f. assign bedroom size in accordance with HUD's administrative requirements;

g. inspect the unit with the family before the family moves in, document the condition of the unit on a written inspection report signed by both the Owner and the family, and certify that the unit is decent, safe and sanitary;

h. collect and maintain security deposits only in accordance with HUD regulations and administrative procedures; and

i. not collect any other amounts as a condition for admission to the project, unless HUD gives the Owner specific written authorization to do so.

Section 14. Maintenance. The Owner agrees to:

a. maintain and operate the contract units and related facilities so as to provide decent, safe and sanitary housing as defined by HUD;

b. regularly clean and maintain all common areas, equipment and grounds, and make repairs with reasonable promptness; and

c. respond promptly to HUD's Physical Inspection Reports and to implement corrective actions within a reasonable time.

Section 15. General Management. The Owner agrees to:

a. provide the utilities, services, and equipment specified in Exhibit B;

b. not charge any family an amount in excess of the Net Family Contribution unless HUD gives the Owner specific written authorization to do so;

c. pay monthly to the family the amount of the Net Family Contribution when the Net Family Contribution is negative;

d. evaluate the accuracy of any utility allowance at least annually and submit to HUD documentation of the analysis and, if needed, recommendation for changes in the amount of any utility allowance;

e. complete recertifications of each family's income and allowances in accordance with HUD regulations and administrative procedures;

f. promptly follow-up with any family which does not provide the required recertification data within the established time schedules and initiate HUD-prescribed enforcement actions;

g. adjust families' gross contributions in accordance with HUD regulations and administrative procedures;

h. request a family to move to an appropriately-sized unit when the size or composition of the family has changed and HUD procedures require the Owner to request such unit transfers;

i. change, suspend or terminate a family's housing assistance payments only in accordance with HUD regulations and administrative procedures. The Owner agrees that suspension or termination of a family's housing assistance payments shall not affect the family's rights otherwise available under the lease, including the right to remain in the contract unit;

REPRODUCED AT U.S. GOVT. EXPENSE

j. terminate tenancies of families only in accordance with applicable State and local law, the lease and HUD regulations and administrative procedures; and

k. inspect a unit with the family when the family moves out and document the condition of the unit on a written inspection report signed by both the Owner and the family.

Section 16. Discriminatory Practices Prohibited. The Owner agrees not to discriminate based upon race, color, creed, religion, sex, age, national origin or handicap. The Owner also agrees not to discriminate against families with children unless the project is specifically designed for elderly families. The Owner agrees to comply with the Equal Opportunity Requirements attached as Exhibit A to this Contract.

Section 17. Reduction in Number of Contract Units.

a. If the Owner fails, for a continuous period of six months, to have at least 80 percent of the contract units leased or available for leasing to income-eligible families, HUD may, on 30 days notice to the Owner, reduce the number of contract units to not less than the number of units under lease or available for leasing by eligible families, plus 10 percent of such number.

b. At the end of the term of this Contract, HUD may, upon notice to the Owner, reduce the number of contract units to the greater of: (1) the number of units under lease or available for leasing by eligible families at that time; or (2) the average number of units so leased or available for leasing during the prior 12-month period; plus 10 percent of such number.

c. HUD will agree to an amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraph a or b if contract and budget authority and units are available and HUD determines that the restoration is justified as a result of changes in demand and in light of the Owner's record of compliance with his/her obligations under the Contract.

REPRODUCED AT U.S. GOVT. EXPENSE

Section 18. Rent Adjustments. Contract rents and utility allowances shall be adjusted by HUD in accordance with HUD regulations and administrative procedures. The new contract rents, utility allowances and gross rents will be incorporated into this Contract as a revision to Exhibit B. HUD will make housing assistance payments commensurately with the HUD-approved changes in rents and utility allowances, up to the maximum amount of assistance authorized by Section 6 of this Contract. The Owner agrees that rents charged for other comparable units in the project will not be less than the contract rents, except when authorized in writing by HUD.

Section 19. Changes in Contract Amount.

a. HUD will increase the maximum annual contract commitment as necessary to provide assistance payments for: (1) any additional contract units authorized by HUD; (2) HUD-approved rent increases; (3) decreases in family contribution for units currently authorized to receive assistance under this Contract; and (4) PHA fees.

b. HUD may reduce the maximum annual contract commitment commensurately with any reduction in the number of contract units made pursuant to this Contract.

Section 20. Recordkeeping Requirements. The Owner agrees to retain, for at least three years, all correspondence, materials, and documentation related to processing of: applications for admissions and notices of decisions made on those applications; certifications and recertifications of tenant eligibility; HUD-required move-in and move-out unit inspections; special claims and regular monthly vouchers; evictions; suspension and termination of assistance; and other actions which the Owner is required to perform in carrying out this Contract. The Owner shall maintain as confidential all information which, if disclosed, would constitute an unwarranted invasion of a family's privacy.

Section 21. Reports and Access to Premises and Records. The Owner shall supply HUD with any information and reports pertinent to the Contract as reasonably may be required from time to time by HUD. The Owner shall permit HUD or any of its duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner and his/her Management Agent that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

Section 22. Flood Insurance. If the project is in a special flood hazard area, the Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to its development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

Section 23. Clean Air Act and Federal Water Pollution Control Act. This Section does not apply if five times the dollar amount in Section 6a of this Contract, as of the first day of this term, is $100,000 or less. In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 7401, et seq., the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738, the Owner agrees to:

a. not utilize any facility in the performance of this Contract or any nonexempt subcontract which is listed on the EPA List of Violating Facilities pursuant to section 15.20 of the regulations;

b. promptly notify HUD of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

c. comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 of the Air Act and section 308 of the Water Act, and all regulations and guidelines issued thereunder; and

d. include or cause to be included the provisions of this Section in every nonexempt subcontract and take such action as HUD may direct as a means of enforcing such provisions.

Section 24. Interest of Members, Officers, or Employees of PHA, Members of Local Governing Body or Other Public Officials. No member, officer, or employee of the PHA, if any, which is a party to the Contract, no member of the governing body of the locality (city and county) in which the project is situated, no member of the governing body of the locality in which the PHA was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, during his/her tenure or for one year thereafter, shall have any interest, direct or indirect, in this Contract or in any proceeds or benefits arising from it. However, a member or officer of the PHA may be a tenant in the project.

Section 25. Interest of Member of or Delegate to Congress. No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise from it.

Section 26. Owner Default Under Contract.

a. Events of Default. HUD may consider the Owner to be in default under this Contract when the Owner has:

(1) violated or failed to comply with any provision or obligation of this Contract, including correction of any deficiency identified by HUD in its reviews of the Owner's administration of this Contract;

(2) asserted or demonstrated an intention not to perform some or all of his/her obligations under this Contract or any lease;

(3) violated or failed to comply with any applicable HUD regulation or with any term of the HUD-held or insured mortgage or regulatory agreement or any lease; or

(4) furnished any false statements or misrepresentations to HUD in connection with HUD mortgage insurance, loan processing, or administration of this Contract.

b. Corrective Actions. Upon determining that a default has occurred, HUD will notify the Owner, by certified mail, of the nature of the default, the actions the Owner must take to cure the default, and the time within which the Owner must complete the corrective actions. If the Owner does not implement the requested actions, or other corrective action acceptable to HUD, within the prescribed time or does not do so to the satisfaction of HUD, HUD may terminate this Contract in whole or in part or may initiate any of the following actions.

(1) Actions by Court Order.

(a) Take possession of the project, bring any action necessary to enforce any rights of the Owner related to operation of the project, and operate the project in accordance with the terms of this Contract until such time as HUD determines that the Owner is again in a position to operate the project in accordance with the terms of this Contract and in compliance with the requirements of any note, mortgage, or regulatory agreement.

(b) Collect all rents and other receipts of the project and use such receipts to pay the Owner's obligations under this Contract and under the note and mortgage and the necessary expenses of maintaining and operating the project.

(c) Apply to any court, State or Federal, for specific performance of this Contract, for an injunction against any violations of this Contract, for the appointment of a receiver to take over and operate the project in accordance with the terms of the Contract, or for such other relief as may be appropriate. These remedies are appropriate since the injury to HUD arising from a default under any of the terms of this Contract could be irreparable and the amount of damage would be difficult to ascertain.

(d) Initiate action to recover any overpayments.

(2) HUD Administrative Actions.

(a) Pay housing assistance payments directly to the mortgagee in the event of default under the mortgage.

(b) Reduce or suspend housing assistance payments until the default under this Contract has been cured to the satisfaction of HUD.

(c) Withhold housing assistance payments until the default under this Contract has been cured to the satisfaction of HUD.

(d) Reduce the number of contract units when the Owner has failed to make a good faith effort to lease all contract units to eligible families.

(e) Suspend, debar or otherwise restrict participation in any HUD program.

(f) Initiate action to recover any overpayments.

c. Remedies Not Exclusive and Non-Waiver of Remedies. The availability of any remedy under this Contract shall not preclude the exercise of any other remedy under this Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be considered a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

REPRODUCED AT U.S. GOVT. EXPENSE

Section 27. Impact of Other Servicing Actions on this Contract.

a. Assignment of Contract or Change of Ownership. HUD will approve a change of ownership during the term of this Contract only if the purchaser demonstrates, to HUD's satisfaction, an ability to administer this Contract and agrees to carry out all terms of this Contract.

b. Assignment of Mortgage. In the event the mortgage is assigned to HUD, HUD may terminate this Contract, temporarily reduce or suspend payment of amounts due under this Contract, or take any other action available under Section 26 of this Contract.

c. Prepayment of Mortgage. Prepayment of the mortgage shall not, by itself, affect any rights of the Owner or HUD under this Contract.

Section 28. Effect on Other Agreements. To the extent that this Contract conflicts with any agreement(s) between the Owner and HUD, the provisions of this Contract shall be controlling. The provision(s) of the other agreement(s) shall be considered to be amended by the terms of this Contract. Such amendments shall be valid as if such amendment had been made directly to such agreement(s). These amendments shall be effective only during the term of this Contract.

**WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willingly makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.**

REPRODUCED AT U.S. GOVT. EXPENSE

Section 29. Signatures.

Owner ______

By [signature]

______ *(Name)*

Vice President *(Official Title)*

Date June 29, 19 83

HUD ______

By [signature]

______ *(Name)*

AREA MANAGER *(Official Title)*

Date 6/30, 19 83

c. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders issued by HUD thereunder prior to execution of this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner and his/her successors and assigns and the Owner's contractors and subcontractors. Failure to fulfill these requirements shall subject the Owner, his/her contractors and subcontractors, his/her successors, and assigns to the sanctions as are specified by 24 CFR, Section 135.135.

d. The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of $50,000 cost, the following clause:

REPRODUCED AT U.S. GOVT. EXPENSE

"Employment of Project Area Residents and Contractors"

"A. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the unit of local government, metropolitan area or nonmetropolitan county in which the project is located (as determined by the Secretary) and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the same metropolitan area (or nonmetropolitan county) as the project.

"B. The parties to this Contract will comply with the provisions of said section 3 and the regulations issued pursuant thereto by HUD as set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"C. The contractor will send to each labor organization or representative of workers with which he/she has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his/her commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"D. The contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontract is in violation of regulations issued by HUD, 24 CFR, Part 135. The contractor will not subcontract with any subcontractor where the contractor has notice or knowledge that the latter has been found in violation of regulations under 24 CFR, Part 135, and will not let any subcontract unless the subcontractor has first provided the contractor with a preliminary statement of ability to comply with the requirements of these regulations.

"E. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner and his/her successors and assigns and the Owner's contractor and subcontractor. Failure to fulfill these requirements shall subject the Owner and his/her successors and assigns and the Owner's contractors and subcontractors to those sanctions specified by the Contract, and to such sanctions as are specified by 24 CFR, Section 135.135."

e. The Owner agrees that he/she will be bound by the above section 3 clause with respect to his/her own employment practices when he/she participates in federally assisted work.

4. Members of Certain Classes. The Owner shall not automatically exclude anyone from participation in, or deny anyone the benefits of, the Housing Assistance Payments Program because of membership in a class, such as unmarried mothers, recipients of public assistance.

5. Equal Employment Opportunity in Construction Contracts. The project assisted under this Contract is subject to the requirements of Executive Order 11246, as amended, and the regulations issued by the Department of Labor thereunder at 41 CFR Part 60, regarding equal employment opportunity in work carried out under federally assisted construction contracts. Federally assisted construction contracts not exceeding $10,000 are exempted from the requirements of the Executive Order and regulations issued thereunder.

# EXHIBIT A TO HAP CONTRACT

## EQUAL OPPORTUNITY REQUIREMENTS

REPRODUCED AT U.S. GOVT. EXPENSE

1. Nondiscrimination in Housing. The Owner shall not in the selection of families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, age, national origin or handicap.

   a. Title VIII of the Civil Rights Acts of 1968. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, which prohibits discrimination in the sale, rental, financing and advertising of housing on the basis of race, color, religion, sex, or national origin, and any related rules and regulations, including 24 CFR Parts 100, 109, and 110 and Part 200, Subparts I and M.

   b. Title VI of the Civil Rights Act of 1964 and Executive Order 11063. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq.; the HUD regulations issued thereunder, 24 CFR, Subtitle A, Part 1, the HUD requirements pursuant to said regulations; and Executive Order 11063 as amended, and the HUD regulations issued thereunder, 24 CFR, Part 107, and any other regulations and requirements issued thereunder to the end that, in accordance with that Act, Executive Order 11063 and the regulations and requirements of HUD, no person in the United States shall, on the grounds of race, color, creed, sex, or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program or be otherwise subjected to discrimination. The obligation of the Owner to comply therewith inures to the benefit of the United States of America and HUD which shall be entitled to invoke any remedies available by law to either redress any breach or to compel compliance by the Owner.

   c. Section 504 of the Rehabilitation Act of 1973. The Owner shall comply with all the requirements imposed by Section 504 of the Rehabilitation Act of 1973, as amended, and any related rules and regulations. Section 504 provides that no otherwise qualified handicapped person shall, solely by reason of handicap, be excluded from participation in, be denied the benefit of, or otherwise be subjected to discrimination under any program or activity receiving Federal financial assistance.

   d. Employees of Owner.

      (1) In carrying out the obligations under this Contract, the Owner will not discriminate against any employee or applicant for employment because of race, color, creed, religion, sex, age, handicap or national origin. The Owner will take affirmative action to ensure that applicants are employed and that employees are treated during employment, without regard to race, color, creed, religion, sex, age, handicap or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

      (2) The Owner agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by HUD setting forth the provisions of this nondiscrimination clause. The Owner will in all solicitations or advertisements for employees placed by or on behalf of the Owner state that all qualified applicants will receive consideration for employment without regard to race, color, creed, religion, sex, age, handicap or national origin. The Owner will incorporate the foregoing requirements of this paragraph in all contracts for project work, except contracts for standard commercial supplies or raw materials, and will require all contractors for such work to incorporate such requirements in all subcontracts for project work.

   e. Age Discrimination Act of 1975. The Owner shall comply with any rules and regulations issued or adopted by HUD under the Age Discrimination Act of 1975, as amended, 42 U.S.C. 6101 et seq., which prohibits discrimination on the basis of age in programs and activities receiving Federal financial assistance.

2. Cooperation in Equal Opportunity Compliance Reviews. The Owner agrees to cooperate with HUD in the conducting of compliance reviews and complaint investigations pursuant to or permitted by all applicable civil rights statutes, Executive Orders, and rules and regulations.

3. Training, Employment, and Contracting Opportunities for Businesses and Lower-Income Persons. This section does not apply if five times the dollar amount in Section 6a of this Contract is $500,000 or less as of the first day of this term.

   a. The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given low income residents of the unit of local government, metropolitan area or nonmetropolitan county in which the project is located (as determined by HUD) and that contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the same metropolitan area (or nonmetropolitan county) as the project.

   b. Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said section 3 and the regulations issued by HUD as set forth in 24 CFR, Part 135 and all applicable rules and orders of HUD issued thereunder prior to the execution of this Contract. The requirements of the regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the same metropolitan area (or nonmetropolitan county) as the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph (d) of this section in all contracts for work in connection with the project. The Owner certifies and agrees that he/she is under no contractual or other disability which would prevent him/her from complying with these requirements.

# EXHIBIT B

## SCHEDULE OF UNITS, RENTS, EQUIPMENT, UTILITIES AND SERVICES

Project Name: Carriage House of Mishawaka I

Section 8 No.: IN 36 M000 189

No. of Units:
Section 8: 48
Total: 240

HAP Contract
Year Ends 6/30/88

| Unit Size (1) | No. of Section 8 Contract Units (2) | Contract Rent ($) (3) | Utility Allowance (PBE) $ (4) | Gross Rent (3 + 4) |
|---|---|---|---|---|
| 1 Bdm | 25 | $ 181 | $ 16 | $ 197 |
| 2 Bdm | 14 | $ 210 | $ 19 | $ 229 |
| 2th Bdm | 6 | $ 223 | $ 19 | $ 242 |
| 3th Bdm | 3 | $ 238 | $ 21 | $ 259 |
| Bdm | | $ | $ | $ |
| Bdm | | $ | $ | $ |
| Bdm | | $ | $ | $ |
| Bdm | | $ | $ | $ |

### EQUIPMENT, UTILITIES AND SERVICES INCLUDED IN RENT:

**EQUIPMENT**

- ☒ Range
- ☒ Refrigerator
- ☒ Air Conditioner (Equipment-only)
- ☒ Kitchen Exhaust Fan
- ☒ Disposal
- ☐ Dishwasher
- ☐ Carpet
- ☐ Drapes
- ☐ Other (Specify)

**UTILITIES**

- ☒ Heat
- ☐ Cooking
- ☐ Hot Water
- ☐ Air Conditioning
- ☐ Lights, etc.
- ☒ Other (Specify) GAS WATER

**SERVICES**

- ☐ Parking
- ☒ Laundry Facilities (Coin-operated)
- ☐ Other (Specify)

*The Owner hereby acknowledges receipt of this Exhibit B and agrees that the above rents will supersede all previous Exhibits B and become effective on* October 27, 1983

[signature] (OWNER'S SIGNATURE)    Vice President (TITLE)    6/30/83 DATE

REPRODUCED AT U.S. GOVT. EXPENSE

REPRODUCED AT U.S. GOVT. EXPENSE



IND0040374

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

AMENDATORY CONTRACT

PROJECT NAME : Carriage House Of Mishewaka I

PROJECT NO : 073-44008

PROJECT LOCATION: Mishawaka, Indiana

WHEREAS, pursuant to Section 215 of the National Housing Act ("ACT"), a certain Rent Supplement Contract ("Contract") was entered into on the 5 th day of January, 1970, by and between the Secretary of Housing and Urban Development ("Government") and Carriage House Of Mishawaka ("Owner").

WHEREAS, in order to assure the accomplishment of the purposes of the Act, it is the desire of all parties to cancel and nullify all aspects of said Contract dated January 5, 1970, and all amendments thereto.

NOW, THEREFORE, in consideration of the promises and of the mutual covenants and contracts in said Contract and this Amendatory Contract, all parties do hereby agree that the Contract shall be and the same hereby is CANCELLED, NULLIFIED AND VOID.

No further rental assistance payments shall be made under said Contract after 31 st day of July, 1983. ("Effective Date")

This Amendatory Contract shall not be deemed to affect any proceedings taken or any act or thing done by the Owner pursuant to the Contract prior to the effective date of this Amendatory Contract, and all such proceedings properly taken, and all such acts or things properly done pursuant to and in compliance with the provisions of said Contract shall be deemed to have been properly taken, done and performed under the Contract.

IN WITNESS WHEREOF, all parties have caused this Amendatory Contract to be executed in their respective names as dated hereupon.

(Housing Owner)

By: [signature]

Date: 6/29/83

SECRETARY OF HOUSING & URBAN DEVELOPMENT

By: [signature]
(Area Manager)

Date: 6/30/83

REPRODUCED AT U.S. GOVT. EXPENSE

## *HUD Records Disposition Schedules*

---

*Directive Number:* [Prev Hit][Next Hit]**2225.6**

---



TABLE OF CONTENTS


| Paragraph | | Page |
|---|---|---|
| | CHAPTER 1. OVERVIEW | |
| 1-1. | HUD Records Disposition Schedules | 1-1 |
| 1-2. | General Records Schedules | 1-1 |
| 1-3. | For Instructions on How to Revise or Develop Schedules | 1-1 |
| 1-4. | For Advice and Assistance | 1-1 |

APPENDICES

| | Records Disposition Schedule | Responsible Organization |
|---|---|---|
| | 1. Field Office Records | Housing, Administration (Admin.) |
| | 2. Legal Records | General Counsel, HUD Board of Contract Appeals, Administrative Law Judge |
| | 3. Administrative Records | Admin., Inspector General |
| | 4. Field Support Records | Housing |
| | 5. Technical Support Records | Housing |
| | 6. Commissioner Records | Housing |
| | 7. Records Relating to Property Disposition | Housing |
| ** | 8. Enforcement Center Records | Enforcement Center |
| | 9. Research and Statistics Records | Housing |
| | 10. Records Relating to Multifamily Insured Programs | Housing |
| | 11. Housing Development Grant Records | Housing |
| | 12. RESERVED | |
| | 13. Title I Records | Housing |
| | 14. Finance and Accounting Automated Systems Files | Admin., Housing |
| | 15. RESERVED | |
| | 16. Revolving Fund (Liquidating Programs) Records | Community Planning Development (CPD) |
| | 17. RESERVED | |
| | 18. Housing Participation and Compliance Records | Housing |


** Will be added to HUD Records Disposition Handbook at a later date.





APPENDICES

Responsible

Bridges EXHIBIT NO. 3 11/5/07 TRISTAN-JOSEPH

| Records Disposition Schedule | Organization |
|---|---|
| 19. Housing for Educational Institutions Records | Housing |
| 20. Single Family Home Mortgage Insurance Program Records | Housing |
| 21. RESERVED | |
| 22. Community Disposition Program | Housing |
| ** 23. Real Estate Assessment Center Records | Real Estate Assessment Center |
| 24-26. RESERVED | |
| 27. Mortgage Approval Records | Housing |
| 28. RESERVED | |
| 29. International Affairs Records | Policy Development & Research (PD&R) |
| 30. Solar Energy and Energy Conservation Records | CPD |
| 31. Liquidating Emergency Program Records | CPD |
| 32-34. RESERVED | |
| 35. Low Income Public Housing and Rental Assistance Program Records | Public & Indian Housing (PIH) |
| 36. Local Housing Authority Financial Records | Admin., PIH |
| 37. Annual Contributions and Notes Records | Admin., PIH |
| 38-48. RESERVED | |
| 49. Records Relating to Labor Relations Functions | Labor Relations |
| 50. Fair Housing and Equal Opportunity Records | Fair Housing & Equal Opportunity (FHEO) |
| 51. Office of Departmental Equal Employment Opportunity Records | Office of Departmental Equal Employment Opportunity (ODEEO) |
| 52-53. RESERVED | |
| 54. Office of Legislation and Congressional Relations Records | Congressional & Intergovernmental Relations |

** Will be added to HUD Records Disposition Handbook at a later date.





| | |
|---|---|
| 55. Urban Information and Technical Assistance Program | CPD |

APPENDICES

| Records Disposition Schedule | Responsible organization |
|---|---|
| 56. Records Relating to Direct Loans for the Elderly and Handicapped | Housing |
| 57-59. RESERVED | |
| 60. New Communities Records | CPD |
| ** 61. Executive Scheduling Records | Executive Scheduling |
| 62. Secretary and Under Secretary Records | Secretary, Deputy Secretary (Executive Secretariat) |
| 63. Records of Primary Organization | Primary Organizational |

| | | |
|---|---|---|
| | Heads and Other High-Level HUD Staff | Heads and Other High-High-Level Staff |
| 64. | Government National Mortgage Association Records | Government National Mortgage Association |
| 65. | Lead Hazard Control Records | Lead Hazard Control |
| 66. | Records Relating to Rehabilitation Loans and Grants | CPD |
| 67. | Policy Development and Research Records | PD&R |
| 68. | Interstate Land Sales Registration Records | Housing |
| 69. | Community Planning and Development Grant Records | CPD |

** Will be added to HUD Records Disposition Handbook at a later date.



---

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top] [Prev Hit] [Help]

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Bottom]
[Next Hit] [Help] [Text Only]

***HUD Records Disposition Schedules***

*Directive Number:* [Prev Hit][Next Hit]**2225.6**



CHAPTER 1. OVERVIEW

1-1. HUD RECORDS DISPOSITION SCHEDULES. This Handbook contains all the current HUD records disposition schedules as Appendixes.

a. Purpose. Along with the General Records Schedules (GRS), the HUD schedules provide disposition instructions for HUD records and nonrecord material. HUD schedules must be approved by the National Archives and Records Administration (NARA), and in some cases by the General Accounting Office, before they can be used.

b. Arrangement. Most of the HUD records disposition schedules cover all the records of a program or function. The rest cover the records of an organization but will be converted to program or functional schedules when revised.

c. Authority Citations. The NARA authority (NARA Job or GRS and item number) for each disposition is listed after the disposition instruction in the HUD schedules.

d. Distribution. Changes to this Handbook usually affect one schedule at a time. Distribution of such changes will be limited to offices which use that schedule and so may vary from one change to the next.

1-2. GENERAL RECORDS SCHEDULES. The GRS in Handbook 2228.2 cover records common to most Federal agencies, mainly records of administrative functions. Use of the GRS is mandatory for all HUD offices. HUD Records Disposition Schedule 3 (Appendix 3 to Handbook 2225.6) contains the approved HUD deviations from the GRS. Consult Schedule 3 first to find disposition instructions for administrative records. Schedule 3 cross-references the GRS as needed.

* 1-3. FOR INSTRUCTIONS ON HOW TO REVISE OR DEVELOP SCHEDULES: See Handbook 2228.1 , Records Disposition Management.
*

1-4. FOR ADVICE AND ASSISTANCE: Contact the Departmental Records Management Officer in Headquarters Management Services Division, Office of Administrative and Management Services, Administration.

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top]
[Prev Hit] [Help]

***HUD Records Disposition Schedules***

---

*Directive Number:* [Prev Hit][Next Hit]**2225.6**

---

APPENDIX 2

RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

This Schedule provides disposition instructions for those records relating to the legal functions of the Department. Legal functions are the main responsibility of the Office of General Counsel, the HUD Board of Contract Appeals and the Office of the Administrative Law Judge. The Office of General Counsel provides legal advice, opinions and services regarding all programs, policies and activities of the Department. The HUD Board of Contract Appeals issues final decisions for the Secretary in all contract disputes which are appealable to the Court of Claims up to 6 years after the date of issue. The Board also issues decisions in other administrative appeals that become final 30 days after issue. The Administrative Law Judge issues decisions in administrative appeal areas where the right to a hearing is granted by statute or agreement.

This Schedule covers legal records kept in Field Offices as well as in Headquarters. Some HUD offices other than those listed above may also have records relating to a legal activity and those records are also covered by this Schedule. The Schedule also covers legal records created by HUD's predecessor agencies.

| Item No. | Description of Records | Disposition |
|---|---|---|
| 1. | Proposed and final rules and notices. Consists of material published in the Federal Register. Final rules have the effect of law and are codified in the Code of Federal Regulations (CFR). Rules are also known as regulations. | |
| | a. Case history files. Official record copy. Includes drafts showing development of rule or notice, clearance records, public comments, signed documents. Case history files from 1970 to present are maintained in Headquarters Office of General Counsel. Case history files prior to 1970 are maintained in originating program offices. | |
| | (1) Public docket file. Consists of public comments received | Close file after the final rules become |

| | | |
|---|---|---|
| | on proposed rules, environmental impact findings, inflationary impact findings, | effective and place in inactive file. Retire to Federal Records Center 3 years after close of |





| Item No. | Description of Records | Disposition |
|---|---|---|
| | or findings on need for regulatory analysis, and signed copies of the proposed and final rules in the same form as sent to the Federal Register for publication. | file or when volume warrants. Destroy 20 years after close of file. (NARA Job NC1-207-79-11, item 1a(1)) |
| | (2) Internal file. Consists of copies of proposed and final rules as sent through internal clearance process, clearance records, internal HUD comments on the proposed and final rules, and notes from internal HUD meetings held to discuss the proposed or final rules. | Close file after the final rules become effective and place in inactive file. Retire to Federal Records Center 3 years after close of file or when volume warrants. Destroy 10 years after close of file. (NARA Job NC1-207-79-11, item 1a(2)) |
| | (3) General notice files. Also called N-series docket files. Consist of copies of general notices as sent through clearance process, clearance records, internal HUD comments on general notices and signed copies of general notices in the same form as sent to the Federal Register for publication. Includes notices of delegations of authority. | Close file after notice published in the Federal Register and place in inactive file. Retire to Federal Records Center 3 years after close of file or when volume warrants. Destroy 5 years after close of file. (NARA Job NC1-207-79-11, item 1a(3)) |
| b. | Working papers and background material not significant enough to be a part of the case history files. | Destroy 6 months after date the final regulation or notice is published in the Federal Register. (NARA Job NC1-207-79-11, item 1b) |
| c. | Extra copies of the clearance package for the regulation or | Destroy when 3 years old or when no longer |

| | | |
|---|---|---|
| | notice which are distributed for concurrent clearances. Includes the comments given to | needed for reference whichever is earlier. (NARA Job NC1-207-79-11, item 1c) |



RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| | clearance point for preparation of a consolidated response. Does not include those parts of the package and responses which become part of the case history file. | |
| d. | Printed Code of Federal Regulations (CFR) volumes. Title 24 CFR contains Housing and Urban Development regulations. Each volume of the CFR is revised at least once each calendar year. Title 24 CFR is updated as of April 1 each year. | Destroy when later revised CFR volume is received. (NARA Job NC1-207-79-11, item 1d) |
| e. | Printed daily issues of the Federal Register. The CFR is kept up-to-date by the individual issues of the Federal Register. The two publications must be used together to determine the latest version of any given rule. A revised CFR volume incorporates the final regulations on the same subject area which were published in the Federal Register since the last revision of that CFR volume. Title 24 of the CFR revised as of April 1, 1979, will contain all final Housing and Urban Development regulations published in the Federal Register since April 1, 1978. | |
| | (1) Issues containing notices or proposed or final regulations related to the same subject area as the CFR volumes being maintained. | Keep issues printed since the revision date of the current CFR volume. When a later revised CFR volume is received, destroy all issues of the daily Federal Register printed before the revision date of the CFR volume. (NARA Job NC1-207-79-11, item 1e(1)) |

APPENDIX 2

RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| | (2) All other issues. | Destroy after review and finding that the issue does not contain any notices or proposed or final regulations related to the same subject area as the CFR volumes being maintained. (NARA Job NC1-207-79-11, item 1e(2)) |
| | f. Printed or processed copies of individual proposed or final regulations or notices as published in the Federal Register. | Destroy when rescinded, superseded, obsolete or no longer needed for reference. (NARA Job NC1-207-79-11, item 1f) |
| 2. | Delegations of authority files. Include redelegations and revocations or withdrawals of authority. | |
| | a. Each separate delegation. | |
| | (1) Record copy of delegations published in the Federal Register. Includes background material and record of concurrences or clearances. These files are kept by the Headquarters Office of General Counsel as part of the general notice files (see item 1a(3) of this Schedule). | Use the disposition instruction for item 1a(3) of this Schedule. (NARA Job NC1-207-79-11, item 2a(1)) |
| | (2) Record copy of delegations not published in the Federal Register. Includes background material. These files are kept by the originating office. | Destroy when 6 years old. (NARA Job NC1-207-79-11, item 2a(2)) |
| | (3) All other copies. | Destroy when superseded, obsolete or no longer needed for reference. (NARA Job NC1-207-79-11, item 2a(3)) |

RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | | Description of Records | Disposition |
|---|---|---|---|
| | b. | Printed book of current delegations. Compiled by Headquarters Office of General Counsel. This book is distributed to certain Headquarters and Field Offices. It is updated quarterly. | |
| | (1) | Master set kept by the Headquarters Office of General Counsel unit which compiles the book. | |
| | (a) | Delegations published in the Federal Register. | Destroy when superseded or obsolete. (NARA Job NC1-207-79-11, item 2b(1) (a)) |
| | (b) | Unpublished delegations. | Place superseded or rescinded delegations in inactive file. Destroy 6 years after end of calendar year in which delegation is superseded or rescinded. (NARA Job NC1-207-79-11, item 2b(1) (b)) |
| | (2) | All other sets. | Destroy when superseded, obsolete or no longer needed for reference. (NARA Job NC1-207-79-11, item 2b(2)) |
| 3. | | Tort claims case files. Consist of records concerning claims for damages against the United States for personal injury or death or loss of property caused by a Departmental employee. Files include claim form, evidence, investigation statements, decision and related correspondence. | Destroy 3 years after case is closed. (NARA Job NC1-207-79-11, item 3) |





RECORDS DISPOSITION SCHEDULE 2
LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|

| | | |
|---|---|---|
| 4. | Employees' personal property claims case files. Consist of records concerning claims filed by HUD employees for loss or damage to personal property connected with Government service. | Destroy 3 years after case is closed. (NARA Job NC1-207-79-11, item 4) |
| 5. | Official Litigation Case Files. Each file contains all documents and correspondence pertaining to any case in which a Department official or employee is a party, from filing of complaint until entry of final judgment. Includes cases in which the Department files as a friend of the court but is not actually a party. | |
| a. | Official litigation case files specifically identified by a Headquarters Associate General Counsel or a Regional Counsel as having unusual significance for the Department. Such cases will be segregated by office personnel prior to retirement to the Federal Records Center. | Close file and retire to Federal Records Center after entry of order or last appeal (final judgment). Destroy 7 years after entry of order or last appeal (final judgment). (NARA Job NC1-207-79-11, item 5a) |
| b. | All other official litigation case files. | Close file after entry of final judgment. Retire to Federal Records Center 1 year after entry of final judgment. Destroy 4 years after entry of final judgment. (NARA Job NC1-207-79-11, item 5b) |
| c. | Unofficial reference copies of litigation documents. | Destroy when superseded or obsolete, or when no longer needed for administrative or reference use. Do not retire to Federal Records Center. (NARA Job NC1-207-79-11, item 5c) |





RECORDS DISPOSITION SCHEDULE
LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| 6. | Administrative adjudication case files. Consists of files on cases docketed for hearing and resolution by the Office of Administrative Law Judges and the Board of Contract Appeals. Includes but is not limited to cases under: Contract Appeals; | |

| | Description of Records | Disposition |
|---|---|---|
| | HUD-IRS Administrative Offsets; Mortgagee Review Board; Fair Housing; Program Fraud; Debt Collection; Community Development Block Grant; Mobile Home Construction and Safety Standards; Interstate Land Sales; Debarment, Suspension and Ineligibility of Contractors and Grantees. | |
| | a. Official administrative adjudication files kept by the Office of Administrative Law Judges and the Board of Contract Appeals. Each file contains all documents, exhibits, transcripts of hearings, decisions, orders and correspondence pertaining to each case from a charge, complaint or notice of appeal to final decision or order. | Close file after entry of final order or decision. Retire to Federal Records Center 2 years after entry of final order or decision, or when volume warrants. Destroy 8 years after entry of final order or decision. (NARA Job N1-207-94-1, item 6a) |
| | b. Files kept by the Office of General Counsel on administrative adjudications. May include documents involving actions or decisions which led to a charge, complaint or appeal and hearing, as well as copies of documents in the official file (see item 6a of this Schedule). | Destroy 6 years after entry of final order or decision. (NARA Job N1-207-94-1, item 6b) |
| 7. | Legislative history files. Consist of printed copies of the basic legislation under which the Department Includes copies of Congressional hearings, bills and amendments, Public Laws and excerpts from | Destroy when superseded, obsolete or no longer needed for reference. These files may not be retired to a Federal Records Center (NARA Job NC1-207-79-11, item 7) |





| Item No. | Description of Records | Disposition |
|---|---|---|
| | the Congressional Record. The record set of legislative history files for all Federal agencies is kept by the Office of Management and Budget. All printed sets in HUD are considered to be reference material only. This includes the legislative history files in the Office of the Associate General Counsel for Legislation and Regulations. | |
| 8. | HUD legislative proposals files. Consist of proposed legislation developed by HUD and related correspondence and other documents. May include background material, drafts, reviews, minutes of meetings, and position papers. | |

| | | |
|---|---|---|
| a. | Master files kept by the Office of the Associate General Counsel for Legislation and Regulations. | Close file at end of fiscal year in which legislation is enacted or dropped. Destroy 15 years after close of file. (NARA Job NC1-207-79-11, item 8a) |
| b. | Files kept by other HUD offices which initiate or review HUD's legislative proposals. | Close file at end of fiscal year in which legislation is enacted or dropped. Destroy 6 years after close of file. (NARA Job NC1-207-79-11, item 8b) |

9. Legislative reports files. Consist of files of reports to Congress and the Office of Management and Budget on legislative proposals affecting HUD, but developed by Congress or other Federal agencies. Also, consist of files on oversight reports to Congress and the Office of Management and Budget on HUD program activities. Include correspondence and other related documents.





| Item No. | Description of Records | Disposition |
|---|---|---|
| | a. Report files on legislative proposals affecting HUD, but developed by Congress or other Federal agencies. | |
| | (1) Master files kept by the Office of the Associate General Counsel for Legislation and Regulations. | Close file at end of fiscal year in which legislation is enacted or dropped. Destroy 5 years after close of file. (NARA Job NC1-207-82-8, item 9a(1)) |
| | (2) Files kept by other HUD offices which reviewed and commented on the proposed legislation | Close file at end of fiscal year in which legislation is enacted or dropped. Destroy 2 years after close of file. (NARA |

| | | |
|---|---|---|
| | | Job NC1-207-82-8, item 9a(2)) |
| | b. Oversight report files on HUD program activities. | |
| | (1) Master files kept by the Office of the Associate General Counsel for Legislation and Regulations. | Close file at end of fiscal year in which reports are prepared. Destroy 3 years after close of file. (NARA Job NC1-207-82-8, item 9b(1)) |
| | (2) Files kept by other HUD offices submitting feeder reports to the Office of the Associate General Counsel for Legislation and Regulations. | Close file at end of fiscal year in which reports are prepared. Destroy 2 years after close of file. (NARA Job NC1-207-82-8, item 9b(2)) |
| 10. | Legal opinions files. Consist of correspondence and related documents providing legal opinions, interpretations, rulings and advice on HUD programs and operations to HUD officials, HUD clientele, other Federal agencies, States, Congress and the general public. | |





RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| | a. Record copies of legal opinions, interpretations, rulings or advice concerning HUD's relationship with the public housing agencies (PHA's). Filed by PHA. | Destroy 3 years after end of Annual Contributions Contract period. (NARA Job NC1-207-79-11, item 10a) |
| | b. Record copies of legal opinions, interpretations, rulings or advice not covered in Item 10a. | |
| | (1) Considered to be significant or precedent setting. Includes background material. Kept by the Office of General Counsel (OGC) unit which issued the opinion, interpretation, ruling or advice. | Place in inactive file when superseded or obsolete. Destroy 3 years after being placed in inactive file. (NARA Job NC1-207-79-11, item 10b(1)) |
| | (2) Not considered to be | Destroy when 5 years |

| | | |
|---|---|---|
| | significant or precedent setting. Includes background material kept by OGC unit which issued the opinion, interpretation, ruling or advice. | old. (NARA Job NC1-207-79-11, item 10b(2)) |
| c. | Book of legal opinions compiled, printed and distributed annually. Only those legal opinions considered to be significant are included in the book. Attachments to the opinions are not always included. | |
| | (1) Master set kept by OGC unit which prepares the book. Those editions prior to 1976 have separate card indexes. | Permanent. Offer to NARA when 12 years old. For those volumes having separate card indexes, offer the indexes to NARA with the corresponding volumes. (NARA Job NC1-207-79-11, item 10c(1)) |





RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| | (2) All other sets. | Destroy when superseded, obsolete or no longer needed for reference. These files may not be retired to a Federal Records Center. (NARA Job NC1-207-79-11, item 10c(2)) |
| d. | Memoranda on recent legal developments of interest to the Field. Contain summaries of the developments. Copies of the related opinions or other documents may be attached. Prepared monthly from weekly reports submitted by all Associate General Counsels. Distributed to all Field and Headquarters attorneys. | |
| | (1) Master set kept by OGC unit which prepares the memoranda. | Destroy when 6 years old. (NARA Job NC1-207-79-11, |

| | | |
|---|---|---|
| | | item 10d(1)) |
| | (2) All other sets. | Destroy when superseded, obsolete or no longer needed for reference. (NARA Job NC1-207-79-11, item 10d(2).) |
| | e. All other nonrecord copies of legal opinions, interpretations, rulings or advice. | Destroy when superseded, obsolete or no longer needed for reference. (NARA Job NC1-207-79-11, item 10e) |
| 11. | Legal activity report files. Consist of weekly reports prepared by each Associate General Counsel on the activities of his/her office to keep the General Counsel informed. Also used to prepare the memoranda on recent legal developments (see item 10d of this Schedule). | |





RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| | a. Record copies kept in office of each Associate General Counsel. | Destroy when 2 years old or when no longer needed for reference, whichever is earlier. (NARA Job NC1-207-79-11, item 11a) |
| | b. Originals submitted to the General Counsel. | Destroy after issuance of memorandum of recent developments which reflects those reports. (NARA Job NC1-207-79-11, item 11b) |
| 12. | Legal reference files. Consist of extra (nonrecord) copies of legislation, opinions, litigation, court decisions, issuances, publications, reports, speeches and other material used for reference purposes, regardless of source. Includes informational copies of correspondence. Official | Destroy when superseded, obsolete or no longer needed for reference. Reference files may not be retired to a Federal Records Center. (NARA Job NC1-207-79-11, |

| | | |
|---|---|---|
| | record copies of such documents are covered elsewhere in this Schedule or in other Departmental records disposition schedules. | item 12) |
| 13. | Notice of proceedings Files. Consist of case files relating to administrative proceedings against developers for violations under the Interstate Land Sales Full Disclosure Act. Include copy of Notice of Proceeding, developer's response, closing documents and related correspondence. The closing document may be a settlement, order of suspension, consent order, or effective date letter. | Place in inactive file when closed. Destroy 3 years after close of case file. (NARA Job NC1-207-79-11, item 13) |





RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| 14. | Subpoena transcript files. Consist of files relating to subpoena return hearings with developers before an Office of Interstate Land Sales Registration (OILSR) hearing officer. May include a copy of the subpoena issued by OILSR. | Destroy 3 years after date of hearing. (NARA Job NC1-207-79-11, item 14) |
| 15. | Copies of subpoenas issued by the Office of Interstate Land Sales Registration which do not become part of another file (i.e., on which no further action is taken). | Destroy when 1 year old. (NARA Job NC1-207-79-11, item 15) |
| 16. | Settlement case files involving penalties imposed on manufacturers for violations under the Mobile Home Construction and Safety Standards Act. Consist of files on cases where settlement was reached without need for an administrative hearing or litigation. Include preliminary determinations, subpoenas, investigation documents, settlement papers and related correspondence. | Destroy 5 years after settlement. (NARA Job NC1-207-79-11, item 16) |
| 17. | Temporary Denials of Participation (TDP) and Conditional Participation files. Consist of orders, notices and other documents issued by Field Offices to deny or limit a contractor's or grantee's participation in HUD programs for a temporary period. | |
| | a. Record copy kept by Field | Destroy 6 years after |

| | |
|---|---|
| Office issuing the orders and other documents. | Temporary Denial or Conditional Participation is removed. (NARA Job NC1-207-79-11, item 17a) |





RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| | b. All other copies. | Destroy 3 years after Temporary Denial or Conditional Participation is removed or when no longer needed for reference, whichever is earlier. (NARA Job NC1-207-79-11, item 17b) |
| 18. | Debarment ADP system. This Automatic Data Processing (ADP) system provides recurring updated listings of contractors and grantees debarred from, ineligible for, or suspended from recurring awards by the Department. The reason for the actions, extent of restrictions, and cross-reference of individuals and companies are reflected. | |
| | a. Documentation files. Cover those records required for servicing machine-readable records--for converting them from human-readable information to encoded data and vice versa. These are an organized series of descriptive documents required to initiate, develop, operate and maintain specific applications of ADP systems. | Destroy 1 year after system is placed on inactive list. (NARA Job NC1-207-79-11, item 18a) |
| | b. Input documents. | |
| | (1) Forms, reports and other documents intended solely to serve as inputs to the system. | Destroy after data has been entered into the system and verified. (NARA Job NC1-207-79-11, item 18b(1)) |
| | (2) Forms, reports and other documents which serve other program uses in addition to serving as inputs to the system. | Use the appropriate item elsewhere in this Schedule. (NARA Job NC1-207-79-11, item 18b(2)) |

APPENDIX 2

RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| c. | Processing files. Those machine-readable files (from work files and raw data input files to publication files and security backup files) which are used to create and use a master file. | Scratch after third update cycle. (NARA Job NC1-207-79-11, item 18c) |
| d. | Master files. Constitute the definitive state of a data file in a system at a given time. | |
| | (1) While the system is operational. | Scratch after third update cycle. (NARA Job NC1-207-79-11, item 18d(1)) |
| | (2) When the system is deleted from the inventory of active systems. | Destroy 1 year after system is placed on inactive list. (NARA Job NC1-207-79-11, item 18d(2)) |
| e. | Printouts, output reports. | |
| | (1) Joint Consolidated List of Debarred, Suspended and Ineligible Contractors and Grantees. Produced quarterly. | |
| | (a) Master set kept by the Office of the Inspector General. | Destroy when 5 years old. (NARA Job NC1-207-79-11, item 18e(1)(a)) |
| | (b) All other copies. | Keep the most recent quarterly list and destroy all previous editions. (NARA Job NC1-207-79-11, item 18e(1)(b)) |
| | (2) Monthly lists of additions and deletions to the Joint Consolidated List. | |
| | (a) Master set kept by the Office of the Inspector General. | Destroy when 5 years old. (NARA Job NC1-207-79-11, item 18e(2)(a)) |