APPENDIX 2

RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| | (b) All other copies. | Destroy upon receipt of quarterly Joint Consolidated List incorporating the monthly lists. (NARA Job NC1-207-79-11, item 18e(2)(b)) |
| 19. | Attorney working files. Consist of drafts, notes, background material and reference copies of documents. The record copies of documents prepared by attorneys are placed in the official case files, project docket files or other official files as appropriate. Other items of this Schedule or other Department records disposition schedules cover the record copies. | |
| | a. Related to specific administrative or court cases. | When the administrative or court case is closed, screen the related working file and transfer any record material to the official case file. Destroy the remaining working file 2 years after case is closed. (NARA Job NC1-207-79-11, item 19a) |
| | b. Related to foreclosure and sale of single family homes and multi-family projects. | When the home or project is sold and HUD no longer has an interest in it, screen the related working file and transfer any record material to the official case file. Destroy the remaining working file 2 years after home or project is sold. (NARA Job NC1-207-79-11, item 19b) |

RECORDS DISPOSITION SCHEDULE 2

LEGAL RECORDS

| Item No. | Description of Records | Disposition |
|---|---|---|
| | c. All other working files. | Destroy when the attorney who created the file leaves HUD or when no longer needed for reference, whichever is earlier. Screen working file before destruction and transfer any record material to the related official file. (NARA Job NC1-207-79-11, item 19c) |
| 20. | Correspondence files not covered elsewhere in this Schedule. | Close file at end of calendar year. Destroy 3 years after file is closed. (NARA Job NC1-207-79-11, item 20) |



[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top] [Prev Hit] [Help]

***HUD Records Disposition Schedules***

---

*Directive Number:* [Prev Hit][Next Hit]**2225.6**

---

APPENDIX 10

RECORDS DISPOSITION SCHEDULE 10

RECORDS RELATING TO MULTIFAMILY INSURED PROGRAMS

This schedule provides disposition instructions for Headquarters records produced as a result of HUD's subsidized and unsubsidized multifamily insured programs. The instructions pertain to Headquarters multifamily administrative, management and operational records, and include records relating to such special programs as rent supplement, cooperatives, condominiums, hospitals, nursing homes, and medical practice facilities. Multifamily Field Office records are covered in Records Disposition Schedule 1, Field Office Records.

| Item No. | Description of Records | Disposition |
|---|---|---|
| 1. | General subject correspondence pertaining to the administration and management of the production phase of all multifamily insured programs. | Break files annually. Destroy when 3 years old. (NARA Job NC1-207-78-12, item 1) |
| 2. | Chronological files pertaining to the administration and management of the production phase of all multifamily insured programs. | Break files annually. Destroy when 3 years old. (NARA Job NC1-207-78-12, item 2) |
| 3. | General administrative reference files, including copies of personnel, travel, and general housekeeping records. | Use applicable General Records Schedules. |
| 4. | Correspondence and reports relating to specific projects. Materials include and pertain to applications, project selection, processing, and mortgage servicing activities. | |
| | a. Where a long term obligation of the Government is created by endorsement, contract, or otherwise. | Transfer all records on the specific project to the Headquarters project mortgage servicing file. See Schedule 10, item 7. (NARA Job NC1-207-78-12, item 4a) |
| | b. Where no long term obligation of the Government is created to require servicing, as when an application is withdrawn or a | Destroy 6 years after date of last entry. (NARA Job NC1-207-78-12, item 4b) |

commitment denied.





RECORDS DISPOSITION SCHEDULE 10

RECORDS RELATING TO MULTIFAMILY INSURED PROGRAMS

| Item No. | Description of Records | Disposition |
|---|---|---|
| 5. | General subject correspondence pertaining to the administration and management of all aspects of multifamily mortgage servicing. | Break files annually. Destroy when 3 years old. (NARA Job NC1-207-78-12, item 5) |
| 6. | Chronological files pertaining to the administration and management of all aspects of multifamily mortgage servicing. | Break files annually. Destroy when 3 years old. (NARA Job NC1-207-78-12, item 6) |
| 7. | Project Mortgage Servicing Correspondence Docket. Duplicate files are maintained in Headquarters and in the respective servicing Field Office for each multifamily project. Each file chronologically documents each project's history from inception through the performance of any mortgage covenants, and adherence to any regulatory agreements, applicable laws, and Departmental regulations. Included are underwriting and processing forms, rent schedules, annual inspection reviews on maintenance, management reports, default notices, modification agreements, and other data. The files are active for the life of the mortgage, which can be as long as 40 years. | Retire to Federal Records Center at close of fiscal year in which the Secretary ceases to have any liability and/or interest in the project. Destroy 6 years after the Secretary ceases to have any liability and/or interest in the project. (NARA Job NC1-207-78-12, item 7) |
| 8. | Washington (Legal) Docket. The docket contains application, contract, title, mortgage, corporate and fiscal sections, and the forms and documents in each section are arranged in accordance with FHA Form No. 2471, Contents of Washington Docket. | Retire to Federal Records Center at close of fiscal year in which the Secretary ceases to have any liability and/or interest in the project. Destroy 6 years after the Secretary ceases to have any liability and/or interest in the project. (NARA Job NC1-207-78-12, Item 8) |





RECORDS DISPOSITION SCHEDULE 10

RECORDS RELATING TO MULTIFAMILY INSURED PROGRAMS

| Item No. | Description of Records | Disposition |
|---|---|---|
| 9. | Headquarters copies of financial statements on multifamily projects. Files contain financial statements pertaining to the operations of the mortgagor corporations having FHA-insured mortgages under various project mortgage insurance programs where provisions of the charter or regulatory agreement provide for the submission of such statements to HUD. | Screen files upon receipt of current financial statement, and destroy any statements that are more than 6 years old. Merge with Project Mortgage Servicing Correspondence Docket and Washington (Legal) Docket. See items 7 and 8 of the Schedule. (NARA Job NC1-207-78-12, item 9) |
| 10. | Multifamily Default System. This major, cumulative loan management machine readable system tracks projects acquired by HUD or which involve a mortgage assigned to HUD or an insured mortgage in default. The system provides an automated data base for the preparation of management and statistical reports. | |
| | a. System master file. | Apply provisions of General Records Schedule 20. First generation data may be disposed of after fourth successful update. (NARA Job NC1-207-78-12, item 10a) |
| | b. System output reports. | |
| | (1) Copies maintained by system sponsor. | Destroy when no longer needed, or when 2 years old, whichever occurs first. (NARA Job NC1-207-78-12, item 10b(1)) |
| | (2) All other distributed copies. | Destroy when superseded or obsolete, or after fourth successful update, whichever occurs first. (NARA Job NC1-207-78-12, item 10b(2)) |





RECORDS RELATING TO MULTIFAMILY INSURED PROGRAMS

| Item No. | Description of Records | | Disposition |
|---|---|---|---|
| 11. | Multifamily Early Warning System (MEWS). This machine readable system assists in identifying subsidized multifamily housing projects which may be headed for default. Using data collected monthly from the project managers, the system compares occupancy and several financial indicators with pre-established norms. | | |
| | a. | System master file. | Apply provisions of General Records Schedule 20. First generation data may be disposed of after fourth successful update. (NARA Job NC1-207-78-12, item 11a) |
| | b. | System output reports. | Destroy after third successful update. (NARA Job NC1-207-78-12, item 11b) |
| 12. | Monthly Subsidy Billings/Documentation. Housing program office copies of monthly subsidy billings and supporting documentation. These may include any and all of the following: Housing Owner's Certification/Application for Housing Assistance Payments (HUD-52670); Schedule of Tenant Assistance Payments Due (HUD-52670A, Part 1); Schedule of Section 8 Special Claims (HUD-52670A, Part 2); Section 8 Special Claims Worksheet (HUD-52670-WS); Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures (HUD-50059); and Worksheets for the Computation of Tenant Payment/Rent (HUD-50059a through k). | | Retire to Federal Records Center 1 year after audit or any time following audit that volume warrants. Destroy when 3 years old. (NARA Job N1-207-88-4, item 12) |

2225.6 REV-1 CHG-26
APPENDIX 10

HUD RECORDS DISPOSITION SCHEDULE 10

RECORDS RELATING TO MULTIFAMILY INSURED PROGRAMS

This schedule provides disposition instructions for Headquarters records produced as a result of HUD's subsidized and unsubsidized multifamily insured programs. The instructions pertain to Headquarters multifamily administrative, management and operational records, and include records relating to such special programs as rent supplement, cooperatives, condominiums, hospitals, nursing homes, and medical practice facilities.

Exceptions: Item 12 of this schedule covers Field Office records. Item 13 covers Headquarters and Field Office records.

The rest of the multifamily Field Office records are covered in HUD Records Disposition Schedule 1, "Field Office Records." However, the multifamily records items in Schedule 1 will be incorporated into Schedule 10 as part of its next major revision.



Item

| No. | Description of Records | Disposition |
|---|---|---|
| 13. | Flexible Subsidy Loan Files. The Flexible Subsidy program consists of the Operating Assistance Program (OAP) and the Capital Improvement Loan Program (CILP). Both programs provide loans on a competitive basis to privately owned, federally assisted multifamily housing projects to restore or maintain the physical and financial soundness of the projects at the lowest possible cost to the Federal Government.<br><br>CILP loans are amortizing loans where the payments begin after the loan proceeds are distributed. HUD can require that OAP deferred/contingent loans be repaid in installments from residual receipts at the end of each fiscal | |





| Item No. | Description of Records | Disposition |
|---|---|---|
| | year or be repaid in full when the property is sold, the mortgage insurance is terminated, or the mortgage is paid off.<br><br>This item covers Flexible Subsidy program records kept in Headquarters and Field Offices. | |
| | a. Disapproved or withdrawn applications. These files include applications received after the deadline. | Use item 17-3a of HUD Records Disposition Schedule 3. |
| | b. Official loan case files. These files are kept in Field Offices. These files contain approved loan applications, background material used to make funding decisions, Management Improvement and Operating Plans (MIO's), funding reservations, original loan documents, | Retire to Federal Records Center 1 year after both the Flexible Subsidy and the Mortgage Loan have been paid in full. Destroy 7 years after both subsidy and loan have been paid in full. (NARA Job N1-207-94-6, item 13b) |

certifications, worksheets, management reviews, reports, correspondence, and related documents.





HUD RECORDS DISPOSITION SCHEDULE 10

RECORDS RELATING TO MULTIFAMILY INSURED PROGRAMS

| Item No. | Description of Records | Disposition |
|---|---|---|
| c. | Financial accounting documents related to the loan (accountable officers' files). These files are kept by the appropriate financial accounting office in HUD. They include the record copies of the executed contracts. | Use General Records Schedule 6, item 1a. |
| d. | Copies of loan application packages with background material sent to Headquarters with Field Office recommendations for approval. Records include Headquarters' decisions to approve or disapprove the applications for funding. These files are kept in Headquarters. | Retire to Federal Records Center 1 year after date of decision on approval of the loan, or anytime thereafter that volume warrants. Destroy 6 years and 3 months after date of decision on approval of the loan. (NARA Job N1-207-94-6, item 13d) |
| e. | Headquarters records on funding allocations to the Field Offices, including nonrecord copies of the executed contracts. | Destroy when 7 years old. (NARA Job N1-207-94-6, item 13e) |
| f. | Records related to Flexible Subsidy program before 1980 when it was a grant program. | Use HUD Records Disposition Schedule 11, Housing Grant Records. |



[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top] [Prev Hit] [Help]

**otice of Intent (ELIHPA)**
**o Extend Low -Income**
**ffordability Restrictions**

U. S. Department of Housing
and Urban Development
Office of Housing
Federal Housing Commissioner

rsuant to Section 222 of the Emergency Low-Income Housing Preservation Act of 1987 (ELIHPA)

OMB Approval No. 2502-0472 (Exp. 6/31/96)

ublic reporting burden for this collection of information is estimated to average 2.0 hours per response, including the time for reviewing instructions, searching existing ata sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies d Systems, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction roject (2502-0472), Washington, D.C. 20503. Do not send this completed form to either of these addresses.

his Notice must be filed simultaneously with (1) the local HUD Field Office, (2) the chief executive officer of the appropriate State or local overnment, (3) the mortgagee, (4) tenants of the property, and (5) all known representatives of the tenants.

. Date of this Notice 2-20-95

. Purpose of this Notice (Check one):

[X] Extend the low income affordability restrictions by requesting incentives; or

[ ] Sell the housing to a qualified purchaser.

. Borrower and Project Information:

a. Borrower Entity Carriage House of Mishawaka Associates I

b. FHA Project Number 073-44008-LDP

c. State Agency Project Number (If project is Section 236 non-insured.) ______

d. Project Name Carriage House of Mishawaka I

e. Project Address(Include City, State, and Zip Code) 220 Portsmouth Court
Mishawaka, IN 46545

f. Date of Final Endorsement 3-9-71

4. Name of Mortgagee Federal National Mortgage Association
950 East Paces Ferry Road, Atlanta, GA 30326

5. Name of State or local Agency Receiving this Notice Of Intent Mayor Robert C. Beutter
600 East 3rd Street
Mishawaka, IN 46544

6. Owner's Certification

I, the undersigned, certify that this Notice of Intent has been submitted and distributed in accordance with the requirements of the statute as specified above.

[X] I certify that I know of no tenant representative.

Under the penalties and provision of Title 18, United States Code, Section 1001, the statements contained in the request and its attachments have been examined by me and, to the best of my knowledge and belief are true, correct, and complete.

Signature (Owner) [signature] ~~Max A. Thurston, General Partner~~ Date 2-20-95

Name (Owner) Carriage House of Mishawaka Associates I, L.P.

Address (Include City, State, and Zip Code) P. O. Box 40177
Indianapolis, IN 46240

**Residents**

Kelly Decl. Ex. Y

**Important Information about this Notice of Intent is on the back of this form.**

form HUD-9608-B (6/94)
ref. Handbook 4350.7

Notice To: All Residents of (Project Name): Carriage House of Mishawaka I

From: U.S. Department of Housing and Urban Development

Subject: Future Plans for Your Apartment Building

The other side of this form is a copy of a Notice sent by the owner of your apartment building to the U.S. Department of Housing and Urban Development (HUD). The Notice tells HUD about the owner's future plans for the project. The owner has checked one of two boxes which say "Extend" or "Sell." Because of a law passed by Congress in November of 1987, the owner will be able to act upon these plans only if HUD approves. Either way, the building will remain affordable for you.

You may let HUD or a tenant representative shown below know if you think repairs need to be done and what they are. Another Notice will be posted in the next few weeks asking you again to let us know what repairs are needed.

HUD will send you a letter explaining any decisions that are made or actions that are taken. The owner will be providing any tenant representative(s) with much more information than we are able to post. These representative(s) can then explain to you what is happening. The owner knows of the following tenant representative(s):

Name ______________________ Name ______________________

Address ______________________ Address ______________________

______________________ ______________________

Telephone No. ______________________ Telephone No. ______________________

If there is any other organization or individual who will be representing the tenants of this project, please let both the owner and HUD know.

All questions and other comments for HUD should be made to the following address and telephone number:

Office: Indianapolis HUD Office, Region V

Address: 151 North Delaware Street

City, State, Zip code: Indianapolis, IN 46204-2526

Attention: Chief Loan Management Branch

Telephone: 317-226-7302

NOTICE OF INTENT (ELIHPA)

CARRIAGE HOUSE OF MISHAWAKA I

Mailed 2/23/95 in the following manner:

| | |
|---|---|
| 1st Class Mail: | HUD -- Indianapolis, Indiana<br>FNMA -- Atlanta, Georgia<br>Mayor Robert C. Beutter |
| Overnight Mail: | Property for posting |

Sharon Kibbe

Sharon Kibbe

U. S. Department of Housing and Urban Development

Indiana State Office
151 North Delaware Street
Indianapolis, IN 46204-2526

MAR 1 5 1995

Mr. Dean Donaldson
Gene B. Glick
P.O Box 40177
Indianapolis, IN 46240

Dear Mr. Donaldson:

SUBJECT: Carriage House of Mishawaka
Mishawaka, IN
FHA No. 073-44008

We have received your Notice of Intent (NOI) to extend low-income housing affordability restrictions for the remaining useful life of the subject property. We have determined Carriage House of Mishawaka to be an eligible property.

In order to determine fair compensation to you for not prepaying your mortgage, you must provide an appraisal of the property to HUD. Enclosed is the Appraisal Guidelines; however, HUD does not do an appraisal nor will there be a third appraisal under Title II.

An independent appraiser is defined as one who is not an employee of the Federal Government or an employee or officer of any entity that is affiliated with the owner of the property. The appraiser must not be the subject of a charge issued following a reasonable cause determination under the Fair Housing Act.

The appraiser must meet the following qualifications:

1. Six years of appraisal experience with three years in appraising multifamily properties.

2. Certified or licensed by the State in accordance with Title II Federal Financial Institution Reform Recovery Act of 1989. The States are scheduled to have licensing procedures and standards in place by December 31, 1992.

Appraisers have four months from the date HUD received your NOI to complete their assignments.

Please send one copy of the appraisal to the attention of Ms. Franca Hetue, Preservation Team, DHUD, 151 North Delaware, Indianapolis, IN 46204.

Kelly Decl. Ex. Z

There will be a physical inspection of your property to determine the Capital Needs for the property (required repairs and replacement reserve analysis) followed by an exit conference to discuss the findings with all interested parties. The required repairs will bring the property up to good condition and meet local codes and the Housing Quality Standards as outlined in 24 CFR 886.113.

HUD's Architectural and Engineering staff person or contractor, you or your representative, appraiser or representatives, any local code enforcement officials and any designated tenant representatives may attend the inspection. The exit conference should include interested tenants and State and local officials in addition to those in attendance at the inspection.

Comments from all interested parties may be accepted by the HUD representative no later than the time of the exit conference. You are encouraged to submit at this inspection any studies, reports on the physical condition of your property, etc. to the HUD inspector/contractor. The exit conference will be used to discuss the results of the inspection. <u>You must post the date and time when advised of it.</u>

HUD will provide you with the complete results of the Capital Needs Assessment. You should provide a copy of the results to your appraiser.

Attached is a Tenant Notice which must be posted in all occupied buildings of the property. Copies of the Tenant Notice, as well as a copy of this letter, should be given to any known tenant representative.

Should you have any questions, please contact Franca Hetue at (317) 226-7199.

Sincerely,

Morris Rowland for

Shirley Carr
Chief
Multifamily Loan Management

ATTACHMENTS: Appraisal Guidelines
Notice to Tenants

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - X

ALGONQUIN HEIGHTS, et al., :

:

Plaintiffs, :

:

v. : No. 97-582 C

:

THE UNITED STATES, : (Judge Robert H. Hodges, Jr.)

:

Defendant. :

ORIGINAL

\- - - - - - - - - - - - - - X

30(b)6 DEPOSITION OF CARRIAGE HOUSE OF MISHAWAKA ASSOCIATES I, LP; AND, CARRIAGE HOUSE OF MISHAWAKA ASSOCIATES II, AND THROUGH ITS DESIGNEE

DEAN DONNELSON

Washington, D.C.

Tuesday, August 14, 2007

11:25 a.m.

Reported by: TRISTAN-JOSEPH, RPR

Deposition of CARRIAGE HOUSE OF MISHAWAKA ASSOCIATES I, LP AND CARRIAGE HOUSE OF MISHAWAKA ASSOCIATES II, LP, by and through its designee, DEAN DONNELSON, held at the offices of:

DOJ Civil Division - Civil Division
1100 L Street, N.W.
Eleventh Floor, Room 11010
Washington, D.C. 20005
(202)616-0465

Pursuant to agreement, before Tristan-Joseph, Registered Professional Reporter and Notary Public of the District of Columbia.

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS CARRIAGE HOUSE OF MISHAWAKA ASSOCIATES I, LP AND CARRIAGE HOUSE OF MISHAWAKA ASSOCIATES II:

ALYCIA A. ZIARNO, ESQ.
NIXON PEABODY, LLP
401 Ninth Street, N.W.
Suite 900
Washington, D.C. 20004-2128
(202)585-8265
(202)585-8080
Aziarno@nixonpeabody.com

ON BEHALF OF THE DEFENDANT THE UNITED STATES:

BONDURANT ELEY, ESQ.
U.S. DEPARTMENT OF JUSTICE
Civil Division
1100 L Street, Northwest
Room 11010
(202)616-0465
Bondurant.eley@doj.gov

C O N T E N TS

EXAMINATION OF DEAN DONNELSON PAGE

By Ms. Eley 9

By Ms. Ziarno 65

E X H I B I T S

| MISHAWAKA I DEPOSITION EXHIBIT | | PAGE |
|---|---|---|
| No. 1 | Rule 30(b)(6) Notice of Deposition Of Plaintiff Carriage House of Mishawaka Associates I, LP. | 10 |
| No. 2 | Mortgage Note of Carriage House of Mishawaka, dated October 2, 1969. Bates-stamped IRH 0099002 to IRH 0099003. | 21 |
| No. 3 | An Appraisal Report of Carriage House of Mishawaka I, September 10, 1991. Bates-stamped IRH0102207 to IRH0102348. | 34 |

E X H I B I T S (Continued)

| MISHAWAKA I DEPOSITION EXHIBIT | | PAGE |
|---|---|---|
| No. 4 | Notice of Intent (ELIHPA) to Extend Low-Income Affordability Restrictions, Carriage House of Mishawaka Associates I. Bates-stamped IRH 0107327 to IRH 0107329. | 39 |
| No. 5 | An appraisal dated March 1, 1995. RE: Carriage House of Mishawaka I Apartments-A 240-unit apartment complex located on North Main Street and Catalpa Street in Mishawaka, St. Joseph County, Indiana. Bates-stamped IRH 0107519. | 45 |
| No. 6 | Appraisal of Carriage House of Mishawaka I Apartments, Mishawaka, St. Joseph County, Indiana, February 13, 1995. Bates-stamped IRH0102059 to IRH0102206. | 45 |

E X H I B I T S (Continued)

| MISHAWAKA I DEPOSITION EXHIBIT | | PAGE |
|---|---|---|
| No. 7 | A letter from Dean A. Donnelson to Franca Hetue, March 17, 1995. Re: Plans of Action: Carriage House of Mishawaka I, Carriage House of Mishawaka II, Carriage House of Elkhart. Bates-stamped IRH 0099029 to IRH 0099039. | 56 |

**A. Correct.**
Q. The mortgage note for a Section 236 project typically allowed for prepayment 20 years after final closing --
**A. That's correct.**
Q. -- is that correct?
What do you consider to be the date of prepayment eligibility on Carriage House Mishawaka I?
**A. Twenty days after -- or twenty years after final endorsement, so sometime during 1991.**
MS. ELEY: Mark as Mishawaka II-2.
(Carriage House Mishawaka II Deposition Exhibit No. 2 was marked for Identification.)
BY MS. ELEY:
Q. Do you recognize Exhibit Mishawaka II-2?
**A. I do.**
Q. What is Mishawaka Exhibit II-2?
**A. It's a Mortgage Note signed by Carriage House of Mishawaka Phase II.**
Q. And is Exhibit Mishawaka II-2 a document

that would have been kept by, I guess, Carriage House Mishawaka II in the regular course of business?

**A. Yes.**

Q. And what is your recollection, if any, of the date that the mortgage on Mishawaka II was endorsed by HUD?

**A. Sometime around 1972.**

Q. And so is it fair to say that you considered the data prepayment eligibility on Carriage House Mishawaka II to fall sometime in 1992?

**A. Correct.**

Q. Briefly going back to Mishawaka I-2.

I'd like to ask if Mishawaka I-2 is a document that would have been kept by Carriage House Mishawaka I in the regular course of business?

**A. It is.**

Q. Okay. Did anyone at Carriage House Mishawaka I or II keep track of legislative and regulatory developments that could affect Carriage

(DEAN DONNELSON) 30 (b)(6)

Dean Donnelson

(DEAN DONNELSON) 30 (b)(6)
(CARRIAGE HOUSE OF MISHAWAKA
ASSOCIATES I, LP; AND, CARRIAGE
HOUSE OF MISHAWAKA ASSOCIATES II, LP)

Subscribed and sworn to and before me
this 13th day of September, 2007.

Jane P. Jossem
Notary Public

JANE P. JOSSEM
Notary Public, State of Indiana
County of Marion
My Commission Expires May 11, 2008

## CERTIFICATE OF NOTARY PUBLIC & REPORTER

I, TRISTAN-JOSEPH, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn; that the testimony of said witness was taken in shorthand and thereafter reduced to typewriting by me or under my direction; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and, further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of this action.

Tristan-Joseph

Tristan-Joseph

Notary for the District of Columbia

My Commission Expires: NOVEMBER 30, 2008

FHA FORM NO. 4118-D
(CORPORATE)
(Revised April 1963)

# MORTGAGE NOTE

$ 3,788,100.00 Indianapolis, Indiana.

December 10, 1970.

FOR VALUE RECEIVED, the undersigned, Carriage House of Mishawaka II, a partnership organized under the laws of the State of Indiana, promises to pay to Mount Vernon Sales & Mortgage Corporation, a corporation organized and existing under the laws of the State of Indiana, or order, the principal sum of Three Million Seven Hundred Eighty-Eight Thousand One Hundred Dollars ($ 3,788,100.00), with interest from date at the rate of eight and one-half per centum (8-1/2%) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows: Interest payable monthly on the first day of December, 1970, and on the first day of each month thereafter as hereinafter set forth. Commencing on the first day of May, 1972, installments of interest and principal shall be paid in the sum of Twenty-Seven Thousand Seven Hundred Seventy Dollars Thirty-Four Cents ($27,770.34) each, such payment to continue monthly thereafter on the first day of each succeeding month until the entire indebtedness has been paid. In any event, the balance of principal, if any, remaining unpaid, plus accrued interest, shall be due and payable on April 1, 2012. The installments of interest and principal shall be applied first to interest at the rate hereinafter set forth upon the principal sum or so much thereof that shall from time to time remain unpaid and the balance thereof shall be applied on account of principal.*

Both principal and interest shall be payable at the office of Mount Vernon Sales & Mortgage Corporation in Indianapolis, Indiana or such other place as the holder may designate in writing.

~~Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder.~~ If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations. See Rider 1 attached hereto and made a part of this Note.

Notwithstanding any provision herein for a prepayment charge or premium, prepayments of principal which do not exceed an aggregate of fifteen per centum (15%) of the original principal sum of this note in any one calendar year, may be made without any prepayment charge or premium.

If default be made in the payment of any installment under this note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this note equals or exceeds the amount of such required installment of principal.

The makers, endorsers, sureties, guarantors, and all other parties now or hereafter personally liable hereon waive the benefit of valuation and appraisement laws and waive presentment, demand for payment, protest and notice of dishonor, and the endorsers, sureties, and guarantors, consent that the owner or holder hereof shall have the right, without notice, to deal in any way at any time with any party hereto or to grant to any such party any extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever, or may release any of the security for this note, without in any way affecting the personal liability of any party hereunder.

This note is secured by a mortgage of even date herewith on real estate located in the City of Mishawaka, County of St. Joseph, State of Indiana, and may be further secured by a chattel mortgage to be hereafter executed on personal property located in the City of Mishawaka, County of ST. Joseph, State of Indiana.

*The Maker assumes no personal liability for the payment hereof except as set out in the Mortgage of even date given to secure this indebtedness.

EXHIBIT
Mishawaka II-2
8-14-7 J-0

IRH 0099048

[illegible] xxxxxxxx xxxxxxxxxxxxx

xxxxxxxxxxxxxx

CARRIAGE HOUSE OF MISHAWAKA II

By /s/ James T. Bisesi
General Partner

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

---

I HEREBY CERTIFY that this is the note described in, and secured by mortgage of even date herewith and in the same principal amount as herein stated, on real estate in the County of St. Joseph, State of Indiana. Dated this 10th day of December, 1970.

/s/ Beverly G. Tuck
*Notary Public.*

My Commission Expires:
August 23, 1972

---

The form of this instrument was prepared by the Office of the General Counsel of the Federal Housing Administration, and the material in the blank space in the form was inserted by or under the direction of Sidney Mishkin

STATE OF INDIANA

LOAN NO.

Mortgage Note

CARRIAGE HOUSE OF MISHAWAKA II

TO

MOUNT VERNON SALES &
MORTGAGE CORPORATION

No. 073-44235-LDP

Insured under 236 of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on Mar 6, 1972

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER

By /s/ Merle H. Tiede
(Authorized Agent)

Date Mar 17, 1972

A total sum of $ ______ has been approved for insurance hereunder by the Commissioner

FEDERAL HOUSING COMMISSIONER

By ______
(Authorized Agent)

Date ______

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

40118-P Rev. 4/63 FHA-Wash., D. C.

IRH 0099049

RIDER 1

The debt evidenced by this Note may not be prepaid either in whole or in part prior to the final maturity date hereof without the prior written approval of the Federal Housing Commissioner except where: (1) The prepayment is in connection with the release of an individual unit for sale to a lower income, elderly, or handicapped person; or (2) The maker is a limited dividend corporation which is not receiving payments from the Commissioner under a rent supplement contract pursuant to Sec. 101 of the Housing and Urban Development Act of 1965, and the prepayment occurs after the expiration of 20 years from the date of final endorsement or as a result of a sale of the project to a cooperative or nonprofit corporation or association and the purchase is financed with a mortgage insured pursuant to Section 236(j)(3) of the National Housing Act, as amended.

Prepayments may only be made in an amount equal to one or more monthly payments on principal next due on the first day of any month prior to maturity upon at least thirty (30) days prior written notice to the holder of the Note.

In the event of prepayment of principal during any one calendar year in an amount in excess of fifteen percent (15%) of the original principal payment of the Note, the Mortgagor hereby agrees to be jointly and severally bound to pay to the holder for its own account a penalty or charge equal to three percent (3%) of the amount of such excess less one-eighth (1/8) of one percent (1%) for each 12-month period which has elapsed since the date of the Note.

In the event that the Mortgagor shall fail to make any monthly payment due the holder within fifteen (15) days after the due date thereof, the holder may, at its option, impose a late charge upon the Mortgagor for payment of the Note in an amount not to exceed two percent (2%) of said monthly payment, provided, nevertheless, that so long as this Mortgage shall be insured by the FHA under Section 236 of the National Housing Act, the amount of the monthly payment upon which such late charge may be imposed shall be limited to the amount actually payable by the Mortgagor to the Mortgagee and shall not include for such purpose the amount payable by the FHA to the Mortgagee pursuant to its commitment under Section 236 of the National Housing Act.

# MORTGAGE NOTE

$ 2,046,500.00 Indianapolis, Indiana ~~Michigan~~

September 25, 1970

FOR VALUE RECEIVED, the undersigned, Carriage House of Muskegon, a partnership, promise(s) to pay to Mount Vernon Sales & Mortgage Corporation

a corporation organized and existing under the laws of Indiana or order, the principal sum of Two Million Forty-Six Thousand Five Hundred Dollars ($2,046,500.00), with interest from date at the rate of eight & one-half per centum (8-1/2%) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows: Interest pa monthly on the first day of Oct. 1970, and on the first day of each month thereafter as hereinafter set forth. Commencing on the first day of Decem 1971, installments of interest and principal shall be paid in the sum of Fifteen Thousand Two Dollars Seventy-Eight Cents ($15,002.78) each, such payment to continue monthly thereafter on the first day of eac succeeding month until the entire indebtedness has been paid. In any eve the balance of principal, if any, remaining unpaid, plus accrued interest shall be due and payable on November 1, 2011. The installments of inter and principal shall be applied first to interest at the rate hereinafter forth upon the principal sum or so much thereof that shall from time to t remain unpaid and the balance thereof shall be applied on account of prin pal. The Maker assumes no personal liability for the payment hereof exce as set out in the Mortgage of even date given to secure this indebtedness

Both principal and interest shall be payable at the office of Mount Vernon Sales & Mortgage Corpora in Indianapolis, Indiana, or such other place as the holder may designate in writing.

~~Privilege is reserved [illegible] equal to one or more monthly payments [illegible] written notice to the holder.~~ If this debt is paid in full while insured under the provisions of the National Housing Act, as amended, all parties liable for payment thereof agree to be jointly and severally bound to pay to the holder hereof such adjusted mortgage insurance premium as may be required by the applicable Regulations. See Rider 1 attached hereto and made a part hereof.

Notwithstanding any provision herein for a prepayment charge, such charge shall be applicable only to the amount of prepayment in any one calendar year which is in excess of fifteen per centum (15%) of the original principal sum of this Note.

If default be made in the payment of any installment under this Note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this Note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this Note equals or exceeds the amount of such required installment of principal.

All parties to this Note, whether principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, protest, notice of protest and notice of dishonor.

Signed and sealed this 25th day of September, 1970.

CARRIAGE HOUSE OF MUSKEGON

By /s/ James T. Bisesi
General Partner

~~XXXXXXXXXXXXXX~~

~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~



IRH 0099051

# Initial Notice of Intent To Terminate or Extend Low-Income Affordability Restrictions

(Pursuant to Section 212 of the Low-Income Housing Preservation and Resident Homeownership Act of 1990)

U. S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0459

Public reporting burden for this collection of information is estimated to average 2.0 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies and Systems, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction Project (2502-0459), Washington, D.C. 20503. Do not send this completed form to either of these addresses.

This Notice must be filed simultaneously with (1) the local HUD Field Office, (2) the chief executive officer of the appropriate State or local government, (3) the mortgagee, (4) tenants of the property, and (5) all known representatives of the tenants.

1. Date of this Notice May 3, 1993
2. Purpose of this Notice (Check one):
   - [X] Extend the low income affordability restrictions by requesting incentives; or
   - [ ] Offer to Sell the housing to a qualified purchaser.
   - [ ] Terminate the low income affordability restrictions through prepayment of the mortgage or voluntary termination of the mortgage insurance;
3. Borrower and Project Information:
   a. Borrower Entity New Amsterdam Associates - New Amsterdam Houses, Inc.
   b. FHA Project Number 012-11087
   c. State Agency Project Number (If project is Section 236 non-insured.) NYC HDA-HPD MBH07WS NYC HPD No.39
   d. Project Name New Amsterdam Apartments
   e. Project Address (Include City, State, and Zip Code) 733 Amsterdam Avenue New York, NY 10025
   f. Date of Final Endorsement N/A *
4. Name of Mortgagee New York City Housing Development Corporation
5. Name of State or local Agency Receiving this Notice Of Intent See attached list.
6. Owner's Certification

   I, the undersigned, certify that this Notice of Intent has been submitted and distributed in accordance with the requirements of the statute as specified above.

   - [ ] I certify that I know of no tenant representative.

   Under the penalties and provision of Title 18, United States Code, Section 1001, the statements contained in the request and its attachments have been examined by me and to the best of my knowledge and belief are true, correct, and complete.

   Signature (Owner) [signature] Date April 9, 1993.

   Name (Owner) Stephen Salup, VP, New Amsterdam Houses, Inc.-New Amsterdam Associates

   Address (Include City, State, and Zip Code) 909 Third Avenue-16th floor New York, NY 10022

## Residents

Important Information about this Notice of Intent is on the back of this form.

ref. Handbook 4350.6 form HUD-9604 (04/03/92)

4/92

* 3.f Date of Final Endorsement - N/A. The property was developed as an unisured City-aided Section 236, and had no Final Endorsement. It was first occupied in 1971 (which commenced the twenty-year affordability period) and began paying principal on its mortgage shortly thereafter.

Notice To: All Residents of (Project Name): New Amsterdam Apartments
733 Amsterdam Avenue, New York, NY 10025

From: U.S. Department of Housing and Urban Development

Subject: Future Plans for Your Apartment Building

The other side of this form is a copy of a Notice sent by the owner of your apartment building to the U.S. Department of Housing and Urban Development (HUD). The Notice tells HUD about the owner's future plans for the project. The owner has checked one of three boxes which say "Extend," "Offer to Sell," or "Terminate." Because of a law passed by Congress in November of 1990, the owner will be able to act upon these plans only if HUD approves.

If the box next to "Extend" or "Offer to Sell" has been checked, this means that the owner wants to work with HUD to keep the building affordable to you and other tenants or sell it to someone who will keep it affordable. However, it is still possible that the owner may be allowed to pay off the mortgage. If the owner does, you may get assistance under certain circumstances which will be explained to you in another letter.

In addition, if the owner is planning to "Extend" or "Offer to Sell" the project, you may let HUD or a tenant representative shown below know if you think repairs need to be done and what they are. Another Notice will be posted in the next few weeks asking you again to let us know what repairs are needed. Once that Notice is posted, you will only have a few days to get your answers to us.

There is also the possibility that an organization of tenants may be able to buy this project. This kind of organization can either continue to rent to you or sell to tenants who want to own their own apartments. If this is the case, we will let you know, or you can have a tenant representative call the HUD Office for more information.

If the box next to "Terminate" has been checked, this means that the owner wants to pay off the mortgage. The rents in your building might then increase. Before HUD would allow the owner to do this, the owner must prove that this action will not hurt tenants. The owner would have to show that, in your area, rents at other buildings are about the same as yours, and/or there are other available, affordable apartments in your area to which you could move.

HUD will send you a letter explaining any decisions that are made or actions that are taken. The owner will be providing any tenant representative(s) with much more information than we are able to post. These representative(s) can then explain to you what is happening. The owner knows of the following tenant representative(s):

Name: Eyola Ledet
Address: President-New Amsterdam Tenants Association
733 Amsterdam Avenue
New York, NY 10025
Telephone No.

Name:
Address:
Telephone No.

If there is any other organization or individual who will be representing the tenants of this project, please let both the owner and HUD know.

All questions and other comments for HUD should be made to the following address and telephone number:

Office: New York

Address: 26 Federal Plaza

City, State, Zip code: New York, NY 10278-0068

Attention: Chief Loan Management Branch

Telephone: 212 264-4967

form HUD-9608

4/92

New Amsterdam 012-11087

PRESERVATION CHECKLIST

DATE INITIAL NOI RECEIVED 5-5-93

IS NOI FOR: ___TERMINATION; ✓ EXTENSION; OR ___TRANSFER.
(CHECK ONLY ONE LINE ABOVE).

DATE SUBMITTED TO: 5/11/93 EMAS; 5/11/93 A & E; 5/11/93 VAL.; 5/11/93 FHEO

DATE REC'VD. FROM: 5/17/93 EMAS; ______ A & E; ______ VAL.; ______ FHEO

WINDFALL PROFIT TEST REQUESTED? ____YES; ✓ NO; ____N/A

DATE RESULTS FROM WINDFALL TEST REC'VD: N/A

DATE LETTER FORWARDED RE: TEST RESULTS: N/A

DATE LETTER FORWARDED RE: APPRAISAL GUIDELINES 6/7/93

IF APPLICANT IS INELIGIBLE DUE TO WINDFALL PROFIT TEST,
THE DATE LETTER FORWARDED TO OWNER INDICATING SAME: ______

DATE OF CAPITAL NEEDS ASSESSMENT: ______ 2,236,695

U.S. Department of Housing and Urban Development
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068

2AHMA

February 12, 1997

Mr. Stephen Salup
Vice President
New Amsterdam Associates
909 Third Avenue - 16th Floor
New York, New York 10022

Dear Mr. Salup:

Subject: LIHPRHA Plan of Action Approval
Capital Loan
Project No. : 012-11087
Project Name: New Amsterdam

We have completed our review of the Plan of Action (POA), as received in this Office on October 29, 1996. The POA is for incentives to extend the low income affordability restrictions with a request for Capital Loan funding under Section 219 of the LIHPRHA statute, as amended by The Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997.

Based on the above and pursuant to provisions of Title VI of the Low-Income Housing Preservation and Resident Homeownership of Act of 1990 (LIHPRHA) and Department of Housing and Urban Development (HUD) Handbook 4350.6, "Processing Plans of Action Under the Low-Income Housing Preservation and Resident Homeownership Act of 1990", and Preservation Letters numbered 96-1 through 96-10 and 97-1 through 97-3, the Plan of Action for the subject project is hereby given approval, subject to the availability of funding for the program.

We have found that the POA meets the requirements of the LIHPRHA Program and its funding, and the POA was found to be necessary to ensure continued low-income use of the project.

1. The Capital Loan replaces the Section 241(f) loan option for owners who extend the affordability restriction. It is a direct, non-amortizing, non-interest bearing loan, due and payable upon sale of the property or payoff of the first (or other priority) mortgage.

2. The maturity date of the note will be co-terminus with the maturity or pre-payment of the underlying HUD insured or assisted first mortgage.

Kelly Decl. Ex. CC

3. Consent of the first mortgagee is required in order to record the mortgage securing the Capital Loan. If the owner provides evidence that the mortgagee will not allow a subordinate lien, a principal of the owner entity shall provide a loan guarantee backed by a Letter of Credit in order to secure the Capital Loan. (Both the guarantee and the Letter of Credit must be in a form acceptable to the Secretary. The Letter of Credit must be kept in place for at least three years.)

4. The Appropriations Act is explicit that the Capital Loan is non-interest bearing; thus, the note can not be structured to accrue interest.

5. A Capital Loan in the amount of $9,274,343 comprising the following elements:

   (a) Sixty five percent of the HUD estimated owners extension preservation equity.

   (b) Total approved hard and soft cost of repairs or rehabilitation $2,592,160.

6. The owner's initial deposit to the Replacement Reserve Account is $505,099. The owner will be responsible for funding this shortfall in the Reserve for Replacement account out of the equity portion of the Capital Loan proceeds.

7. If the actual cost of repairs is less than the estimated cost and contingency, use the difference to pay-down the outstanding Capital Loan amount. If sufficient funds are not available, the cost overruns will be funded by reducing the owner's equity takeout.

8. The residual receipts account will continue to be restricted. Any residual receipts will be applied toward the Capital Loan balance at the time the loan is paid off.

9. An 8 percent distribution on the owner's equity is allowed in accordance with Section 214 and Section 220 of the LIHPRHA statute. We cannot determine at this time whether the distribution will be considered a line item expense in any future rent increase (See Item 5.B Increased Return on Equity).

10. Section 236 projects may modify the Regulatory and Use Agreements to allow the retainage of excess rental income for use in promoting the affordability of the project.

11. The property is to continue as low income affordable housing for its remaining useful life.

12. The funding of a Capital Loan is conditioned upon availability of LIHPRHA appropriations.

13. All closing costs are to be taken from the equity portion of the capital loan proceeds.

14. Any repairs completed without a pre-construction conference cannot be credited to the Extension Preservation Value of the building.

The Basic and Market Rents detailed below represent the approved rents:

| UNIT TYPE | Units | BASIC | MARKET |
|---|---|---|---|
| 0 BR | 26 | $392 | $517 |
| 0 BR w/t | 24 | $400 | $528 |
| 1 BR | 3 | $435 | $574 |
| 1 BR w/t | 48 | $446 | $589 |
| 2 BR | 4 | $514 | $678 |
| 2 BR w/t | 98 | $527 | $696 |
| 3 BR | 2 | $590 | $779 |
| 3 BR w/t | 23 | $600 | $792 |

The rents shown above are the maximum rents, they cannot be increased, nor can services be decreased, without the prior written approval of HUD. Increases in rents should be guided by the fact that the rents must provide sufficient and adequate funding to operate the property. Rent increases may be requested at any time by the owner, to HUD, in accordance with the requirements of Chapter 7 of HUD's 4350.1 Handbook. Approval of the POA does not imply that the proposed budgets and justifying rents will be approved as presented in the POA.

The following requirement must be met for the remaining useful life of the property.

1. Applicants who meet the requirements of the Section 236 Program, the Regulatory Agreement and the Use Agreement, based on HUD income limits in effect at the time, shall be selected to fill vacancies. The Total Tenant Payment (TTP) must be calculated in accordance with HUD's Handbook 4350.3, or other directives or Handbooks which HUD may issue or publish.

2. All requirements specified in the current laws, regulations, HUD Handbook 4350.2 or any other HUD Handbooks and Guidance shall be followed.

You are required to post this notice to advise tenants of the conditional approval of the POA. All additional requirements for rent increases, as contained within Chapter 7 of HUD 4350.1 Handbook, "Insured Project Servicing Handbook", must be followed. You must post a notification of any rent increase, describe its effect on tenant, after POA approval, prior to the effective date of any rent increase.

The annual funding level of the Replacement Reserve Account will be established at $29,510. HUD will not approve the release of funds from the Reserve for Replacement account if doing so would reduce the balance below the minimum thresholds as stipulated in HUD Handbook 4350.1, Chapter 4, Section 11.

This Office will request funding through the Capital Loan Program from the Preservation Division in HUD Headquarters to enable you to implement the POA. Funding for the existing Section 8 rental assistance beyond the expiration of the project's present Housing Assistance Payments (HAP) Contract, will depend on future legislation regarding HAP Contract renewals.

Provided that funding becomes available, the Plan of Action will become effective upon the execution of the Capital Loan Agreement and recordation of the Use Agreement, and will remain in effect for the remaining useful life of the property, thereafter.

If you have any questions regarding this matter, please contact Mr. Frederick Ehrman, Supervisory Asset Manager, at (212) 264-0777, extension 3855.

Sincerely,

Beryl Niewood
Multifamily Director
Housing Division, 2AHM

cc: Honorable George E. Pataki
Governor of State of New York

Honorable Rudolph W. Giuliani
Mayor, City of New York

Maria T. Maffei
Recapitalization Advisors, Inc.

Marvin Specht, DHCR

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ALGONQUIN HEIGHTS, et al.,**<br>**Plaintiffs,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant.** | No. 97-582C<br>Judge Robert H. Hodges, Jr. |

RECEIVED
OVER THE COUNTER
AUG 1 0 2006
THE OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

## JOINT STATUS REPORT

The parties, by and through undersigned counsel, file this Joint Status Report pursuant to the Court's July 12, 2006 order (the "Order"). Following receipt of the Order, the parties conferred concerning the status of the case, and report as follows:

1. **Generally.** As the Order states, this case presents two principal sets of issues: (1) the ripeness of the plaintiffs' taking claims; and (2) the merits of those claims. The parties agree that ripeness issues are preliminary in nature. Consequently, the parties propose to engage in discovery and summary judgment briefing concerning ripeness and to address the merits of the taking claims after a determination of ripeness. In accordance with this proposal, the parties have already initiated written discovery with respect to ripeness issues.

2. **Timing.** The parties propose January 31, 2007 as the deadline for discovery with respect to ripeness issues. No later than February 16, 2007, the parties will file a status report proposing a briefing schedule for summary judgment motions with respect to ripeness. For example, it may be desirable to move for summary

judgment with respect to all of parties' claims in a unified briefing, or, alternatively, to disaggregate the plaintiffs and file multiple summary judgment briefs on the basis of common factual or documentary criteria.

3. **Takings Claims.** After the determination of ripeness, the parties will submit a further status report proposing arrangements and timetables for discovery and briefing on the merits of the taking claims remaining in this action.

4. **Status Conference.** If the Court so desires, the parties are available for a status conference at the Court's convenience.

Respectfully submitted:

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
(202) 307-0277
(202) 307-0972 (fax)

Attorneys for Defendant

Harry J. Kelly /by Richard Michael Price

Harry J. Kelly
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Counsel for the Plaintiffs

August 10, 2006

# In the United States Court of Federal Claims

* * * * * * *
*
ALGONQUIN HEIGHTS, ET AL., *

Plaintiffs, * No. 97-582C
Filed: August 14, 2006

v. *

THE UNITED STATES OF AMERICA, *

Defendant. *

* * * * * * *

**ORDER**

The parties may commence discovery on the ripeness issue upon receipt of this notice. We adopt the dates counsel proposed jointly in the August 10 status report. Discovery on this issue closes January 31, 2007. Counsel will file a proposed briefing schedule for motions for summary judgment with respect to ripeness. Once briefing is complete, we will schedule oral arguments on the motions, if necessary.

Robert H. Hodges, Jr.
Judge

# In the United States Court of Federal Claims

* * * * * * *
*
ALGONQUIN HEIGHTS, ET AL., *
Plaintiffs, * No. 97-582C
v. * Filed: January 2, 2007
THE UNITED STATES OF AMERICA, *
Defendant. *
* * * * * * *

**ORDER**

The parties joint request for additional time to May 31, 2007 to complete discovery is GRANTED. Counsel will file a proposed briefing schedule for motions for summary judgment with respect to ripeness within seven days of the close of discovery.

s/ Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge