# In the United States Court of Federal Claims

No. 97-582 C
(Filed: September 26, 2011)

| | |
|---|---|
| ************************************* | Statute of Limitations; 28 U.S.C. § 2501; |
| ALGONQUIN HEIGHTS          * | Claim Accrual; Regulatory Takings; |
| ASSOCIATES L.P., et al.,       * | Emergency Low-Income Housing |
|                                                  * | Preservation Act of 1987; Low-Income |
|                 Plaintiffs,           * | Housing Preservation and Resident |
|                                                  * | Homeownership Act of 1991; Takings |
| v.                                             * | Claim Accrues on the Date Property Could |
|                                                  * | No Longer Prepay Its Mortgage; Creppel; |
| THE UNITED STATES,        * | Alder Terrace, Inc.; Celentano; Royal |
|                                                  * | Manor, Ltd.; Parkwood Associates L.P.; |
|                 Defendant.         * | Cienega Gardens; Independence Park |
| ************************************* | Apartments |

Harry J. Kelly, Washington, DC, for plaintiffs.

David A. Harrington, United States Department of Justice, Washington, DC, for defendant.

**RULING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SPECIFIED CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**

**SWEENEY**, Judge

Before the court is defendant's motion to dismiss specified claims for lack of subject matter jurisdiction ("motion"), wherein defendant argues that the statute of limitations, 28 U.S.C. § 2501 (2006), bars plaintiffs from asserting takings claims with respect to eleven properties.[1] Plaintiffs allege that the Emergency Low-Income Housing Preservation Act of 1987 ("ELIHPA") and the Low-Income Housing Preservation and Resident Homeownership Act of 1991 ("LIHPRHA") effected regulatory takings of their contractual rights to prepay government-issued mortgages. Second Am. Compl. ¶¶ 77-78. According to plaintiffs, the claims involving the eleven properties at issue here were timely filed. For the reasons discussed below, defendant's motion is granted in part and denied in part.

---

[1] The eleven properties are: (1) Carriage House of Elkhart; (2) Carriage House of Mishawaka I; (3) Carriage House West I; (4) Carriage House West II; (5) Carriage House West III; (6) Church Park Apartments; (7) Country Towne Apartments; (8) Glenarden Woods Apartments; (9) Glenreed Apartments; (10) Riverside Village Apartments; and (11) Willow Creek Apartments.

## I. BACKGROUND

Plaintiffs owned various low-income housing projects that they developed using loans insured under programs administered by the United States Department of Housing and Urban Development ("HUD"). Pursuant to agreements into which they entered with the government, plaintiffs were entitled to prepay their mortgages after twenty years and terminate the government's restrictions on their use of the properties. Congress, concerned that a large number of low-income housing program participants would exit HUD's programs upon expiration of their twenty-year prepayment anniversary dates, thereby reducing the availability of low-income housing, enacted ELIHPA on February 5, 1988. ELIHPA placed a moratorium on mortgage prepayments without the consent of HUD and remained in effect until a permanent modification, LIHPRHA, was enacted on November 28, 1990. Eventually, Congress restored the right to prepay mortgages when it enacted the Housing Opportunity Program Extension Act ("HOPE Act") on April 26, 1996.

During discovery, defendant propounded interrogatories asking plaintiffs to identify the date on which they contended their takings claims ripened under ELIHPA or LIHPRHA. Over objections, plaintiffs responded that their takings claims under ELIHPA and LIHPRHA "'ripened' on the date that each of the subject properties reached its 20th anniversary from the date of HUD's final endorsement of the property's mortgage, or, in the case of properties where HUD did not make a final endorsement of the mortgage because it was not required, the date that the mortgage was signed, or the date of occupancy."[2] Def.'s Ex. 2 (responding to an interrogatory concerning ELIHPA), 4 (responding to an interrogatory concerning LIHPRHA). Plaintiffs provided the following dates for the projects at issue:

---

[2] Plaintiffs objected that the interrogatories were, among other things,

> based on an incorrect premise that Plaintiffs' regulatory takings claims "ripened" on a particular date at a fixed moment in time and assumes that there was a final agency decision by HUD that caused the claim to ripen. Plaintiffs assert the administrative futility exception to the ripeness doctrine; thus, a final agency decision regarding prepayment was not rendered by HUD, and Plaintiffs did not need to obtain one since doing so was futile. As a result, Plaintiffs contend that their claims ripened "as of" the date provided below.

Def.'s Ex. 2 (responding to an interrogatory concerning ELIHPA), 4 (responding to an interrogatory concerning LIHPRHA).

| Property Name | Date |
|---|---|
| Carriage House of Elkhart | May 20, 1991 |
| Carriage House of Mishawaka I | March 9, 1991 |
| Carriage House West I | October 27, 1988 |
| Carriage House West II | December 8, 1989 |
| Carriage House West III | July 28, 1990 |
| Church Park Apartments | February 11, 1991 |
| Country Towne Apartments | February 5, 1988 |
| Glenarden Woods Apartments | December 30, 1989 |
| Glenreed Apartments | March 11, 1990 |
| Riverside Village Apartments | September 1, 1991 |
| Willow Creek Apartments | May 28, 1991 |

Id. at 3, 5.  Plaintiffs explained in their response that Country Towne Apartments was eligible to prepay its mortgage prior to the enactment of ELIHPA.  Therefore, plaintiffs asserted that ELIHPA effected a regulatory taking with respect to Country Towne Apartments on February 5, 1988, the date the statute was enacted.

Plaintiffs filed their original complaint in the United States Court of Federal Claims ("Court of Federal Claims") on August 25, 1997.  Based upon the dates plaintiffs provided, defendant argues that the court lacks jurisdiction over claims involving these properties because they were filed six years after the claims first accrued.  As such, defendant contends that these claims are time barred.  According to plaintiffs, their responses to defendant's interrogatories merely addressed ripeness with respect to the futility doctrine, not when their regulatory takings claims accrued for statute of limitations purposes.

Of the eleven properties at issue, six–Carriage House West I, Carriage House West II, Carriage House West III, Country Towne Apartments, Glenarden Woods Apartments, and Glenreed Apartments–had twenty-year prepayment eligibility dates that occurred during the period that ELIHPA was in effect.  The remaining five properties–Carriage House of Elkhart, Carriage House of Mishawaka I, Church Park Apartments, Willow Creek Apartments, and Riverside Village Apartments–had twenty-year prepayment eligibility dates that occurred during the period that LIHPRHA was in effect.

Defendant argues that plaintiffs' claims accrued on each property's twenty-year prepayment eligibility date.  Plaintiffs, relying principally on Creppel v. United States, 41 F.3d

3

627, 632 (Fed. Cir. 1994), wherein the United States Court of Appeals for the Federal Circuit ("Federal Circuit") explained that "property owners cannot sue for a temporary taking until the regulatory process that began it has ended," contend that their claims accrued in 1996 when the HOPE Act ended the regulatory process that began the temporary taking. Cf. Greenbrier v. United States, 75 Fed. Cl. 637, 642 (2007) (recognizing "some dispute over the accrual date for temporary taking claims based on ELIHPA/LIHPRHA mortgage payment restrictions"). The court concludes that plaintiffs' claims accrued, for purposes of the statute of limitations, on the dates when they could first exercise the right to prepay their mortgages.

## II. DISCUSSION

Numerous cases have addressed the issue of claim accrual in the ELIHPA/LIHPRHA context. In Alder Terrace, Inc. v. United States, 161 F.3d 1372 (Fed. Cir. 1998), the plaintiff developer entered into contracts with HUD for the construction and operation of low-income rental housing, and executed a promissory note authorizing prepayment after January 5, 1989. Prior to that date, Congress enacted ELIHPA. As of the January 5, 1989 prepayment anniversary date, the developer was unable to satisfy the prepayment conditions set forth in ELIHPA. The developer filed suit in the Court of Federal Claims on August 13, 1996. The court dismissed the complaint as time-barred, and the Federal Circuit affirmed.

The Federal Circuit observed that a claim accrues for purposes of 28 U.S.C. § 2501 "'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" Id. at 1377. It noted that the developer first suffered its alleged damages on January 5, 1989, "when it was thereby prevented from exercising its express contractual right then to prepay." Id.; see also id. at 1378 ("On January 5, 1989, the Developer had a vested contractual right to prepayment which was nullified by [ELIHPA]."). In other words, ELIHPA, which was in effect on January 5, 1989, "was preventing the Developer from exercising its prepayment right." Id. at 1377. That ELIHPA was temporary or was later replaced by LIHPRHA, the Federal Circuit explained, did "not alter the fact that . . . the Developer began to suffer damages on January 5, 1989."[3] Id. Because the developer sued in 1996, over seven years after it was eligible to prepay the mortgage, its claim was barred by the statute of limitations.

Similar determinations occurred in Celentano v. United States, 41 Fed. Cl. 596 (1998), and Royal Manor, Ltd. v. United States, 69 Fed. Cl. 58 (2005). In Celentano, the plaintiff, on May 11, 1970, executed a mortgage agreement that made her eligible for prepayment after twenty years. The plaintiff filed breach of contract and takings claims on April 7, 1997, and the court ultimately dismissed the complaint as untimely. Determining that the plaintiff's breach of contract and takings claims first accrued on May 11, 1990, "when plaintiff would have been

---

[3] Though the subsequent enactment of LIHPRHA had no effect upon when the developer's claim accrued, the Federal Circuit recognized that LIHPRHA "may have affected quantum . . . ." Alder Terrace, Inc., 161 F.3d at 1378.

eligible to prepay her mortgage but for the subsequent legislation," Celentano, 41 Fed. Cl. at 602, the court explained:

> In the case of a project such as Beaver Brook, regarding which the 20-year anniversary fell after the enactment of ELIHPA, a cause of action for damages for breach of contract accrued on the 20-year anniversary date. The subsequent enactment of LIHPRHA, after the 20-year anniversary payment date had passed, does not change the result. The cause of action had already accrued on the 20-year anniversary date. At that earlier point in time, the HUD loanholder suffered a potentially compensable loss, thus activating the running of the statute of limitations.

Id. at 603. Thus, the court concluded that, "[o]n May 11, 1990, plaintiff no longer had a unilateral option to prepay her mortgage. At that time, the plaintiff's rights were, at least temporarily, limited and whatever compensable injury plaintiff may have suffered, she suffered at that time."[4] Id. at 602-03.

In Royal Manor, Ltd., the plaintiff signed a mortgage note authorizing prepayment of the mortgage and termination of all property restrictions beginning on April 9, 1993. The plaintiff filed suit on October 6, 1998, alleging that LIHPRHA effected a taking of its contractual right to prepay the mortgage. The government moved to dismiss, arguing that the takings claim was untimely because it accrued when LIHPRHA was enacted in 1990, more than six years after the plaintiff filed suit. The court, however, disagreed, determining instead that the takings claim accrued on April 9, 1993.

The court explained that the "contractual right that was allegedly taken by operation of LIHPRHA was not simply a right to prepay; it was the right to prepay on a date certain: the twentieth anniversary date." 69 Fed. Cl. at 63. The enactment of LIHPRHA in 1990, the court reasoned, did not "cause[] an immediate taking of the plaintiff's twentieth anniversary prepayment right" because the plaintiff "was independently bound by its contract to charge lower rental rates and to remain in the program" until April 9, 1993. Id. Consequently, the court determined, "there was no impact on the plaintiff's property interest in its contractual right" until the plaintiff could exercise its prepayment right on April 9, 1993. Id. Since the plaintiff's takings claim accrued on April 9, 1993, the court concluded that the plaintiff's claim was timely filed.

Although factually distinguishable, the reasoning set forth in Parkwood Associates L.P. v. United States confirms that courts look to the date on which the plaintiff was eligible to prepay

---

[4] Although the court was addressing the plaintiff's contract claim, it explained that its statute of limitations analysis was "equally applicable to plaintiff's takings claim," which was also filed more than six years after May 11, 1990, and was also untimely. Celentano, 41 Fed. Cl. at 607.

its mortgage when determining when its claim accrued.  In Parkwood Associates L.P., the plaintiff entered into a loan contract with the Farmers Home Administration ("FmHA") to establish low-income rural housing projects.  Unlike the mortgages at issue in this case or the cases discussed above, the Parkwood Associates L.P. plaintiff's loan authorized prepayment at any time.  In order to exercise any prepayment option, the plaintiff was required to submit to the FmHA a comprehensive set of documents at least 180 days prior to its anticipated prepayment date.  On August 3, 1992, the plaintiff submitted to the FmHA a set of documents that constituted its request to prepay the loan on February 3, 1993.  The FmHA responded to the plaintiff's request on August 27, 1992, stating that processing had been delayed.  On September 2, 1992, the plaintiff resubmitted its prepayment request.  The FmHA never responded to the plaintiff's second submission.  Over a decade later, in May 2003, the plaintiff again submitted a prepayment request to the FmHA.  Eventually, the plaintiff prepaid its mortgage in 2006, and its contract with the FmHA terminated in 2007.

On October 24, 2007, the plaintiff filed suit, alleging breach of contract and takings claims.  The court, determining that both claims were time-barred, explained that the FmHA's "failure to grant the 1992 requests constituted a breach, particularly because plaintiff specified a date for performance, i.e., February 3, 1993."  97 Fed. Cl. 809, 817-18 (2011).  The takings claim, the court reasoned, "arose, at the latest, at the same time as its contract claim, that is, when the agency failed to honor its 1992 prepayment requests."  Id. at 819; see also City Line Joint Venture v. United States, 82 Fed. Cl. 312, 314, 316 (2008) (noting that the plaintiff was eligible to prepay its mortgage as of August 30, 1991, explaining that the plaintiff's December 19, 1990 notice of intent to prepay "signaled an attempt to exercise [its] rights under the contract," and calculating damages from August 1991).  Because the Parkwood Associates L.P. plaintiff's takings claim accrued on February 3, 1993, the date on which it requested to prepay its mortgage, the court concluded that the complaint, which was filed fourteen years later, was untimely.

In effect, the February 3, 1993 date of performance in Parkwood Associates L.P. is analogous to the twenty-year prepayment eligibility dates in Alder Terrace, Inc., Celentano, and Royal Manor, Ltd.  These cases establish that, for purposes of determining when a claim accrues for statute of limitations purposes, courts look to the date on which the plaintiff was first eligible to prepay its mortgage.  See Cienega Gardens v. United States, 67 Fed. Cl. 434, 479 (2005) ("The as-applied takings under ELIHPA and LIHPRHA began on the properties' initial prepayment eligibility dates."), vacated on other grounds, 503 F.3d 1266 (Fed. Cir. 2007).

Although the Federal Circuit determined that a temporary takings claim accrued on the date the temporary taking ended in Creppel, the landowners' temporary takings claim was barred by the statute of limitations regardless of whether the claim accrued at the beginning or end of the taking period.  In Creppel, landowners of swamp and marshland in Louisiana sued the government for blocking a levee project that was designed by the United States Army Corps of Engineers to control flooding.  The project was modified by an order in 1976, which eliminated the land reclamation benefits of the original project.  In 1984, a district court ordered the original project to proceed, but the Environmental Protection Agency ("EPA"), also in 1984, instituted

proceedings to determine whether to block the project. A year later, the EPA issued a final determination permanently blocking the project, and that final determination was upheld in district court in 1986. The landowners filed temporary and permanent takings claims in the Court of Federal Claims in 1991.

The landowners' temporary takings claim was premised on a taking that began with the 1976 order and ended when the district court upheld the EPA's final determination in 1988. Although the Federal Circuit observed that a property owner cannot sue for a temporary taking until the regulatory process that effectuated the taking concludes, it nevertheless explained that "'all the events' had occurred to fix the supposed liability of the Government" once the 1976 order had been issued. 41 F.3d at 632. Thus, the landowners "needed nothing more to state a takings claim" in 1976. Id. Ultimately, the Federal Circuit determined that the temporary taking "accrued" when the district court ordered the project to proceed in 1984. Id. Noting that the landowners could have filed their takings claim before the temporary taking ended, the Federal Circuit explained that "a litigant may file a suit challenging the validity of governmental regulatory activity concurrently with a takings claim arising from the same set of facts." Id. at 633. In fact, the landowners were aware, as early as 1980, that the United States Court of Claims was the proper forum in which to seek compensation, but they nevertheless waited until 1991 to file suit. As a result, the Federal Circuit concluded that the temporary takings claim was barred by the statute of limitations.

The temporary taking at issue in Creppel commenced in 1976 and ended in 1984. Whether the claim accrued at the beginning or the end of the taking period was ultimately irrelevant: the landowners sued in 1991 and both dates were outside the statute of limitations period. As a result, the Federal Circuit's discussion of when the temporary takings claim accrued was not essential to its disposition of that claim. It therefore carries no binding effect. See Smith v. Orr, 855 F.2d 1544, 1550 (Fed. Cir. 1988) ("[A] general expression in an opinion, which expression is not essential to the disposition of the case, does not control a judgment in a subsequent proceeding."). Similarly, the court finds plaintiffs' reliance upon Independence Park Apartments v. United States, 61 Fed. Cl. 692 (2004), rev'd on other grounds, 449 F.3d 1235 (Fed. Cir. 2006), to be misplaced. The Independence Park Apartments court, citing Creppel, noted that a temporary takings claim accrues for purposes of the statute of limitations at the end of the alleged taking. Yet, the Independence Park Apartments court invoked Creppel solely within the context of determining a valuation date for a temporary taking: "In an analysis of valuation for a temporary taking, the valuation date should be the end of the temporary takings period, not the beginning or some intermediate date." 61 Fed. Cl. at 709; see also Bass Enters. Prod. Co. v. United States, 133 F.3d 893, 896 (Fed. Cir. 1998) ("The fact that regulation has not ceased may complicate a determination of just compensation but does not justify a bright-line rule against liability."). Here, the court does not address what compensation, if any, plaintiffs are entitled to based upon the purported taking of their right to prepay their mortgages, so it need not determine when the alleged takings period ended for each property at issue.

More importantly, the Independence Park Apartments plaintiffs filed suit on January 3, 1994, over two years prior to the enactment of legislation that purportedly ended the temporary taking. 61 Fed. Cl. at 701 n.6. As previously explained, a claim "first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009) (emphasis added). Certainly the Independence Park Apartments plaintiffs could not be "entitle[d] . . . to institute an action" two years after they already instituted the action. Plaintiffs cannot reconcile their position with the sequence of events that occurred in Independence Park Apartments. Under plaintiffs' theory, the Independence Park Apartments plaintiffs' 1994 takings claims did not actually accrue until April 26, 1996, the date the HOPE Act was enacted. This certainly was not the case. Instead, it is evident that the Independence Park Apartments plaintiffs' takings claims accrued on the dates they were eligible to prepay their mortgages, see 61 Fed. Cl. at 696, 702; cf. Caldwell v. United States, 391 F.3d 1226, 1234 (Fed. Cir. 2004) ("It is not unusual that the precise nature of the takings claim, whether permanent or temporary, will not be clear at the time it accrues."), and the end of the temporary takings period only became relevant with respect to the amount of compensation to which the plaintiffs were entitled, see 61 Fed. Cl. at 710-11.

The court rejects plaintiffs' contention that an accrual date corresponding to the date on which the properties could prepay their mortgages requires a determination that plaintiffs' claims are ripe and that it was futile for them to prepay their mortgages ab initio. "[A]n as-applied regulatory takings claim for economic damages does not ripen until there is a definitive position regarding how the statute will apply to the particular property in question[.]" Royal Manor, Ltd., 69 Fed. Cl. at 62. As the Royal Manor, Ltd. court recognized, a claim did not necessarily ripen when LIHPRHA was enacted, and plaintiffs contend that the administrative futility exception to the ripeness doctrine applies in this case. At this point in the proceedings, the court's ruling is limited to whether claims involving the properties at issue were timely filed. Ripeness remains to be adjudicated.

The court concludes that plaintiffs were required to file their takings claims within six years from the date on which their claims accrued, viz., the date on which they were eligible to prepay their mortgages for the various properties at issue. Plaintiffs filed their original complaint on August 25, 1997. Therefore, any claims involving properties with a prepayment eligibility date that occurred before August 25, 1991, are untimely. Ten such properties are affected: Carriage House of Elkhart, Carriage House of Mishawaka I, Carriage House West I, Carriage House West II, Carriage House West III, Country Towne Apartments, Willow Creek Apartments, Glenarden Apartments, Glenreed Apartments, and Church Park Apartments.[5] As such, the court lacks jurisdiction over claims related to these properties. With respect to Riverside Village Apartments, the September 1, 1971 mortgage did not have a final endorsement date from HUD.

---

[5] As noted above, Country Towne Apartments was eligible to prepay its mortgage prior to the enactment of ELIHPA. Plaintiffs contend that ELIHPA, enacted on February 5, 1988, effected a regulatory taking of this property's ability to prepay as of that date. Def.'s Ex. 3 & n.2.

Prepayment eligibility was therefore calculated at twenty years.  See Pls.' Ex. D.  Because Riverside Village Apartments was eligible to prepay beginning on September 1, 1991, claims related to this property were timely filed.

### III.  CONCLUSION

For the reasons set forth above, plaintiffs' claims with respect to ten of the eleven properties at issue are barred by the statute of limitations.  Accordingly, defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.  The clerk is directed to dismiss for lack of jurisdiction claims related to the following properties: Carriage House of Elkhart; Carriage House of Mishawaka I; Carriage House West I; Carriage House West II; Carriage House West III; Country Towne Apartments; Willow Creek Apartments; Glenarden Apartments; Glenreed Apartments; and Church Park Apartments.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge